# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

In re:

Petters Company, Inc., et al.,

Debtors.

(includes:
Petters Group Worldwide, LLC;
PC Funding, LLC;
Thousand Lakes, LLC;
SPF Funding, LLC;
PL Ltd., Inc.;
Edge One LLC;
MGC Finance, Inc.;
PAC Funding, LLC;
Palm Beach Finance Holdings, Inc.)

**Jointly Administered under
Case No. 08-45257**

Court File No. 08-45257

Court Files Nos.:
08-45258 (GFK)
08-45326 (GFK)
08-45327 (GFK)
08-45328 (GFK)
08-45329 (GFK)
08-45330 (GFK)
08-45331 (GFK)
08-45371 (GFK)
08-45392 (GFK)

Chapter 11 Cases
Judge Gregory F. Kishel

Douglas A. Kelley, in his capacity as the
court-appointed Chapter 11 Trustee of
Debtor Petters Company, Inc., et al.

Plaintiff,

v.

Vlahos, et al.;
Redstone Limited Partnership;
Redstone American Grill, Inc.;
Edgebrook, Inc.;
Aron;
Kanios, et al.;
Hagan;
Lynn Isaac, et al.;
George Isaac, et al.;
Papadimos;
Svigos;
Kenney;
High Plains Investment LLC;
Hauser;

Adv. Case Nos.:

10-04201
10-04202
10-04203
10-04204
10-04205
10-04206
10-04207
10-04209
10-04210
10-04211
10-04212
10-04225
10-04250
10-04254

| | |
|---|---|
| Hayden Fleming, et al.; | 10-04255 |
| Miller, et al.; | 10-04256 |
| Patrick Fleming, et al.; | 10-04257 |
| McCarthy, et al.; | 10-04262 |
| Allanson; | 10-04263 |
| Brennan; | 10-04264 |
| Kenneth Colvin, et al.; | 10-04266 |
| Electric Motor Supply Co.; | 10-04267 |
| Steve Feneis; | 10-04268 |
| Kabe; | 10-04273 |
| Caruso; | 10-04274 |
| Dan G. Feneis, et al.; | 10-04275 |
| Kuperus; | 10-04277 |
| Kyriakides; | 10-04278 |
| Jane Slobodyanuk; | 10-04280 |
| Slava Slobodyanuk; | 10-04281 |
| Miller Companies, Inc.; | 10-04282 |
| Kerbel, et al.; | 10-04284 |
| Challenge Printing; | 10-04290 |
| Overstock.com; | 10-04292 |
| Alper; | 10-04293 |
| Mansour, et al.; | 10-04296 |
| Opportunity Finance, LLC, et al.; | 10-04301 |
| Larry Colvin, et al.; | 10-04310 |
| Kimberlee Colvin, et al.; | 10-04311 |
| Metro I, LLC, et al.; | 10-04328 |
| Carter; | 10-04337 |
| Engels; | 10-04338 |
| Danko; | 10-04339 |
| McGaunn; | 10-04340 |
| Salmen; | 10-04341 |
| Phelps; | 10-04342 |
| Miller; | 10-04343 |
| Anderson; | 10-04344 |
| Ting; | 10-04345 |
| Riedl; | 10-04346 |
| Mau; | 10-04347 |
| Margolis; | 10-04348 |
| Metro Gem, Inc., et al.; | 10-04352 |
| Thomas Shimoji and Company, Ltd.; | 10-04354 |
| Circle F Ventures, LLC; | 10-04355 |
| Joe; | 10-04358 |
| Tesar; | 10-04359 |
| Dorsey; | 10-04360 |
| O'Brien; | 10-04361 |
| Honig; | 10-04362 |

| | |
|---|---|
| Sarenpa; | 10-04363 |
| Pernula; | 10-04366 |
| Schmit; | 10-04367 |
| Opportunity Finance, LLC; | 10-04375 |
| Toshi Investments, Ltd.; | 10-04378 |
| Idlewild Properties, LLC; | 10-04380 |
| Knoblach, et al.; | 10-04382 |
| Wright; | 10-04385 |
| Monighan; | 10-04395 |
| Westford Special Situations Master Fund, L.P., et al.; | 10-04396 |
| Zhang; | 10-04402 |
| Lagermeier; | 10-04403 |
| Clayton; | 10-04405 |
| Hardy; | 10-04408 |
| Ratliff; | 10-04409 |
| Dunlap; | 10-04410 |
| Morgan; | 10-04415 |
| General Electric Capital Corporation; | 10-04418 |
| Romenesko; | 10-04419 |
| Associated Bank; | 10-04422 |
| Kenneth Johnson; | 10-04423 |
| Hodge; | 10-04425 |
| Lancer Financial Services, LLC, et al.; | 10-04427 |
| Cohen Partnership, et al.; and | 10-04431 |
| Ritchie Capital Management, L.L.C., et al., | 10-04440 |

Defendants.

# OMNIBUS MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS

Douglas A. Kelley, Trustee (the "Trustee") of the above-captioned debtors ("Debtors") hereby submits this Omnibus Memorandum of Law (the "Omnibus Memorandum") in opposition to the motions to dismiss filed in the above-captioned matters.[1]

---

[1] The Trustee is represented by the following law firms in connection with the pending adversary proceedings: Lindquist & Vennum P.L.L.P.; Kelley, Wolter & Scott, P.A.; and Fruth, Jamison & Elsass, P.L.L.C. Lindquist & Vennum, P.L.L.P. and Kelley, Wolter & Scott, P.A., each file the Omnibus Memorandum and seek relief only with respect to the pending adversary proceedings for which the particular firm is the counsel of record.

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................ 1

PROCEDURAL SUMMARY – MOTIONS TO DISMISS ...................................... 1

ARGUMENT .............................................................................................................. 2

    I.    Standard of Review ......................................................................................... 5

        A.    Defendants Overstate the Rule 9(b) Pleading Requirements .................... 7

        B.    The Trustee Is Entitled to Deference in Complying with Rule
            9(b)'s Pleading Requirements. ..................................................................... 9

    II.    The Trustee's Fraudulent Transfer Claims Are Timely and the Trustee Is
        Authorized to Pursue Recovery of Fraudulent Transfers Made Throughout
        the Duration of the Petters Ponzi Scheme .............................................. 10

        A.    The Trustee Timely Filed the Complaints Within Two Years of the
            Petition Date ............................................................................................. 11

            1.    Section 546(a) Provides the Trustee Two Years From the
                Date the Petition Was Filed to Bring Avoidance Actions
                under 11 U.S.C. § 544 .................................................................... 12

                (a)    The § 546(a) Time Period Is Independent of
                      Underlying State Law Limitations Periods. ...................... 12

                (b)    Defendants' Attempt to Subsume the § 546(a) Two-
                      Year Period Within the Minnesota Six-Year Statute
                      of Limitations Period Must Be Rejected .......................... 14

            2.    The Filing of the Complaint, Not Service, Establishes
                 Timeliness. ..................................................................................... 16

        B.    The Controlling Limitations Period Is Minnesota Statutes § 541.05,
            Subd. 1(6) ................................................................................................. 20

            1.    The Minnesota Uniform Fraudulent Transfer Act Is a
                Codification of Minnesota Common Law, Rendering
                Minnesota Statutes § 541.05, Subd. 1(2) Inapplicable. ................ 21

                (a)    Minnesota Statutes § 541.05,  Subd. 1(2) Applies to
                      Liability that Would Not Exist but for a Statute. .............. 22

                  (b)    MUFTA Codifies Common Law. ..................................... 23

2.    The Minnesota Supreme Court Applies the Fraud-Based
      Limitations Period in Subdivision 1(6) to Fraudulent
      Transfer Claims............................................................................ 25

C.    Regardless of Which Limitations Period Applies, the Trustee Had
      Six Years From October 6, 2008, to Pursue the Fraudulent
      Transfers that Occurred Throughout the Course of the Petters
      Ponzi Scheme............................................................................................ 26

      1.    Determination of Defendants' Fact-Intensive Affirmative
            Defenses Is Not Appropriate on a Motion to Dismiss. ................. 27

      2.    The Trustee Pleaded Sufficient Facts to Show that Pursuant
            to Minnesota Statutes § 541.05, Subd. 1(6), the Claims
            Accrued on October 6, 2008, Because the Fraud Could Not
            Have Been Discovered Before that Date. ..................................... 29

      3.    The Trustee Pleaded Sufficient Facts to Show that the
            Doctrine of Equitable Tolling Based on Fraudulent
            Concealment Applies to Toll the Limitations Period
            Established by Minnesota Statutes § 541.05, Subd. 1(2).............. 32

            (a)    The Doctrine of Equitable Tolling Applies to
                   Claims that Are Subject to the Subdivision 1(2)
                   Limitations Period.............................................................. 33

            (b)    In the Context of a Fraudulent Ponzi Scheme, the
                   Doctrine of Equitable Tolling Applies Regardless of
                   the Transferees' Subjective Intent. ................................... 35

            (c)    The Trustee Adequately Pleaded the Elements of
                   Fraudulent Concealment to Invoke the Doctrine of
                   Equitable Tolling. .............................................................. 37

      4.    Regardless of the Limitations Period that Applies, the
            Doctrine of Adverse Domination Further Authorizes the
            Trustee to Recover Fraudulent Transfers that Occurred
            Throughout the Duration of the Ponzi Scheme............................ 40

D.    Delayed Accrual and Tolling of the Statute of Limitations Is
      Consistent with Public Policy. .................................................................. 42

III.  The Trustee Has Standing and Is Not Required to Plead the Identity of a
      Creditor or Any Category of Creditors Whose Claims Are Being Asserted. ....... 44

IV.   The Trustee Pleaded the Actual Fraud Claims with Sufficient Particularity........ 48

A. The Trustee Adequately Pleaded Fraudulent Intent Because Any Transfer Made in Furtherance of the Petters Ponzi Scheme Was Made with the Actual Intent to Hinder, Delay, or Defraud Present and Future Creditors. ............................... 49

1. The Trustee Pleaded the Existence of a Ponzi Scheme with Particularity Sufficient to Invoke the Presumption of Actual Fraud. ........................................................................... 51

2. The Adjudication of the Guilt of Petters and His Associates' Criminal Guilt Further Establishes the Existence of the Petters Ponzi Scheme. ........................................ 55

3. The Transfers Made to the Employee Defendants Were Made in Furtherance of the Ponzi Scheme. .................................. 57

4. The Court Should Not Entertain Fact-Intensive Affirmative Defenses when Ruling on a Motion to Dismiss. .......................... 59

B. The Trustee Particularly Pleaded Numerous Badges of Fraud. ................ 60

1. The Trustee Pleaded Numerous Badges of Fraud in All Complaints. ..................................................................... 62

2. The Trustee Pleaded Numerous Additional Badges of Fraud in the Employee Defendant Complaints. ........................... 63

C. Defendants' Characterization of the Transfers as Loan Repayments Is Irrelevant. ........................................................................... 64

V. The Trustee Adequately Pleaded Claims for Constructive Fraud. ...................... 67

A. Constructive Fraud Claims Are Not Subject to the Heightened Pleading Requirements of Rule 9(b). ......................................................... 69

B. The Merits of the Fact-Intensive Elements of the Trustee's Constructive Fraud Claims Are Not Properly Determined on a Motion to Dismiss. ...................................................................... 70

C. The Trustee's Constructive Fraud Claims Comport with the Pleading Requirements of Federal Rules of Civil Procedure 8 and 9(b). ...................................................................................... 72

1. The Trustee Adequately Pleaded that the Debtors Did Not Receive Reasonably Equivalent Value from Defendants. ............ 72

2.      The Trustee Adequately Pleaded Lack of Reasonably
Equivalent Value with Respect to the Employee
Defendants. ................................................................ 78

3.      The Trustee Adequately Pleaded the Third Element of a
Constructive Fraudulent Transfer Claim by Alleging the
Debtors' Insolvency, Unreasonably Small Capital and
Inability to Pay Debts................................................... 80

4.      The Trustee Adequately Pleaded Insider Status. .......... 82

(a)     Employee Defendants Who are Officers, Directors
or Persons in Control are "Insiders" as a Matter of
Law. ................................................................ 83

(b)     The Trustee Adequately Pleaded that Numerous
Defendants Are Non-Statutory Insiders........................ 87

(c)     The Requisite Relationship Need Not Be with the
Debtors Themselves to Render Defendants'
Insiders............................................................. 90

(d)     The Cases Cited by Defendants Compel Denial of
their Motions..................................................... 92

D.      The Trustee Is Not Required to Plead a Rebuttal to Defendants'
Good Faith Affirmative Defense. ............................................. 93

VI.    The Trustee Pleaded a Cognizable Claim for Turnover and Accounting............. 95

VII.   The Trustee Pleaded a Cognizable and Timely Claim for Unjust
Enrichment......................................................................... 98

A.      The Trustee Has Standing to Assert an Unjust Enrichment Claim........... 98

B.      The Trustee Adequately Pleaded an Unjust Enrichment Claim
under Minnesota Law. ........................................................ 99

C.      The Trustee May Plead Alternative Theories. ........................................ 101

D.      The Trustee's Unjust Enrichment Claims Are Timely. ......................... 103

VIII.  The Trustee's Claims for Disallowance under 11 U.S.C. § 502(d) Are
Valid................................................................................ 104

IX.    The Additional Arguments Raised by Defendants Either Fail as a Matter
of Law or Present Fact-Intensive Issues Inappropriate for Resolution on a
Motion to Dismiss............................................................... 108

A.    The Determination of Whether any Defendants Were "Mere
Conduits" Requires a Determination of Multiple Fact Issues Not
Proper on a Motion to Dismiss. ........................................................... 108

1.    Whether Defendant Was a Mere Conduit Cannot Be
Determined at the Pleadings Stage. ............................................ 108

2.    The Trustee Adequately Pleaded that Defendant Is an
Initial or Subsequent Transferee, and Nothing Further Is
Required to Survive a Motion to Dismiss. ................................... 110

3.    The Trustee Adequately Pleaded that Transfers Were Made
to Defendants. ............................................................................ 111

B.    Defendant's Argument Based on Laches Fails. ..................................... 112

C.    Defendant's Argument Based on the Doctrine of *In Pari Delicto*
Fails. ..................................................................................................... 113

D.    Defendant's Argument Based on Felony Theft Fails. ............................ 116

X.    Dismissal of any of the Trustee's Claims Must Be Without Prejudice
Pursuant to Rule 15 and the Court Should Grant Leave to Amend the
Complaints. ........................................................................................................ 116

CONCLUSION ............................................................................................................... 118

# TABLE OF AUTHORITIES

**Page(s)**

## FEDERAL CASES

*Adelphia Commc'ns.Corp. v. Bank of Am.*
(*In re Adelphia Commc'ns Corp.*), 365 B.R. 24 (Bankr. S.D.N.Y. 2007)............................115

*Anderson v. Unisys Corp.*,
47 F.3d 302 (8th Cir. 1995) ................................................................................17

*Angell v. Ber Care, Inc. (In re Caremerica, Inc.)*,
409 B.R. 737 (Bankr. E.D.N.C. 2009) ................................................................92

*Angell v. Burrell (In re Caremerica, Inc.)*,
409 B.R. 759 (Bankr. E.D.N.C. 2009) .........................................................92, 93

*Angell v. Day (In re Caremerica, Inc.)*,
415 B.R. 200 (Bankr. E.D.N.C. 2009) ................................................................92

*Angell v. Etheridge (In re Caremerica, Inc.)*,
No. 06-0291308, 2009 WL 2253232 (Bankr. E.D.N.C. July 28, 2009) .................92

*Angell v. First Eastern, LLC (In re Caremerica, Inc.)*,
No. 06-0291308, 2009 WL 2253241 (Bankr. E.D.N.C., July 28, 2009) ................92

*Angell v. Haveri (In re Caremerica, Inc.)*,
409 B.R. 346 (Bankr. E.D.N.C. 2009) ................................................................92

*Appletree Square I, LP v. W.R. Grace & Co.*,
29 F.3d 1283 (8th Cir. 1994) ..............................................................................17

*Arena Dev. Group, LLC v. Naegle Commc'ns, Inc.*,
No. 06-2806, 2007 WL 2506431 (D. Minn. Aug. 30, 2007)...............................102

*Armstrong v. Collins*,
No. 01-02437, 2011 WL 308260 (S.D.N.Y. Jan. 31, 2011) ...........................65, 66

*Asarco LLC v. Am. Mining Corp.*,
396 B.R. 278 (S.D. Tex. 2008) .........................................................................114

*Ashcroft v. Iqbal*,
129 S. Ct. 1937 (2009).................................................................5, 6, 9, 45, 70

*Astropower Liquidating Trust v. Xantrex Tech., Inc. (In re Astropower, Inc.)*,
335 B.R. 309 (Bankr. D. Del. 2005) ..................................................................109

*B.E.L.T., Inc. v. Wachovia Corp.*,
403 F.3d 474 (7th Cir. 2005) ..............................................................................67

*Balaber-Strauss v. Lawrence (In re Churchill Mortg. Inv. Corp.),*
    256 B.R. 664 (Bankr. S.D.N.Y. 2000) ...................................................................60

*Bank of Montreal v. Avalon Capital Group, Inc.,*
    743 F. Supp. 2d 1021 (D. Minn. 2010) ...............................................................102

*Barclay v. Mackenzie (In re AFI Holding, Inc.),*
    525 F.3d 700 (9th Cir. 2008) ........................................................................50, 56

*Barclay v. Swiss Fin. Corp. Ltd. (In re Midland Euro Exch. Inc.),*
    347 B.R. 708 (Bankr. C.D. Cal. 2006)..................................................................93

*Barnard v. Joffe (In re Inflight Newspapers, Inc.),*
    423 B.R. 6 (Bankr. E.D.N.Y. 2010)......................................................................13

*Barry v. Barry,*
    78 F.3d 375 (8th Cir. 1996) .................................................................................29

*Bear, Stearns Sec. Corp. v. Gredd (In re Manhattan Inv. Fund Ltd.),*
    397 B.R. 1 (S.D.N.Y. 2007).............................................................50, 58, 59, 66

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007)..............................................................................5, 9, 45

*Bergquist v. Vista Dev., Inc. (In re Quality Pontiac Buick GMC Truck, Inc.),*
    222 B.R. 865 (Bankr. D. Minn. 1998) ..............................................12, 14, 15, 26

*BJC Health Sys. v. Columbia Cas. Co.,*
    478 F.3d 908 (8th Cir. 2007) .................................................................................7

*Bloom v. Fry (In re Leach),*
    380 B.R. 25 (Bankr. D.N.M. 2007) ................................................................13, 19

*Bonded Fin. Servs. v. European Am. Bank,*
    838 F.2d 890 (7th Cir. 1988) ............................................................................109

*Boston Trading Group, Inc. v. Burnazos,*
    835 F.2d 1504 (1st Cir. 1987)............................................................................67

*Braden v. Wal-Mart Stores, Inc.,*
    588 F.3d 585 (8th Cir. 2009) ...........................................................................5, 6

*Brandt v. Hicks, Muse & Co. (In re Healthco Int'l, Inc.),*
    195 B.R. 971 (Bankr. D. Mass. 1996) ..................................................................46

*Breeding v. Massey,*
    378 F.2d 171 (8th Cir. 1967) ............................................................................102

*Brown v. Medtronic, Inc.*,
   628 F.3d 451 (8th Cir. 2010) ......................................................................6

*Brown v. Third Nat'l Bank (In re Sherman)*,
   67 F.3d 1348 (8th Cir. 1995) ....................................................................61

*Bruno Machinery v. Troy Die Cutting Co. (In re Bruno Machinery)*,
   435 B.R. 819 (Bankr. N.D.N.Y. 2010) ................................................87, 88, 90, 91

*Buckley v. Merrill Lynch & Co., Inc. (In re DVI, Inc.)*,
   No. 03-12656, 2008 WL 4239120 (Bankr. D. Del. Sept. 16, 2008).....................110

*Campbell v. Cathcart (In re Derivium Capital, LLC)*,
   380 B.R. 429 (Bankr. D.S.C. 2006) ............................................................96

*China Res. Prods. (U.S.A.) Ltd. v. Fayda Int'l, Inc.*,
   788 F. Supp. 815 (D. Del. 1992).................................................................7

*Christy v. Alexander & Alexander*,
   130 F.3d 52 (2d. Cir. 1997)....................................................................109

*Clark v. Milam*,
   847 F. Supp. 409 (S.D. W. Va. 1994).........................................................41

*Comcast of Ill. X, LLC v. Multi-Vision Elecs., Inc.*,
   No. 03-311, 2005 WL 2177070 (D. Neb. Sept. 8, 2005).....................................36

*Conroy v. Schott*,
   363 F.2d 90 (6th Cir. 1966) ....................................................................75

*Corzin v. Fordu (In re Fordu)*,
   209 B.R. 854 (B.A.P. 6th Cir. 1997).........................................................114

*Cunningham v. Brown*,
   265 U.S. 1 (1924)...............................................................................80

*Daigle v. Ford Motor Co.*,
   713 F. Supp. 2d 822 (D. Minn. 2010).........................................................102

*Daly v. Deptula (In re Carrozzella & Richardson)*,
   286 B.R. 480 (D. Conn. 2002)................................................................76, 77

*Davidson v. Bank of New England (In re Hollis & Co.)*,
   86 B.R. 152 ......................................................................................9

*Deckard v. Gen. Motors Corp.*,
   307 F.3d 556 (7th Cir. 2002) ..................................................................109

*Deere & Co. v. MTD Prods., Inc.*,
No. 00-5936, 2001 WL 435613 (S.D.N.Y. Apr. 30, 2001) .................................................113

*Deretich v. City of St. Francis*,
No. 97-3925, 1998 WL 327207 (8th Cir. June 19, 1998).........................................................18

*Detroit Gen. Ret. Sys. v. Medtronic, Inc.*,
621 F.3d 800 (8th Cir. 2010) .........................................................................................5, 6

*Dicello v. Jenkins (In re Int'l Loan Network)*,
160 B.R. 1 (Bankr. D.D.C. 1993) ....................................................................................75

*Donell v. Kowell*,
533 F.3d 762 (9th Cir. 2008) ..........................................................................................73

*Doyle v. Paolino (In re Energy Sav. Ctr., Inc.)*,
61 B.R. 732 (E.D. Pa. 1986) ...........................................................................................97

*Dring v. McDonnell Douglas Corp.*,
58 F.3d 1323 (8th Cir. 1995) ..........................................................................................36

*Drobnak v. Andersen Corp.*,
561 F.3d 778 (8th Cir. 2008) ..........................................................................................34

*Epperson v. Entm't Express, Inc.*,
338 F. Supp. 2d 328 (D. Conn. 2004)...............................................................................35

*First Am. Bank v. Gaylor (In re Gaylor)*,
123 B.R. 236 (Bankr. E.D. Mich. 1991) ............................................................................70

*Fisher v. Sellis (In re Lake States Commodities, Inc.)*,
253 B.R. 866 (Bankr. N.D. Ill. 2000) ...............................................................................74

*Foman v. Davis*,
371 U.S. 178 (1962)....................................................................................................117

*Forman v. Jeffrey Matthews Fin. Group, LLC. (In re Halpert & Co.)*,
254 B.R. 104 (Bankr. D.N.J. 1999) ..................................................................................71

*Frontier Bank v. Brown (In re N. Merch., Inc.)*,
371 F.3d 1056 (9th Cir. 2004) ........................................................................................75

*Girard v. Michener (In re Michener)*,
217 B.R. 263 (Bankr. D. Minn. 1998) .....................................................................23, 24, 26

*Global Crossing Estate Representative v. Winnick*,
No. 04-02558, 2006 WL 2212776 (S.D.N.Y. Aug. 3, 2006)...............................................47, 48

*Gold v. Winget (In re NM Holdings Co.),*
  407 B.R. 232 (Bankr. E.D. Mich. 2009) ...................................................8, 69

*Grimlie v. Georgen-Running (In re Grimlie),*
  439 B.R. 710 (B.A.P. 8th Cir. 2010)..............................................................25

*Guiliano v. U.S. Nursing Corp. (In re Lexington Healthcare Group, Inc.),*
  339 B.R. 570 (Bankr. D. Del. 2006) ..............................................................46

*Gunten v. Neilson (In re Slatkin),*
  243 Fed. Appx. 255 (9th Cir. 2007)...............................................................75

*Harman v. First Am. Bank (In re Jeffrey Bigelow Design Group, Inc.),*
  956 F.2d 479 (4th Cir.1992) ...........................................................................75

*Hartford Fire Ins. Co. v. Clark,*
  727 F. Supp. 2d 765 (D. Minn. 2010).................................................100, 101

*Hassett v. Weissman (In re O.P.M. Leasing Servs., Inc.),*
  35 B.R. 854 (Bankr. S.D.N.Y. 1983) ...............................................................9

*Hassett v. Zimmerman (In re O.P.M. Leasing Servs., Inc.),*
  32 B.R. 199 (Bankr. S.D.N.Y. 1983).................................................9, 68, 79

*Hayes v. Palm Seedlings Partners (In re Agric. Research & Tech. Group, Inc.),*
  916 F.2d 528 (9th Cir. 1990) ..........................................................................50

*HBE Leasing Corp. v. Frank,*
  48 F.3d 623 (2d Cir. 1995)..............................................................................61

*Hechinger Inv. Co. v. Fleet Retail Finance Group,*
  274 B.R. 71 (D. Del. 2002)..............................................................................98

*Hecht v. Malvern Preparatory School,*
  716 F. Supp. 2d 395 (E.D. Pa. 2010) ............................................................101

*Henkin v. Rockower Bros., Inc.,*
  259 F. Supp. 202 (S.D.N.Y. 1966) ..................................................................17

*Henry v. Lehman Comm'l Paper, Inc. (In re First Alliance Mortgage Co.),*
  471 F.3d 977 (9th Cir. 2006) ...............................................................67, 116

*Hill v. Day*
  (*In re Today's Destiny, Inc.*), 388 B.R. 737 (Bankr. S.D. Tex. 2008) ..........114, 115

*Hines v. A.O. Smith Harvestore Prods., Inc.,*
  880 F.2d 995 (8th Cir. 1989) ..........................................................................27

*Hoggarth v. Kaler (In re Midwest Agri. Dev. Corp.),*
    387 B.R. 580 (B.A.P. 8th Cir. 2008)..................................................107

*Holloway v. IRS (In re Odom Antennas, Inc.),*
    340 F.3d 705 (8th Cir. 2003) ...............................................106, 107

*Hope v. Klabal,*
    457 F.3d 784 (8th Cir. 2006) .......................................................28

*Howard v. Fidelity & Deposit Co. (In re Royale Airlines, Inc.),*
    98 F.3d 852 (5th Cir. 1996) .......................................................114

*Hunt v. Am. Bank & Trust Co.,*
    606 F. Supp. 1348 (N.D. Ala. 1985)................................................42

*Iannacone v. IRS (In re Bauer),*
    318 B.R. 697 (Bankr. D. Minn. 2005) ............................................109

*In re A. Tarricone, Inc.,*
    286 B.R. 256 (Bankr. S.D.N.Y. 2002) .............................................90

*In re Am. Energy Trading, Inc.,*
    291 B.R. 159 (Bankr. W.D. Mo. 2003)..............................................13

*In re Bayou Group, LLC,*
    362 B.R. 624 (Bankr. S.D.N.Y. 2007) ...............................49, 66, 75, 93

*In re Bayou Group, LLC,*
    439 B.R. 284 (S.D.N.Y. 2010)......................................50, 66, 76

*In re Best Prods. Co., Inc.,*
    168 B.R. 35 (Bankr. S.D.N.Y. 1994) ...............................................17

*In re Charterhouse, Inc.,*
    84 B.R. 147 (Bankr. D. Minn. 1988) ..............................................99

*In re Cont'l Capital Inv. Serv., Inc.,*
    No. 03-3370, 2006 WL 6179374 (Bankr. N.D. Ohio June 12, 2006)...............88, 89

*In re Curry,*
    160 B.R. 813 (Bankr. D. Minn. 1993) .............................................26

*In re DBSI, Inc.,*
    No. 08-12687, 2011 WL 115876 (Bankr. D. Del. Jan. 11, 2011)..............83, 84, 88

*In re Dry Wall Supply, Inc.,*
    111 B.R. 933 (D. Colo. 1990) .....................................................14

*In re Dygert*,
   No. 98-45925, 2000 WL 630833 (Bankr. D. Minn. May 11, 2000)....................84, 86, 87, 88

*In re El Comandante Mgmt. Co., LLC*,
   388 B.R. 469 (D.P.R. 2008).............................................................................................84, 86

*In re Enron Corp.*,
   340 B.R. 180 (Bankr. S.D.N.Y. 2006) ...................................................................................107

*In re First Union Nat'l Bank v. Gibbons (In re Princeton-New York Inv., Inc.)*,
   219 B.R. 55 (D.N.J. 1998) ......................................................................................................15

*In re Gilbert*,
   104 B.R. 206 (Bankr. W.D. Mo. 1989)....................................................................................87

*In re Int'l Mgmt. Assocs., LLC*,
   No. A06-62966, 2010 WL 2026442 (Bankr. N.D. Ga. Apr. 9, 2010) ..................30, 35, 37, 42

*In re Jacobs*,
   394 B.R. 646 (Bankr. E.D.N.Y. 2008) ..............................................................................61, 96

*In re Juliet Homes, LP*,
   No. 07-36424, 2010 WL 5256806 (Bankr. S.D. Tex. Dec. 16, 2010)..........................8, 36, 69

*In re Kroh Bros. Dev. Co.*,
   137 B.R. 332 (W.D. Mo. 1992) .......................................................................................84, 86

*In re Loranger Mfg. Corp.*,
   324 B.R. 575 (Bankr. W.D. Pa. 2005) .....................................................................................28

*In re Lumbar*,
   No. 08-36803, 2011 WL 754854 (Bankr. D. Minn. Mar. 3, 2011) .........................................49

*In re M. Fabrikant & Sons, Inc.*,
   394 B.R. 721 (Bankr. S.D.N.Y. 2008) ....................................................................................68

*In re Manhattan Inv. Fund Ltd.*,
   310 B.R. 500 (Bankr. S. D. N. Y. 2002)..................................................................................93

*In re Mark Benskin & Co.*,
   161 B.R. 644, 650 (Bankr. W.D. Tenn. 1993).........................................................................81

*In re McCarn's Allstate Fin., Inc.*,
   326 B.R. 843 (Bankr. M.D. Fla. 2005) ....................................................................................56

*In re Metiom, Inc.*,
   301 B.R. 634 (Bankr. S.D.N.Y. 2003) ...................................................................................107

*In re Mid Atlantic Fund, Inc.*,
   60 B.R. 604 (Bankr. S.D.N.Y. 1986) ...................................................................107

*In re Miller Homes, LLC*,
   No. 05-60213, 2009 WL 4430267 (Bank. D. N. J. 2009)...................................86, 87

*In re Norstan Apparel Shops, Inc.*,
   367 B.R. 68 (Bankr. E.D.N.Y. 2007)................................................................28, 42

*In re Old Naples Sec.*,
   343 B.R. 310 (Bankr. M.D. Fla. 2006) ............................................................50, 61

*In re Ozark Rest. Equip. Co., Inc.*,
   850 F.2d 342 (8th Cir. 1988) .................................................................................70

*In re Prime Realty, Inc.*,
   376 B.R. 274 (Bankr. D. Neb. 2007) .....................................................................84

*In re Ramirez Rodriguez*,
   209 B.R. 424 (Bankr. S.D. Tex. 1997) .............................................................56, 75

*In re RCM Global Long Term Capital Appreciation Fund, Ltd.*,
   200 B.R. 514 (Bankr. S.D.N.Y. 1996)..............................................................46, 48

*In re Reading Broadcasting, Inc.*,
   390 B.R. 532 (Bankr. E.D. Pa. 2008) .......................................................27, 41, 42

*In re Red Dot Scenic, Inc.*,
   313 B.R. 181 (Bankr. S.D.N.Y. 2004).................................................................107

*In re Richmond*,
   429 B.R. 263 (Bankr. E.D. Ark. 2010) .....................................................87, 88, 89

*In re Rosen Auto Leasing, Inc.*,
   346 B.R. 798 (B.A.P. 8th Cir. 2006)........................................................83, 84, 87, 88

*In re Sand Hill Capital Partners III, LLC*,
   No. 08-30989, 2010 WL 4269622 (Bank. N.D. Cal. Oct. 25, 2010).............................92, 113

*In re Taubman*,
   160 B.R. 964 (Bankr. S.D. Ohio 1993)......................................................43, 75, 81

*In re World Vision*,
   275 B.R. 641 (Bankr. M.D. Fla. 2002) ....................................................58, 59, 60

*In re Yellowstone Mountain Club, LLC*,
   No. 08-61570, 2010 WL 605735 (Bankr. D. Mont. Feb. 17, 2010) .......................41

*Johnson v. Neilson (In re Slatkin)*,
 525 F.3d 805 (9th Cir. 2008) ........................................................................49, 56

*Kalisch v. Maple Trade Fin. Corp.*
 (*In re Kalisch*), No. 06-B-1076, 2007 WL 1580049 (Bankr. S.D.N.Y. May 30, 2007)........115

*Katchen v. Landy*,
 382 U.S. 323 (1966)........................................................................................106

*Kaufman & Roberts, Inc. v. Gigi Adver. P'ship*,
 188 B.R. 309 (S.D. Fla. 1995) ........................................................................35

*Keller v. Blinder (In re Blinder, Robinson & Co., Inc.)*,
 162 B.R. 555 (D. Colo. 1994)........................................................................109

*Kelly v. Armstrong*,
 141 F.3d 799 (8th Cir. 1998) ........................................................................61

*Kittay v. Flutie New York Corp. (In re Flutie New York Corp.)*,
 310 B.R. 31 (Bankr. S.D.N.Y. 2004) ..............................................................99

*Klesalek v. Klesalek*,
 307 B.R. 648 (B.A.P. 8th Cir. 2004)..............................................................17

*Knox v. Sunstar Acceptance Corp. (In re Knox)*,
 237 B.R. 687 (Bankr. N.D. Ill. 1999) ............................................................99

*Kranz v. Koenig*,
 240 F.R.D. 453 (D. Minn. 2007)..........................................................7, 8, 69, 70

*Kranz v. Koenig*,
 484 F. Supp. 2d 997 (D. Minn. 2007) ......................................................101, 103

*La Vigna v. Lipshie (In re Wise)*,
 173 B.R. 75 (Bankr. E.D.N.Y. 1994) ............................................................94

*Lam v. Connelly Group, L.P. (In re Nat'l Metalcraft Corp.)*,
 211 B.R. 905 (B.A.P. 8th Cir. 1997)..............................................................109

*Leonard v. First Commercial Mortgage Co. (In re Circuit Alliance, Inc.)*,
 228 B.R. 225 (Bankr. D. Minn. 1998) ............................................................109

*Leonard v. Mylex Corp. (In re Northgate Computer Sys., Inc.)*,
 240 B.R. 328 (Bankr. D. Minn. 1999) .............................61, 69, 71, 72, 84, 87, 91

*Leonard v. Norman Vinitsky Residuary Trust (In re Jolly's, Inc.)*,
 188 B.R. 832 (Bankr. D. Minn. 1995) ............................................................71

*Levit v. Spatz (In re Spatz)*,
    222 B.R. 157 (N.D. Ill. 1998) .......................................................................13

*Levitt v. Riddell Sports, Inc. (In re MacGregor Sporting Goods, Inc.)*,
    199 B.R. 502 (Bankr. D.N.J. 1995) .............................................................9, 28

*Lewis v. Delap (In re Delap)*,
    124 F.3d 216 (10th Cir. 1997) .....................................................................13

*Limor v. Buerger (In re Del-Met Corp.)*,
    322 B.R. 781 (Bankr. M.D. Tenn. 2005) ......................................................96

*Lindquist v. JNG Corp. (In re Lindell)*,
    334 B.R. 249 (Bankr. D. Minn. 2005) ..........................................................71

*Luce v. Edelstein*,
    802 F.2d 49 (2d Cir. 1986).........................................................................117

*Lucker v. Reeves (In re Reeves)*, 65 F.3d 670, 676 (8th Cir. 1995).........................109

*Lustig v. Weisz and Assoc. (In re Unified Commercial Capital, Inc.)*,
    260 B.R. 343 (Bankr. W.D.N.Y. 2001) ....................................................76, 77

*Marlow v. Oakland Gin Co. (In re Julien Co.)*,
    128 B.R. 987 (Bankr. W.D. Tenn. 1991)......................................................95

*Martin v. Butcher (In re Butcher)*,
    72 B.R. 247 (Bankr. E.D. Tenn. 1987) ........................................................36

*Martin v. Demma*,
    831 F.2d 69 (5th Cir. 1987) ........................................................................18

*Martino v. Edison Worldwide Capital (In re Randy)*, 189 B.R. 425 (Bankr. N.D. Ill.
    1995) ...............................................................................................51, 59, 80

*Marvin Lumber & Cedar Co. v. PPG Indus., Inc.*,
    223 F.3d 873 (8th Cir. 1999) ......................................................................34

*Max Sugarman Funeral Home, Inc. v. A.D.B. Inv.*,
    926 F.2d 1248 (1st Cir. 1991) .....................................................................61

*McCuskey v. Cent. Trailer Servs., Ltd. (In re Rose Way, Inc.)*,
    37 F.3d 1329 (8th Cir. 1994) .................................................................14, 15

*McIntosh v. Antonino*,
    71 F.3d 29 (1st Cir. 1995)...........................................................................18

*McNamara v. PFS (In re Personal & Bus. Ins. Agency)*,
    334 F.3d 239 (3rd Cir. 2003) ....................................................................114

*Mellon Bank. N.A. v. Official Comm. of Unsecured Creditors of R.M.L., Inc. (In re R.M.L., Inc.),*
    92 F.3d 139 (3d Cir. 1996)..................................................................................78

*Merrill v. Abbott (In re Indep. Clearing House Co.),*
    77 B.R. 843 (D. Utah 1987).....................................................................73, 75, 76, 80

*Merrill v. Allen (In re Univ. Clearing House Co.),*
    60 B.R. 985 (D. Utah 1986)...............................................................................60

*Meyers v. Raynor (In re Raynor),*
    617 F.3d 1065 (8th Cir. 2010) ......................................................................14, 16

*Milbank v. Holmes*
    *(In re TOCFHBI, Inc.),* 413 B.R. 523 (Bankr. N.D. Tex. 2009) ........................................115

*Mixon v. Anderson (In re Ozark Restaurant Equip. Co.),*
    816 F.2d 1222 (8th Cir. 1987) ............................................................................98

*Moore v. Indiana,*
    999 F.2d 1125 (7th Cir. 1993) ............................................................................18

*Moratzka v. Morris*
    *(In re Senior Cottages of America, LLC),* 482 F.3d 997 (8th Cir. 2007)..............................114

*Moratzka v. Pomaville*
    *(In re Pomaville),* 190 B.R. 632 (Bankr. D. Minn. 1995).............................................36

*Mosier v. Cargill Fin. Servs. Corp. (In re Mansfield Corp.),*
    339 B.R. 194 (Bankr. D. Minn. 2006) ...................................................................15

*Murphy,* 240 N.W.2d at 511-12 ..........................................................................38

*Murray v. Prescott, Ball & Turben, Inc. (In re Chicago, Missouri & Western Ry. Co.),*
    124 B.R. 769 (Bankr. N.D. Ill. 1991) ...................................................................78

*MW Ag, Inc. v. N.H. Ins. Co.,*
    107 F.3d 644 (8th Cir. 1997) ............................................................................17

*Nisselson v. Softbank Am. Corp. (In re Marketxt Holdings Corp.)*
    361 B.R. (Bankr. S.D.N.Y. 2007)........................................................................49

*Office of the U.S. Trustee v. Fieldstone Mortgage Co.,*
    No. CCB-08-755, 2008 WL 4826291 (D. Md. Nov. 5, 2008)....................................84, 86, 88

*OHC Liquidation Trust v. Credit Suisse Boston (In re Oakwood Homes Corp).,*
    340 B.R. 510 (Bank. D. Del. 2006) ...............................................................83, 84, 88, 89

*Orlick v. Kozyak (In re Fin. Federated Title & Trust, Inc.)*,
    309 F.3d 1325 (11th Cir. 2002) ...................................................................60

*Orr v. Kinderhill Corp.*,
    991 F.2d 31 (2d Cir. 1993)...................................................................23, 24

*Oshiver v. Levin, Fishbein, Sedran & Berman*,
    38 F.3d 1380 (3d Cir. 1994)................................................................28

*Palatine Nat'l Bank v. Strom (In re Strom)*,
    97 B.R. 532 (Bankr. D. Minn. 1989) ...................................................25

*Paloian v. LaSalle Bank, N.A.*,
    619 F.3d 688 (7th Cir. 2010) ......................................................111, 112

*Pardo v. Avanti Corporate Health Sys., Inc (In re APF Co.)*,
    274 B.R. 634 (Bankr. D. Del. 2001) .............................................117, 118

*Pardo v. Gonzaba (In re APF Co.)*,
    308 B.R. 183 (Bankr. D. Del. 2004) .......................................................9

*Parnes v. Gateway 2000, Inc.*,
    122 F.3d 539 (8th Cir. 1997) .................................................................7

*Picard v. Estate of Stanley Chais (In re Bernard Madoff Inv. Sec., LLC)*,
    No. 08-01789, 2010 WL 5841402 (Bankr. S.D.N.Y. Feb. 24, 2011).13, 14, 15, 43, 45, 46, 47,
    ...........................................................................................................50, 74

*Picard v. Merkin (In re Bernard L. Madoff Inv. Sec., LLC)*,
    440 B.R. 243 (Bankr. S.D.N.Y. 2010)........................................50, 73, 94

*Picard v. Taylor (In re Park South Sec., LLC)*,
    326 B.R. 505 (Bankr. S.D.N.Y. 2005)....................................................99

*Poonja v. Charles Schwab & Co., Inc. (In re Dominion Corp.)*,
    199 B.R. 410 (B.A.P. 9th Cir. 1996).....................................................109

*Pummill v. Greensfelder, Hemker & Gale (In re Richards & Conover Steel, Co.)*,
    267 B.R. 602 (B.A.P. 8th Cir. 2001).......................................................73

*Quilling v. Cristell*,
    No. 04-00252, 2006 WL 316981 (W.D.N.C. Feb. 9., 2006) ......................30, 31, 42

*Rafoth v. First Nat'l Bank of Barnesville (In re Baker & Getty Fin. Servs., Inc.)*,
    98 B.R. 300 (Bankr. N.D. Ohio 1989)....................................................50

*Ramette v. Digital River, Inc. (In re Graphics Tech., Inc.)*,
    306 B.R. 630 (B.A.P. 8th Cir. 2004).....................................................100

*Ramette v. Range Mental Health Ctr., Inc. (In re Russ)*,
   No. 87-2332, 1997 WL 188449 (Bankr. D. Minn. Apr. 18, 1997)....................................36, 94

*Resolution Trust Corp. v. Armbruster*,
   52 F.3d 748 (8th Cir. 1995) ........................................................................................41

*Ries v. Wintz Properties, Inc. (In re Wintz Cos.)*, 230 B.R. 848, 859 (B.A.P. 8th Cir.
   1999) ..........................................................................................................46, 47, 48

*Rieser v. Hayslip (In re Canyon Sys. Corp.)*,
   343 B.R. 615 (Bankr. S.D. Ohio 2006)........................................................................50

*Rosener v. Majestic Mgmt., Inc. (In re OODC, LLC)*,
   321 B.R. 128 (Bankr. D. Del. 2005) ............................................................................71

*Sain v. City of Bend*,
   309 F.3d 1134 (9th Cir. 2002) ....................................................................................18

*Satelco, Inc. v. N. Am. Publishers, Inc. (In re Satelco, Inc.)*,
   58 B.R. 781 (Bankr. N.D. Tex. 1986) ..........................................................................95

*Savage & Assocs., P.C. v. Mandl (In re Teligent, Inc.)*,
   325 B.R. 134 (Bankr. S.D.N.Y. 2005) ........................................................................95

*Schnelling v. Crawford (In re James River Coal Co.)*,
   360 B.R. 139 (Bankr. E.D. Va. 2007) ..........................................................................46

*Scholes v. Lehman*,
   56 F.3d 750 (7th Cir. 1995) ..............................................................................50, 75, 80

*Schwartz v. Levine & Malin, Inc.*,
   111 F.2d 81 (2d Cir. 1940)........................................................................................105

*Sculler v. Rosen (In re Rosen)*,
   151 B.R. 648 (Bankr. E.D.N.Y. 1993)........................................................................117

*Sears Petroleum & Transp. Co. v. Burgess Constr. Servs., Inc.*,
   417 F. Supp. 2d 212 (D. Mass. 2006) ..........................................................................13

*SEC v. Brown*,
   643 F. Supp. 2d 1077 (D. Minn. 2009)...........................................................8, 100, 101, 103

*Sender v. Buchanan (In re Hedged-Invs. Assocs., Inc.)*,
   84 F.3d 1286 (10th Cir. 1996) ....................................................................................74

*Seta Corp. of Boca v. Atlantic Computer Sys. (In re Atlantic Computer Sys.)*,
   173 B.R. 858 (S.D.N.Y. 1994)...................................................................................107

*Sharp Int'l Corp. v. State Street Bank & Trust Co. (In re Sharp Int'l Corp.)*,
    403 F.3d 43 (2d Cir. 2005)..........................................................................................65, 66, 67

*Sharp v. Chase Manhattan Bank, USA, N.A. (In re Commercial Fin. Servs., Inc.)*,
    322 B.R. 440 (Bankr. N.D. Okla. 2003) ...............................................................................70

*Silverman v. Actrade Capital, Inc. (In re Actrade Fin. Techs. Ltd.)*,
    337 B.R. 791 (Bankr. S.D.N.Y. 2005) ..............................................................8, 49, 69, 71, 78

*Slone-Stiver v. Sec. Nat'l Bank & Trust Co. (In re Tower Metal Alloy Co.)*,
    196 B.R. 266 (Bankr. S.D. Ohio 1996).................................................................................17

*Smith v. Am. Founders Fin. Corp.*,
    365 B.R. 647 (S.D. Tex. 2007) .........................................................................14, 15, 45

*Spence v. Panco (In re Surf & Sand Constr., Inc.)*,
    138 B.R. 454 (Bankr. D. Del. 1992) .....................................................................................18

*Stalnaker v. DLC, Ltd. (In re DLC, Ltd.)*,
    295 B.R. 593 (B.A.P. 8th Cir. 2003)......................................................................................45

*Stanziale v. Nachtomi (In re Tower Air, Inc.)*,
    416 F.3d 229 (3d Cir. 2005)..............................................................................................109

*Stanziale v. Pepper Hamilton LLP (In re Student Fin. Corp.)*,
    335 B.R. 539 (D. Del. 2005).................................................................................................96

*State Bank & Trust Co. v. Spaeth (In re Motorwerks, Inc.)*,
    371 B.R. 281 (Bankr. S.D. Ohio 2007).............................................................................8, 70

*Stenger v. World Harvest Church, Inc.*,
    No. 04-00151, 2006 WL 870310 (N.D. Ga. Mar. 31, 2006) ...........................................37, 42

*Stinnett v. Wilson (In re Wilson)*,
    104 B.R. 303 (Bankr. E.D. Cal. 1989) ...................................................................................18

*Strong v. Stryker Corp.*,
    No. 10-02315, 2010 WL 4967876 (D. Minn. Dec. 1, 2010) ....................................6, 7, 27, 29

*Summit Sec. Inc. v. Sandifur (In re Metro. Mortg. & Sec. Co.)*,
    344 B.R. 138 (Bankr. E.D. Wash. 2006) ..........................................................12, 13, 17, 18

*Talking Rain Beverage Co. v. NHB, LLC (In re NHB, LLC)*,
    287 B.R. 475 (Bankr. E.D. Mo. 2002)...................................................................................70

*Terry v. June*,
    432 F. Supp. 2d 635 (W.D. Va. 2006) ...................................................................................50

*The Kinetic Co. v. Medtronic, Inc.*,
   672 F. Supp. 2d 933 (D. Minn. 2009).............................................................102

*The Responsible Person of Musicland Holding Corp. v. Best Buy Co. (In re Musicland Holding Corp.)*,
   398 B.R. 761 (Bankr. S.D.N.Y. 2008)...........................................................47, 48

*Tow v. Rafizadeh (In re Cyrus II P'ship)*,
   413 B.R. 609 (Bankr. S.D. Tex. 2008) ................................................................17

*Tuttle v. Lorillard Tobacco Co.*,
   377 F.3d 917 (8th Cir. 2004) .............................................................................25

*United States v. Bame*,
   No. 11-62, 2011 WL 1167085 (D. Minn. Mar. 28, 2011) ................................8, 68

*United States v. Rocky Mountain Holdings, Inc.*,
   No. 08-03381, 2009 WL 564437 (E.D. Pa. Mar. 4, 2009) ..................................61

*Urie v. Thompson*,
   337 U.S. 163 (1949).........................................................................................43

*Varner v. Peterson Farms*,
   371 F.3d 1011 (8th Cir. 2004) ...........................................................................27

*Walker v. Armco Steel Corp.*,
   446 U.S. 740 (1980)..........................................................................................17

*Walker v. Pasteur (In re Aphton Corp.)*,
   423 B.R. 76 (Bankr. D. Del. 2010) ..........................................................9, 17, 18

*Warfield v. Carnie*,
   No. 04-00633, 2007 WL 1112591 (N.D. Tex. Apr. 13, 2007) ............................40

*Weaver v. Clarke*,
   45 F.3d 1253 (8th Cir. 1995) ...........................................................................109

*Wedtech Corp. v. Biaggi & Ehrlich (In re Wedtech Corp.)*,
   137 B.R. 575 (Bankr. S.D.N.Y. 1992).................................................................99

*West v. Conrail*,
   481 U.S. 35 (1987).....................................................................................18, 19

*Williams v. Marlar (In re Marlar)*,
   252 B.R. 743 (B.A.P. 8th Cir. 2000)....................................................................45

*Williams v. Town of Okoboji*,
   606 F.2d 812 (8th Cir. 1979) ...........................................................................117

*Wing v. Kendrick*,
    No. 08-00620, 2009 WL 1362383 (D. Utah May 14, 2009) ...................................................42

*Woods & Erickson LLP v. Leonard (In re Avi, Inc.)*,
    389 B.R. 721 (B.A.P. 9th Cir. 2008)...................................................................................97

*World Capita Commc'ns, Inc. v. Island Capital Mgmt., LLC (In re Skyway Commc'ns Holding Corp.)*,
    389 B.R. 801 (Bankr. M.D. Fla. 2008) ..............................................................................115

*Wyle v. C.H. Rider & Family (In re United Energy Corp.)*,
    944 F.2d 589 (9th Cir. 1991) ......................................................................................73, 74

*Yoder v. T.E.L. Leasing, Inc. (In re Suburban Motor Freight, Inc.)*,
    124 B.R. 984 (Bankr. S.D. Ohio 1990)................................................................................71

*Yoppolo v. Fifth Third Bank (In re Bostic)*,
    171 B.R. 270 (Bankr. N.D. Ohio 1994) ..............................................................................96

*Zahn v. Yucaipa Capital Fund*,
    218 B.R. 656 (D.R.I. 1998)..............................................................................................46

*Zazzali v. Mott (In re DBSI, Inc.)*,
    No. 08-12687, 2011 WL 204522 (Bankr. D. Del. Jan. 11, 2011)..............................................9

## STATE CASES

*Aronovitch v. Levy*,
    56 N.W.2d 570 (Minn. 1953)..........................................................................................113

*Bell v. Goforth*,
    No. M04-00997, 2006 WL 627189 (Tenn. Ct. App. Mar. 14, 2006) .......................................35

*Bennett v. Ellison*,
    23 Minn. 242 (1876) .....................................................................................................24

*Block v. Litchy*,
    428 N.W.2d 850 (Minn. Ct. App. 1988)............................................................................103

*Bonhiver v. Graff*,
    248 N.W.2d 291 (1976) ................................................................................................103

*Borom v. City of St. Paul*,
    184 N.W.2d 595 (Minn. 1971).......................................................................................102

*Brasie v. Minneapolis Brewing Co.*,
    92 N.W. 340 (Minn. 1902)........................................................................................22, 25

*Briggs v. Buzzell,*
204 N.W. 548 (Minn. 1925)........................................................112

*Bustad v. Bustad,*
116 N.W.2d 552 (Minn. 1961)......................................................29

*Cady v. Bush,*
166 N.W.2d 358 (Minn. 1969)......................................................100

*City of St. Paul v. Harding,*
356 N.W.2d 319 (Minn. Ct. App. 1984)............................................112

*Cohen v. Appert,*
463 N.W.2d 787 (Minn. Ct. App. 1990).........................................27, 37

*Cordes v. Holt & Anderson, Ltd.,*
No. A08-1734, 2009 WL 2016613 (Minn. Ct. App. July 14, 2009)....................104

*Curtis v. Altria Group, Inc.,*
792 N.W.2d 836 (Minn. Ct. App. 2010)....................21, 33, 34, 35, 40, 43, 44, 103

*Curtis v. Altria Group, Inc.,*
No. A100215 (Minn. filed Jan. 28, 2011)...........................................21

*Dalton v. Dow Chem. Co.,*
158 N.W. 2d 580 (Minn. 1968)......................................................43

*Duxbury v. Boice,*
72 N.W. 838 (Minn. 1897)..........................................................25

*Estate of Jones by Blume v. Kvamme,*
449 N.W.2d 428 (Minn. 1989).......................................................29

*First Int'l Serv. Corp. (In re First Int'l Serv. Corp.),* 37 B.R. 856, 860 (Bankr. D. Conn.
1984) ............................................................................106

*Greenfield v. Hill City Land, Loan & Lumber Co.,*
170 N.W. 343 (Minn. 1919).........................................................113

*Hansen v. A.H. Robins, Inc.,*
335 N.W.2d 578 (Wis. 1983)........................................................43

*Holstad v. Southwestern Porcelain, Inc.,*
421 N.W.2d 371 (Minn. Ct. App. 1988)..............................................34

*Honeywell/Alliant Techsystems Federal Credit Union v. Buckhalton,*
No. 99-1194, 2000 WL 53875 (Minn. Ct. App. Jan. 25, 2000)....................100, 101

*Hydra-Mac, Inc. v. Onan Corp.*,
   450 N.W.2d 913 (Minn. 1990) ........................................................................33

*Johnston v. Johnston*,
   119 N.W. 652 (Minn. 1909) ...........................................................................25

*Kassan v. Kassan*,
   400 N.W.2d 346 (Minn. Ct. App. 1987) .......................................................29

*Klass v. Twin City Fed. Sav. & Loan Ass'n*,
   190 N.W.2d 493 (Minn. 1971) .....................................................................100

*Kopperud v. Agers*,
   312 N.W.2d 443 (Minn. 1981) ...............................................26, 34, 35, 103

*Kremer v. Lewis*,
   163 N.W. 732 (Minn. 1917) .........................................................................113

*Lind v. O.N. Johnson Co.*,
   282 N.W. 661 (Minn. 1938) ........................................................21, 23, 24, 25

*Manteuffel v. City of N. St. Paul*,
   570 N.W.2d 807 (Minn. Ct. App. 1997) .......................................................22

*Mastercraft Record Plating, Inc.*, 32 B.R. 106 (Bankr. S.D.N.Y. 1983) ....................106

*McDaniel v. United Hardware Distrib. Co.*,
   469 N.W.2d 84 (Minn. 1996) .....................................................21, 22, 23, 25

*Merrill v. Abbott (In re Ind. Clearing House Co.)*, 41 B.R. 985, 1017 (Bankr. D. Utah
   1984) ..............................................................................................................106

*Moriarty*, 22 B.R. 689, 690 (Bankr. D. Neb. 1982) .......................................................106

*Neal v. Clark*,
   251 P.2d 903 (Ariz. 1952) ...............................................................................24

*Pecinovsky v. Amco Ins. Co.*,
   613 N.W.2d 804 (Minn. Ct. App. 2000) .......................................................26

*Peterson v. Roloff*,
   203 N.W.2d 699 (Wis. 1973) ..........................................................................43

*Ramette Range Mental Health Ctr., Inc. (In re Russ)*, No. 87-2332, 1997 WL 188449, at
   *4-5 (Bankr. D. Minn. Apr. 18, 1997) ..........................................................36

*Resnik v. Roberts*,
   No. D05-0656, 2009 WL 1805409 (Cal. Ct. App. June 24, 2009) ...............35

*Resolution Trust Corp. v. Grant*,
901 P.2d 807 (Okla. 1995) ...................................................................41

*S.V. v. R.V.*,
933 S.W.2d 1 (Tex. 1996) ...................................................................43

*Schmitt v. Hager*,
93 N.W. 110 (Minn. 1903) ...................................................................25

*Searles v. Searles*,
412 N.W.2d 11 (Minn. Ct. App. 1987) .................................................112

*Servicemaster of St. Cloud v. GAB Business Services, Inc.*,
544 N.W.2d 302 (Minn. 1996) ......................................................100, 102

*Snesrud v. Instant Web, Inc.*,
484 N.W.2d 423 (Minn. Ct. App. 1992) ...............................................22

*Southtown Plumbing, Inc. v. Har-Ned Lumber Co.*,
493 N.W.2d 137 (Minn. Ct. App. 1992) ...............................................102

*Steenberg v. Kaysen*,
39 N.W.2d 18 (Minn. 1949) .................................................................112

*Stempf v. Andrzejeski*,
No. A05-758, 2006 WL 44337 (Minn. Ct. App. Jan. 10, 2006) ...............29

*Stephens v. Dixon*,
536 N.W.2d 755 (Mich. 1995) .............................................................42

*Vadnais v. State*,
28 N.W.2d 694 (Minn. 1947) ...............................................................113

*Wells Elec., Inc. v. Schaper*,
No. A06-420, 2006 WL 2807179 (Minn. Ct. App. Oct. 3, 2006) ...........101

*Wild v. Rarig*,
234 N.W.2d 775 (Minn. 1975) .......................................................33, 103

*Wilson v. Paine*,
288 S.W.2d 284 (Ky. 2009) .................................................................41

*Yonak v. Severson*,
No. A05-154, 2005 WL 3291817 (Minn. Ct. App. Dec. 6, 2005) ...........37

## STATUTES

11 U.S.C. § 101(2) ...............................................................................90

11 U.S.C. § 101(31) ................................................................................83, 84

11 U.S.C. § 105(a) .......................................................................................99

11 U.S.C. § 108(a) .......................................................................................15

11 U.S.C. § 502 ............................................................................................44

11 U.S.C. § 502(d) ...............................................5, 104, 105, 106, 107, 108

11 U.S.C. § 502(e) .......................................................................................44

11 U.S.C. § 542(a) ...........................................................................4, 95, 96, 97

11 U.S.C. § 544 ........................................12, 13, 14, 17, 18, 19, 51, 95, 98, 99

11 U.S.C. § 544(a) .......................................................................................99

11 U.S.C. § 544(b) .................................3, 4, 11, 12, 32, 44, 98, 99, 113

11 U.S.C. § 546 ............................................................................................19

11 U.S.C.§ 546 (a) ..............................3, 10, 11, 12, 13, 14, 15, 16, 19, 27, 29, 32

11 U.S.C. § 547 .....................................................................................14, 95

11 U.S.C. § 548 ...............................................................................14, 64, 95

11 U.S.C. § 548(a) ..............................49, 58, 62, 63, 67, 68, 69, 70, 74, 81, 82, 83

11 U.S.C. § 548(c) ...........................................................59, 60, 93, 94

11 U.S.C. § 550 ..................................................................................4, 95, 97

11 U.S.C. § 550(a) .....................................................................................110

11 U.S.C. § 568(a) .......................................................................................68

11 U.S.C. § 724(a) ...............................................................................106, 107

28 U.S.C. § 1334 .........................................................................................17

13 Eliz. C. 5 A.D. 1570 ...............................................................................24

Gen. St. 1923 §§ 8475-8489 ...............................................................23, 26

Minn. Stat. § 513.20 .............................................................................24, 26

Minn. Stat § 513.32 .....................................................................................24

Minn. Stat. § 513.41(1) ..........................................................................................90

Minn. Stat. § 513.41(7) ..........................................................................................83

Minn. Stat. § 513.41-51 ..........................................................................................24

Minn. Stat. § 513.44(a) .................................................62, 63, 64, 67, 68, 69, 71, 72, 81, 82

Minn. Stat. § 513.45(a) ......................................................................................68, 69

Minn. Stat. § 513.45(b) ......................................................................................82, 83

Minn. Stat. § 541.05 ..............................................................................................21

Minn. Stat. § 541.05, subd. 1(1) ..........................................................................103

Minn. Stat. § 541.05, subd. 1(2) .................................11, 20, 21, 22, 23, 25, 27, 32, 33, 34, 35, 40

Minn. Stat. § 541.05, subd. 1(6) .................................10, 20, 21, 22, 25, 26, 29, 31, 32, 43

Minnesota Statutes §§ 513.417(ii) and (iv)..............................................................84

## OTHER AUTHORITIES

5 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1277 (3d ed. 2010) ........................................................................................................94

4 *Collier on Bankruptcy*, ¶ 502.05[2][a] (Alan. N. Resnick & Henry J. Sommer, eds., 16th ed. 2010) ...........................................................................................105, 107

5 *Collier on Bankruptcy* ¶ 544.06[1] at 544-19 (Alan. N. Resnick & Henry J. Sommer, eds., 16th ed. 2010) ...............................................................................................44

5 *Collier on Bankruptcy* ¶ 546.02[b] at 546-10 (Alan. N. Resnick & Henry J. Sommer, eds., 16th ed. 2010) ...............................................................................................13

5 *Collier on Bankruptcy* ¶ 548.01 (Alan N. Resnick & Harry J. Sommer, eds., 16th ed. 2010) .......................................................................................................116

5 *Collier on Bankruptcy* ¶ 550.07, at 550-30 (Alan. N. Resnick & Henry J. Sommer, eds., 16th ed. 2010) ...............................................................................................97

2 James Wm. Moore et al., *Moore's Federal Practice* § 1234[4][b], at 100 (3d ed. 2010) .........94

Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1301, at 292 (3d ed. 2010) ..........................................................................................................8

Fed. R. Bankr. P. 7003 .......................................................................................16, 19

Fed. R. Bankr. P. 7012 ................................................................................................................5

Fed. R. Civ. P. 1 .......................................................................................................................117

Fed. R. Civ. P. 3 ..................................................................................................16, 17, 18, 19

Fed. R. Civ. P. 8 .........................................................................................................................72

Fed. R. Civ. P. 8 .......................................................................1, 46, 47, 48, 70, 72, 109

Fed. R. Civ. P. 8(a) .........................................................................................5, 45, 69, 70

Fed. R. Civ. P. 8(d) .......................................................................................................98, 102

Fed. R. Civ. P. 9(b) .............................................1, 3, 4, 7, 8, 9, 37, 49, 51, 63, 64, 69, 70, 72, 117

Fed. R. Civ. P. 10(c) ...................................................................................................................6

Fed. R. Civ. P. 12(b) ................................................................................5, 27, 109, 110

Fed. R. Civ. P. 12(b) ...................................................................................................................1

Fed. R. Civ. P. 15 .....................................................................................................................116

Fed. R. Civ. P. 15(a) .................................................................................................................117

Fed. R. Civ. P. 15(c) .................................................................................................................117

Fed. R. Civ. P. 84 .........................................................................................................................8

Minn. R. Civ. P. 3.01 ...............................................................................................................16

## INTRODUCTION

Thomas J. Petters was convicted in 2009 of perpetrating one of the largest Ponzi schemes in United States history.  He is currently serving a 50-year prison sentence for the fraud.  Other co-conspirators in the fraudulent enterprise admitted their involvements, pleaded guilty to various crimes related to their roles in the investment scheme and have been sentenced.

The Petters Ponzi scheme spanned over a decade before it was discovered by federal authorities in 2008.  The investment scheme has inflicted a significant financial toll on hundreds of investors who have been defrauded out of more than $3.8 billion.  The Defendants in the pending adversary proceedings are the recipients of substantial sums of money that was stolen by Petters from third parties.  The Trustee seeks to recover stolen funds laundered by Petters and other perpetrators of the Ponzi scheme in order to provide redress for victims of the fraud.  The Defendants, many of whom have profited tremendously from the fraud, seek to escape financial responsibility for the receipt of ill-gotten gains and advance various legal theories in support of their positions.

## PROCEDURAL SUMMARY – MOTIONS TO DISMISS

Over 200 adversary proceedings were filed by the Trustee seeking, among other things, to avoid preferential and fraudulent transfers.  In response to those complaints, over one  hundred motions to dismiss were filed by Defendants pursuant to Federal Rules of Civil Procedure 8, 9(b), 12(b)(2), and 12(b)(6).[2]  While the Trustee attempts to identify and respond to every

---

[2] The terms "Complaint" and "Complaints," as used herein, are defined to refer, singularly or collectively, to the respective Complaints that the Trustee filed against the Defendants identified on the Charts 1 – 16 attached hereto and otherwise identified herein.  All additional capitalized terms herein, unless defined otherwise, have the same definitions as those set forth in the Complaints.  For purposes of citing to the record in each matter, the citations in the Omnibus Memorandum are to *Kelley v. Alper*, Adv. No. 10-04293 (Doc. No. 1) ("Alper Compl.") or

argument raised in the motions, the sheer volume of motions may cause one or more arguments to be overlooked and not addressed.  The Trustee reserves the right to address any overlooked arguments once the reply memoranda are filed by the Defendants.

This Omnibus Memorandum is being supplemented by additional memoranda in instances where issues unique to a particular Defendant or a small set of Defendants have been raised.  The supplemental memoranda are incorporated herein by reference and are identified on Chart 17, attached hereto in the Appendix.

## ARGUMENT

In this Omnibus Memorandum the Trustee addresses common questions of law raised by the Defendants.  The issues addressed in this Omnibus Memorandum, and the resolution the Trustee believes the Court should reach on these issues, are set out in order below.  The following overarching issues are addressed by the Trustee in the Omnibus Memorandum. Incidental matters that are raised in connection with these overarching issues, while not listed below, are also discussed throughout this Omnibus Memorandum.

**Issue 1** – Whether the fraudulent transfer claims are partially or completely time-barred as to the Defendants raising these issues.

**Resolution** - The Trustee's claims accrued on October 6, 2008, are not barred by the applicable Minnesota statute of limitations as to any Defendants, were all viable on the Petition Date, and were timely filed before October 11, 2010, within the two-year period authorized by

_____

*Kelley v. Hay*, Adv. No. 10-04399 ("Hay Compl.")  The factual allegations relating to the Ponzi scheme and the issues before the Court are materially similar within all the Complaints filed against the Defendants, although paragraph numbering among the various complaints may be different.  Attached hereto in the Appendix is a copy of the Alper Complaint, the Hay Complaint and the complaint filed in the matter of *Kelley v. Vlahos et al.*, Adv. No. 10-0421, all three of which are representative of the types of claims alleged against the Defendants in these cases.

11 U.S.C. § 546(a).  As a result, the Trustee can recover all fraudulent transfers received by Defendants throughout the duration of the Petters Ponzi scheme.  The Defendants' motions to dismiss on limitations grounds should be denied.

**Issue 2** – Whether the Trustee lacks standing to pursue 11 U.S.C. § 544(b) claims because the identity of the creditors whose claims are being asserted pursuant to § 544(b) is not alleged.

<u>Resolution</u> – The Trustee is not required at the pleading stage to specifically identify the creditors, or even a category of creditors, whose claims are being asserted.  The Trustee is only required to allege that such a creditor or creditors exists, which the Trustee did.  The Defendants' motions to dismiss on standing grounds should be denied.

**Issue 3** – Whether the Trustee pleaded the actual fraudulent transfer claims with sufficient particularity.

<u>Resolution</u> – The Trustee pleaded in each Complaint, with extensive detail, the facts and circumstances giving rise to the fraudulent transfers and has more than satisfied Fed. R. Civ. P. 9(b).  The Trustee pleaded with particularity the existence of the Petters Ponzi scheme, including thorough allegations of the crimes and conviction of Thomas Petters and the guilty pleas of his Associates, sufficient to invoke the Ponzi scheme presumption.  The Trustee also supported allegations of fraudulent intent by pleading numerous "badges of fraud" from which fraudulent intent can be inferred.  The Defendants' motions to dismiss the Trustee's actual fraudulent transfer claims should be denied.

**Issue 4** – Whether the Trustee adequately pleaded constructive fraudulent transfer claims.

<u>Resolution</u> – The heightened particularity standard of Fed. R. Civ. P. 9(b) is not applicable to constructive fraudulent transfer allegations, although the Trustee's allegations

3

satisfy Rule 9(b) even if it applied.  The Trustee adequately pleaded in each Complaint the essential elements of a constructive fraudulent transfer claim, including that the debtors received less than reasonably equivalent value for the transfers and either were insolvent when the transfers were made or became insolvent as a result of the transfers.  With respect to the Employee Defendants, the Trustee has adequately pleaded insider status.  The Trustee is not required to rebut Defendants' good faith affirmative defense in his Complaints.  The Defendants' motions to dismiss the Trustee's constructive fraudulent transfer claims should be denied.

**Issue 5** – Whether the Trustee's claim for turnover and accounting under 11 U.S.C. § 542(a) is premature at this stage of the adversary proceedings.

**<u>Resolution</u>** – The Trustee's turnover and fraudulent transfer claims co-exist in each of the Complaints, and the turnover claim is stated alternatively to the Trustee's claims under 11 U.S.C. § 550.  The Trustee properly paired his avoidance and turnover claims, and the Defendants' motions to dismiss the turnover claims should be denied.

**Issue 6** – Whether the Trustee pleaded a timely and cognizable claim for unjust enrichment.

**<u>Resolution</u>** – The Trustee is authorized to bring his unjust enrichment claims pursuant to the avoidance powers granted under 11 U.S.C. § 544(b), and he is not required to allege or prove illegal or unlawful acts by the Defendants.  The Trustee may assert an unjust enrichment claim against the Defendants by alleging that they benefitted from wrongdoing committed by another.  Moreover, the Trustee is permitted to plead claims in the alternative and, at this stage of the proceedings, the Trustee may pursue both fraudulent transfer and unjust enrichment claims.

**Issue 7** – Whether the Trustee may plead claim disallowance.

**<u>Resolution</u>** – The Trustee is not prohibited by the plain language of 11 U.S.C. § 502(d) or caselaw from asserting a disallowance claim in the Complaints. The Trustee properly pleaded disallowance claims under § 502(d) and Defendants' motion to dismiss should be denied.

## I.    Standard of Review.

Federal Rule of Civil Procedure 12(b)(6), made applicable to these adversary proceedings by Federal Rule of Bankruptcy Procedure 7012, allows a party to move to dismiss a cause of action for "failure to state a claim upon which relief can be granted." To survive a motion to dismiss, a pleading need only contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009). When considering a motion to dismiss under Rule 12(b)(6), the Court must find only that the Trustee pleaded sufficient factual allegations to state a claim for relief that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). The "plausibility" standard "is not, however, a probability requirement," and a "well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of the facts alleged is improbable, and that a recovery is very remote and unlikely." *Braden*, 588 F.3d at 594 (quoting *Twombly*, 550 U.S. at 556) (internal quotations omitted).

In analyzing the sufficiency of the Trustee's pleadings, the Court must accept all pleaded factual allegations in the Complaints as true and draw all reasonable inferences in the Trustee's favor. *Twombly*, 550 U.S. at 555-56; *Iqbal*, 129 S. Ct. at 1949-50 ("When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."); *Detroit Gen. Ret. Sys. v. Medtronic, Inc.*, 621 F.3d 800, 804 (8th Cir. 2010). The Trustee's Complaint "should be read as a whole, not parsed

piece by piece to determine whether each allegation, in isolation, is plausible," as Defendants do. *Braden*, 588 F.3d at 594. This task is "context-specific" and "requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 129 S. Ct. at 1950; *Braden*, 588 F.3d at 594.

In addition to the pleadings, in ruling on a motion to dismiss the Court may consider "materials embraced by the pleadings and materials that are part of the public record." *Detroit Gen. Ret. Sys.*, 621 F.3d at 804. The Court may look to the documents that are incorporated into the Trustee's pleadings "for all purposes," including whether the Trustee has stated a plausible claim. *Brown v. Medtronic, Inc.*, 628 F.3d 451, 459-60 (8th Cir. 2010) (quoting Fed. R. Civ. P. 10(c)). In this case, attached to or incorporated into each Complaint is a table that itemizes the transfers made to each Defendant based on the underlying promissory notes, and the bank and accounting records. These documents are incorporated into the Trustee's pleadings.

It is not proper on a motion to dismiss for Defendants to attack the merits of the Trustee's claims. *Strong v. Stryker Corp.*, No. 10-02315, 2010 WL 4967876, at *4 (D. Minn. Dec. 1, 2010) (noting that an attack on a complaint's merits violates the rule that the Court must accept as true all factual allegations set forth in the complaint and presents an issue for summary judgment after completion of discovery). The Court, therefore, cannot consider the extrinsic evidence that is presented by the Defendants in attempting to contradict and attack the veracity of the facts pleaded by the Trustee. *Id.* at *2 (declining to consider defendant's assertions that despite the allegations in the complaint he did not have knowledge of the claimed risks). Extrinsic evidence—whether referenced by Defendants in their motion papers or offered as exhibits—should be ignored.

### A.    Defendants Overstate the Rule 9(b) Pleading Requirements.

Most courts hold that when a claim for fraudulent conveyance is pleaded based upon actual fraud, the plaintiff is required to plead the allegations of fraud with particularity.[3] Fed. R. Civ. P. 9(b); *Parnes v. Gateway 2000, Inc.*, 122 F.3d 539, 550 (8th Cir. 1997); *Kranz v. Koenig*, 240 F.R.D. 453, 455 (D. Minn. 2007). Rule 9(b), however, makes clear that "intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). Rule 9(b) only requires a plaintiff to plead the "circumstances constituting fraud, including such matters as the time, place and contents of false representations, as well as the identity of the person making the misrepresentation and what was obtained or given up thereby." *BJC Health Sys. v. Columbia Cas. Co.*, 478 F.3d 908, 917 (8th Cir. 2007). In other words, the complaint must identify the "who, what, where, when, and how" of the alleged fraud. *Id.* The United States District Court for the District of Minnesota recently explained the pleading contemplated by Rule 9(b):

> [t]he Court interprets the requirements of Rule 9(b) in harmony with the principles of notice pleading. Rule 9(b) does not require that a complaint be suffused with every minute detail of a misrepresentation. The purpose of Rule 9(b) is to adequately apprise the defendant of the claims against it and the factual basis for those claims so that it can respond to and prepare a defense to the charges of fraud.

*Strong v. Stryker Corp.*, No. 10-02315, 2010 WL 4967876, at *3 (D. Minn. Dec. 1, 2010) (internal quotations and citations omitted).

---

[3] Some courts have found that "the pleading requirements for fraud are not necessarily applicable to pleadings alleging a fraudulent conveyance." *China Res. Prods. (U.S.A.) Ltd. v. Fayda Int'l, Inc.,* 788 F. Supp. 815, 818 (D. Del. 1992) (holding "Rule 9(b) does not apply" to plaintiff's fraudulent conveyance claims). Regardless, the Trustee's pleadings in these matters far exceed the particularity required by Rule 9(b).

A claim for constructive fraud, on the other hand, does not need to be pleaded with particularity.  *See In re Juliet Homes, LP,* No. 07-36424, 2010 WL 5256806 (Bankr. S.D. Tex. Dec. 16, 2010); *Gold v. Winget (In re NM Holdings Co.)*, 407 B.R. 232, 259 (Bankr. E.D. Mich. 2009) (citations omitted); *State Bank & Trust Co. v. Spaeth (In re Motorwerks, Inc.)*, 371 B.R. 281, 295 (Bankr. S.D. Ohio 2007); *Silverman v. Actrade Capital, Inc. (In re Actrade Fin. Techs. Ltd.)*, 337 B.R. 791, 801-02 (Bankr. S.D.N.Y. 2005).  *But see  Kranz v. Koenig*, 240 F.R.D. 453 (D. Minn. 2007).

Less than a month ago, the United States District Court for the District of Minnesota concluded that dismissal of a fraudulent transfer complaint is inappropriate if the complaint contains the language set forth in Form 21, entitled "Complaint on a Claim for a Debt and to Set Aside a Fraudulent Conveyance," located in the Appendix of Forms to the Federal Rules of Civil Procedure. [4]  *United States v. Bame*,  No. 11-62, 2011 WL 1167085, at *2 (D. Minn. Mar. 28, 2011).  The court also affirmed that Rule 9(b) specifically authorizes the pleading of fraudulent intent in a general fashion.  *Id.* at *3 (citing 5A Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1301, at 292 (3d ed. 2010)).  The pleading of the dates of the transfers claimed, the recipients of the transfers, and the amount of the transfers, along with several "badges of fraud"—as the Trustee did in the Complaints—was specifically held to satisfy the Rule 9(b) requirements.  *Id.* (citing *SEC v. Brown*, 643 F. Supp. 2d 1077, 1081 (D. Minn. 2009) and collecting authority).

---

[4] Form 21 requires simply that a fraudulent conveyance complaint state: "On [date], defendant [name] conveyed all defendant's real and personal property to defendant [name] for the purpose of defrauding the plaintiff and hindering or delaying the collection of the [plaintiff's] debt."  *See Bame*, 2011 WL 1167085 at *2.  Federal Rule of Civil Procedure 84 provides that complaints utilizing the allegations in the Forms are sufficient, which includes Federal Rule of Civil Procedure 9(b).  *Id.*

**B.      The Trustee Is Entitled to Deference in Complying with Rule 9(b)'s Pleading
         Requirements.**

Courts hold that Rule 9(b) particularity requirement is relaxed when a bankruptcy trustee

pleads a claim of actual fraud.  *See Pardo v. Gonzaba (In re APF Co.),* 308 B.R. 183, 188

(Bankr. D. Del. 2004); *Levitt v. Riddell Sports, Inc. (In re MacGregor Sporting Goods, Inc.)*, 199

B.R. 502, 514-15 (Bankr. D.N.J. 1995); *Davidson v. Bank of New England (In re Hollis & Co.)*,

86 B.R. 152, 156 (Bankr. E.D. Ark. (1988).  As a result, in reviewing the sufficiency of a

bankruptcy trustee's pleadings under Rule 9(b), bankruptcy courts have concluded that "greater

liberality should be afforded in the pleading of fraud in a bankruptcy case." *Hassett v.

Zimmerman (In re O.P.M. Leasing Servs., Inc.),* 32 B.R. 199, 203 (Bankr. S.D.N.Y. 1983).

There are at least two relevant policy reasons for this liberality.  First, it is "required

because it is often the [t]rustee, a third party outsider to the fraudulent transaction, that must

plead fraud on secondhand knowledge for the benefit of the estate and all of its creditors."

*Zimmerman,* 32 B.R. at 203.  Second, a claim of fraud asserted by a bankruptcy trustee "need not

allege the common variety of deceit, misrepresentation or fraud in the inducement" because "for

purposes of a constructive fraud claim the transaction is presumptively fraudulent and all that

need be alleged is that the conveyance was made without fair consideration" while the debtor

was functionally insolvent. *Hassett v. Weissman (In re O.P.M. Leasing Servs., Inc.),* 35 B.R. 854,

862-63 (Bankr. S.D.N.Y. 1983).

Courts continue to afford trustees this liberality after *Iqbal* and *Twombly.  See  Zazzali v.

Mott (In re DBSI, Inc.)*, No. 08-12687, 2011 WL 204522, at *2 (Bankr. D. Del. Jan. 11, 2011);

*Walker v. Pasteur (In re Aphton Corp.)*, 423 B.R. 76, 85 (Bankr. D. Del. 2010).  Even absent this

more liberal pleading standard, however, the Trustee has more than satisfied Rule 9(b) and

Defendants have shown no reason to dismiss the Trustee's actual fraud claims for lack of particularity.

## II.    The Trustee's Fraudulent Transfer Claims Are Timely and the Trustee Is Authorized to Pursue Recovery of Fraudulent Transfers Made Throughout the Duration of the Petters Ponzi Scheme.[5]

The Trustee had at least two years from October 11, 2008, the Petition Date for the earliest of these cases to be filed ("Petition Date"), to commence these adversary proceedings by filing complaints against the Defendants.  11 U.S.C. § 546(a).  The Trustee met this deadline by commencing each adversary proceeding before October 11, 2010.[6]  The Trustee's fraudulent transfer claims did not accrue until October 6, 2008, at the earliest, which is the date that Douglas A. Kelley was appointed as the Receiver of PCI and other entities 100% owned or controlled by Thomas Petters (the "Receiver").[7]  (See Case No. 08-5348, Dkt. 127.)  The applicable limitations period, set forth in Minnesota Statutes § 541.05, subd. 1(6), allows a claim to be brought within six years of the discovery of the cause of action.

The Trustee's claims accrued as of October 6, 2008, are not barred by the applicable Minnesota statute of limitations, were all viable on the Petition Date, and were all timely filed by

---

[5] The Defendants moving to dismiss the Trustee's fraudulent transfer and unjust enrichment claims as time-barred are listed on Chart 1, attached hereto in the Appendix.

[6] No Defendant contends that the Trustee failed to file a Complaint against it within the two-year period provided by § 546(a).  That undisputed fact forecloses any challenge to the timeliness of the commencement of any of the adversary proceedings under § 546(a).

[7] The date of discovery of Petters' Ponzi scheme, and thus the date the Trustee's causes of action accrued, could arguably be one of several dates within a three-week period of time between September 24, 2008 and October 11, 2008.  The Trustee believes the date on which discovery occurred within this limited time period is not material to resolution of the motions to dismiss. As a result, and for consistency and convenience for purposes of responding to the Defendants' motions to dismiss, the Trustee will utilize October 6, 2008, the date the Receiver was appointed by the United States District Court, as the date of discovery and accrual of the Trustee's claims.

October 11, 2010, within the two-year period authorized by 11 U.S.C. § 546(a). As a result, the

Trustee is authorized to recover all fraudulent transfers received by Defendants throughout the

duration of the Ponzi scheme. Even if this Court applies the six-year limitations period set forth

at Minnesota Statutes § 541.05, subdivision 1(2), as Defendants request, the end result is the

same under the equitable doctrines of fraudulent concealment and adverse domination.

> **A.      The Trustee Timely Filed the Complaints Within Two Years of the Petition Date.**

The Trustee's fraudulent transfer claims are timely because it is undisputed that the

Trustee filed each of the Complaints within the two-year time period prescribed by 11 U.S.C. §

546(a). The Defendants' argument that the two-year limitations period of § 546(a) is subsumed

within the six-year state law limitations period for fraudulent transfer claims under Minnesota

law must be rejected by the Court.[8] The Defendants' effort to shorten the limitations period is

contrary to prevailing caselaw and the policies underlying 11 U.S.C. §§ 544(b) and 546(a).

Defendants' argument that the timeliness of the Trustee's state law claims is determined by the

date of service of the Complaint, and not the date of filing of the Complaint, must be similarly

rejected.

---

[8] The Defendants making this argument are listed on Chart 2, attached hereto in the Appendix.
However, the Trustee notes that some Defendants concede that the Trustee can recover transfers
made during the six years prior to October 11, 2008, the Petition Date. *See, e.g.,* Challenge
Printing (10-04290), Steve Feneis (10-04268), Overstock (10-04292), and High Plains (10-
04250).

1.    **Section 546(a) Provides the Trustee Two Years From the Date the Petition Was Filed to Bring Avoidance Actions under 11 U.S.C. § 544.**

(a)    **The § 546(a) Time Period Is Independent of Underlying State Law Limitations Periods.**

Section 544(b) of the Bankruptcy Code authorizes the Trustee to "avoid any transfer of an interest in the debtor in property or any obligation incurred by the debtor that is voidable *under applicable law* by a creditor holding an unsecured claim . . . ." 11 U.S.C. § 544(b) (emphasis added).    Under this section, a trustee is permitted to step into the shoes of an unsecured creditor and use state law avoidance statutes to recover fraudulently transferred property. *Bergquist v. Vista Dev., Inc. (In re Quality Pontiac Buick GMC Truck, Inc.)*, 222 B.R. 865, 869 (Bankr. D. Minn. 1998).    The bankruptcy trustee's avoidance powers authorized by § 544(b) are "substantive rights granted by the Bankruptcy Code and come into existence with the filing of the bankruptcy petition." *Summit Sec. Inc. v. Sandifur (In re Metro. Mortg. & Sec. Co.)*, 344 B.R. 138, 140-41 (Bankr. E.D. Wash. 2006).    Section § 546(a) of the Code provides the limitations period for such avoidance actions as follows:

(a)    An action or proceeding under section 544, 545, 547, 548 or 553 of this title may not be commenced after the earlier of:

(1)    the later of –

(A)    2 years after the entry of the order for relief; or

(B)    1 year after the appointment or election of the first trustee under section 702, 104,1164, 1202, or 1302 of this title if such appointment or such election occurs before the expiration of the period specified in subparagraph (A); or

(2)    the time the case is closed.

11 U.S.C. § 546(a).

Combined with § 544(b), these statutes have raised the question: "[i]f the applicable non-bankruptcy law extinguishes a cause of action after the bankruptcy is commenced, but before the limitations period in § 546(a)(1)(A), which statute is applicable?"  *Summit Sec. Inc. v. Sandifur (In re Metro. Mortg. & Sec. Co.)*, 344 B.R. 138, 141 (Bankr. E.D. Wash. 2006). The § 546(a) limitations period is independent of any underlying state law limitations period.  Courts analyzing the interplay between § 546(a) and state law limitation periods have "consistently held that upon the filing of a bankruptcy case, state statutes of limitation cease to have continued effect, and, instead, the provisions of section 546(a) of the Code govern."[9]  *Picard v. Estate of Stanley Chais (In re Bernard Madoff Inv. Sec., LLC)*, No. 08-01789, 2010 WL 5841402, at *15 (Bankr. S.D.N.Y. Feb. 24, 2011).   The rule that emerged is that "as long as the [applicable] six-year statute of limitations has not expired as of the Petition Date, a trustee is permitted to bring fraudulent conveyance actions in accordance with section 544(b) at any point during the two-year period set out in section 546(a)."  *Id.; see 5 Collier on Bankruptcy* ¶ 546.02[b] at 546-10 (Alan. N. Resnick & Henry J. Sommer, eds., 16th ed. 2010); *see In re Am. Energy Trading, Inc.,* 291 B.R. 159, 164-66 (Bankr. W.D. Mo. 2003).

The United States District Court for the District of Colorado reasoned that

> Section 546(a) in essence gives the trustee some breathing room to determine what claims to assert under § 544.  Without this approximate two-year period, a trustee who does not immediately determine what potential claims are available for the recovery of assets may forever be barred from asserting those claims if the statute of limitations expires early in the bankruptcy, or potentially before the trustee is even appointed.  Such would contravene the

---

[9]  *See, e.g., Lewis v. Delap (In re Delap)*, 124 F.3d 216 (10th Cir. 1997); *Sears Petroleum & Transp. Co. v. Burgess Constr. Servs., Inc.*, 417 F. Supp. 2d 212, 225 (D. Mass. 2006); *Levit v. Spatz (In re Spatz)*, 222 B.R. 157, 164-65 (N.D. Ill. 1998); *Barnard v. Joffe (In re Inflight Newspapers, Inc.)*, 423 B.R. 6, 20 (Bankr. E.D.N.Y. 2010); *Bloom v. Fry (In re Leach)*, 380 B.R. 25, 29-30 (Bankr. D.N.M. 2007).

> broad powers Congress has granted to the trustee under §§ 544,
> 547 and 548 of the Code to recover property for the benefit of the
> estate.

*In re Dry Wall Supply, Inc.*, 111 B.R. 933, 936-37 (D. Colo. 1990).  Similarly, in rejecting

arguments like those raised by Defendants here, the Bankruptcy Court for the Southern District

of New York emphasized that "[i]t simply cannot be expected that a newly appointed trustee,

with no prior knowledge of the debtor, could assert causes of action within applicable state

statute of limitation periods that accrue in the very early stages of a case."  *See  In re Madoff*,

2010 WL 5841402, at *15.  This reasoning is "especially important" in a case like this one

involving criminal activity and control of the debtor by the wrongdoers, who would not have

"adequate incentives to bring lawsuits in a timely fashion where the recovery is remote" or

uncertain.  *See Smith v. Am. Founders Fin. Corp.*, 365 B.R. 647, 677-78 (S.D. Tex. 2007)

(holding that § 546(a) two-year time period to bring claims preempts the running of any state law

statute of repose on state law claims that were viable as of the Petition Date).

In this case, the applicable § 546(a) limitations period allowed the Trustee to file § 544

claims within two years after October 11, 2008.  *See Meyers v. Raynor (In re Raynor)*, 617 F.3d

1065, 1069-71 (8th Cir. 2010).  The Trustee timely filed these claims.

> **(b)**    **Defendants' Attempt to Subsume the § 546(a) Two-Year
> Period Within the Minnesota Six-Year Statute of Limitations
> Period Must Be Rejected.**

Defendants ignore the abundance of caselaw and well-recognized policy grounds that

support the Trustee's position.  Their construction of § 546(a) would leave the Trustee without

sufficient time to investigate and pursue claims, a result Congress did not intend.  Defendants

cite only two cases in support of their argument—neither of which support their position:

*McCuskey v. Cent. Trailer Servs., Ltd. (In re Rose Way, Inc.)*, 37 F.3d 1329, 1333 (8th Cir. 1994)

and *Bergquist v. Vista Dev., Inc. (In re Quality Pontiac Buick GMC Truck, Inc.)*, 222 B.R. 865,

14

869 (Bankr. D. Minn. 1998). The *McCuskey* court addressed an issue not present in the instant case: whether the § 546(a) two-year period begins anew upon the conversion of a Chapter 11 case to a Chapter 7 case. *McCuskey*, 37 F.3d at 1333. Neither does this Court's decision in *Quality Pontiac* support the Defendants' position. In *Quality Pontiac*, this Court did not rule on the instant issue and reserved it for another day. 222 B.R. at 870 n.11.

Defendants contend that the Trustee can have no greater authority under § 546(a) than he has under § 544(b) and, therefore, the two years provided by § 546(a) must be subsumed into the asserted six years allowed under § 544(b) by Minnesota law. This Court should reject Defendants' arguments, like the bankruptcy court recently did in *Picard*, for multiple reasons. As the courts in many of the cases cited above held, once a bankruptcy petition is filed, a state law limitations period ceases to have any effect and § 546(a) governs. *Picard*, 2010 WL 5841402, at *14-15. Other courts have framed the issue as one of preemption, holding that § 546(a) provides the only relevant limitations period because it preempts the state limitations provisions made relevant under § 544(b). *See Smith*, 365 B.R. at 677-78; *In re First Union Nat'l Bank  v. Gibbons (In re Princeton-New York Inv., Inc.)*, 219 B.R. 55, 66 (D.N.J. 1998).[10]

In sum, Defendants identify no authority to interpret the two-year period of § 546(a) as being subsumed within the relevant state law limitation period referred to in § 544(b). Section

---

[10] Defendants further include an argument regarding 11 U.S.C. § 108(a), which allows a trustee to pursue actions the debtor could have taken under applicable non-bankruptcy law. The Trustee is not pursuing claims the debtor could have pursued and, therefore, § 108(a) does not apply. Nonetheless, in raising an issue about § 108(a), Defendants undermine their own argument. Like § 546(a), this provision provides the trustee two years from the date of the petition to pursue the claim. In *Mosier v. Cargill Fin. Servs. Corp. (In re Mansfield Corp.)*, 339 B.R. 194, 199 (Bankr. D. Minn. 2006), this Court described § 108(a) as a "stretcher" of the applicable state limitations period explaining that § 108(a) "extended the Minnesota statute of limitations, so as to expire on a date two years after the commencement of the bankruptcy case(s) that gave rise to the litigation." *Id*. There is no reason why § 546(a) should be interpreted any differently.

546(a) independently provides the Trustee two years to commence claims that are viable on the

Petition Date.  The Trustee timely filed these claims within the time allowed by § 546(a).

### 2.       The Filing of the Complaint, Not Service, Establishes Timeliness.

Federal Rule of Civil Procedure 3 and Bankruptcy Rule 7003 define "commencement" of

a lawsuit as the date of the complaint's filing.  Nevertheless, the Defendants contend that the

Minnesota Rules of Civil Procedure definition of "commencement" as the date of the

complaint's service applies to the § 546(a) limitations period, rather than the federal rule's

definition.  *See* Minn. R. Civ. P. 3.01.  Defendants then argue that because the Trustee effected

service of process and served complaints on these Defendants after October 11, 2010 (two years

from the PCI bankruptcy filing), the claims against them are time-barred.[11]

The plain language of the governing rules of civil and bankruptcy procedure, alone,

defeats Defendants' argument.  *See In re Raynor,* 617 F.3d at 1069 (relying on the "plain

language" of § 546(a) and holding that a complaint filed on the two-year anniversary of the entry

of an order for relief is timely).  Bankruptcy Rule 7003, entitled "Commencement of Adversary

Proceeding," provides that "Rule 3 applies in adversary proceedings."  Federal Rule 3 states

clearly that "[a] civil action is commenced by filing a complaint."  Accordingly, the Court need

look no further than the plain language of Federal Rule 3 and Bankruptcy Rule 7003 to reject

Defendants' arguments and hold that the filing of the complaints, rather than service, is

dispositive of when the adversary proceedings were commenced.

Defendants do not cite a single case in which a state law commencement rule has been

applied in an adversary proceeding.  That is likely because courts that have addressed this issue

have uniformly applied the federal commencement rule to adversary proceedings.  *See, e.g.,*

---

[11] The Defendants making this argument are listed on Chart 3, attached hereto in the Appendix.

*Klesalek v. Klesalek*, 307 B.R. 648, 651-53 (B.A.P. 8th Cir. 2004) (appellate panel held state commencement rule was inapplicable in bankruptcy court); *Henkin v. Rockower Bros., Inc.*, 259 F. Supp. 202, 204-05 (S.D.N.Y. 1966) (preference action arises under federal law, and the federal rule defining commencement as the date of filing complaint applied rather than state law focusing on service); *Slone-Stiver v. Sec. Nat'l Bank & Trust Co. (In re Tower Metal Alloy Co.)*, 196 B.R. 266, 271 (Bankr. S.D. Ohio 1996) (filing of complaint rather than service commences adversary proceeding under Federal Rule 3).

The cases Defendants cite in support of their argument are diversity actions and inapposite. For example, Defendants cite the Supreme Court's decision in *Walker v. Armco Steel Corp.*, 446 U.S. 740 (1980). In *Walker*, the Court held that when the underlying cause of action is based on state law, and federal jurisdiction is based on diversity, state law provides the limitations period and determines whether service must be effected within that period. *Id.* at 752-53. Defendants also cite inapposite Eighth Circuit decisions applying *Walker*. *See, e.g., MW Ag, Inc. v. N.H. Ins. Co.*, 107 F.3d 644, 646 (8th Cir. 1997); *Anderson v. Unisys Corp.*, 47 F.3d 302, 309 (8th Cir. 1995); *Appletree Square I, LP v. W.R. Grace & Co.*, 29 F.3d 1283, 1286 (8th Cir. 1994).

*Walker* does not apply here because these cases are not diversity cases. This Court has federal question jurisdiction over these matters pursuant to 28 U.S.C. § 1334, Local Rule 1070-1, and various provisions of the Bankruptcy Code. *See Tow v. Rafizadeh (In re Cyrus II P'ship)*, 413 B.R. 609, 614 (Bankr. S.D. Tex. 2008); *In re Best Prods. Co., Inc.*, 168 B.R. 35, 51 (Bankr. S.D.N.Y. 1994). The Trustee's powers under § 544 "are substantive rights granted by the Bankruptcy Code and come into existence with the filing of the bankruptcy petition." *Summit Sec., Inc. v. Sandifur (In re Metro. Mortgage & Sec. Co., Inc.)*, 344 B.R. 138, 140 (Bankr. E.D.

17

Wash. 2006).   Absent commencement of a bankruptcy case, the Trustee would not have such

rights under state law.   *Id.*   The right to recover fraudulent transfers under 11 U.S.C. § 544 is a

"substantive bankruptcy law" right.   *Id.*   Defendants, therefore, have no legal basis for asking the

Court to apply a state law commencement rule to this federal question case.

   The Supreme Court has held that the rule set forth in *Walker* does not govern federal

question jurisdiction, even where the limitations period is borrowed from another statute.   In

*West v. Conrail*, 481 U.S. 35 (1987), the Supreme Court specifically concluded that "when the

underlying cause of action is based on federal law and the absence of an express federal statute

of limitations makes it necessary to borrow a limitations period from another statute, the action is

not barred if it has been 'commenced' in compliance with Rule 3 within the borrowed period."

*Id.* at 39.   The Court in *West* also noted that a state law "commencement" rule, "naturally, does

not apply to federal questions."   *Id.*   Indeed, "*Walker* expressly declined to address the role of

Rule 3 as a tolling provision for a statute of limitations, whether set by federal law or borrowed

from state law, if the cause of action is based on federal law."   *Id.* at 39 n.4 (internal quotations

omitted).   Defendants' citation to *Walker*, and its progeny, is therefore without merit.[12]

---

[12] Following *West*, courts have consistently held that Federal Rule 3 applies to a federal question
case, even if a state limitations period is borrowed for the case.   *See Sain v. City of Bend*, 309
F.3d 1134, 1137-38 (9th Cir. 2002); *McIntosh v. Antonino*, 71 F.3d 29, 36 (1st Cir. 1995); *Moore
v. Indiana*, 999 F.2d 1125, 1129-30 (7th Cir. 1993); *Martin v. Demma*, 831 F.2d 69, 71 (5th Cir.
1987).   The Eighth Circuit follows this rule.   *See Deretich v. City of St. Francis*, No. 97-3925,
1998 WL 327207, at *2 (8th Cir. June 19, 1998).   Bankruptcy courts also have followed this rule
in adversary proceedings.   *See Stinnett v. Wilson (In re Wilson)*, 104 B.R. 303, 305 (Bankr. E.D.
Cal. 1989) (*West* required application of Federal Rule 3 to adversary proceeding to determine
dischargeability of debts).   *See also Spence v. Panco (In re Surf & Sand Constr., Inc.)*, 138 B.R.
454, 456 (Bankr. D. Del. 1992) (in adversary proceeding to recover estate property against
corporate insiders, court followed *West* and held that reliance on state law "is not appropriate
when the subject of litigation is federal law.").

In addition to relying on inapplicable diversity cases, Defendants argue that because state tolling theories apply to the borrowed limitations period for purposes of 11 U.S.C. § 544, then the state "commencement" rule applies to § 546(a). This argument fails for two reasons. First, the Supreme Court in *West* cautioned that if a limitations period is borrowed for a federal cause of action, "we borrow only what is necessary." *West*, 481 U.S. at 39. While it may be necessary to borrow tolling rules to apply a borrowed limitations period, because of the availability of Federal Rule 3 there is no missing federal rule as to "commencement" of an action. Therefore, there is no need to borrow a state commencement rule. *Id.* at 40. Second, these cases do not involve a borrowed limitations period. Defendants argue that the Minnesota commencement rule should apply to 11 U.S.C. § 546(a), a federal limitations period. Although § 544 gives the Trustee the authority to pursue state law fraudulent transfer claims, the applicable state limitations period is only relevant to determine whether the Trustee has a viable cause of action as of the bankruptcy filing date. *See Bloom v. Fry (In re Leach)*, 380 B.R. 25, 29 (Bankr. D.N.M. 2007). As set forth above, "once the bankruptcy petition is filed, 11 U.S.C. § 546 governs the time for bringing fraudulent transfer actions under state law." *Id.*

For all the foregoing reasons, this Court must reject Defendants' argument that the date of service or the Minnesota Rules of Civil Procedure determine the commencement date for these adversary proceedings. Each adversary proceeding was timely commenced within the two-year period provided by 11 U.S.C. § 546(a) pursuant to Federal Rule of Civil Procedure 3, made applicable to these adversary proceedings by Federal Rule of Bankruptcy Procedure 7003.

**B.     The Controlling Limitations Period Is Minnesota Statutes § 541.05, Subd.
1(6).**

The Trustee and the Defendants agree that a "six-year" limitations period applies to the

Trustee's fraudulent transfer claims.   The Trustee and the Defendants disagree over which

limitations statute provides this six-year period, when the Trustee's claims accrued and how the

applicable limitations statute is applied. [13]   It is the Trustee's position, based on extensive

Minnesota caselaw, that the controlling statute of limitations for the Trustee's fraudulent transfer

claims is Minnesota Statutes § 541.05, subd. 1(6), which applies to claims that seek "relief on the

ground of fraud."   The text of this statute contains a "discovery rule," which generally provides

that a claim of fraud does not accrue until a plaintiff discovers  the facts constituting the fraud.

Minn. Stat.  §§ 541.05, subd. 1(6).   Defendants ignore relevant Minnesota law and, trying to

avoid application of the discovery rule, argue that Minnesota Statutes § 541.05, subd. 1(2), for

claims based "upon liability created by statute," should apply to the Trustee's fraudulent transfer

claims.

The parties' disagreement is ultimately driven by the question of whether the Trustee

may recover fraudulent transfers that occurred throughout the duration of the Ponzi scheme.

Under the discovery rule contained in Minnesota Statutes § 541.05, subd. 1(6), the Trustee's

state law fraudulent transfer claims did not accrue until October 6, 2008, which is the date the

fraudulent transfers that form the basis of the Trustee's claims could have been discovered.

Defendants, instead, argue that subdivision 1(2) applies in an effort to avoid application of the

discovery rule.   The Minnesota Court of Appeals recently held, however, that the doctrine of

---

[13] Because the parties agree that a six-year limitations period applies, there is no dispute that the
Trustee has timely filed complaints regarding all transfers that occurred on or after October 11,
2002 (six years before the entry of the order for relief).   The Trustee, of course, asserts that the
reach-back period is longer.

equitable tolling based on fraudulent concealment applies to subdivision 1(2). *Curtis v. Altria Group, Inc.*, 792 N.W.2d 836 (Minn. Ct. App. 2010) (review granted March 15, 2011).[14]  The majority of the Defendants fail to mention *Curtis* in their dismissal motions.  Pursuant to *Curtis*, fraudulent concealment of facts that establish the Trustee's fraudulent transfer claims toll the limitations period until the facts are discovered.  *Id.* at 860-61.  Consequently, even if Minnesota Statutes § 541.05, subd. 1(2) applies, the limitations period was tolled, and did not begin running, until October 6, 2008.  Therefore, regardless of which subdivision of Minnesota Statutes § 541.05 applies, the Trustee's claims were all viable on the Petition Date, and the Trustee may recover all fraudulent transfers received by Defendants throughout the entire duration of the Ponzi scheme.

> 1.   **The Minnesota Uniform Fraudulent Transfer Act Is a Codification of Minnesota Common Law, Rendering Minnesota Statutes § 541.05, Subd. 1(2) Inapplicable.**

Contrary to Defendants' argument, the mere fact that the Minnesota Uniform Fraudulent Transfer Act ("MUFTA") is now codified in a statute does not require invocation of Minnesota Statutes § 541.05, subd. 1(2), which applies generally to claims that relate to "liability created by statute."  This is because MUFTA is a codification of common law.  *Lind v. O.N. Johnson Co.*, 282 N.W. 661, 667 (Minn. 1938).  Defendants fail to acknowledge that the Minnesota Supreme Court has held that statutes codifying the common law are *not* governed by Minnesota Statutes § 541.05, subd. 1(2).  *McDaniel v. United Hardware Distrib. Co.*, 469 N.W.2d 84, 85-86 (Minn. 1996).  Moreover, the Minnesota Supreme Court long ago held that the six-year limitations period is specifically applicable to fraud claims—now codified at Minnesota Statutes § 541.05,

---

[14] *Curtis* is pending for review by the Minnesota Supreme Court, but the issue of tolling the limitations period is not one of the issues included in the notice of appeal.  *See* Petition for Further Review, *Curtis v. Altria Group, Inc.*, No. A100215 (Minn. filed Jan. 28, 2011).

subd. 1(6)—applies to fraudulent transfer claims. *Brasie v. Minneapolis Brewing Co.*, 92 N.W. 340, 342 (Minn. 1902). This Court should follow Minnesota Supreme Court precedent and hold that Minnesota Statutes § 541.05, subd. 1(6), and its corollary discovery rule, applies to the Trustee's fraudulent transfer claims.

> **(a)    Minnesota Statutes § 541.05,  Subd. 1(2) Applies to Liability that Would Not Exist but for a Statute.**

The Minnesota Supreme Court has held that subdivision 1(2) was not intended by the legislature to cover statutory causes of action if the statute is merely a codification of preexisting common law. *McDaniel v. United Hardware Distrib. Co.*, 469 N.W.2d 84, 85-86 (Minn. 1996). That is precisely what MUFTA is—a codification of common law, rendering subdivision 1(2) inapplicable.

In *McDaniel*, the Minnesota Supreme Court analyzed a cause of action to determine the appropriate statute of limitations to apply to the claim. *Id.* The court held that Minnesota Statutes § 541.05, subd. 1(2) does *not* apply to "liabilities existing at common law which have been recognized by statute." *Id.* at 85. Finding that the subject cause of action was not a codification of the common law, but was created by statute, the court held that the limitations period in Minnesota Statutes § 541.05, subd. 1(2) applied to the claim. *Id.* at 85-86. *See Manteuffel v. City of N. St. Paul*, 570 N.W.2d 807, 812 (Minn. Ct. App. 1997) (applying *McDaniel* test); *Snesrud v. Instant Web, Inc.*, 484 N.W.2d 423, 427 (Minn. Ct. App. 1992) (same).

*McDaniel* therefore requires an analysis of the origin of a cause of action to determine whether the general limitations period in Minnesota Statutes § 541.05, subd. 1(2), applies. In establishing the test in *McDaniel*, the Minnesota Supreme Court relied on a Second Circuit Court of Appeals case that applied a similar analysis to a claim under New York's fraudulent

conveyance statute in *Orr v. Kinderhill Corp.*, 991 F.2d 31, 34-35 (2d Cir. 1993). The question in *Orr* was whether the New York three-year limitations period applicable to actions on liability created by statute applied to the fraudulent conveyance claim. The court held the statutory liability limitations period did not apply to the claim. The limitations period

> does not apply to liabilities existing at common law which have been recognized or implemented by statute. Rather, [the limitations period] applies only when a statute creates a new liability that did not exist at common law and would not exist but for the statute. Moreover, 'the statute must be essential to the cause of action [and] . . . the statutory liability must truly be new.' That the statute merely enlarges the common law scheme of liability or grants additional remedies is insufficient to bring it within [the limitations period].

*Id.* at 36 (citations omitted). Noting that fraudulent conveyance actions were common in New York long before the state's fraudulent conveyance statute was enacted, the court concluded the limitations period applicable to liability created by statute did not apply to the claim. Rather, the Court held New York's six-year limitations period applied. *Id.* at 36.

### (b)    MUFTA Codifies Common Law.

Applying the Minnesota Supreme Court's test in *McDaniel*, Minnesota Statutes § 541.05, subd. 1(2) is not the limitations period that governs the Trustee's fraudulent transfer claims. In 1921, Minnesota adopted MUFTA's predecessor, the 1918 Uniform Fraudulent Conveyance Act. *See* Laws 1921 C. 415; Gen. St. 1923 §§ 8475-8489; Gen. St. 1927 §§ 8475-8489. *See also Lind v. O.N. Johnson Co.*, 282 N.W. 661, 666 (Minn. 1938); *Girard v. Michener (In re Michener)*, 217 B.R. 263, 268-69 (Bankr. D. Minn. 1998). As the Minnesota Supreme Court stated in *Lind v. O.N. Johnson Co.*, the state's adoption of the Uniform Fraudulent Conveyance Act was "a

codification and an extension of our former law." [15]  *Lind,* 282 N.W. at 667.  Prior to 1921, a

fraudulent transfer claim was based on common law.  *See Bennett v. Ellison*, 23 Minn. 242

(1876) ("the validity of this assignment must be tried by the laws of the state— i.e., by the

common law affirmed by the statutes of Elizabeth—since there is no statute of the state relating

to transfers of personal property made with the intent to hinder, delay, or defraud creditors.").

*See also* 13 Eliz. C. 5 A.D. 1570 (which protects creditors by declaring all conveyances and

dispositions of property, real or personal, made with the intention of defrauding creditors, to be

null and void).

The Uniform Fraudulent Transfer Act of 1984, adopted by Minnesota in 1987 as

Minnesota Statutes §§ 513.41-51, preserved "[t]he basic structure and approach of the Uniform

Fraudulent Conveyance Act," with changes only where needed to be consistent with other law,

such as the bankruptcy laws.[16]  *See* Uniform Laws Annotated, Vol. 7A Part II at 4-5; *Michener*,

217 B.R. at 268 (The remedies of MUFTA "are traceable through the legislation's predecessor,

Minn. Stat. § 513.20, 513.32, *and prior common law.*") (emphasis added)).  Neither MUFTA,

nor its 1921 predecessor statute, were the first recognition of liability for fraudulent transfers

under Minnesota law.  Because MUFTA is a codification of common law, in accordance with the

---

[15] Other jurisdictions have similarly noted their fraudulent transfer statutes are codifications of common law.  *See, e.g., Rainier Nat'l Bank v. McCracken*, 615 P.2d 469, 506 (Wash. Ct. App. 1980) (fraudulent conveyance statutes are declaration of the common law); *Neal v. Clark*, 251 P.2d 903, 905-906 (Ariz. 1952) (same).

[16] Indeed, the Prefatory Note to the 1984 Uniform Fraudulent Transfer Act, from which MUFTA was derived, states that the 1918 Uniform Fraudulent Conveyance Act "was a codification of the 'better' decisions applying the statute of 13 Elizabeth . . . .  The English statute was enacted in some form in many states, but, whether or not so enacted, the voidability of fraudulent transfer was part of the law of every American jurisdiction."  Uniform Laws Annotated, Vol. 7A Part II at 4.

Minnesota Supreme Court's precedent in *McDaniel* and *Lind*, subdivision 1(2) does not apply to the Trustee's fraudulent transfer claims.

In arguing for the application of subdivision 1(2), Defendants do not address the fact that MUFTA is a codification of common law and that the *McDaniel* analysis renders subdivision 1(2) inapplicable. Rather, Defendants provide this Court citations to cases that address the Minnesota Consumer Fraud Act and do not apply the *McDaniel* analysis to determine whether the cause of action first originated at common law or by statute. *See, e.g., Tuttle v. Lorillard Tobacco Co.*, 377 F.3d 917, 926-27 (8th Cir. 2004) (addressing Minnesota Consumer Fraud Act and not addressing *McDaniel* test).

Because fraudulent transfer claims were first recognized by Minnesota courts at common law, the *McDaniel* test compels the conclusion that Minnesota Statutes § 541.05, subd. 1(2) does not apply to those claims. This Court should hold that the applicable statute of limitations governing the timeliness and the accrual of the Trustee's fraudulent transfer claims is Minnesota Statutes § 541.05, subd. 1(6), which expressly incorporates the discovery rule.

### 2. The Minnesota Supreme Court Applies the Fraud-Based Limitations Period in Subdivision 1(6) to Fraudulent Transfer Claims.

Not only does the *McDaniel* test render subdivision 1(2) inapplicable, the Minnesota Supreme Court has long held that the six-year limitations period applicable to common law fraud claims applies to fraudulent transfer claims. *See Johnston v. Johnston*, 119 N.W. 652, 654 (Minn. 1909); *Schmitt v. Hager*, 93 N.W. 110, 111 (Minn. 1903); *Brasie v. Minneapolis Brewing Co.*, 92 N.W. 340, 342 (Minn. 1902); *Duxbury v. Boice*, 72 N.W. 838, 839 (Minn. 1897). These decisions remain the law of Minnesota. *See Palatine Nat'l Bank v. Strom (In re Strom)*, 97 B.R. 532, 539-40 (Bankr. D. Minn. 1989) (following *Schmitt* and holding that Minn. Stat. § 541.05, subd. 1(6) applies to a fraudulent transfer action); *see also Grimlie v. Georgen-Running (In re*

*Grimlie)*, 439 B.R. 710, 720 n.25 (B.A.P. 8th Cir. 2010) (noting Minn. Stat. § 541.05, subd. 1(6)

applies to fraudulent transfer claim); *Bergquist v. Vista Dev., Inc. (In re Quality Pontiac Buick

GMC Truck, Inc.)*, 222 B.R. 865, 868 n.6 (Bankr. D. Minn. 1998) (same); *In re Curry*, 160 B.R.

813, 819 (Bankr. D. Minn. 1993) (same).[17]

The statute of limitations for fraudulent transfer actions, codified as Minnesota Statutes

§ 541.05, subd. 1(6), has been the law of Minnesota for over 100 years.  The Court should

therefore apply Minnesota Statutes § 541.05, subd. 1(6), including its discovery rule, to the

Trustee's fraudulent transfer claims.

   **C.     Regardless of Which Limitations Period Applies, the Trustee Had Six Years
           From October 6, 2008, to Pursue the Fraudulent Transfers that Occurred
           Throughout the Course of the Petters Ponzi Scheme.**

The Trustee adequately pleaded facts to support this Court's application of both the

discovery rule doctrine (pursuant to § 541.05, subd. 1(6)) and the doctrine of equitable tolling

---

[17] In 1921 the Minnesota legislature adopted the 1918 Uniform Fraudulent Conveyance Act.
Laws 1921 C. 415; Gen. St. 1923 §§ 8475-8489; Gen. St. 1927 §§ 8475-8489.  This Act was
renumbered as Minnesota Statutes § 513.20-513.32.  *See Michener*, 217 B.R. at 268.  The
Minnesota Uniform Fraudulent Conveyance Act did not contain its own statute of limitations.  In
enacting the Uniform Fraudulent Conveyance Act in 1921, the legislature is presumed to have
been aware of the existing caselaw regarding the applicable statute of limitations.  *See
Pecinovsky v. Amco Ins. Co.*, 613 N.W.2d 804, 809 (Minn. Ct. App. 2000) ("Courts presume that
the legislature acts with full knowledge of previous statutes and existing caselaw.").  When the
Minnesota legislature enacted MUFTA in 1987, it again made no change to the applicable
limitations period.  MUFTA does not contain its own statute of limitations.  Again, in making no
change to the limitations period, the legislature was presumed to have been aware of the existing
law.  Defendants cite *Kopperud v. Agers*, 312 N.W.2d 443 (Minn. 1981), for the proposition that
because the legislature did not incorporate Minn. Stat. § 541.05, subd. 1(6) into MUFTA, it must
not have meant for it to apply to claims under MUFTA.  In *Kopperud*, the Minnesota Supreme
Court held that the legislature's adoption of a limitations period for a state securities law claim
without a discovery period presumably meant the legislature did not intend to include the
discovery rule in the limitations period adopted.  Here, in contrast to *Kopperud*, the legislature
did not create a limitations period in MUFTA.  The correct presumption here is that when it
enacted MUFTA the legislature was aware of existing Minnesota Supreme Court caselaw
applying the discovery rule to fraudulent transfer claims.

(pursuant to § 541.05, subd. 1(2)).[18]  (*See* Alper Compl. ¶¶ 16-35.)    In addition, regardless of

which limitations period applies, the doctrine of adverse domination permits the tolling of the

limitations period as well.  As a result, regardless of whether this Court holds that the applicable

statute of limitations is set forth in subdivision 1(6) or 1(2), the Trustee had six years from

October 6, 2008 to pursue the claims under Minnesota law based on all transfers made during the

duration of the Ponzi scheme.  The Trustee timely did so when he commenced all the respective

adversary proceedings by October 11, 2008—under the 11 U.S.C. § 546(a) two-year period.

### 1.    Determination of Defendants' Fact-Intensive Affirmative Defenses Is Not Appropriate on a Motion to Dismiss.

When a statute of limitations is at issue, "dismissal is proper only if it appears from the

face of the complaint that the limitation period has run and the complaint contains no facts to toll

that running."  *Strong,* 2010 WL 4967876, at *3 (citing *Varner v. Peterson Farms*, 371 F.3d

1011, 1016 (8th Cir. 2004)).  The Eighth Circuit Court of Appeals has long held that "normally

in a statute of limitations context, fraudulent concealment and a plaintiff's due diligence are

questions of fact unsuited for summary judgment," let alone a motion to dismiss.  *Hines v. A.O.*

*Smith Harvestore Prods., Inc.*, 880 F.2d 995, 999 (8th Cir. 1989).

The application of equitable tolling doctrines, such as fraudulent concealment and

adverse domination, requires the consideration of "numerous issues of material fact," and in the

context of a Rule 12(b)(6) motion it is "only necessary to find that the trustee pleaded sufficient

facts to invoke the tolling doctrine" to put the Defendants on notice of the doctrine.  *In re*

---

[18] Although the discovery rule determines when the limitations period commences, and fraudulent concealment prevents the limitations period from running, the end result is the same. *See Cohen v. Appert*, 463 N.W.2d 787, 791 (Minn. Ct. App. 1990) ("The doctrine of fraudulent concealment is very similar to the discovery rule that tolls the limitations period for a fraud cause of action.").

*Reading Broadcast., Inc.*, 390 B.R. 532, 552-53 (Bankr. E.D. Pa. 2008); *see Oshiver v. Levin,*

*Fishbein, Sedran & Berman,* 38 F.3d 1380, 1391 (3d Cir. 1994) (all that is required to survive a

motion to dismiss is for the plaintiff to plead the applicability of the equitable tolling doctrines);

*In re Norstan Apparel Shops, Inc.*, 367 B.R. 68, 83 (Bankr. E.D.N.Y. 2007) (concluding it is

inappropriate to grant a motion to dismiss when there are questions of fact as to applicability of

the adverse domination doctrine); *In re Loranger Mfg. Corp.,* 324 B.R. 575, 581-82 (Bankr.

W.D. Pa. 2005) ("[A]dverse domination theory raises numerous questions of material fact which

cannot be resolved as a matter of law on a motion to dismiss."); *In re MacGregor Sporting*

*Goods, Inc.* (*Levitt v. Riddell Sports, Inc.*), 199 B.R. 502, 515 (Bankr. D.N.J. 1995) (The "tolling

principles of fraudulent concealment and adverse domination involve questions of fact which

cannot be resolved as a matter of law on a motion to dismiss.").

     A statute of limitations defense also calls for the application of the discovery rule to

determine the timing of the accrual of a fraud claim, which then also presents a question of fact

that makes resolution of the defense inappropriate at the pleading stage. *Hope v. Klabal*, 457

F.3d 784, 791 (8th Cir. 2006) (due diligence in discovery of fraud and existence of fiduciary

relationship are ordinarily questions of fact).

     Based upon the well-pleaded factual allegations in the Trustee's Complaints, and the

itemized exhibits attached thereto and incorporated therein, the Trustee stated well-supported

claims that are facially plausible against each of the Defendants.  The Trustee gave Defendants

ample notice of the fraud claims and the factual basis for the fraud claims.  The Defendants

cannot avoid these well-pleaded claims on the basis of fact-intensive issues not suitable for

resolution at this stage.   Application of the above principles requires denial of the Defendants'

motions to dismiss.

2.    **The Trustee Pleaded Sufficient Facts to Show that Pursuant to Minnesota Statutes § 541.05, Subd. 1(6), the Claims Accrued on October 6, 2008, Because the Fraud Could Not Have Been Discovered Before that Date.**

The Trustee pleaded with specificity that the facts constituting the fraud could not have been discovered prior to October 6, 2008. Thus, the Court should hold that the Trustee pleaded sufficient facts to show the fraud could not have been discovered until October 6, 2008. As a result, the fraudulent transfer claims that the Trustee pleaded accrued, at the earliest, on October 6, 2008, and the Trustee had six years from that date (subject to the two-year time period established by § 546(a)) to pursue recovery of fraudulent transfers that occurred during the duration of the Ponzi scheme.

As set forth above, the discovery provision of subdivision 1(6) states that a cause of action based on fraud "shall not be deemed to have accrued until the discovery by the aggrieved party of the facts constituting the fraud." Minn. Stat. § 541.05, subd. 1(6). The facts constituting the fraud "are deemed to have been discovered when, with reasonable diligence, they could and ought to have been discovered." *Strong v. Stryker Corp.*, No. 10-02315, 2010 WL 4967876, at *4 (D. Minn. Dec. 1, 2010) (quoting *Bustad v. Bustad*, 116 N.W.2d 552, 555 (Minn. 1961)). To rely on the discovery provision to avoid a limitations defense, a plaintiff has the burden of proving "that he did not discover the facts constituting the fraud until within six years before the commencement of the action." *Stempf v. Andrzejeski*, No. A05-758, 2006 WL 44337, at *2 (Minn. Ct. App. Jan. 10, 2006) (quoting *Kassan v. Kassan*, 400 N.W.2d 346, 349 (Minn. Ct. App. 1987)). The determination of when a party knew or should have known of the facts constituting fraud is a question of fact not capable of resolution at the pleading stage. *Barry v. Barry*, 78 F.3d 375, 380-81 (8th Cir. 1996); *Estate of Jones by Blume v. Kvamme*, 449 N.W.2d 428, 431 (Minn. 1989).

29

Courts applying the discovery rule to determine the date of a claim's accrual have consistently held that a receiver is not charged with discovery of fraudulent transfers until wrongdoers are ousted from control of an entity used in a Ponzi scheme, and the receiver is appointed and the receiver has reasonable time to review the entity's records to obtain evidence of malfeasance. *In re Int'l Mgmt. Assocs., LLC*, No. A06-62966, 2010 WL 2026442, at *5 (Bankr. N.D. Ga. Apr. 9, 2010) (following *Stenger v. World Harvest Church, Inc.*, No. 04-00151, 2006 WL 870310, at *9 (N.D. Ga. Mar. 31, 2006)).

The discovery rule was applied in the context of a Ponzi scheme/receivership in *Quilling v. Cristell*, No. 04-00252, 2006 WL 316981, at *6-7 (W.D.N.C. Feb. 9, 2006). In *Quilling*, a receiver was appointed to take control of the estate of Frederick Gilliland and various entities that had been involved in a Ponzi scheme, and to preserve the receivership assets for the benefit of creditors who had been defrauded in the Ponzi scheme. *Id*. at *1. The receiver pursued various fraudulent transfer claims, including claims against defendant Cristell, who raised a statute of limitations defense. The applicable statute of limitations provided for a four-year limitations period, although the statute also provided that claims could be brought within one year of when a fraudulent transfer "was or reasonably could have been discovered." *Id*. at *6. In applying the discovery rule, the court first noted that "[i]n cases involving Ponzi schemes, fraudulent intent on the part of the transferor is inferred." *Id*. The court went on to conclude that the fraudulent transfers could not have been discovered until the receiver had been appointed and took over the Gilliland entities. The court reasoned that: "the Receiver was appointed on May 21, 2003. Once he was appointed, the illegitimate nature of the transfers involved in this lawsuit could be discovered. This lawsuit was filed on May 20, 2004, which is within one year of when the fraudulent transfer was or reasonably could have been discovered." *Id*. at *7.

The *Quilling* court's reasoning applies here.  The Receiver was appointed for PCI and the related entities on October 6, 2008.  Under the Minnesota "discovery rule," Minnesota Statutes § 541.05, subd. 1(6), the cause of action for the fraudulent transfers at issue in these cases did not accrue until that date, at the earliest, because Thomas Petters and others operating the Ponzi scheme were in control of PCI and the related entities throughout the duration of the Ponzi scheme, until the Receiver's appointment.

The Trustee pleaded facts sufficient to show that, with reasonable diligence, the fraud of Thomas Petters and his Associates could not have been discovered until after the Receiver was appointed and took control of PCI and its related entities on October 6, 2008.  (*See* Alper Compl. at ¶¶ 16-35.)  The Trustee specifically alleged that he could not have discovered the fraud before he was appointed as the Receiver on October 6, 2008 and was only able to discover facts detailing the Ponzi scheme thereafter:

> The concealment of the fraud, whether by Petters' silence, the fraudulent and intentional concealment of the facts constituting the fraud, and/or the adverse domination of PCI, PGW, and other debtor entities by Petters or Petters and his Associates, prevented the discovery of the on-going fraud until the Receiver was appointed and placed in control of the entities and the Receiver/Trustee  was able to discover facts constituting the fraud alleged in this Complaint.

> The Receiver/Trustee has acted diligently to discover facts constituting the fraud alleged in this Complaint.

(Alper Compl. ¶¶ 33, 34; *see also* Alper Compl. ¶¶ 16-32, 35.)[19]

---

[19] Certain Defendants have argued that because the Trustee alleged that the Defendants knew or should have known about the fraud, the discovery rule or the doctrine of fraudulent concealment cannot be satisfied.  This is incorrect.  The knowledge of any particular Defendant is irrelevant because the Trustee is seeking recovery for the benefit of creditors, not the particular Defendant the Trustee has sued to recover fraudulent transfers.  Second, the Trustee stands in the shoes of a

Based on these allegations, and with October 6, 2008 as the earliest date of accrual of the Trustee's claims, the Trustee had six years[20] to pursue his claims against Defendants. Moreover, the Trustee may assert claims for fraudulent transfers made at any time during the Ponzi scheme because claims for the recovery of all such transfers could not have accrued until their discovery on October 6, 2008. No claim for the recovery of any transfer made during the course of the fraudulent Ponzi scheme is time-barred as a result of the discovery rule, which is expressly incorporated in Minnesota Statutes § 541.05, subd. 1(6). Therefore, the Trustee respectfully requests that this Court hold that subdivision 1(6) applies to the Trustee's claims, that the claims accrued (at the earliest) on October 6, 2008, and were viable as of the Petition Date, and that the Trustee is authorized to pursue claims for the recovery of fraudulent transfers that occurred throughout the duration of the Petters Ponzi scheme. None of the Trustee's claims being time-barred, Defendants' motion to dismiss on these grounds must be denied.

3.     **The Trustee Pleaded Sufficient Facts to Show that the Doctrine of Equitable Tolling Based on Fraudulent Concealment Applies to Toll the Limitations Period Established by Minnesota Statutes § 541.05, Subd. 1(2).**

Defendants seek to avoid the discovery rule of Minnesota Statutes § 541.05, subd. 1(6), by asking this Court to enforce a strict six-year limitations period pursuant to subdivision 1(2). Their attempt to do so fails for several reasons. First, as described above, subdivision 1(2) does not apply here. Second, even if subdivision 1(2) applies, Minnesota courts have held that claims subject to the limitations period in subdivision 1(2) are also subject to equitable tolling based on

---

"golden creditor" who did not know or should not have known of the fraud. *See* 11 U.S.C. § 544(b).

[20] The subsequent October 11, 2008 bankruptcy filing triggered the application of 11 U.S.C. § 546(a), which required the Trustee to pursue these claims within two years of that date. It is undisputed that the Trustee did so.

fraudulent concealment.  Third, the Trustee adequately pleaded facts to invoke the equitable

tolling doctrine and to survive a motion to dismiss.[21]  The subjective intent of the Defendants

(the initial and subsequent transferees of the funds) is not material to the Court's analysis and

does not alter the conclusion that the running of the limitations period of subdivision 1(2), even

if the Court were to find it applicable, was tolled until discovery of the claims on October 6,

2008.

### (a)    The Doctrine of Equitable Tolling Applies to Claims that Are Subject to the Subdivision 1(2) Limitations Period.

Even if this Court holds that Minnesota Statutes § 541.05, subd. 1(2) applies to the

Trustee's claims, the Trustee would still not be limited to recovering only those transfers that

occurred during the six years prior to the Petition Date.  The Minnesota Court of Appeals

recently held that the doctrine of equitable tolling applies to claims that are subject to the

limitations period set forth in subdivision 1(2) when the facts that establish the claims are

fraudulently concealed.  *Curtis v. Altria Group, Inc.*, 792 N.W.2d 836, 860-61 (Minn. Ct. App.

2010).  Because Thomas Petters and his Associates concealed the true nature of the fraud

perpetrated through the Ponzi scheme, the limitations period of § 541.05, subd. 1(2) did not

begin running until October 6, 2008—the earliest date by which the true facts could have been

discovered.

Minnesota courts have long recognized that fraudulent concealment can toll the running

of a statute of limitations.  *See Wild v. Rarig*, 234 N.W.2d 775, 795 (Minn. 1975).  The doctrine

of fraudulent concealment has been applied to statutory causes of action brought under

Minnesota law.  *See Hydra-Mac, Inc. v. Onan Corp.*, 450 N.W.2d 913, 917-19 (Minn. 1990)

---

[21] The Defendants who make this argument are listed on Chart 4, attached hereto in the Appendix.

(applying fraudulent concealment doctrine to assess the accrual of a UCC claim); *Holstad v.*

*Southwestern Porcelain, Inc.*, 421 N.W.2d 371, 374-75 (Minn. Ct. App. 1988). *See also*

*Drobnak v. Andersen Corp.*, 561 F.3d 778, 786 (8th Cir. 2008); *Marvin Lumber & Cedar Co. v.*

*PPG Indus., Inc.*, 223 F.3d 873, 876-77 (8th Cir. 1999).

In *Curtis v. Altria Group, Inc.*, the Minnesota Court of Appeals made clear that the

doctrine of fraudulent concealment applies to statutory claims to which Minnesota Statutes §

541.05, subd. 1(2) applies. 792 N.W.2d 836, 860-62 (Minn. Ct. App. 2010). The court in *Curtis*

addressed the application of fraudulent concealment to a claim brought under the Minnesota

Consumer Fraud and Deceptive Trade Practices Act. Plaintiffs claimed that, from 1971 through

the date the action was filed on November 28, 2001 (a thirty-year period), the defendant cigarette

manufacturer misrepresented the dangers of "light" cigarettes. Section 541.05, subd. 1(2)

provided the limitations period for plaintiffs' statutory claim.

In *Curtis*, the defendant moved for summary judgment arguing that plaintiffs' claim was

time-barred as to any period before Nov. 28, 1996, six years before the lawsuit was commenced.

The trial court denied the motion because fact issues existed regarding defendant's fraudulent

concealment, which would allow plaintiffs' claim to extend back to 1971. *Id.* at 860. On appeal,

the Minnesota Court of Appeals agreed, rejecting defendant's "assertion that the fraudulent

concealment rule does not apply to consumer-protection actions." *Id*. Defendant argued that

because § 541.05, subd. 1(2) did not incorporate a discovery rule, equitable tolling could not

apply to toll the limitations period. Relying on the Minnesota Supreme Court's decision in

*Kopperud v. Agers*, 312 N.W.2d 443, 446-47 (Minn. 1981), the Court of Appeals disagreed and

held that "absent express legislative intent to the contrary, if the discovery rule does not apply to

accrual of the applicable cause of action, fraudulent concealment will toll the running of the

statute of limitations on the claim." *Id.* at 861.  Because the legislature did not express a contrary

intent in Minnesota Statutes § 541.05, subd. 1(2), fraudulent concealment tolled the running of

the statute of limitations.  *Id.*

Accordingly, even though Defendants are incorrect that subdivision 1(2) applies to the

Trustee's fraudulent transfer claims, like in *Curtis*, the doctrine of equitable tolling applies to the

Trustee's fraudulent transfer claims.   There is no express legislative intent that fraudulent

concealment does not apply to toll the limitations period set forth in subdivision 1(2).   Having

ignored *Curtis*, Defendants have not provided any basis for distinguishing fraudulent transfer

claims from consumer fraud claims for purposes of applying fraudulent concealment and the

doctrine of equitable tolling.   Moreover, courts in other jurisdictions have held fraudulent

concealment can toll the limitations period applicable to fraudulent transfer claims.  *See, e.g.,*

*Epperson v. Entm't Express, Inc.*, 338 F. Supp. 2d 328, 344-45 (D. Conn. 2004); *In re Int'l*

*Mgmt. Assocs.,   LLC*, No. A06-62966, 2010 WL 2026442, at *4-5 (Bankr. N.D. Ga. Apr. 9,

2010); *Kaufman & Roberts, Inc. v. Gigi Adver. P'ship*, 188 B.R. 309, 312-13 (S.D. Fla. 1995);

*Resnik v. Roberts*, No. D05-0656, 2009 WL 1805409, at *3 (Cal. Ct. App. June 24, 2009); *Bell v.*

*Goforth*, No. M04-00997, 2006 WL 627189, at *7-8 (Tenn. Ct. App. Mar. 14, 2006).   For all

these reasons, and regardless of when the various claims accrued, the doctrine of equitable

tolling applies to the Trustee's claims.

### (b)     In the Context of a Fraudulent Ponzi Scheme, the Doctrine of Equitable Tolling Applies Regardless of the Transferees' Subjective Intent.

Defendants contend that fraudulent concealment cannot apply here because there are no

allegations that they concealed the fraud.  The Defendants, for example, argue that the Trustee

wrongly seeks to invoke the fraudulent concealment doctrine not on the basis of their

concealment but on the basis of Petters' concealment.   However, equitable tolling concepts do

not require misconduct on the part of a defendant. *See Dring v. McDonnell Douglas Corp.*, 58 F.3d 1323, 1328-29 (8th Cir. 1995). "Equitable tolling is appropriate when the plaintiff, despite all due diligence, is unable to obtain vital information bearing on the existence of his claim; it has its roots in the discovery rule long-applied to fraud cases." *Comcast of Ill. X, LLC v. Multi-Vision Elecs., Inc.*, No. 03-311, 2005 WL 2177070, at *5 (D. Neb. Sept. 8, 2005). *See In re Juliet Homes, LP*,  No. 07-36424, 2010 WL 5256806, at *1 (Bankr. S.D. Tex. Dec. 16, 2010) (quoting and citing *Moratzka v. Pomaville* (*In re Pomaville*), 190 B.R. 632, 637 (Bankr. D. Minn. 1995) (internal citations and quotations omitted)); *Ramette Range Mental Health Ctr., Inc. (In re Russ)*, No. 87-2332, 1997 WL 188449, at *4-5 (Bankr. D. Minn. Apr. 18, 1997); (focus is on debtor's conduct rather than defendant's conduct); *Martin v. Butcher (In re Butcher)*, 72 B.R. 247, 251 n.5 (Bankr. E.D. Tenn. 1987) (in bankruptcy, the focus is not on the party responsible for the concealment, but on whether property of the estate has been concealed).  The Court in *Pomaville* explained:

> In the typical situation, it is the debtor's conduct rather than the defendant's conduct which invokes equitable tolling.  In some senses, this is unfair to the defendant.  On the other hand, unlike the usual civil case where a plaintiff at least has had the advantage of being a party to the underlying transaction, a bankruptcy trustee must rely almost entirely on a third party (the debtor) to provide the information necessary to uncover avoidable transfers.

*In re Pomaville,* 190 B.R. at 637.  The Court in *Ramette* followed *Pomaville* and held the trustee did not have to allege misconduct by the defendant to sufficiently allege that the applicable limitations period was tolled.  1997 WL 188449, at *4-5.  Rather, the trustee only needed to show injury and that he remained ignorant of the fraud through no fault or want of diligence of his own.  *Id*. at *4-5.  Accordingly, this Court should reject Defendants' attempt to focus its inquiry on their purported lack of actual knowledge of the fraud.  That inquiry is irrelevant to

whether the Trustee's claims are tolled due to the extensive concealment of the fraudulent nature of the Ponzi scheme by Petters and his Associates. This conduct has been thoroughly alleged.

This principle applies with particular force in the context of bankruptcy proceedings and in cases involving Ponzi schemes. In the context of a Ponzi scheme, the focus is not on the Defendants (the recipients of funds), but on the "inequitable and fraudulent conduct of the Ponzi scheme and its perpetrators." *In re Int'l Mgmt. Assocs.*, 2010 WL 2026442, at *5 (quoting *Stenger v. World Harvest Church, Inc.*, No. 04-00151, 2006 WL 870310, at *9 (N.D. Ga. Mar. 31, 2006)).

### (c)      The Trustee Adequately Pleaded the Elements of Fraudulent Concealment to Invoke the Doctrine of Equitable Tolling.

To invoke the doctrine of equitable tolling based on fraudulent concealment, a plaintiff need only allege that the "concealment was fraudulent or intentional, and, *in the absence of a fiduciary relationship*, there must be something of an affirmative nature designed to prevent, and which does prevent, discovery of the cause of action." *Cohen v. Appert*, 463 N.W.2d 787, 790 (Minn. Ct. App. 1991) (emphasis added). A party claiming fraudulent concealment "has the burden of proving that concealment could not have been discovered sooner by reasonable diligence and was not the result of his own negligence." *Id.* Where a fiduciary relationship exists, to establish fraudulent concealment "the plaintiff need not show affirmative acts of concealment as a prerequisite to tolling the statute of limitations." *Id. See Yonak v. Severson*, No. A05-154, 2005 WL 3291817, at *2 n.3 (Minn. Ct. App. Dec. 6, 2005).

Here, the Trustee adequately alleged facts supporting application of the fraudulent concealment doctrine and satisfied the pleading requirements of Federal Rule of Civil Procedure 9(b). Given Thomas Petters' fiduciary relationship with PCI and related entities, and his resulting duties, the Trustee could rely on Petters' silence, alone, to establish fraudulent

concealment.  *Murphy v. Country House, Inc.,* 240 N.W.2d 507, 511-12 (Minn. 1976).   The

Trustee, however, alleged much more than what is required to make out a claim for tolling the

limitations period based on fraudulent concealment.   Among other allegations, the following

facts are pleaded with extensive particularity in the Complaints, in support of the tolling of the

limitations period based on the fraudulent concealment of Petters, his Associates and others:

> On numerous occasions, investors entered into a number of
> Promissory Notes (the "Notes") with PCI.  Under the terms and
> conditions of the Notes, Defendants made funds available to PCI
> for various falsely represented business purposes including the
> financing of inventory and the account receivables which would
> result from the sale of purported electronic goods.   Under the
> Notes PCI would pay investors an amount equal to both Principal
> and False Profits.

(Alper Compl. ¶ 22.)

> Petters and his Associates told investors that funds paid to PCI
> were to be used to purchase products, when in reality the funds
> were being funneled to PCI or other entities formed by Petters in
> order to pay early investors with funds received from later
> investors.

(Alper Compl. ¶ 24.)

> To obtain investors in the Ponzi scheme, Petters portrayed PCI as a
> middleman that purchased consumer electronic goods or other
> goods from wholesalers and resold the merchandise to large, "big
> box" retailers such as Costco, Sam's Club and B.J.'s Wholesale
> Club.   PCI, through Petters and his Associates, intentionally
> fabricated the documents to recruit investors into the Ponzi
> scheme.    Petters and his Associates prepared and utilized
> fabricated documents that were represented to investors to be
> equipment purchase orders and related documents.   The fabricated
> documents included,  but are not limited to, (1) purchase orders
> from PCI to suppliers purportedly ordering electronic goods, and
> (2) purchase orders from retailers to PCI purportedly ordering
> electronic goods for purchase from PCI.   The purchase orders and
> the related documents were entirely fictitious.

(Alper Compl. ¶ 25.)

The fictitious merchandise was evidenced by fabricated equipment purchase orders in which the investors would purportedly acquire a security interest.

(Alper Compl. ¶ 26.)

Because the transactions described in the fictitious purchase orders in fact did not exist, the only way PCI was able to transfer sufficient funds to investors including Defendant was by money obtained from other investors, in other words, through the operation, control and management of the Ponzi scheme by Petters and his Associates. Repayment of the Principal and interest in the form of False Profits to these investors comprised a Ponzi scheme because they were primarily, if not exclusively, from funds invested by other PCI investors.

(Alper Compl. ¶ 29.)

Petters, as the owner, officer, and director of PCI, PGW, and other debtor entities, was a fiduciary of these entities and had a duty to disclose the fraudulent activities alleged in this Complaint. Petters, in violation of his fiduciary duty, did not disclose the fraudulent activities to current or prospective investors and other creditors of PCI, PGW, and other debtor entities.

(Alper Compl. ¶ 31.)

Petters, or Petters and his Associates, fraudulently and intentionally concealed the ongoing fraud in an effort to hinder and delay authorities and other current and prospective investors and other creditors of PCI, PGW, and other debtor entities from discovering the fraud.

(Alper Compl. ¶ 32.)

The Trustee also alleges that the fraud could not have been discovered before the Receiver was appointed on October 6, 2008 and was able to discover facts detailing the Ponzi scheme:

The concealment of the fraud, whether by Petters' silence, the fraudulent and intentional concealment of the facts constituting the fraud, and/or the adverse domination of PCI, PGW, and other debtor entities by Petters or Petters and his Associates, prevented the discovery of the on-going fraud until the Receiver was appointed and placed in control of the entities and the Receiver

was able to discover facts constituting the fraud alleged in this
Complaint.

The Receiver acted diligently to discover facts constituting the
fraud alleged in this Complaint.

(Alper Compl. at ¶¶ 33-34.)

As a result of the fraudulent concealment of the Ponzi scheme, even if the Court were to

find that Minnesota Statutes § 541.05, subd. 1(2) applies here, the six-year limitations period did

not begin to run until October 6, 2008, the date the Receiver was appointed for PCI and related

entities.  As a result, the Trustee may pursue claims throughout the duration of the Ponzi scheme

because the limitations period on each claim has never expired.  *Curtis v. Altria Group, Inc.*, 792

N.W.2d 836, 860-61 (Minn. Ct. App. 2010) (plaintiff could assert consumer fraud claims during

the thirty year period of 1971 through 2001).

> **4.** **Regardless of the Limitations Period that Applies, the Doctrine of
> Adverse Domination Further Authorizes the Trustee to Recover
> Fraudulent Transfers that Occurred Throughout the Duration of the
> Ponzi Scheme.**

Adverse domination is a common law doctrine providing that "an entity's claim is tolled

when the entity is controlled or dominated by individuals engaged in conduct that is harmful to

the entity." *Warfield v. Carnie*, No. 04-00633, 2007 WL 1112591, at *15 (N.D. Tex. Apr. 13,

2007) (Ponzi case).  The doctrine recognizes that under the adverse domination of wrongdoers,

"the entity is paralyzed to defend itself against the wrongdoer and the doctrine ensures that the

statute of limitations begins to run only once the wrongdoing [individuals] lose control of the

entity." *Id.*  In such circumstances, the "controlling wrongdoers cannot reasonably be expected

to pursue a claim which [the company] has against them until they are no longer in control."

*Resolution Trust Corp. v. Farmer*, 865 F. Supp. 1143, 1151 (E.D. Pa. 1994).  The doctrine has

"long been applied in federal courts" and has been described as "merely a corollary of the

40

discovery rule, applied in the corporate context." *In re Reading Broadcasting, Inc.*, 390 B.R.

532, 552-53 (Bankr. E.D. Pa. 2008) (internal quotations omitted).

In determining whether state supreme courts would adopt the doctrine of adverse

domination, federal courts have specifically looked to whether the state law recognizes the

corollary discovery rule applied in fraud cases (which Minnesota does). *See Resolution Trust*

*Corp. v. Armbruster*, 52 F.3d 748, 751 (8th Cir. 1995) (federal court must first find that

Minnesota Supreme Court would recognize doctrine prior to its application); *see also Clark v.*

*Milam*, 847 F. Supp. 409, 422 (S.D. W. Va. 1994) ("[T]he adoption of such a doctrine would

comport with the state's discovery rule applied in fraud cases."); *In re Reading Broadcasting,*

*Inc.*, 390 B.R. 532, 552-53 (Bankr. E.D. Pa. 2008) (explaining how Pennsylvania federal courts

predicted that Pennsylvania Supreme Court would apply the doctrine of adverse domination

because, in part, "Pennsylvania courts have developed certain tolling principles to ameliorate the

sometimes harsh effects of the statute of limitations" . . . including the "equitable tolling

principle it refers to as the 'discovery rule.'"). The majority of state courts presented with the

issue have adopted the doctrine of adverse domination. *Resolution Trust Corp. v. Grant*, 901

P.2d 807, 812 at n.16 (Okla. 1995) (collecting cases); *see Wilson v. Paine*, 288 S.W.2d 284, 287-

88 (Ky. 2009) (stating "doctrine of adverse domination shares the same theoretical

underpinnings as the discovery rule," collecting federal cases and noting courts "confronted with

the question have almost uniformly embraced adverse domination.").[22]

---

[22] Other courts have applied the adverse domination doctrine to toll the limitations period on claims pursued by court-appointed receivers and trustees in a variety of contexts. *See, e.g., Clark v. Milam*, 847 F. Supp. 409, 423 (S.D. W. Va. 1994) (receiver action against officers and directors of insurance company that they looted of assets); *In re Yellowstone Mountain Club, LLC*, No. 08-61570, 2010 WL 605735, at *13, 21 (Bankr. D. Mont. Feb. 17, 2010) (bankruptcy trustee action against corporate principal for fraudulent transfers; court found fact issues relating

Numerous courts also have applied the adverse domination theory to toll limitations periods in cases involving Ponzi schemes, as in these cases. *See In re Int'l Man. Assocs.,* No. A06-62966, 2010 WL 2026442, at *4-5 (N.D. Ga. Apr. 9, 2010); *Wing v. Kendrick*, No. 08-00620, 2009 WL 1362383, at *3 (D. Utah May 14, 2009); *Stenger v. World Harvest Church, Inc.*, No. 04-00151, 2006 WL 870310, at *9 (N.D. Ga. Mar. 31, 2006); *Quilling v. Cristell*, No. 04-00252, 2006 WL 316981, at *6-7 (W.D.N.C. Feb. 9, 2006).

Based on Minnesota caselaw addressing the policy reasons for Minnesota's adoption of the discovery rule and corollary equitable tolling doctrine in fraud cases, it is highly likely that the Minnesota Supreme Court would adopt the "corollary" doctrine of adverse domination in the corporate context on the facts in this case. The Trustee adequately pleaded facts in the Complaint sufficient to invoke the adverse domination theory of tolling. (Alper Compl. at ¶ 30). The adverse domination doctrine effectively tolls the six-year limitations period, whether under subdivision 1(2) or 1(6), and authorizes the Trustee to pursue claims for fraudulent transfers throughout the duration of the Ponzi scheme.

### D.   Delayed Accrual and Tolling of the Statute of Limitations Is Consistent with Public Policy.

The statute of limitations is a procedural device designed to promote judicial economy and protect defendants' rights. *Stephens v. Dixon,* 536 N.W.2d 755, 756 (Mich. 1995). Two

---

to adverse domination doctrine rendered summary judgment inappropriate); *Miller v. Parker (In re Reading Broad., Inc.)*, 390 B.R. 532, 552-54 (Bankr. E.D. Pa. 2008) (fraudulent transfer claims by bankruptcy trustee); *In re Norstan Apparel Shops*, 367 B.R. 68, 82-83 (Bankr. E.D.N.Y. 2007) (fraudulent transfer claims by bankruptcy trustee). On facts analogous to this case, the United States District Court for the Northern District of Alabama held that the doctrine applied to toll the running of the limitations period on claims brought by the court-appointed receiver of an insurance company. *Hunt v. Am. Bank & Trust Co.*, 606 F. Supp. 1348 (N.D. Ala. 1985).

consistent public policies inherent in the application of any statute of limitations are: (1) the benefits of precluding stale claims, and (2) the risk of precluding meritorious claimants that happen to fall outside of an arbitrarily set period. *Dalton v. Dow Chem. Co*., 158 N.W. 2d 580, 584 n.2 (Minn. 1968); *S.V. v. R.V.*, 933 S.W.2d 1, 6 (Tex. 1996); *Peterson v. Roloff,* 203 N.W.2d 699, 702 (Wis. 1973). As a result, although there is a general public policy interest in preventing the prosecution of stale claims, that policy is not all-encompassing. In cases where a claim may become time-barred before the harm is or could be discovered—making it impossible for the injured party to seek redress—application of an arbitrary and inflexible limitations period works to punish victims and to benefit wrongdoers by barring meritorious claims. *Urie v. Thompson*, 337 U.S. 163, 169-70 (1949); *Hansen v. A.H. Robins, Inc.*, 335 N.W.2d 578, 582 (Wis. 1983). This is precisely why the discovery rule, the equitable tolling doctrine, and the adverse domination doctrine are necessary and routinely applied by courts, consistent with a public policy adopted by Minnesota in caselaw and statute. *See* Minn. Stat. § 541.05, subd. 1(6).

There is nothing unusual about the Trustee's effort to recover fraudulent transfers over the duration of the Petters Ponzi scheme. In the *Madoff* bankruptcy proceeding, the Trustee is seeking to recover fraudulent transfers over a longer period than the Trustee here, 1983 through 2008. *See Picard v. Estate of Stanley Chais (In re Bernard L. Madoff Inv. Secs., LLC)*, No. 08-01789, 2010 WL 5841402, at *3, 16-17 (Bankr. S.D.N.Y. Feb. 24, 2011). As another example, the United States Bankruptcy Court of the Southern District of Ohio permitted a trustee to seek recovery of transfers made in furtherance of a Ponzi scheme during at least the period January 1, 1978 through May 3, 1989. *In re Taubman*, 160 B.R. 964, 989-91 (Bankr. S.D. Ohio 1993). Finally, in *Curtis,* the Minnesota Court of Appeals permitted a consumer fraud claim to be

asserted for a thirty year period, from 1971 through 2001.   *Curtis v. Altria Group, Inc.*, 792

N.W.2d 836, 859-60 (Minn. Ct. App. 2010).

Because Ponzi schemes, by their very nature, obtain funds from later investors to fully

repay early investors, application of the statue of limitations as the Defendant's suggest would be

contrary to public policy and permit the early investors that received substantial false profits and

other sums to retain such funds stolen from later investors and, as a result, be rewarded for the

concealment of the Ponzi scheme.   Contrary to Defendants' argument, public policy favors the

Trustee's effort to recover transfers made throughout the duration of the Petters Ponzi scheme.

### III.    The Trustee Has Standing and Is Not Required to Plead the Identity of a Creditor or Any Category of Creditors Whose Claims Are Being Asserted.

The Complaints allege, with respect to each fraudulent transfer claim, that

> At all times material hereto, there was and is at least one or more
> creditors who held and who hold unsecured claims against the
> Debtor that was and is allowable under Bankruptcy Code § 502 or
> that was and is not allowable only under Bankruptcy Code
> § 502(e).   The Transfers are avoidable under applicable
> nonbankruptcy law by a creditor holding an unsecured claim in the
> bankruptcy case.

(Alper Compl. ¶ 52.)   Most of the Defendants argue the Complaints are insufficient because the

Trustee does not specifically identify a creditor or creditors (the "golden creditor") whose claims

the Trustee is asserting pursuant to 11 U.S.C. § 544(b).   Alternatively, some of these Defendants

argue the Trustee must allege a specific category of creditors, even if the specific identity of the

creditor is not required.[23]

Defendants are incorrect.   "So long as the Trustee pleads the existence of a creditor who

could have avoided the transfer, the Trustee need not identify a specific creditor by 'name.'"   5

---

[23] The Defendants who challenge the Trustee's standing are listed in Chart 5, attached hereto in
the Appendix.

*Collier on Bankruptcy* ¶ 544.06[1] at 544-19 (Alan. N. Resnick & Henry J. Sommer, eds., 16th ed. 2010).   The Trustee is not required to specifically identify the creditor at the pleading stage of these adversary proceedings, or even identify a specific category of creditors.   *See Picard v. Estate of Stanley Chais (In re Bernard Madoff Inv. Sec., LLC)*, No. 08-01789, 2010 WL 5841402, at *17 (Bankr. S.D.N.Y. Feb. 24, 2011).   To the contrary, "simply pleading the existence of an unsecured creditor generally will suffice to satisfy Rule 8(a)(2)."[24]   *Id.*   The Trustee is only required to allege a creditor or creditors exists, which the Trustee did. Defendants' arguments to the contrary should be rejected.

In making their "golden creditor" argument, Defendants fail to acknowledge the procedural posture of these cases.   These adversary proceedings are at the pleadings stage and Defendants' motions are motions to dismiss.   For example, many Defendants cite *Williams v. Marlar (In re Marlar)*, 252 B.R. 743, 754 (B.A.P. 8th Cir. 2000), for the proposition that the Trustee has the burden of proving the existence of a qualified unsecured creditor.   The question in *Marlar*, however, was not whether the plaintiff trustee properly alleged the existence of such a creditor in its complaint, but whether the trustee had shown the existence of such a creditor for purposes of obtaining summary judgment.   Similarly, some Defendants cite *Stalnaker v. DLC, Ltd. (In re DLC, Ltd.)*, 295 B.R. 593, 601-05 (B.A.P. 8th Cir. 2003), which deals with proof offered at trial, and others cite to *Smith v. American Founders Fin. Corp.*, 365 B.R. 647, 659 (S.D. Tex. 2007), which deals with proof offered in connection with summary judgment.   None

---

[24] For this same reason, Defendants' argument that the Supreme Court's decisions in *Twombly* and *Iqbal* compel the application of a heightened pleading standard to the standing issue fails. Defendants cite no authority in support of this proposition.   Their argument that *Twombly* and *Iqbal* altered the pleading requirements with respect to the identification of a creditor for standing purposes fails because courts addressing the issue post-*Twombly* and post-*Iqbal* have expressly held to the contrary.   *See Picard v. Estate of Stanley Chais (In re Bernard Madoff Inv. Sec., LLC)*, No. 08-01789, 2010 WL 5841402, at *17 (Bankr. S.D.N.Y. Feb. 24, 2011).

of these cases apply to the question raised here, which is solely whether the allegations in the

Trustee's Complaints are sufficient to withstand dismissal.

Numerous courts have held that the pleading of the existence of an unsecured creditor, as

the Trustee alleged, is sufficient to satisfy the Rule 8 pleading standard. *See Zahn v. Yucaipa*

*Capital Fund*, 218 B.R. 656, 673 (D.R.I. 1998) ("The Court will not try this case on a motion to

dismiss.   A probing inquiry into who the creditors are, and what claims they hold, is

inappropriate at this stage of the case.  What matters now is the sufficiency of what is *alleged*,

not what is *proven.*"); *Picard v. Estate of Stanley Chais (In re Bernard Madoff Inv. Secs., LLC)*,

No. 08-01789, 2010 WL 5841402, at *17 (Bankr. S.D.N.Y. Feb. 24, 2011); *Schnelling v.*

*Crawford (In re James River Coal Co.)*, 360 B.R. 139, 168 (Bankr. E.D. Va. 2007) (court denied

motion to dismiss for lack of standing, holding "the Trustee is not required to name the

creditor."); *Guiliano v. U.S. Nursing Corp. (In re Lexington Healthcare Group, Inc.)*, 339 B.R.

570, 576 (Bankr. D. Del. 2006) ("[T]he Trustee need not identify the name of a specific creditor

on which the Trustee relies . . . not at this stage at the process."); *Brandt v. Hicks, Muse & Co.*

*(In re Healthco Int'l, Inc.)*, 195 B.R. 971, 980 (Bankr. D. Mass. 1996) (The allegation of the

existence of a creditor is enough and "[t]he Trustee need not name the creditor."); *In re RCM*

*Global Long Term Capital Appreciation Fund, Ltd.*, 200 B.R. 514, 523-24 (Bankr. S.D.N.Y.

1996) ("The Debtor has adequately pleaded the existence of an unsecured creditor with an

allowable claim. . . .  The truth of the Debtor's allegations should not be decided in the context of

a motion to dismiss . . ..").

Defendants cite two non-Minnesota cases that hold that a trustee pursuing a claim under §

544(b) must allege the identity of a specific creditor in its complaint.  These cases, however, are

contrary to the great weight of authority cited herein, including Eighth Circuit caselaw.    In *Ries*

*v. Wintz Properties, Inc. (In re Wintz Cos.)*, the bankruptcy court granted summary judgment to a trustee seeking to avoid fraudulent conveyances.  230 B.R. 848, 859 (B.A.P. 8th Cir. 1999).  The bankruptcy appellate panel reversed the grant of summary judgment, holding that the Trustee "presently lacks standing to pursue his fraudulent transfer actions."  *Id*.  The trustee lacked standing, the panel noted, because "[t]hus far, the Trustee has not only failed to identify such a creditor, but has failed to even allege that such a creditor exists, *as he is required to do in order to meet this threshold burden*."  *Id*. (emphasis added).  Simply stated, the Bankruptcy Appellate Panel determined that the trustee needed only to allege the existence of a creditor in his pleading. The Trustee satisfied this standard, requiring the denial of Defendants' motion to dismiss on standing grounds.

Some Defendants argue for a middle ground and contend that some courts require an allegation identifying a "category" of unsecured creditors in the complaint.  These Defendants rely on *The Responsible Person of Musicland Holding Corp. v. Best Buy Co. (In re Musicland Holding Corp.)*, 398 B.R. 761 (Bankr. S.D.N.Y. 2008), and *Global Crossing Estate Representative v. Winnick*, No. 04-02558, 2006 WL 2212776 (S.D.N.Y. Aug. 3, 2006).  Neither case, however,  supports Defendants' contention.  The *Global Crossing* court "did not hold that a category of qualifying unsecured creditors must be pleaded.  Instead, the plaintiff in *Global Crossing* pleaded a category of unsecured creditors and the court held such was *more* than sufficient to satisfy Rule 8."  *Picard v. Estate of Stanley Chais (In re Bernard Madoff Inv. Sec., LLC)*, No. 08-01789, 2010 WL 5841402, at *18 n.26 (Bankr. S.D.N.Y. Feb. 24, 2011) (discussing *Global Crossing*, emphasis added).

In the same way, *Musicland* does not hold that a category of creditors must be pleaded to survive a motion to dismiss.  In *Musicland*, the plaintiff argued, in response to defendant's

motion to dismiss, that "it is sufficient, for pleading purposes, to allege the existence of the qualifying creditor generally without identifying the actual entity." 398 B.R. at 778. The court denied the motion to dismiss, noting that the "plaintiff may plead the existence of the qualifying creditor generally, and prove the existence of an actual, qualifying creditor at trial." *Musicland*, 398 B.R. at 780 (citing *In re RCM Global Long Term Capital Appreciation Fund, Ltd.*, 200 B.R. 514, 523-24 (Bankr. S.D.N.Y. 1996)). The *Musicland* court did not adopt a heightened standard, as Defendants claim. Rather, like the court in *Global Crossing*, the *Musicland* court found that plaintiff had alleged a category of unsecured creditors and that was more than what is necessary to satisfy Rule 8 of the Federal Rules of Civil Procedure. The *Musicland* court even recognized "the relative ease and obvious wisdom of leaving the actual identification of qualifying creditors to discovery and trial." *Id.* at 781 n.13.

This Court should join the majority of courts to address this issue and hold, consistent with the Bankruptcy Appellate Panel's reasoning in *Ries*, the Trustee is only required to generally plead the existence of an unsecured creditor. Here, the Trustee satisfied the applicable pleading standard by alleging the existence of a qualifying unsecured creditor. No more is required. At this stage of the proceedings, on a motion to dismiss, the Defendants' challenge to the Trustee's standing must be denied.

## IV.    The Trustee Pleaded the Actual Fraud Claims with Sufficient Particularity.

The Trustee pleaded the fraudulent transfer claims in each Complaint with the requisite particularity. [25] The Trustee pleaded, with extensive detail, the facts and circumstances giving rise to the fraudulent transfers. No more is required. Defendants overstate the particularity

---

[25] The Defendants moving to dismiss the Trustee's actual fraud claims for failure to plead with sufficient particularity are listed in Chart 6, attached hereto in the Appendix.

required to satisfy Rule 9(b). There is no requirement that fraudulent intent be pleaded with particularity under Rule 9(b). To the contrary, "intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). The Trustee met this standard. The facts and circumstances giving rise to the Trustee's fraudulent transfer claims could not be more plainly stated on the face of the Complaints.

### A.    The Trustee Adequately Pleaded Fraudulent Intent Because Any Transfer Made in Furtherance of the Petters Ponzi Scheme Was Made with the Actual Intent to Hinder, Delay, or Defraud Present and Future Creditors.

In moving to dismiss the Trustee's actual fraud claims, Defendants overlook that it is well-established that it is the transferor's intent, not the Defendants' intent, that is relevant to the Court's analysis of the Trustee's pleadings. *See In re Lumbar*, No. 08-36803, 2011 WL 754854, at *8 (Bankr. D. Minn. Mar. 3, 2011) ("Under § 548(a)(1)(A), the intent of the *transferor, … is* the element of scienter that must be proven."); *In re Bayou Group, LLC,* 362 B.R. 624, 631 (Bankr. S.D.N.Y. 2007) (stating that it is "clear from the statutory language that if the *debtor . . .* made such transfer . . . with actual intent" and that "the claim of actual fraud looks only to the fraudulent intent of the transferor/debtor.") (quoting § 548(a)(1)) (emphasis in original); *Nisselson v. Softbank Am. Corp., (In re Marketxt Holdings Corp.)* 361 B.R. 369, 395 (Bankr. S.D.N.Y. 2007) ("Under the Bankruptcy Code, the plaintiff must establish the actual fraudulent intent of the transferor/debtor."); *In re Actrade Fin. Tech. Ltd.,* 337 B.R. 791, 808 (Bankr. S.D.N.Y. 2005) ("Cases under § 548(a)(1)(A) indicate that it is the intent of the transferor/[debtor] and not the transferee that is relevant for purposes of pleading a claim for intentional fraudulent conveyance under the Bankruptcy Code.").

Further, it is widely accepted that the existence of a Ponzi scheme—such as the massive fraud perpetrated by Petters through PCI and its SPEs—conclusively establishes that transfers by the debtor were made with the intent to hinder, delay, and defraud creditors. *See Johnson v.*

*Neilson (In re Slatkin)*, 525 F.3d 805, 814 (9th Cir. 2008) ("Once the existence of a Ponzi scheme is established, payments received by investors as purported profits—i.e., funds transferred to the investor that exceed that investor's initial 'investment'—are deemed to be fraudulent transfers as a matter of law."); *Bear, Stearns Sec. Corp. v. Gredd (In re Manhattan Inv. Fund Ltd.)*, 397 B.R. 1, 8 (S.D.N.Y. 2007) ("[T]ransfers made in the course of a Ponzi scheme could have been made for no purpose other than to hinder, delay or defraud creditors.") (internal quotations omitted); *Rafoth v. First Nat'l Bank of Barnesville (In re Baker & Getty Fin. Servs., Inc.)*, 98 B.R. 300, 308 (Bankr. N.D. Ohio 1989) ("The statutory language makes it plain that one can infer an intent to defraud from the mere fact that Debtors were operating a Ponzi scheme.").[26]

The Bankruptcy Court of the Southern District of New York, presented with facts similar to those before this Court, recently acknowledged that "it is now well recognized that the existence of a Ponzi scheme establishes that transfers were made with the intent to hinder, delay, or defraud creditors." *Picard v. Merkin (In re Bernard L. Madoff Inv. Sec., LLC)*, 440 B.R. 243, 255 (Bankr. S.D.N.Y. 2010). *See Picard v. Estate of Stanley Chais (In re Bernard L. Madoff Inv. Sec., LLC)*, No. 08-01789, 2010 WL 5841402, at *6 (Bankr. S.D.N.Y. Feb. 24, 2011); *In re Bayou Group, LLC*, 439 B.R. 284, 306 n.19 (S.D.N.Y. 2010).

The facts set forth in the Complaint—taken as true for purposes of a motion to dismiss—establish the existence of a Ponzi scheme orchestrated by Petters and his Associates through the

---

[26]Courts nationwide have recognized the principle that the existence of a Ponzi scheme is sufficient to prove a debtor's actual intent to defraud. *See, e.g., Barclay v. Mackenzie, (In re AFI Holding, Inc.)*, 525 F.3d 700 (9th Cir. 2008); *Scholes v. Lehman*, 56 F.3d 750, 757 (7th Cir. 1995); *Hayes v. Palm Seedlings Partners (In re Agric. Research & Tech. Group, Inc.)*, 916 F.2d 528, 535 (9th Cir. 1990); *Terry v. June*, 432 F. Supp. 2d 635, 639 (W.D. Va. 2006); *In re Old Naples Sec.*, 343 B.R. 310, 319 (Bankr. M.D. Fla. 2006); *Rieser v. Hayslip (In re Canyon Sys. Corp.)*, 343 B.R. 615, 636-37 (Bankr. S.D. Ohio 2006).

artifice of PCI and other entities under Petters' control, including the SPEs.  All alleged transfers set forth in the pleadings were made to or for the benefit of the Defendants during the relevant time period and in furtherance of the Ponzi scheme.  Because the Trustee pleaded facts that establish the existence of a Ponzi scheme, the Court may appropriately presume that all transfers from Petters' companies to the Defendants during the course of the Ponzi scheme were made with the Debtor's actual intend to hinder, delay, or defraud its creditors.  As a result, no inquiry into badges of fraud is necessary.  Here, accepting the factual allegations in the Trustee's Complaints as true, the Trustee pleaded the facts constituting the fraud and intent with the particularity required by Rule 9(b) sufficient to state a claim of actual fraud under § 548 and state law applicable through § 544.

### 1.    The Trustee Pleaded the Existence of a Ponzi Scheme with Particularity Sufficient to Invoke the Presumption of Actual Fraud.[27]

A presumption of actual fraud applies where the debtor purposefully orchestrated a scheme which, by its very design, could only serve to defraud investors. In *Martino v. Edison Worldwide Capital (In re Randy)*, the Bankruptcy Court succinctly described a Ponzi scheme as follows:

> A "Ponzi" scheme is a term generally used to describe an investment scheme which is not really supported by any underlying business venture. The investors are paid profits from the principal sums paid in by newly attracted investors. Usually those who invest in the scheme are promised large returns on their principal investments. The initial investors are indeed paid the sizable promised returns. This attracts additional investors. More and more investors need to be attracted into the scheme so that the growing number of investors on top can get paid. The person who runs this scheme typically uses some of the money invested for personal use.

---

[27] The Defendants who argue that the Trustee failed to adequately plead the Ponzi scheme presumption are listed on Chart 7, attached hereto in the Appendix.

189 B.R. 425, 437 n.17 (Bankr. N.D. Ill. 1995) (citations omitted).

Here, each Complaint outlines, in considerable detail, the manner by which Petters and his Associates perpetuated the Ponzi scheme by routinely fabricating purchase orders to document investors' purported financing of electronics inventory. As set forth in the Alper Complaint, at paragraphs 16-43, there was a complete lack of legitimate business activity to support investments of any kind—including the loans regularly advanced to PCI by Defendants. Rather, the Alper Complaint alleges:

> Petters, through a multitude of entities and with the assistance of his Associates, would induce investors into financing the purchase of non-existent electronic equipment purportedly secured by fabricated purchase orders or otherwise provide financing for fabricated purposes. Petters would then take the funds invested by later investors and repay initial investors not with the earnings or proceeds from the fabricated business purposes for which the financing was purportedly obtained, but with funds obtained from other investors.

> (Alper Compl. ¶ 20.)

> PCI, through Petters and his Associates, intentionally fabricated the documents to recruit investors into the Ponzi scheme. Petters and his Associates prepared and utilized fabricated documents that were represented to investors to be equipment purchase orders and related documents. The fabricated documents included, but are not limited to, (1) purchase orders from PCI to suppliers purportedly ordering electronic goods, and (2) purchase orders from retailers to PCI purportedly ordering electronic goods for purchase from PCI. The purchase orders and the related documents were entirely fictitious.

> (Alper Compl. ¶ 25.)

As alleged in the Complaints, Petters and his Associates told investors that funds paid to PCI were to be used to purchase electronics products from suppliers for resale to "big-box" retailers such as Sam's Club and Costco. But no such products actually existed. The suppliers were simply shell companies created and controlled by Petters to reroute funds and facilitate the

Ponzi scheme while giving off the appearance of legitimate inventory-financing activity.   As

alleged:

> Petters and his Associates told investors that funds paid to PCI
> were to be used to purchase products, when in reality the funds
> were being funneled to PCI or other entities formed by Petters in
> order to pay early investors with funds received from later
> investors.

(Alper Compl. ¶ 24.)

> To obtain investors in the Ponzi scheme, Petters portrayed PCI as a
> middleman that purchased consumer electronic goods or other
> goods from wholesalers and resold the merchandise to large, "big
> box" retailers such as Costco, Sam's Club and B.J.'s Wholesale
> Club.

(Alper Compl. ¶ 25.)

The Trustee cites specific examples of promissory notes issued by PCI to Defendants that

routinely guaranteed exorbitant rates of return up to 100% and higher.   (Alper Compl. ¶ 39.)

The Trustee further alleges that considerably lower rates were available on the open market

during the relevant time periods.  (Alper Compl. ¶ 42.)  The Complaint also includes examples of

how the loan transactions were structured.

> On numerous occasions, investors entered into a number of
> Promissory Notes (the "Notes") with PCI.   Under the terms and
> conditions of the Notes, Defendants made funds available to PCI
> for various falsely represented business purposes including the
> financing of inventory and the account receivables which would
> result from the sale of purported electronic goods.   Under the
> Notes PCI would pay investors an amount equal to both Principal
> and False Profits.

(Alper Compl. ¶ 22.)

> The Notes were often secured by a Security Agreement entered
> into by PCI   and investor.   The Security Agreement would
> typically provide the investor with a security interest in the
> property described as:

Merchandise as reflected or referred to in the Purchase Order attached hereto as Exhibit A or as reflected or referred to in any future documentation, including bills of lading which relate back to Exhibit A;

Any other merchandise which [PCI] has or will acquire rights in or use of to the extent funds advanced by the Secured Party has enabled [PCI] to acquire an interest in such merchandise; and,

Any and all proceeds which [PCI] has or will acquire through the disposal of such merchandise.

(Alper Compl. ¶ 23.)

Promissory notes, wire-transfer data, and other PCI records reviewed by the Trustee's forensic accountants indicate that funds from later investors were used to pay the promised sizable returns to earlier investors, including Defendants—the hallmark of a Ponzi scheme.

The high rates of return that were promised to investors promoted two essential goals of the Ponzi scheme: (1) to entice investors, such as Defendant, to invest without employing reasonable due diligence in Petters and PCI; and (2) to extend the life of the fraud and to enable Petters and PCI to pay other earlier investors in the fraudulent scheme.

(Alper Compl. ¶ 27.)

PCI would show a "profit" on each transaction because PCI's fabricated purchase order from the big box retailer for the merchandise was always for an amount greater than the amount of PCI's fabricated purchase order to its supplier for the same nonexistent merchandise. Petters and his Associates, through PCI, created fictitious profits at will on each and every transaction by simply writing in the appropriate quantity and price information on the two sets of purchase orders to "produce" the necessary funds.

(Alper Compl. ¶ 28.)

Because the transactions described in the fictitious purchase orders in fact did not exist, the only way PCI was able to transfer sufficient funds to investors including Defendant was by money obtained from other investors, in other words, through the operation, control and management of the Ponzi scheme by Petters and his Associates. Repayment of the Principal and interest in the form of False Profits to these investors comprised a Ponzi scheme

> because they were primarily, if not exclusively, from funds
> invested by other PCI investors.

(Alper Compl. ¶ 29.)

> Petters would then take the funds invested by later investors and
> repay initial investors not with the earnings or proceeds from the
> fabricated business purposes for which the financing was
> purportedly obtained, but with funds obtained from other investors.

(Alper Compl. ¶ 20.)

The Trustee further describes how Petters attracted additional "investors" to perpetuate

the fraudulent scheme by enlisting the help of earlier investors.

> Petters, through PCI and a multitude of shell companies through
> which PCI operated, intended that the payments to early investors
> would induce ongoing, repeated, greater and more widespread
> investment in the Ponzi scheme and thereby further perpetrate and
> extend the life of the fraud.

(Alper Compl. ¶ 21.)

The Trustee's allegations regarding the Ponzi scheme could hardly be more detailed.

Based on the thorough pleadings, the Trustee pleaded that all alleged transfers were made in

furtherance of, and to perpetuate, the Petters Ponzi scheme. As a result, the existence of the

Petters Ponzi scheme establishes that the alleged transfers were made with the intent to hinder,

delay, or defraud creditors. Because the Trustee sufficiently pleaded that the payments to

investors were made with the actual intent to hinder, delay and defraud, the Court should deny

Defendants' motions to dismiss.

> ### 2.     The Adjudication of the Guilt of Petters and His Associates' Criminal
> ###        Guilt Further Establishes the Existence of the Petters Ponzi Scheme.

In addition to the detailed allegations regarding the nature of the Petters Ponzi scheme,

this Court can further find the existence of a Ponzi scheme (to trigger the presumption of

fraudulent intent) based on the jury's verdict of Petters' guilt and the guilty pleas of his

Associates.  The criminal adjudication of guilt, whether arising from a jury verdict or a voluntary

plea agreement and admission of involvement in the perpetuation of a Ponzi scheme, also

establishes the existence of a Ponzi scheme in a subsequent adversary proceeding to avoid and

recover actually fraudulent transfers. *See Barclay v. Mackenzie (In re AFI Holding, Inc.)*, 525

F.3d 700, 704 (9th Cir. 2008) ("Eisenberg's plea demonstrates the existence of fraudulent intent

and a Ponzi scheme."); *In re Slatkin*, 525 F.3d 805, 814 (9th Cir. 2008); *In re Ramirez

Rodriguez*, 209 B.R. 424, 433 (Bankr. S.D. Tex. 1997) (recognizing and finding that "a debtor's

actual intent to hinder, delay or defraud its creditors may be inferred from the mere existence of a

Ponzi scheme); *In re McCarn's Allstate Fin., Inc.*, 326 B.R. 843, 851 (Bankr. M.D. Fla. 2005)

("One way to establish the existence of a Ponzi scheme is through a guilty plea to an information

or indictment that alleges facts sufficient to infer the existence of a Ponzi scheme.").

The Complaints consistently describe the adjudications of guilt (either by plea or jury

verdict) of Petters and his Associates, all of which are a part of the public record and which this

Court can take judicial notice of pursuant to Federal Rule of Evidence 201.  These adjudications

of guilt, and the predicate facts upon which they were based, further establish the existence of the

Petters Ponzi scheme.

> On December 1, 2008, Petters was indicted by a Federal Grand
> Jury in the District of Minnesota.  The Indictment charged Petters
> and PCI with mail and wire fraud, conspiracy to commit mail and
> wire fraud, and conspiracy to commit money laundering, and
> charged Petters alone with money laundering, all in connection
> with the perpetration of and resulting from Petters' and PCI's
> participation in the Ponzi scheme.  On June 3, 2009, a Superseding
> Indictment was filed charging Petters and PCI with wire and mail
> fraud, conspiracy to commit mail and wire fraud and money
> laundering conspiracy and charging Petters alone with money
> laundering, all in connection with Petters' and PCI's participation
> in the Ponzi scheme.  On December 2, 2009, a jury in the United
> States District Court of the District of Minnesota found Petters
> guilty of all 20 counts charged in the Superseding Indictment.  On

> Apr. 8, 2010, Judge Richard H. Kyle sentenced Petters to 50 years
> in prison for his crimes.
>
> (Alper Compl. ¶ 18.)
>
> At various times during the course of the Ponzi scheme, Petters
> was assisted in the operation of the scheme by numerous
> individuals and conspirators, including Deanna Coleman
> ("Coleman"), Robert White ("White"), Larry Reynolds
> ("Reynolds"), Michael Catain ("Catain") and James Wehmhoff
> ("Wehmhoff") (collectively referred to herein as "Associates").
> Coleman pleaded guilty to a single count of conspiracy to commit
> mail fraud.   On September 2, 2010, Judge Richard H. Kyle
> sentenced Coleman to one year and a day in prison for her
> involvement in the fraud.  White pleaded guilty to a single count of
> mail fraud.  Reynolds and Catain have each pleaded guilty to a
> single count of conspiracy to commit money laundering.
> Wehmhoff pleaded guilty to conspiracy to defraud the United
> States, conspiracy to commit tax evasion and one count of aiding
> and assisting in the filing of a false tax return.
>
> (Alper Compl. ¶ 19.)

These guilty pleas, and the guilty verdict rendered by the jury, provide this Court with a further basis for concluding that the Trustee sufficiently pleaded the existence of a Ponzi scheme, invoking the well-established presumption that the transfers to the Defendants were fraudulent because they were made with the intent to hinder, delay and defraud creditors.

### 3.    The Transfers Made to the Employee Defendants[28] Were Made in Furtherance of the Ponzi Scheme.

The Complaints articulate in painstaking detail a massive Ponzi scheme involving numerous shell companies created and controlled by Petters and his Associates to reroute funds and facilitate the Ponzi scheme while giving off the appearance of legitimate inventory-financing

---

[28] Employee Defendants, as that term is used herein, refers to those employees, consultants, officers, directors and friends who the Trustee alleges received avoidable payments unrelated to any investor or lending relationship.  For purposes of an illustrative complaint setting forth the allegations specific to Employee Defendants, the Omnibus Memorandum cites to the complaint in *Kelley v. Hay*, Adv. No. 10-04399, Doc. No. 1, attached hereto in the Appendix.

activity.    Any acts taken in furtherance of the Ponzi scheme, such as paying employees

exorbitant bonuses and other compensation beyond their regular salaries to maintain the

appearance of a legitimate and prosperous business, are also fraudulent.  *See In re World Vision,*

275 B.R. 641, 656 (Bankr. M.D. Fla. 2002) (stating that "any acts taken in furtherance of the

Ponzi scheme, such as paying brokers' commissions, are also fraudulent").  While courts are

"cognizant of the possibility that certain transfers may be so unrelated to a Ponzi scheme that the

presumption should not apply, [courts] proceed under the rule that if a transfer serves to further a

Ponzi scheme, then the presumption applies and 'actual intent' under section 548(a)(1)(A) is

present."  *Bear Stearns Secs. Corp. v. Gredd (In re Manhattan Inv. Fund Ltd.)*, 397 B.R. 1, 11

(S.D.N.Y. 2007).

Petters employed numerous individuals to operate and manage the Ponzi scheme. The

Complaint describes how Petters used the funds from the Ponzi scheme to pay exorbitant

bonuses and make other payments to employees, consultants and friends to enhance and lure

additional investors to the Ponzi scheme.  (Hay Compl. ¶ 32.)  Often, Petters and his Associates

directed that proceeds of the Ponzi scheme be transferred from PCI directly to employees of PCI.

At other times, Petters and his Associates directed proceeds of the Ponzi scheme to be transferred

from PCI to PGW and its subsidiaries or affiliates, to enable those businesses to make payroll

and to pay bonuses and any other incentives to employees.  (*Id*. ¶ 49.)  These payments were

disproportionately large relative to the Employee Defendants' salaries or contributions, and the

payments were not a result of arm's length transactions, or made in furtherance of a legitimate

business purpose.  Rather, the payments were gratuitous, were made in furtherance of the fraud,

and paid to the Employee Defendants to reward their loyalty to the Ponzi scheme.  (*Id*. ¶ 55.) The

payments also had the intended effect of impressing existing and future investors, adding

credibility to the massive Ponzi scheme, and conveying that Petters, PCI and PGW were trustworthy and profitable. (*Id.* ¶ 58.)

Each payment to the Employee Defendants served to further the Ponzi scheme. Indeed, without the appearance of normal business operations and a full complement of loyal staff to operate those businesses, the Ponzi scheme would not have been successful nor would it have reached such epic proportions. *See Cuthill v. Greenmark, LLC (In re World Vision Entm't, Inc.),* 275 B.R. 641, 656 (Bankr. M.D. Fla. 2002) ("[E]very payment made by the debtor to keep the scheme ongoing was made with the actual intent to hinder, delay or defraud creditors, primarily the new investors."); *In re Randy,* 189 B.R. at 437-38 (stating that "[t]he underlying reasoning that courts have used to find that profits paid in a Ponzi scheme to innocent investors are fraudulent transfers applies equally well to commissions paid to brokers who promoted or aided the investment scheme, *whether or not they had any culpable intent.*") (emphasis added). To suggest, as the Employee Defendants do, that their excessive bonus payments were not associated with or in furtherance of the Ponzi scheme is to deny the very existence of the Ponzi scheme itself. The Court may not accept such a fact-dependent argument on a motion to dismiss.

### 4.   The Court Should Not Entertain Fact-Intensive Affirmative Defenses when Ruling on a Motion to Dismiss.

While Defendants contend that not all payments to those providing services to a Ponzi scheme are subject to avoidance, their analysis, and all of the cases they cite in support, focuses entirely on the affirmative defenses articulated in 11 U.S.C. § 548(c) and not on whether the Trustee adequately pleaded the existence of a Ponzi scheme. Pursuant to § 548(c), if the payments to Defendants were held to be fraudulent conveyances pursuant to § 548(a)(1), Defendants may be entitled to the payments to the extent that they gave debtors "value" in exchange for the transfers and provided that the Defendants took the payments in "good faith."

11 U.S.C. § 548(c).  These arguments amount to affirmative defenses that have no place in a motion to dismiss for alleged insufficient pleading.  Moreover, determinations of whether "value" was conferred and, if so, whether payment was received in "good faith" are fact-laden inquiries not ripe for decision at this stage.

The cases cited by Defendants confirm that their asserted defenses involve fact issues. *See Orlick v. Kozyak (In re Fin. Federated Title & Trust, Inc.)*, 309 F.3d 1325, 1332 (11th Cir. 2002) (value and good faith are issues of fact); *Merrill v. Allen (In re Univ. Clearing House Co.)*, 60 B.R. 985, 989 (D. Utah 1986) (if payment was "exorbitant in relation to the services rendered, that discrepancy will be resolved on remand when the bankruptcy court determines whether the value of the services was reasonably equivalent to the transfers made); *Balaber-Strauss v. Lawrence (In re Churchill Mortg. Inv. Corp.),* 256 B.R. 664, 679-80 (Bankr. S.D.N.Y. 2000) (commissions paid to brokers for originating mortgages and soliciting additional investors in good faith, without knowledge that debtor was operating Ponzi scheme, were not subject to avoidance as constructive fraudulent transfers); *Cuthill v. Greenmark, LLC, et al. (In re World Vision Entm't., Inc.),* 275 B.R. 641, 658 (Bankr. M.D. Fla. 2002) (courts must assess "for value and in good faith" for purposes of Section 548(c) on a case-by-case basis looking at the surrounding circumstances).  Accordingly, this Court should decline Defendants' invitation to entertain Defendants' factually intensive affirmative-defense based arguments in determining whether the Trustee sufficiently pleaded causes of action to avoid and recover fraudulent transfers to Defendants.

### B.    The Trustee Particularly Pleaded Numerous Badges of Fraud.

In addition to the detailed pleadings of the operations of the Ponzi scheme, and the criminal adjudication of Petters and his Associates, which gave rise to the Ponzi presumption, the Trustee further pleaded numerous badges of fraud that are sufficient for this Court to infer

fraudulent intent, absent the Ponzi presumption. Because the Trustee sufficiently pleaded facts of the Ponzi scheme's existence, with great specificity, the Court need not consider the badges of fraud in order to deny Defendants' motions to dismiss. *See Sec. Inv. Protection Corp. v. Old Naples Sec., Inc. (In re Old Naples Sec., Inc.),* 343 B.R. 310, 319 (Bankr. M.D. Fla. 2006) ("[C]onsideration of the badges of fraud is unnecessary where a debtor was engaged in a Ponzi scheme."). However, courts have "repeatedly" denied motions to dismiss claims of intentional fraud "when a plaintiff has adequately set forth with specificity the details of the challenged transfers and generally pled a sufficient number of the badges of fraud." *United States v. Rocky Mountain Holdings, Inc.,* No. 08-03381, 2009 WL 564437, at *6 (E.D. Pa. Mar. 4, 2009).

Unlike this case, in the absence of a Ponzi scheme, proving actual fraudulent intent can be difficult. As a result, a plaintiff has long been allowed to plead "badges of fraud" from which fraudulent intent can be inferred. *In re Jacobs,* 394 B.R. 646, 659 (Bankr. E.D.N.Y. 2008). The "presence of several or more of these 'badges of fraud' gives rise to a presumption of fraudulent intent." *Leonard v. Mylex Corp. (In re Northgate Computer Sys., Inc.),* 240 B.R. 328, 360 (Bankr. D. Minn. 1999). "Actual fraudulent intent . . . may be inferred from the circumstances surrounding the transaction, including the relationship among the parties and the secrecy, haste, or unusualness of the transaction." *HBE Leasing Corp. v. Frank,* 48 F.3d 623, 639 (2d Cir. 1995). Once the trustee establishes "a confluence of several badges of fraud, the trustee is entitled to a presumption of fraudulent intent." *Kelly v. Armstrong,* 141 F.3d 799, 802 (8th Cir. 1998). In fact, the confluence of several factors "constitute[s] conclusive evidence of an actual intent to defraud" absent "significantly clear evidence of a legitimate supervening purpose." *Max Sugarman Funeral Home, Inc. v. A.D.B. Inv.,* 926 F.2d 1248, 1254-55 (1st Cir. 1991); *see Brown v. Third Nat'l Bank (In re Sherman),* 67 F.3d 1348, 1354 (8th Cir. 1995).

### 1.     The Trustee Pleaded Numerous Badges of Fraud in All Complaints.

The Trustee adequately pleaded facts and circumstances giving rise to an inference of actual fraudulent intent  to support a fraudulent transfer claim under 11 U.S.C. § 548(a)(1)(A) and Minnesota Statutes § 513.44(a)(1). Among other things, the Complaint makes the following allegations, which are indicia of fraud:

> Petters operated PCI without investor transparency.  Petters generally declined to provide investors with audited financial statements.

(Alper Compl. ¶ 42(a).)

> [Petters] also barred any communication by investors with retailers who Petters represented would be purchasing the fictitious electronics.

(*Id.*)

> Petters also routinely barred investors and insurers from viewing and inspecting the purported electronic goods being financed.

(*Id.*)

> Petters and PCI did not provide investors with electronic online access to accounts which, had the investments been legitimate, would have shown important financial information regarding payments by bona fide retailers and shipments of electronics which was and is generally customary in the industry for purchase-order financing with large retailers.

(*Id.* ¶ 42(b).)

> PCI promised and produced returns that were literally too good to be true, reflecting a pattern of abnormally consistent and significant profitability that was not credible.

(*Id.* ¶ 42(c).)

> Defendant received far higher rates of purported return on its investments with PCI as compared to commercial market rates during the relevant time period.

(*Id.* ¶ 42(d).)

These badges of fraud are sufficient for this Court to conclude that the Trustee pleaded fraud with the requisite particularity required by Rule 9(b), particularly when coupled with the detailed pleadings of the Ponzi scheme operated by Petters.  (*See* Alper Compl. ¶¶ 16-41.)

> **2.     The Trustee Pleaded Numerous Additional Badges of Fraud in the Employee Defendant Complaints.**

Similarly, the Trustee adequately pleaded facts and circumstances giving rise to a presumption of actual fraudulent intent by PCI, PGW, and their subsidiaries or affiliates, to support a fraudulent transfer claim under 11 U.S.C. § 548(a)(1)(A) and Minnesota Statutes § 513.44(a)(1) against the Employee Defendants. Among other things, the Complaints allege the following indicia of fraud:

> Petters, or Petters and his associates, made payments or caused payments which were derived from the Ponzi scheme to be made to directors, officers, employees, consultants, friends and others.

> (Hay Compl. ¶ 33.)

> Petters used funds from the Ponzi scheme to "pay exorbitant bonuses and other payments to employees, consultants and friends to enhance his credibility and lure additional investors into the Ponzi scheme.

> (*Id*. ¶ 32.)

> Additionally, as part of the Ponzi scheme, on multiple occasions Petters, or Petters and his associates, caused monies from PCI – the proceeds of the Ponzi scheme – to be transferred to Petters' controlled businesses, including but not limited to PGW and its subsidiaries or affiliates, to enable those businesses to make payroll and to pay bonuses, severance payments, commissions or other incentives to employees, directors and officers and consultants, or directly to such employees, directors, and officers and consultants for such purposes.  These transfers were made with the intent to defraud and to sustain the Ponzi scheme.

> (*Id*. ¶ 49.)

> Defendant received and accepted the payment transfers despite the unreasonable amounts of the payments and failed to exercise

reasonable due diligence with respect to the source and amount of the payments.

(*Id.* ¶ 57.)

The payment transfers are disproportionately large relative to Defendants' salaries and were not a result of arm's length transactions, or made in furtherance of a legitimate business purpose, but rather were gratuitous, were made in furtherance of the fraud, and paid to defendant to reward his loyalty to the Ponzi scheme.

(*Id.* ¶ 55.)

The payment transfers to Defendant exceeded the market value of equivalent types of payments for equivalent performance during the relevant time period.

(*Id.* ¶ 56.)

The payment transfers and note transfers (collectively, the "Transfers") to Defendant, and to employees, directors, officers and consultants, were made as part of the Ponzi scheme to impress existing and future investors, add credibility to the massive Ponzi scheme, convey that Petters, PCI and PGW were trustworthy, impressive and profitable.

(*Id.* ¶ 58.)

These badges of fraud are sufficient for this Court to conclude that the Trustee pleaded fraud with the requisite particularity required by Rule 9(b) as to all transfers made to the Employee Defendants, particularly when coupled with the detailed pleadings of the Ponzi scheme operated by Petters.

## C.   Defendants' Characterization of the Transfers as Loan Repayments Is Irrelevant.

Several Defendants, mischaracterizing their transactions with PCI as mere loan repayments, argue that the Trustee has not alleged a claim of actual fraud under MUFTA or 11 U.S.C. § 548 because the transfers to them represent the repayment of an antecedent debt and

cannot constitute an effort to hinder, delay or defraud PCI's creditors.[29]  In support of this

argument, Defendants rely heavily on *Sharp Int'l Corp. v. State Street Bank & Trust Co. (In re

Sharp Int'l Corp.)*, 403 F.3d 43 (2d Cir. 2005).  Defendants greatly overstate the court's holding

in *Sharp,* which in any event is inapplicable here because it did not involve a Ponzi scheme and

because it did not plead fraudulent intent on behalf of the transferor with respect to the transfers

at issue.

In *Sharp*, the debtor closely-held corporation was systematically looted by its managers.

*Id*. at 46-47.   One of the debtor's lenders, State Street Bank, discovered the looting and

demanded repayment of a loan it had extended before the fraud began.  *Id*. at 47-49.  After the

debtor filed bankruptcy, it commenced an adversary proceeding against State Street Bank

alleging, among other claims, fraudulent transfer claims under New York law.  The debtor's

complaint was dismissed because the debtor failed to plead that the repayment of the earlier loan

was made with fraudulent intent.  *Id*. at 55 (finding that "no ground exists therefore to 'collapse'

that loan with other (non-contemporaneous) bad-faith maneuvers").

Defendants in other Ponzi scheme cases have attempted to use *Sharp* to avoid liability for

actual fraud under fraudulent transfer laws,   like Defendants attempt to do here, but those

attempts to extend *Sharp* beyond its limited holding have been uniformly rejected, most recently

in *Armstrong v. Collins*, No. 01-02437, 2011 WL 308260 (S.D.N.Y. Jan. 31, 2011).  *Armstrong*

involved a Ponzi scheme and the court found that transfers to the defendants were related to the

scheme.  *Id*. at *2.  In rejecting the defendants' contention that *Sharp* precluded their liability, the

court explained

---

[29] The Defendants who raise this argument are listed in Chart 8, attached hereto in the Appendix.

> [The defendants] have offered no evidence to suggest that these
> transfers were insulated from this large and growing Ponzi scheme.
> This case is not like *In re Sharp Int'l Corp. . . .*, where the Court
> determined that the repayment of a pre-existing loan was not
> related to the fraudulent scheme.  The transfers at issue here are
> not isolated transactions.  They were integral to the perpetuation of
> the Ponzi scheme.

*Id.*  In other words, *Sharp* was unhelpful to Defendants where the transfers at issue are alleged to

be a part of and in furtherance of a Ponzi scheme.

Similarly, in *Christian Brothers High School Endowment v. Bayou No Leverage Fund,*

*LLC (In re Bayou Group, LLC),* 439 B.R. 284 (S.D.N.Y. 2010), the court held *Sharp* did not

apply to allegations of actual fraud in connection with a Ponzi scheme.  Noting that the debtor in

*Bayou* pleaded and proved the payments to defendants were "integral and essential" to the

fraudulent scheme, and that the "payments hindered, delayed, and defrauded Bayou's creditors

by, *inter alia*, forestalling disclosure of the fraudulent scheme," the court found that the

circumstances of the *Bayou* case "could not be more different" than *Sharp*.  *Id.* at 302.

Accordingly, the court concluded, *Sharp* provides no basis for dismissing Debtors' actual

fraudulent conveyance claim."  *Id.*

Finally, the court in *Bear, Stearns Securities Corp. v. Gredd (In re Manhattan Inv. Fund

Ltd.)*, 397 B.R. 1 (S.D.N.Y. 2007), also rejected a defendant's attempt to apply *Sharp* to actual

fraud claims arising from a Ponzi scheme.  According to the court in *Bear, Stearns*, a transfer

that "serves to further a Ponzi scheme" falls outside the limited rule stated in *Sharp* and

demonstrates actual fraud because the transfer is intended to hinder, delay or defraud creditors.

*Id.* at 11.

Here, the Trustee alleged the existence of a long-running Ponzi scheme and alleged that

the transfers to the Defendants were part of that scheme and were intended to hinder, delay, or

defraud PCI's creditors.  *Sharp* does not apply in this context, and the Defendants' arguments based on *Sharp* are without merit.  For the same reasons, the other cases cited by Defendants in their effort to apply *Sharp* are equally inapposite.  *See, e.g., Henry v. Lehman Comm'l Paper, Inc. (In re First Alliance Mortgage Co.)*, 471 F.3d 977 (9th Cir. 2006*) (not instructive because the transfers satisfied a fully secured loan)*; *B.E.L.T., Inc. v. Wachovia Corp.*, 403 F.3d 474 (7th Cir. 2005) (not instructive because actual intent to hinder, delay or defraud creditor was not adequately pleaded or found in a non-Ponzi case); *Boston Trading Group, Inc. v. Burnazos*, 835 F.2d 1504 (1st Cir. 1987) (failed to plead or prove transfers were made with actual intent to hinder, delay or defraud in a non-Ponzi case).  Like *Sharp*, none of these cases involved Ponzi schemes and are inapposite.

## V.     The Trustee Adequately Pleaded Claims for Constructive Fraud.

The Complaint pleads in detail facially plausible claims to recover constructive fraudulent transfers to the Defendants.[30]  The elements of a constructive fraudulent transfer claim are set out in 11 U.S.C. § 548(a)(1) and Minnesota Statutes §§ 513.44(a)(2) and 513.45(a).  Section 548(a)(1) provides:

> The trustee may avoid any transfer of an interest of the debtor in property that was made within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily –
>
> (B)(i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and
>
> (ii)(I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;

---

[30] The Defendants who move to dismiss the Trustee's constructive fraud claims are listed on Chart 9, attached hereto in the Appendix.

(II) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital;

(III) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured; [or]

(IV) made such transfer to or for the benefit of an insider, or incurred such obligation to or for the benefit of an insider, under an employment contract and not in the ordinary course of business.

11 U.S.C. § 568(a)(1).  The Trustee pleaded such facts and therefore the constructive fraudulent transfer claims survive a motion to dismiss.

As set forth above, to specifically plead a constructive fraudulent transfer the Trustee needs only to "set forth the facts with sufficient particularity to apprise the defendant fairly of the charges made against him  . . . so that the Defendants can prepare an adequate answer to the allegations." *Hassett v. Zimmerman (In re O.P.M. Leasing Servs., Inc.),* 32 B.R. 199, 203 (Bankr. S.D.N.Y. 1983) (citations omitted).  To adequately plead a fraudulent transfer claim, a well-pleaded complaint need only specify "the dates of the transfers claimed to be fraudulent, the recipients of those transfers, and their amounts." *United States v. Bame,* No. 11-00062, 2011 WL 1167085, at *3 (D. Minn. Mar. 28, 2011);  *see also In re M. Fabrikant & Sons, Inc.,* 394 B.R. 721, 736 (Bankr. S.D.N.Y. 2008) (finding the amended complaint sufficiently alleges the lack of reasonably equivalent value based on the "worthless or near-worthless" value of the loan receivables received).

The Trustee adequately pleaded constructive fraudulent transfer claims pursuant to 11 U.S.C. § 548(a)(1)(B)(i) and (ii) and Minnesota Statutes §§ 513.44(a)(2) and 513.45(a).  The arguments in support of the Trustee's constructive fraud claims under the Bankruptcy Code apply equally to the claims brought under MUFTA, and the Court's conclusion that the Trustee

pleaded viable § 548 constructive fraud claims will be dispositive of whether the Trustee pleaded

viable MUFTA constructive fraud claims. *See Leonard v. Mylex Corp. (In re Northgate*

*Computer Sys., Inc.)*, 240 B.R. 328, 367 (Bankr. D. Minn. 1999) ("[B]ecause of the near-identity

of the statutory elements [of Minn. Stat. § 513.44(a)(2)] . . . the analysis under [11 U.S.C. §

548(a)(2)] is applicable here and no further discussion is warranted.").

## A.   Constructive Fraud Claims Are Not Subject to the Heightened Pleading Requirements of Rule 9(b).

As expressed in 11 U.S.C. § 548(a)(1)(B) and its state law counterpart, Minnesota

Statutes §§ 513.44(a)(2) and 513.45(a), "constructive fraudulent conveyance claims do not

require proof of fraud or even wrongdoing." *Silverman v. Actrade Capital, Inc. (In re Actrade*

*Fin. Techs. Ltd.)*, 337 B.R. 791, 801-02 (Bankr. S.D.N.Y. 2005).   Rather, avoidance actions

under § 548(a)(1)(B) of the Bankruptcy Code are "based on the transferor's financial condition,

value given in exchange for the transfer, and the terms and conditions of the transaction." *Id.* at

802 (citation omitted).   Many courts have therefore held that the heightened pleading standard of

Rule 9(b) for allegations of fraud does not apply to constructive fraudulent transfer claims. *See,*

*e.g., In re Juliet Homes, LP,* No. 07-36424, 2010 WL 5256806 (Bankr. S.D. Tex. Dec. 16, 2010)

("[W]ith constructive fraud, the actor's intent is irrelevant.   Because constructive fraud does not

require proof of scienter, Rule 9(b)'s heightened pleading requirements do not apply, and the

pleading of a constructive fraud claim must only comply with Rule 8(a)."); *Gold v. Winget (In re*

*NM Holdings Co., LLC)*, 407 B.R. 232, 259 (Bankr. E.D. Mich. 2009) (citations omitted).   This

Court should do the same.[31]

---

[31] The Trustee recognizes that *Kranz v. Koenig*, 240 F.R.D. 453 (D. Minn. 2007), is one of the
few decisions to hold that Federal Rule of Civil Procedure 9(b) applies to both actual and
constructive fraudulent transfer claims.   The Trustee respectfully disagrees, in part, with the

To satisfy the pleading requirements of Rule 8, the complaint need only contain sufficient factual matter to state a claim for relief that is plausible on its face. *Iqbal*, 129 S. Ct. at 1949. To meet this test, a "fraudulent transfer claim based on constructive fraud need only allege that the transfer was made without reasonably equivalent value while the debtor was insolvent . . . there is no reason to require a trustee to plead a defendant's fraud or misconduct with specificity if such fraud or misconduct is not an element of the trustee's fraudulent transfer claim." *State Bank & Trust Co. v. Spaeth (In re Motorwerks, Inc.)*, 371 B.R. 281, 295 (Bankr. S.D. Ohio 2007). Similarly, as to the pleading of the debtors' insolvency for purposes of a constructive fraud claim, "a general allegation of insolvency provides a defendant fair notice of the plaintiff's contention and renders sufficient information from which a defendant may create discovery requests in order to defend, as in any civil action." *Sharp v. Chase Manhattan Bank, USA, N.A. (In re Commercial Fin. Servs., Inc.)*, 322 B.R. 440, 451 (Bankr. N.D. Okla. 2003). Finally, insolvency is determined as a matter of law in a Ponzi scheme, which as been adequately pleaded as previously addressed. This Court should hold that constructive fraud claims must be pleaded pursuant to Federal Rule of Civil Procedure 8(a), not Rule 9(b).

### B. The Merits of the Fact-Intensive Elements of the Trustee's Constructive Fraud Claims Are Not Properly Determined on a Motion to Dismiss.

It is universally held that the elements of § 548(a)(1)(B) of the Bankruptcy Code involve questions of fact that may not be resolved through a motion to dismiss. *See In re Ozark Rest.*

---

holding of *Kranz*, and asks this Court to instead follow the many courts that hold that constructive fraudulent transfer claims should not be required to be pleaded with the particularity required by Rule 9(b), and should be pleaded consistent with the pleading standards under Rule 8(a)(2). This Court is not bound by the doctrine of *stare decisis* to follow *Kranz*. *Talking Rain Beverage Co. v. NHB, LLC (In re NHB, LLC)*, 287 B.R. 475, 479-80 (Bankr. E.D. Mo. 2002); *First Am. Bank v. Gaylor (In re Gaylor)*, 123 B.R. 236, 241-43 (Bankr. E.D. Mich. 1991).

*Equip. Co., Inc.,* 850 F.2d 342, 344 (8th Cir. 1988); *In re Northgate Computer Sys., Inc.*, 240

B.R. 328, 365 (Bankr. D. Minn. 1999); *see also Rosener v. Majestic Mgmt., Inc. (In re OODC,*

*LLC),* 321 B.R. 128, 141 (Bankr. D. Del. 2005); *In re Actrade*, 337 B.R. 791, 804 (Bankr.

S.D.N.Y. 2005); *Forman v. Jeffrey Matthews Fin. Group, LLC. (In re Halpert & Co.),* 254 B.R.

104, 115 (Bankr. D.N.J. 1999); *Yoder v. T.E.L. Leasing, Inc. (In re Suburban Motor Freight,*

*Inc.),* 124 B.R. 984, 998 (Bankr. S.D. Ohio 1990).

    This principle is equally true regarding the Trustee's state law constructive fraud claims.

A motion to dismiss is simply not the appropriate means "to fully address the rather complex and

abstruse fact questions raised by Minnesota Statutes §§ 513.44(a)(2)(i)-(ii)." *Leonard v. Norman*

*Vinitsky Residuary Trust (In re Jolly's, Inc.)*, 188 B.R. 832, 846 (Bankr. D. Minn. 1995)

(denying summary judgment when evidence regarding allegedly fraudulent transfers raised

"triable fact issues").  Certain Defendants rely on *Kaler v. Able Debt Settlement (In re Kendall)*

for the proposition that there is no "illegality exception" to determining reasonably equivalent

value.  440 B.R. 526 (B.A.P. 8th Cir. 2010).  However, *Kendall* did not deal with a Ponzi

scheme, it involved a contract with a debt settlement company that violated a state statute.

*Kendall* underscores the searching review a court must undertake when determining reasonably

equivalent value irrespective of the underlying fraudulent or illegal documents.  A court is not

required to place superficial form over fraudulent substance when determining whether

reasonably equivalent value is given in the context of a Ponzi scheme.  Minnesota law recognizes

that when evaluating a transfer for reasonable equivalent value, courts must "examine the entire

situation" based on a totality of the circumstances approach that "reviews the factors in each

individual case." *Lindquist v. JNG Corp. (In re Lindell)*, 334 B.R. 249, 255-56 (Bankr. D. Minn.

2005).

The Court should therefore decline to address Defendants' factual arguments raised on the merits of the Trustee's constructive fraud claims.

### C. The Trustee's Constructive Fraud Claims Comport with the Pleading Requirements of Federal Rules of Civil Procedure 8 and 9(b).

The Complaints identify each claimed, constructive fraudulent transfer made to the Defendants in the attached exhibits. In addition to the dollar amount of each transfer received by Defendants, the exhibits include the specific dates on which the transfers took place. The Trustee's pleadings with respect to reasonably equivalent value, the debtors' insolvency, unreasonably small trading capital and debts beyond the debtors ability to pay, and insider status are adequate to withstand a motion to dismiss under either the Rule 8 or the heightened Rule 9(b) standard. The Trustee's constructive fraud claims under MUFTA are similarly well pleaded, state actionable claims of relief pursuant to Minnesota Statutes §§ 513.44(a)(2) and 513.45(a), and survive a motion to dismiss for all the same reasons the § 548 constructive fraud claims survive. *Leonard,* 240 B.R. at 356.

### 1. The Trustee Adequately Pleaded that the Debtors Did Not Receive Reasonably Equivalent Value from Defendants.[32]

Defendants contend that the claims against them are segregated into transfers of principal and transfers of interest. This is incorrect. First, under the Trustee's actual fraud claims, principal and false profits arise as a result of the application of a fact intensive affirmative defense of good faith and value which is inappropriate to consider on a motion to dismiss. Second, under the Trustee's constructive fraud counts, the claims for principal and false profit arise from an analysis of reasonably equivalent value, a similarly fact-intensive inquiry not

---

[32] The Defendants moving to dismiss the Trustee's constructive fraud claims on the grounds that PCI received reasonably equivalent value are listed on Chart 10, attached hereto in the Appendix.

properly considered on a motion to dismiss. Instead, it is enough at this stage to determine that the Trustee has properly pleaded that the debtor received no reasonably equivalent value.

Although the Bankruptcy Code does not define "reasonably equivalent value," courts have generally found that a debtor receives reasonably equivalent value when the consideration received from the transfer is equal in value to the property given to the transferee. *See, e.g., Pummill v. Greensfelder, Hemker & Gale (In re Richards & Conover Steel, Co.)*, 267 B.R. 602, 612 (B.A.P. 8th Cir. 2001). In the context of a Ponzi scheme, courts have reasoned that principal invested into a Ponzi scheme creates a claim for restitution and rescission against the debtor due to the debtor's fraudulent inducement. *See, e.g., Wyle v. C.H. Rider & Family (In re United Energy Corp.)*, 944 F.2d 589, 596 (9th Cir. 1991) (holding that investors who were duped into buying solar modules as part of fraudulent scheme "had claims for rescission and restitution which arose when they bought the modules, regardless of whether there existed a contractual right to the return of principal."); *Merrill v. Abbott (In re Indep. Clearing House Co.)*, 77 B.R. 843, 857 (D. Utah 1987).

Defendants read the case law addressing investor claims asserted against the perpetrator behind a Ponzi scheme to mean that each investor in the Petters Ponzi scheme gave PCI reasonably equivalent value when they were repaid their principal investment, thereby defeating the Trustee's constructive fraud claims with respect to that principal investment. In doing so, Defendants miss the mark. This judicially fashioned rule only applies to truly innocent investors, not where (as in these cases) the transferees are alleged on the face of the Complaint to have taken the transfers without good faith. *Picard v. Merkin (In re Bernard L. Madoff Inv. Sec., LLC)*, 440 B.R. 243 (Bankr. S.D.N.Y. 2010) (citing *Donell v. Kowell*, 533 F.3d 762, 772 (9th Cir. 2008)) ("Only *innocent* investors who reasonably believed that they were investing in a

legitimate enterprise are entitled to claims for restitution.") (emphasis added); *Picard v. Estate of Stanley Chais (In re Bernard L. Madoff Inv. Secs., LLC)*, No. 08-01789, 2010 WL 5841402, at *15 (Bankr. S.D.N.Y. Feb. 24, 2011).

A transferee who had knowledge of, or participated in, the debtor's fraud does not have a claim for restitution because there can be no "debt" for which value can be given to the debtor in exchange for *any* payments received by the complicit transferee. *See, e.g., In re United Energy Corp.*, 944 F.2d at 596 n.7 ("If investments were made with culpable knowledge, *all* subsequent payments made to such investors within one year of the debtors' bankruptcy would be avoidable under section 548(a)(2), *regardless of the amount invested*, because the debtors would not have exchanged a reasonably equivalent value for the payments.") (emphasis added); *Fisher v. Sellis (In re Lake States Commodities, Inc.)*, 253 B.R. 866, 872 (Bankr. N.D. Ill. 2000) ("[A]n investor having actual knowledge of the underlying fraud may not have a claim for restitution, and will not be deemed to have given reasonably equivalent value in exchange for payments from a Ponzi scheme."). Only those Defendants who are "innocent" investors (i.e., that sustain their burden of proving they took the transfers in good faith) may retain principal based on the rationale that value was given in exchange for the satisfaction of an antecedent debt. *Sender v. Buchanan (In re Hedged-Invs. Assocs., Inc.)*, 84 F.3d 1286, 1290 (10th Cir. 1996) (holding that an investor who was *undisputedly* "fraudulently induced" to participate in a Ponzi scheme had a restitution claim up to the amount invested).

The focus on the nature of the transaction between the Debtors and the Defendants is not directly relevant to the Court's evaluation of whether the Complaints allege that reasonably equivalent value was provided. Instead, the focus of fraudulent conveyance law is to preserve assets of the estate. Reasonably equivalent value is determined from the standpoint of the

estate's creditors.  It is not determined from the defendant's perspective. *See Frontier Bank v. Brown (In re N. Merch., Inc.),* 371 F.3d 1056, 1059 (9th Cir. 2004) (citing *Harman v. First Am. Bank (In re Jeffrey Bigelow Design Group, Inc.),* 956 F.2d 479, 484 (4th Cir.1992)) (primary focus is on the net effect of the transaction on the debtor's estate and the funds available to pay the unsecured creditors).

As to false profits from a Ponzi scheme, numerous courts have held that transfers made as part of the scheme were made with the intent to hinder, delay or defraud and that any profits based on the transfer cannot provide reasonably equivalent value as a matter of law. *Gunten v. Neilson (In re Slatkin)*, 243 Fed. Appx. 255, 259 (9th Cir. 2007); *Scholes v. Lehmann*, 56 F.3d 750, 757 (7th Cir. 1995); *Conroy v. Schott*, 363 F.2d 90, 92 (6th Cir. 1966); *In re Bayou,* 362 B.R. 624, 636 (Bankr. S.D.N.Y. 2007) ("[V]irtually every court to address the question has held unflinchingly 'that to the extent that investors have received payments in excess of the amounts they have invested, those payments are voidable as fraudulent transfers.'") (citations omitted); *Dicello v. Jenkins (In re Int'l Loan Network)*, 160 B.R. 1, 16 (Bankr. D.D.C. 1993) (in the context of commission payments holding that enforcing a contract for selling efforts in a Ponzi scheme would only exacerbate the harm to creditors by increasing the amount of claims while diminishing the debtor's estate).   In so holding, the courts recognize an overriding public interest in precluding recovery for any investor in excess of the investor's original investment and to the detriment of other investors.  *In re Taubman*, 160 B.R. 964, 985 (Bankr. S.D. Ohio 1993); *Merrill v. Abbott (In re Ind. Clearing House Co.),* 77 B.R. 843, 857 (D. Utah 1987) ("[W]hether the debtors were indebted to a defendant for amounts in excess of his undertaking depends on whether or not the defendant had a valid, enforceable right under his contract with the debtors to receive payments of so-called earnings."); *Floyd v. Dunson (In re Ramirez Rodriguez)*, 209 B.R.

424, 434 (Bankr. S.D. Tex. 1997) ("As a matter of law, the debtors did not receive value in

exchange for the transfers to the defendant under the base participation contracts, subcontracts,

and guaranties that exceeded the principal amount of the defendant's investments with the

debtors.")

> [I]n some cases "the interest of the public, rather than the equitable
> standing of individual parties, is of determining importance." …
> [w]e believe that this is such a case. To allow an undertaker to
> enforce his contract to recover promised returns in excess of his
> undertaking would be to further the debtors' fraudulent scheme at
> the expense of other undertakers.

*In re Ind. Clearing House,* 77 B.R. at 857. The Court should apply the overwhelming body of

caselaw holding that in the context of a Ponzi scheme, transfers to a defendant that exceed the

amount that defendant transferred to the debtor cannot be for reasonably equivalent value.

Defendants attempt to distinguish this long-standing practice of denying false profits, and

mistakenly focus on a number of cases which hold that false profits representing "reasonable"

rates of interest which compensate that investor for the time value of money are reasonably

equivalent value. *Lustig v. Weisz and Assoc. (In re Unified Commercial Capital, Inc.),* 260 B.R.

343, 351-53 (Bankr. W.D.N.Y. 2001); *Daly v. Deptula (In re Carrozzella & Richardson)*, 286

B.R. 480, 491 (D. Conn. 2002).   These cases, however, are easily distinguishable from the

present cases because here the Trustee has pleaded that the Defendants did not act in good faith

in connection with the transactions and the transactions did not involve *commercially reasonable*

rates of return.   (Alper Compl. ¶¶ 27, 39, 42(c), 42(d)); *see Christian Brothers High School*

*Endowment v. Redwood Growth Partners (In re Bayou Group, LLC)*, 439 B.R. 284, 337

(S.D.N.Y. 2010) (determining the transfers in the Ponzi scheme were made for no reasonably

equivalent value and finding *In re Unified Commercial Capital* and *In re Carrozzella &*

*Richardson* distinguishable "because they involved *commercially reasonable*, contractually guaranteed rates of return.") (emphasis added).

The court in *Carrozzella & Richardson* found profit to be reasonably equivalent value on facts starkly different from those alleged by the Trustee here.  In that case, the payment of interest on loans having interest rates between 8 percent and 15 percent, at a time when prime exceeded 15 percent, and where there was no indication that the profits defendants received from the debtor came from other investors, as opposed to legitimate transactions, resulted in the conclusion that the "profit" in a Ponzi scheme was a reasonably equivalent value.  286 B.R. at 491 (the return provided "was not the typical 'too-good-to-be-true' investment scheme."). Similarly, in *Unified Commercial Capital*, the debtor promised investors a 12 percent per annum return for the use of $100,000 for a minimum of one year, which the court found was a reasonable rate of contractual interest for 1997.  260 B.R. at 353.

Here, the Trustee pleaded that the interest rates paid by PCI were unreasonable and too good to be true, that there were no legitimate transactions, and that the Defendants did not receive the relevant transfers in good faith.  Such facts make *Unified Commercial Capital* and *In re Carrozzella & Richardson* inapplicable.  Defendants' motions to dismiss must be denied as requiring a fact intensive inquiry not appropriate on a motion to dismiss.

The Trustee alleged Defendants knew or should have known that Petters and his Associates were orchestrating a fraudulent scheme through the artifice of PCI and the SPEs. They had actual and/or constructive notice of numerous "indicia of fraud."  (*See* Alper Compl. ¶¶ 42(a)-(e).)  The Complaints detail the manner by which Petters and his Associates concealed critical information from Defendants who, as sophisticated investors with ample available resources, failed to take reasonable steps to investigate PCI's business operations before or after

advancing considerable sums to Petters-controlled entities.   The Complaints also describe the

extraordinary rates of return promised to Defendants by Petters.   These loans or investments

guaranteed and delivered to Defendants unusually high and abnormally consistent returns

regardless of existing economic conditions.   These well-pleaded facts must be taken as true.

The Trustee pleaded that Defendants either had actual or constructive knowledge that

Petters was perpetrating a fraud through PCI and therefore did not provide reasonably equivalent

value to the Debtor in exchange for the transfers.   The Court is required, on a motion to dismiss,

to accept all of the Trustee's allegations as true.   Accordingly, the Court need not consider the

merits of Defendants' "good faith" contentions because they are inappropriate for a motion to

dismiss.   *See In re Actrade Fin. Techs. Ltd.*, 337 B.R. 791, 804 (Bankr. S.D.N.Y. 2005).   The

allegations of the Complaint are sufficient to state a claim for constructive fraudulent transfers

because, taking the allegations to be true and correct, PCI received no value in exchange for the

transfers to the Defendants.

### 2.   The Trustee Adequately Pleaded Lack of Reasonably Equivalent Value with Respect to the Employee Defendants.

In the employment context, whether equivalent value was exchanged for the employee's

services is an especially fact-intensive determination requiring a two-step process—a process

which at this stage would be premature. First, the Court must determine whether the debtor

received value.   *Mellon Bank. N.A. v. Official Comm. of Unsecured Creditors of R.M.L., Inc. (In*

*re R.M.L., Inc.),* 92 F.3d 139, 154 (3d Cir. 1996).   Second, the Court must examine whether the

value received is reasonably equivalent to the value transferred.   *Id.*   In doing so, the Court must

examine all aspects of the transaction to measure carefully the value of the benefits received by

the plaintiff.   *Id.*   The quality of professional services, such as those claimed to be provided by

the Employee Defendants, falls squarely within the scope of that analysis.   *Murray v. Prescott,*

*Ball & Turben, Inc. (In re Chicago, Missouri & Western Ry. Co.)*, 124 B.R. 769, 773 (Bankr. N.D. Ill. 1991).

The Employee Defendants do not argue that the Complaints fail to plead these elements. Rather, with respect to employee bonuses, the Employee Defendants argue that pleading a Ponzi scheme and identifying the dates, amounts and the identity of the transferor and transferee is insufficient. They claim that the Trustee is also required to (1) "indicate what types of payments would have been reasonable," (2) include "market studies that suggest what an appropriate compensation plan would be," and (3) provide a comparison of the "Employee-Defendant to a similarly situated employee in a similar company." (*See, e.g.,* Hay Mem. at 21.) Defendants do not cite a single case requiring such detailed pleading.

The factual allegations in the Complaints provide the Employee Defendants with clear notice of what the Trustee intends to prove; namely, that the Employee Defendants did not provide services that justified the enormous bonus payments and other compensation they received. Accordingly, the Complaints detail the transfers received by the Employee Defendants, when those transfers were received, from which entity or entities they received the transfers, and the purported purpose of the transfers. This is all that is required at this stage. The fact that the Employee Defendants desire market studies, a compensation comparison with similarly situated employees in other companies, and an evaluation of "work tasks, accomplishments and work performance" establishes itself that the Employee Defendants have more than fair notice of the claim and "can prepare an adequate answer to the allegations." *Hassett v. Zimmerman (In re O.P.M. Leasing Servs., Inc.),* 32 B.R. 199, 203 (Bankr. S.D.N.Y. 1983).

On the present record, the Employee Defendants are not entitled to summary dismissal of the constructive fraud claims. At a minimum, extensive questions of fact exist as to whether the Employee Defendants provided "reasonably equivalent value" in exchange for the sizeable bonuses and other payments they received. The Employee Defendants' motion to dismiss must therefore be denied.

### 3. The Trustee Adequately Pleaded the Third Element of a Constructive Fraudulent Transfer Claim by Alleging the Debtors' Insolvency, Unreasonably Small Capital and Inability to Pay Debts.[33]

The factual allegations in the Complaints sufficiently plead the third element of a constructive fraudulent transfer claim: insolvency, unreasonably small capital and that the Debtors incurred debts beyond the debtors' ability to pay. (*See* Alper Compl. ¶¶ 59, 65, 71). In addition, as discussed below, insolvency is presumed in a Ponzi scheme.

In 1924, the Supreme Court, in the original Ponzi case, observed that schemes in the nature of a Ponzi scheme are insolvent as a matter of law, noting that Charles Ponzi "was always insolvent, and became daily more so, the more his business succeeded. He made no investments of any kind, so that all the money he had at any time was solely the result of loans by his dupes." *Cunningham v. Brown*, 265 U.S. 1, 8 (1924). Consistent with *Cunningham*, several courts have held, as a matter of law and consistent with *Cunningham*, that a debtor operating a Ponzi scheme is insolvent during the entirety of the scheme. *See, e.g., Scholes v. Lehmann*, 56 F.3d 750, 755 (7th Cir. 1995) (holding that the claims of investors made a Ponzi scheme insolvent from beginning); *In re Indep. Clearing House*, 77 B.R. at 871 ("By definition, an enterprise engaged in a Ponzi scheme is insolvent from day one."); *In re Randy*, 189 B.R. at 441 (holding that a

---

[33] The Defendants moving to dismiss on the grounds that the Trustee did not sufficiently plead insolvency are listed in Chart 11, attached hereto in the Appendix.

Ponzi scheme made the debtor insolvent from the scheme's inception, as a matter of law); *Emerson v. Maples (In re Mark Benskin & Co).*, 161 B.R. 644, 650 (Bankr. W.D. Tenn. 1993) (same). In the context of a classic Ponzi scheme, as in this case, no legitimate business operation exists, and therefore the only reasonable inference is that the debtor was insolvent from the outset. *In re Taubman*, 160 B.R. 964, 978 (Bankr. S.D. Ohio 1993) (citation omitted) ("The promised rates of return, because they are in excess of any real investments, render a Ponzi scheme operator insolvent from the inception of the scheme. As the scheme progresses and more and more investors are promised returns, the operator becomes more insolvent.").

A debtor is further presumed to be insolvent when, as a result of the transfers, the property remaining with the debtor constituted unreasonably small capital, or the debtor intended or believed that it would incur debts beyond its ability to pay as those debts matured. *See* 11 U.S.C. § 548(a)(1)(B)(ii)(II), (III) and Minn. Stat. § 513.44(a)(2). The existence of a Ponzi scheme necessarily results in unreasonably small capital. *In re Benskin & Co, Inc.*, 161 B.R. at 650 ("[T]he fact that the debtor operated primarily if not exclusively on fraudulently obtained funds establishes that the debtor had little if any legitimate operating capital. It would seem axiomatic that the debtor was operating its business with unreasonably small capital."). A debtor that perpetuates a Ponzi scheme by inducing additional cash infusions from investors without any legitimate business to generate funds for repayment is acutely aware of its inability to pay debts as they mature. *See Taubman*, 160 B.R. at 978 ("As a result of the absence of sufficient, or any, assets able to generate funds necessary to pay the promised returns, the success of such a scheme guarantees its demise because the operator must attract more and more funds, which thereby creates a greater need for funds to pay previous investors, all of which ultimately causes the scheme to collapse."). The mere existence of a Ponzi scheme, alone—which in this case is

well pleaded by the Trustee—must by its very nature satisfy the statutory definition of insolvency, unreasonably small capital, and inability to pay debts as they became due.

The allegations of each Complaint assert that Petters and his Associates fabricated purchase orders as early as 1993 to obtain funds from the Defendants. (Alper Compl. ¶¶ 25, 26.) Thus no legitimate business activity ever existed from which PCI could generate the *real* profits necessary to provide investors with the returns they were promised or the exorbitant "bonuses" Petters paid to employees, consultants and friends. Petters and his Associates operated PCI as a fraudulent Ponzi scheme from day one. (*Id.* ¶ 17.) The company became more and more insolvent with each new promissory note obligating PCI to repay Defendants millions in principal and false profits. Because the entire operation was a sham, and so-called "profits" on the sale of fictitious merchandise existed only on paper, PCI possessed unreasonably small capital—if any—from its formation to its dissolution. (*Id.* ¶ 71.) As a result, PCI was presumptively insolvent throughout its entire existence. The transfers listed in the exhibits attached to each Complaint begin in the early 1990s and continue until shortly before the FBI raided Petters' businesses in September 2008. Based on the allegations in the Complaint that Petters was running a Ponzi scheme through PCI, PGW and the SPEs, and was insolvent from its inception until it collapsed in 2008, in addition to the detailed allegations that the transfers were not made for reasonably equivalent value, the Trustee sufficiently pleaded a valid claim for avoiding the transfers as constructively fraudulent under 11 U.S.C. § 548(a)(1)(B) and Minnesota Statutes §§ 513.44(a)(2), 513.45(a).

### 4. The Trustee Adequately Pleaded Insider Status.

The Employee Defendants argue that the Trustee failed to adequately plead insider transfer claims pursuant to 11 U.S.C. § 548(a)(1)(B)(ii)(iv) and Minnesota Statutes

§ 513.45(b).[34]   The determination of insider status is a mixed question of law and fact.   *In re*

*Rosen Auto Leasing, Inc.*, 346 B.R. 798, 804 (B.A.P. 8th Cir. 2006); *In re DBSI, Inc.*, No. 08-

12687, 2011 WL 115876, at *3-4 (Bankr. D. Del. Jan. 11, 2011) ("[T]he question of insider

status is a fact-intensive inquiry, making it inappropriate for resolution in this motion to

dismiss.").   To adequately plead insider status, the Trustee need only plead that the Defendant

falls within the statutorily defined illustrative categories of insiders, or that the Defendant had a

sufficiently close relationship with the debtor so as to require closer scrutiny of the parties'

conduct than those dealing with the debtor at arm's length (commonly referred to as "non-

statutory insiders.").   *See Rosen Auto Leasing*, 346 B.R. at 804; *OHC Liquidation Trust v. Credit

Suisse Boston, (In re Oakwood Homes Corp).*, 340 B.R. 510, 524 (Bank. D. Del. 2006).   The

Trustee has adequately pleaded insider status, and the Employee Defendants' motions to dismiss

on this basis should be denied.

**(a)      Employee Defendants Who are Officers, Directors or Persons
in Control are "Insiders" as a Matter of Law.**

When the debtor is a corporation, both MUFTA and the Bankruptcy Code define

"insider" to include directors, officers, or persons in control of the debtor, partnerships in which

the debtor is a general partner, general partners of the debtor or relatives of the general partner,

director, officer, or person in control of the debtor, and affiliates of the debtor, insiders of

affiliates or managing agents of the debtor.   *See* 11 U.S.C. § 101(31)(B) and (E); Minn. Stat.

---

[34] The Trustee's Complaints against Employee Defendants include two counts that seek to avoid
transfers made to insiders:  (1) a claim for transfers to or for the benefit of insiders made within
two years before the bankruptcy Petition Date pursuant to 11 U.S.C. §§ 548(a)(1)(B)(ii)(IV); and
(2) a claim for transfers to or for the benefit of insiders under Minnesota Statutes §§ 513.45(b)
and 513.47 (collectively referred to herein as the "Insider Transfer Counts").  The Employee
Defendants who argue that the Trustee failed to plead insider transfer claims are listed on Chart
12, attached hereto in the Appendix.

§ 513.41(7)(ii) and (iv).[35]  If a person is found to be an officer, director or a person in control, "then they are automatically deemed an 'insider' as a matter of law as well, and the inquiry ends."  *Office of the U.S. Trustee v. Fieldstone Mortgage Co.*, No. CCB-08-755, 2008 WL 4826291, at *4 (D. Md. Nov. 5, 2008) (citations omitted).[36]  If it is not clear on the face of the complaint that a person is an officer or director, further factual inquiry may be justified.  *Id.* at *5.  Such an inquiry is not appropriate for resolution on a motion to dismiss because it is fact-intensive, involves case-by-case determinations of insider status and, additionally, must await discovery.  *See Rosen Auto Leasing*, 346 B.R. at 804; *DBSI, Inc.*, 2011 WL 115876, at *3-4; *In re Oakwood Homes*, 340 B.R. at 524.

The Trustee alleges the following Defendants were officers[37] or directors of PCI, PGW, and affiliated entities:

- David Baer – Chief Legal Officer of PCI and PGW (Baer Compl. ¶ 44);

- Camille Chee-Awai – Chief Executive Officer of Petters Capital (Chee-Awai Compl. ¶ 44);

---

[35] "The subsidiary definitions of the term 'insider' under Minnesota Statutes §§ 513.417(ii) and (iv) are essentially identical to the Bankruptcy Code's definitions at 11 U.S.C. § 101(31)(B) and (E), so one can fairly make use of both to determine whether the Defendant was an insider."  *In re Northgate Computer Sys., Inc.*, 240 B.R. 328, 362 (Bankr. D. Minn. 1999).

[36] *See In re Dygert*, No. 98-45925, 2000 WL 630833, at *7 (Bankr. D. Minn. May 11, 2000) (citations omitted) (officer and/or director insiders regardless of amount of control); *In re Kroh Bros. Dev. Co.*, 137 B.R. 332, 335 (W.D. Mo. 1992) (citations omitted) (determination of insider issue involves the "mechanical" and literal application of the Code); *In re El Comandante Mgmt. Co., LLC*, 388 B.R. 469, 473-74 (D.P.R. 2008) ("allegation that a person is a corporate director, officer or person in control of the debtor is sufficient to plead that the person is an insider."); *In re Prime Realty, Inc.*, 376 B.R. 274, 278 (Bankr. D. Neb. 2007) ("Persons who meet the statutory definition of 'insider' are considered insiders per se.").

[37] Officers include "'president, vice-president, secretary, treasury or principal financial officer, comptroller or principal accounting officer.'"  *Fieldstone Mortgage Co.*, 2008 WL 4826291, at *4 n.14 (quoting Rule 3b-2 of the Securities Exchange Act of 1934, 17 C.F.R. § 240.3b-2).

- Dove Carter – Vice President of Operations for PCI, PGW and Petters Consumer Brands (Carter Compl. ¶ 44);

- George Danko – Chief Executive Officer of SpringWorks (Danko Compl. ¶ 44);

- William Dunlap – Chairman of the Board for Polaroid Corporation and Petters Media and Marketing Group (Dunlap Compl.¶ 45);

- Patrick Engels – Chief Financial Officer of PGW (Engles Compl. ¶ 44);

- Scott Hardy – Senior Vice President Product Management and General Manager / Senior Vice President Operations for PCB and Polaroid; Executive Vice President Operations of Sales for Brand Management Americas (Hardy Compl. ¶ 44);

- Lorence Harmer – President of Petters International and CEO of Petters Consumer Brands, LLC (Harmer Compl. ¶44);

- Thomas Hay – Executive Vice President of Petters Real Estate Group and legal counsel to PGW (Hay Compl. ¶54);

- Mary Jeffries – President and Chief Operating Officer of PGW (Jeffries Compl. ¶44);

- Daniel Lagermeier – Chief Financial Officer of RedTag; Vice President of Finance and Credit for PGW and Petters Consumer Brands (Lagermeier Compl. ¶ 43);

- Cheryl Mau – Vice President of Marketing for PGW and Polaroid Corporation (Mau Compl. ¶ 44);

- Jon McGaunn – President of Petters Hospitality Group of PGW (McGaunn Compl. ¶ 44);

- Mary Pernula – Executive Vice President Marketing of PGW, Vice President Marketing of RedTag (Pernula Compl. ¶ 43);

- Michael Phelps – General Counsel for SpringWorks, General Counsel for Polaroid Corporation; Deputy Chief Legal Counsel of PGW (Phelps Compl. ¶ 44);

- Stephen Ratliff – Executive Vice President of Sales Petters Consumer Brands and Polaroid; President of RedTag (Ratliff Compl ¶ 45);

- Stuart Romanesko – Executive Vice-President of Sales PGW, Petters Consumer Brands, Brand Management Americas, and Polaroid Corporation; Vice-President of Sales for RedTagOutlet.com (Romanesko Compl. ¶ 44);

- Thomas ("Jay") Salmen – President of Petters Aviation, LLC; CEO of Sun Country Airlines (Salmen, T. J. Compl. ¶ 44); and

- Joseph Schmit – Executive Vice President of Media Marketing for PGW; President of the John T. Petters Foundation (Schmit Compl. ¶ 44).

A titled officer or director is an insider regardless of the person's duties or actual control of the debtor.[38] *Fieldstone Mortgage*, 2008 WL 4826291, at *4-5. If a defendant is an officer or director, it is not necessary to allege "control" of the debtor to plead insider status. *See In re Kroh Bros.*, 137 B.R. at 335; *In re Dygert*, No. 98-45925, 2000 WL 630833, at *7 (Bankr. D. Minn. May 11, 2000). The above-identified Employee Defendants, as officers or directors, are insiders as a matter of law under MUFTA and the Bankruptcy Code. Because the Complaints allege on their face that these Employee Defendants are officers or directors, Defendants' motions must be denied.

In addition to alleging that a number of the Employee Defendants are officers and directors, the Trustee also has alleged that a number of Employee Defendants are "persons in control" of the debtors and thus statutory insiders as a matter of law. "Control" is "an independent additional ground for finding a person an insider, not a feature that officers or directors are required to possess in order to be deemed insiders." *Fieldstone Mortgage*, 2008 WL 4826291 at *4-5; *see In re El Comandante Mgmt. Co., LLC,* 388 B.R. 469, 473-74 (D.P.R. 2008) ("allegation that a person is a corporate director, officer *or person in control* of the debtor is sufficient to plead that the person is an insider.") (emphasis added). The Bankruptcy Code does not define "person in control." Consequently, a factual determination must be made on a case-by-case basis. *See In re Miller Homes, LLC*, No. 05-60213, 2009 WL 4430267, at *5-6

---

[38] Although alleged to be an insider, the Trustee concedes that Lois Kruse is not an insider as defined by the relevant statutes.

(Bank. D. N. J. 2009). The Trustee has alleged that Employee Defendants Baer, Chee-Awai, Harmer, Hay, Jeffries, Dunlap, Hardy, Ratliff, Romanesko, and Traub possessed "control" or "influence" over the debtors and were "strategic partners," a position that conferred extraordinary influence and control over Petters, the debtors and affiliated entities. (Chee-Awai Compl. ¶ 44; Hay Compl. ¶ 54; Jeffries Compl. ¶ 44; Traub Compl. ¶ 44; Baer Compl. ¶ 44; Harmer Compl. ¶ 44; Dunlap Compl. ¶ 45; Hardy Compl. ¶ 44; Ratliff Compl. ¶ 45; Romanesko Compl. ¶ 44.)   Additionally, it is alleged that Andrea Miller was the Director of Corporate Communications and Director of Marketing Communications for PGW (Miller Compl. ¶ 44), and that Kevin Riedl was the Director of Finance and Business Development for PGW (Riedl Compl. ¶ 44), positions that create the plausible inference that they too were persons who exercised influence or control.  *See Miller Homes*, 2009 WL 4430267 at *5.

The Trustee pleaded facts sufficient to show that it is plausible that directors, officers and other Employee Defendants possessed influence or control over the debtors such that they are "persons in control" under the Bankruptcy Code and MUFTA.

**(b)      The Trustee Adequately Pleaded that Numerous Defendants Are Non-Statutory Insiders.**

It is well-settled that the statutory list of insiders is illustrative, not exclusive.  *See In re Rosen Auto Leasing, Inc.,* 346 B.R. 798, 804 (B.A.P. 8th Cir. 2006) (noting that § 101(31) uses the term "includes" when referring to the definition of an insider); *In re Northgate Computer Systems, Inc.*, 240 B.R. 328, 362 (Bankr. D. Minn., 1999) ("The statutory examples of § 101(31), of course, are not exclusive.").  Persons who fall outside the statutory list may be considered non-statutory insiders.  *See Rosen Auto Leasing,* 346 B.R. at 804; *In re Richmond*, 429 B.R. 263, 297 (Bankr. E.D. Ark. 2010); *In re Dygert*, No. 98-45925, 2000 WL 630833, at *7 (Bankr. D. Minn. May 11, 2000); *In re Gilbert*, 104 B.R. 206, 209-10 (Bankr. W.D. Mo. 1989); *Bruno*

87

*Machinery v. Troy Die Cutting Co., (In re Bruno Machinery)*, 435 B.R. 819, 833 (Bankr. N.D.N.Y. 2010).

A trustee can state a viable insider claim against a non-statutory insider by alleging that the defendant had a sufficiently close relationship with the debtor to justify closer scrutiny than someone dealing with the debtor at arm's length. *See Rosen Auto Leasing,* 346 B.R. at 804; *Dygert*, 2000 WL 630833 at *7. The determination of what constitutes a "sufficiently close relationship" is fact intensive, must be resolved under close scrutiny, and on a case-by-case basis. *Richmond*, 429 B.R. at 297. Its resolution is not appropriate for a motion to dismiss. *See In re Oakwood Homes*, 340 B.R. at 524; *In re DBSI, Inc.*, 2011 WL 115876, at *3-4 (Bankr. D. Del. Jan. 11, 2011).

Non-statutory insider status can arise in a variety of situations. For example, insider status may be based on a professional or business relationship that "compels the conclusion that the individual or entity has a relationship with the debtor, close enough to gain an advantage attributable simply to affinity rather than to the course of business dealings between the parties." *In re Bruno Machinery*, 435 B.R. at 833 (citations omitted). Such allegations of a long-standing multifaceted relationship that enabled the defendant to influence or control the debtors require further discovery and cannot be decided on a motion to dismiss. *See In re Oakwood Homes*, 340 B.R. at 524 ("insiders" part of debtors' "inner-circle"). Similarly, allegations that defendant was debtors' "corporate counsel" and had a "working relationship with Debtors, their officers/directors, and their parent company," have been found to be sufficient under the statutory definition of "insider" to survive a motion to dismiss. *In re Cont'l Capital Inv. Serv., Inc.*, No. 03-3370, 2006 WL 6179374, at *4 (Bankr. N.D. Ohio June 12, 2006); *Fieldstone Mortgage*, 2008 WL 4826291, at *2 (acting general counsel found to be an insider). Courts also

have permitted non-statutory insider claims alleging defendant had a close relationship to the debtor and knew of or participated in the underlying fraud. *Cont'l Capital Inv. Serv.*, 2006 WL 6179374, at *4. The determination of whether a person has a sufficiently close relationship to be a non-statutory insider cannot be decided on a motion to dismiss. *Richmond*, 429 B.R. at 297; *Oakwood Homes*, 340 B.R. at 524.

The Trustee has alleged that a number of the Employee Defendants had a close relationship with the debtors or insiders of the debtors so as to be non-statutory insiders. Defendants Hay, Baer, Phelps and Traub are alleged to have been legal counsel to Petters, PCI PGW, and/or their Affiliates.[39] (Hay Compl. ¶ 54; Traub Compl. ¶ 44; Baer Compl. ¶ 44, Phelps Compl. ¶ 44.) The Trustee alleges that Tom Hay, Mary Jeffries, Paul Traub and Camille Chee-Awai received payments that "are disproportionately large relative to Defendants' salaries and were not a result of arm's length transactions, or made in furtherance of a legitimate business purpose, but rather were gratuitous, were made in furtherance of the fraud, and paid to defendant to reward his loyalty to the Ponzi scheme." Defendant David Margolis was Petters' Personal Assistant and the Estate and Travel Assistant for Petters as CEO of PGW, and was part of Petters' inner circle. (Margolis Compl. ¶ 44.) Defendant Joseph Schmit, who the Trustee alleged was part of Petters' and Petters' affiliated entities' management team and inner circle, was also the President of the John T. Petters Foundation, which was established and funded with Ponzi proceeds to memorialize Petters' son. (Schmit Compl. ¶ 44.) These allegations, as well as those alleged against other Employee Defendants, support a plausible inference of a close relationship between the Employee Defendants and the debtors and insiders of the debtors,

---

[39] The Trustee has adequately pleaded that a number of Defendants are statutory insiders, ending the analysis. However, the Trustee also has pleaded adequately that these Defendants are non-statutory insiders.

including Petters himself.   These close relationships require closer scrutiny than can be determined on a motion to dismiss.

Finally, the Complaints allege that each of the Insider Defendants knew or should have known that the transfers they received from the debtors were related to fraudulent activity.   The Trustee has alleged numerous indicia of fraud and has explained in detail the manner in which the Ponzi scheme was operated.   (*See, e.g.,* Dunlap Compl., ¶¶ 47-49; Hay Compl. ¶¶46, 54-58.) Therefore, the Trustee has pleaded all that is necessary to allege that Employee Defendants knew, or should have known, that the transfers they received were fraudulent.

Because the Trustee has adequately pleaded that the Employee Defendants are statutory insiders or, alternatively, non-statutory insiders, the Court should deny Defendants' motion.

### (c)   The Requisite Relationship Need Not Be with the Debtors Themselves to Render Defendants' Insiders.

An alleged insider relationship may be with the debtor, an insider of the debtor, or a debtor's affiliate.   *In re Bruno Machinery*, 435 B.R. at 833 (*citing In re A. Tarricone, Inc.*, 286 B.R. 256, 262 (Bankr. S.D.N.Y. 2002)).   "Affiliate" is defined by federal law as an

> entity that directly or indirectly owns, controls, or holds with the power to vote, 20 percent or more of the outstanding voting securities of the debtor . . . .

11 U.S.C. § 101(2)(A).   Minnesota law defines "affiliate" as follows:

> (B)   corporation 20 percent or more of whose outstanding voting securities are directly or indirectly owned, controlled, or held with power to vote, by the debtor, or by a person who directly or indirectly owns, controls, or holds power to vote, 20 percent or more of the outstanding voting securities of the debtor ....

Minn. Stat. § 513.41(1)(ii).

The Trustee has alleged in detail the intertwining relationship of equity ownership between the debtors PCI and PGW and the entities owned and/or controlled by the debtors.   *See*

*Northgate Computer Sys.*, 240 B.R. at 362-63 (*See, e.g.,* Hay Compl. ¶¶17-36). The Trustee has alleged that a number of Employee Defendants received transfers from subsidiaries, which are clearly "affiliates" of PCI or PGW as defined by the statutes. The Trustee has also alleged that Defendants had close relationships with insiders of the Debtors. *See Bruno Machinery*, 435 B.R. at 833. For example, Defendant Thomas J. Salmen was a part of Petters' and his affiliated entities management team and inner circle. He was the President of Petters Aviation, LLC and CEO of Sun Country Airlines, which creates a plausible inference that Defendant had close relationships with Petters, his Associates and insiders of the Debtors, particularly with Defendants David Baer and Thomas Hay.[40] (Salmen Compl. ¶ 44.) Similarly, Defendant Joseph Schmit, who the Trustee alleged was part of Petters' and Petters' affiliated entities' management team and inner circle, was also the President of the John T. Petters Foundation, which was established and funded with Ponzi scheme proceeds to memorialize Petters' son. (Schmit Compl. ¶ 44.) The allegations support a plausible inference of the close relationship between Defendants and insiders of the debtors, including Petters himself. These close relationships require closer scrutiny than can be determined on a motion to dismiss.

---

[40] The governance structure of PGW was as follows: Thomas Petters was CEO, David Baer was Chief Legal Officer and Secretary, Mary Jeffries was Chief Operating Officer, Thomas Hay was Assistant Secretary, and Michael Phelps was an Assistant Secretary. See Statement of Financial Affairs, Case No. 08-45258, Dkt. No. 20, Exhibit 3, pp. 14-15. The governance structure of Petters Aviation, LLC was as follows: Petters was a Director and Salmen was President and CEO. See Statement of Financial Affairs, Case No. 08-45136, Dkt. No. 91, P. 37. The governance structure of MN Airline Holdings, Inc. was as follows: Stan Gadek was Chariman, John Fredericksen, Hay and Dunlap were Directors and Petters and Baer were former Directors. See Statement of Financial Affairs, Case No. 08-35198, Dkt. No. 46, pp. 18-19 .

(d)    **The Cases Cited by Defendants Compel Denial of their
Motions.**

Case law cited by Employee Defendants support the Trustee's argument that the insider

claims are adequately pleaded.  *See In re Sand Hill Capital Partners III, LLC*, No. 08-30989,

2010 WL 4269622, at *2 (Bank. N.D. Cal. Oct. 25, 2010); *Angell v. Burrell (In re Caremerica,

Inc.)*, 409 B.R. 759, 767 (Bankr. E.D.N.C. 2009).  In *Sand Hill Capital Partners*, the court

dismissed the insider claim because the complaint only contained "bald allegations that

Defendants were insiders."   The court held that the complaint needed to allege that the

defendants had a "formal legal relationship with the debtor" or a close relationship sufficient to

subject the Defendant's transactions to closer scrutiny.  *Id*.  Here, the Trustee has satisfied this

pleading standard, having alleged that Defendants were officers, directors or persons in control,

or had the requisite close relationship with the Debtors, their affiliates and insiders of the

Debtors.

In the *Caremerica* cases, the trustee filed a number of adversary complaints challenging

preferential and fraudulent transfers.[41]   Appended to the complaints was a chart that merely

identified each defendant as "insider" or "non-insider" and provided no additional information

that could sustain an inference that the defendant was an insider.  *See, e.g., Angell v. Ber Care

(In re Caremerica, Inc.)*, 409 B.R. 737, 752-53, 755-56 (Bankr. E.D.N.C. 2009) (Dkt. No. 1, 08-

00174-8-JRL).  Despite this lack of information, the court found that the solitary allegation that

_____

[41] *See Angell v. Ber Care, Inc. (In re Caremerica, Inc.)*, 409 B.R. 737 (Bankr. E.D.N.C. 2009);
*Angell v. Haveri (In re Caremerica, Inc.)*, 409 B.R. 346 (Bankr. E.D.N.C. 2009); *Angell v.
Burrell (In re Caremerica, Inc.)*, 409 B.R. 759 (Bankr. E.D.N.C. 2009); *Angell v. First Eastern,
LLC (In re Caremerica, Inc.)*, No. 06-0291308, 2009 WL 2253241 (Bankr. E.D.N.C., July 28,
2009); *Angell v. Etheridge, (In re Caremerica, Inc.)*, No. 06-0291308, 2009 WL 2253232
(Bankr. E.D.N.C. July 28, 2009); *Angell v. Day (In re Caremerica, Inc.)*, 415 B.R. 200 (Bankr.
E.D.N.C. 2009).

defendant was the wife of a debtor's owner was a sufficient factual assertion to create a reasonable inference of insider status. *See Angell v. Burrell (In re Caremerica, Inc.),* 409 B.R. 759, 765 (Bankr. E.D.N.C. 2009) (Complaint at Adv. No. 23, 08-00156-8-JRL)). Therefore, the Court should reject the Insider Defendants' arguments to the extent they rely upon *Ber Care or Sand Hill Capital Partners.*

> **D.     The Trustee Is Not Required to Plead a Rebuttal to Defendants' Good Faith Affirmative Defense.**

Defendants argue that the Trustee has failed to establish a plausible basis for disputing their contention that they took the transfers in good faith under 11 U.S.C. § 548(c).[42] The Bankruptcy Code, however, does not impose any such requirement on the Trustee. Section 548(c) allows "a transferee . . . that takes for value and in good faith . . . [to] retain any interest transferred . . . to the extent that such transferee . . . gave value to the debtor in exchange for such transfer." 11 U.S.C. § 548(c). It is evident that § 548(c) provides only for an affirmative defense that the Trustee is not required to refute in his Complaint. *Bayou Superfund, LLC v. WAM Long/Short Fund II, L.P. (In re Bayou Group, LLC)*, 362 B.R. 624, 639 (Bankr. S.D.N.Y. 2007) ("[L]ack of good faith is not an element of plaintiff's claim under Section 548(a)(1)."); *Barclay v. Swiss Fin. Corp. Ltd. (In re Midland Euro Exch. Inc.)*, 347 B.R. 708, 714 (Bankr. C.D. Cal. 2006) (holding that good faith is an affirmative defense available to the defendant under § 548). The Trustee alleged in the Complaints that the Defendants received the transfers without good faith.

It is the defendant-transferee who bears the burden of proving that it received the transfers from the debtor for value and in good faith to satisfy § 548(c). *In re Manhattan Inv.*

---

[42] The Defendants raising this issue are listed on Chart 13, attached hereto in the Appendix.

*Fund Ltd.*, 310 B.R. 500, 508 (Bankr. S. D. N. Y. 2002)  (Good faith "may be raised and proved by the transferee at trial."). Given that a defendant carries the burden of proof, a motion to dismiss is not the appropriate vehicle by which to raise the merits of affirmative defenses. *See* 5 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1277 (3d ed. 2010) ("[M]otions to dismiss or to strike only can attack matters appearing on the face of the complaint; new defensive material therefore must be raised by answer.").  This is especially true where, as here, the defense is predicated on a close examination of facts not available to the parties or the Court at the pleading stage. *See* 2 James Wm. Moore et al., *Moore's Federal Practice* § 1234[4][b], at 100 (3d ed. 2010) ("[D]efenses that require a factual review to be established . . . should not support a dismissal.").

Good faith is "indisputably a factual question" that "may not be determined on the face of [a] complaint." *La Vigna v. Lipshie (In re Wise),* 173 B.R. 75, 78-79 (Bankr. E.D.N.Y. 1994); *see Ramette v. Range Mental Health Ctr., Inc. (In re Russ)*, No. 87-2332, 1997 WL 188449, at *4 (Bankr. D. Minn. Apr. 18, 1997) ("To survive a motion to dismiss, the general rule is that a plaintiff must allege only those facts necessary to support a prima facie case; a plaintiff is not required to allege the nonexistence of affirmative defenses requiring factual review.").  Whether the Defendants acted in good faith when they received the transfers of PCI funds is a disputed issue that this Court should determine only upon consideration of all the relevant evidence obtained through the discovery process.  *In re Bernard L. Madoff Inv. Sec. LLC*, 2010 WL 4643102, at *7.  As such, the Defendants' arguments under § 548(c) are irrelevant to this Court's consideration of the sufficiency of the Trustee's pleading and ineffective to obtain a dismissal of the Trustee's claims.

## VI.    The Trustee Pleaded a Cognizable Claim for Turnover and Accounting.

Many Defendants argue the Trustee's claim for turnover of the transfers, alleged at Count I of the Complaints, is premature because the Court has not yet avoided those transfers and the transfers are not yet property of the bankruptcy estate.[43]   The Trustee's turnover and fraudulent transfer claims co-exist in each of the Complaints, and the turnover claim is asserted as a method for recovering the transfers once they are avoided.   As such, the turnover claim is stated alternatively to the 11 U.S.C. § 550 recovery claims asserted by the Trustee.   The Trustee properly paired his avoidance and turnover claims and Defendants' motions to dismiss the turnover claims should be denied.

Many of the cases Defendants cite involve an effort simply to use the turnover statute, 11 U.S.C. § 542(a), as a stand-alone action to recover property over which the ownership is disputed.   *See Savage & Assocs., P.C. v. Mandl (In re Teligent, Inc.)*, 325 B.R. 134, 137-38 (Bankr. S.D.N.Y. 2005); *Marlow v. Oakland Gin Co. (In re Julien Co.)*, 128 B.R. 987, 992-93 (Bankr. W.D. Tenn. 1991); *Satelco, Inc. v. N. Am. Publishers, Inc. (In re Satelco, Inc.)*, 58 B.R. 781, 786 (Bankr. N.D. Tex. 1986).   The Trustee here, however, is not attempting to use the turnover statute independently without a related claim to resolve the dispute over the transfers. Rather, depending on the particular Complaint, the Trustee seeks to avoid the transfers pursuant to 11 U.S.C. §§ 544, 547, and 548, and Minnesota law, and requests judgment, including a recovery order under § 550 and a turnover order pursuant to § 542(a) as methods for securing collection of the avoided transfers.

---

[43] The Defendants moving to dismiss the Trustee's turnover and accounting claims are listed on Chart 14, attached hereto in the Appendix.

It is appropriate under the Bankruptcy Code to assert a turnover claim along with an avoidance action.   The purpose of a turnover claim under § 542 of the Bankruptcy Code is to allow the Trustee to recover "property that the trustee may use, sell, or lease" from any persons holding that property.   11 U.S.C. § 542(a).   The Trustee recognizes that there are cases holding that a turnover claim cannot be asserted until a fraudulent transfer has been avoided.   *See, e.g., Stanziale v. Pepper Hamilton LLP (In re Student Fin. Corp.)*, 335 B.R. 539 (D. Del. 2005). There are, however, a number of cases in which courts permitted a turnover claim to be asserted with an avoidance claim.   For example, in *Mendelsohn v. Jacobowitz (In re Jacobs)*, 394 B.R. 646, 664-74 (Bankr. E.D.N.Y. 2008), the bankruptcy court granted summary judgment to the trustee in a fraudulent transfer action and, at the same time, also granted summary judgment on the trustee's claim under § 542(a) for turnover of the property of the estate.   In granting summary judgment on the turnover claim, the court concluded that given its ruling on the trustee's fraudulent transfer claim, the property had become property of the estate and was subject to turnover.   *Id.* at 674.   *See Campbell v. Cathcart (In re Derivium Capital, LLC)*, 380 B.R. 429, 435-36 (Bankr. D.S.C. 2006) (on motion to dismiss, court allowed turnover and fraudulent conveyance claims in complaint); *Limor v. Buerger (In re Del-Met Corp.)*, 322 B.R. 781, 805 (Bankr. M.D. Tenn. 2005) (same); *Yoppolo v. Fifth Third Bank (In re Bostic)*, 171 B.R. 270, 272-74 (Bankr. N.D. Ohio 1994) (court entered judgment finding transfer was a preference and granted turnover as relief).

Pairing turnover and avoidance claims makes sense:

> A claim made under Section 542 . . . is not necessarily distinct from claims under other sections.   For example, if a particular transfer of property is voidable as a fraudulent transfer under Section 548, then this property, now deemed property of the estate, becomes subject to the "turnover" authority contained in Section 542.

*Doyle v. Paolino (In re Energy Sav. Ctr., Inc.)*, 61 B.R. 732, 735 (E.D. Pa. 1986).

Moreover, pairing avoidance and turnover claims is appropriate for reasons of judicial economy. For example, the Trustee's avoidance claims, whether grounded on § 544, § 547, or § 548, are paired with a recovery claim under 11 U.S.C. § 550. Following Defendants' argument, the Trustee would not be allowed to assert a § 550 claim until after the transfer has been avoided, although Defendants raise no such argument. It is well recognized that avoidance claims can be paired with a § 550 recovery claim. *See* 5 *Collier on Bankruptcy* ¶ 550.07, at 550-30 (Alan. N. Resnick & Henry J. Sommer, eds., 16th ed. 2010) ("[T]he trustee need not identify a specific creditor by name."). Requiring separate proceedings to avoid a transfer and then recover the transfer or its value would be a waste of both the Trustee's and the Court's resources. *See Woods & Erickson LLP v. Leonard (In re Avi, Inc.)*, 389 B.R. 721, 734-35 (B.A.P. 9th Cir. 2008) (An avoidance and recovery action may be brought together to "avoid absurd results" and to "protect the trustee from attempts to impede recovery" and to "afford [ ] flexibility when a transferee or its assets have disappeared.") The same rationale has been applied to turnover claims under § 542(a). In *Pereira v. Grecogas Ltd. (In re Saba Enters., Inc.)*, the trustee asserted fraudulent transfer claims under the Bankruptcy Code and state law, and sought recovery under § 550 and, alternatively, turnover under § 542(a). 421 B.R. 626, 657-59 (Bankr. S.D.N.Y. 2009). The court denied a motion to dismiss the § 550 recovery claim, finding it had been properly alleged. *Id.* The court also refused to dismiss the trustee's alternative § 542(a) turnover claim, finding it also had been properly pleaded. *Id.*

The Trustee properly paired his avoidance and turnover claims. The Court should follow the caselaw permitting the pairing of these claims and deny Defendants' motion to dismiss the turnover claim.

**VII.    The Trustee Pleaded a Cognizable and Timely Claim for Unjust Enrichment.**

Most Defendants argue the Trustee's unjust enrichment claim, generally alleged at Count VI of the Complaints, must be dismissed because (1) the Trustee has not alleged any illegal or unlawful acts by Defendants, (2) the Trustee has an adequate remedy at law, and (3) the unjust enrichment claim is time-barred.  A few Defendants, citing no supporting caselaw, also argue the Trustee has no authority to pursue an unjust enrichment claim.[44]

The Court should deny Defendants' request that the Trustee's unjust enrichment claim be dismissed.  The Trustee is authorized to bring this claim pursuant to the avoidance powers granted under 11 U.S.C. § 544(b).  Under Minnesota law, the Trustee is not required to allege or prove illegal or unlawful acts by the Defendants.  Rather, the Trustee may assert an unjust enrichment claim against Defendants on the grounds they benefitted from wrongdoing committed by another.  The Trustee is permitted by Federal Rule of Civil Procedure 8(d) to plead claims in the alternative, and at this stage of the proceedings the Trustee may pursue both fraudulent transfer and unjust enrichment claims.

**A.    The Trustee Has Standing to Assert an Unjust Enrichment Claim.**

A few Defendants contend the Trustee does not have standing to assert an unjust enrichment claim.  Without citation to authority, these Defendants appear to argue that claims under § 544 are limited solely to state law fraudulent transfer claims.[45]  To the contrary, the

---

[44] The Defendants moving to dismiss the Trustee's unjust enrichment claims are listed on Chart 15, attached hereto in the Appendix.

[45] Defendant Joseph M. Caruso (Adv. No. 10-04274) cites four cases that are not applicable here. For example, in *Hechinger Inv. Co. v. Fleet Retail Finance Group*, 274 B.R. 71, 97-98 (D. Del. 2002), the court held an unjust enrichment claim brought under § 544 was preempted by § 546(e), which Mr. Caruso does not argue applies here.  *Mixon v. Anderson (In re Ozark Restaurant Equip. Co.)*, 816 F.2d 1222, 1229-30 (8th Cir. 1987), involved directly piercing the

Trustee is authorized to pursue an unjust enrichment claim pursuant to 11 U.S.C. § 544(b).  As

the court stated in *Picard v. Taylor (In re Park South Sec., LLC)*, 326 B.R. 505, 514-15 (Bankr.

S.D.N.Y. 2005), § 544 "is not limited to the avoidance of fraudulent transfers.  Rather, it gives a

trustee statutory standing to avoid transfers on any grounds that could be asserted by a

hypothetical lien or execution creditor . . . , 11 U.S.C. § 544(a), or by an unsecured prepetition

creditor, 11 U.S.C. § 544(b)."  Among the claims a trustee may bring under § 544 is an unjust

enrichment claim.  *Id*. at 514.  *Kittay v. Flutie New York Corp. (In re Flutie New York Corp.)*,

310 B.R. 31, 58-59 (Bankr. S.D.N.Y. 2004) (trustee brought adversary proceeding alleging

fraudulent transfer and unjust enrichment claims); *Wedtech Corp. v. Biaggi & Ehrlich (In re

Wedtech Corp.)*, 137 B.R. 575, 577 (Bankr. S.D.N.Y. 1992) ("Section 544(b) of the Code is 'a

conduit to state law substantive remedies;'" debtor in possession sought to set aside improper

transfers of corporate stock pursuant to state corporations law and common law unjust

enrichment claim.).  Any argument that the Trustee does not have standing to pursue his unjust

enrichment claims must be rejected.

> **B.    The Trustee Adequately Pleaded an Unjust Enrichment Claim under
> Minnesota Law.**

In arguing that the Trustee did not adequately allege an unjust enrichment claim,

Defendants espouse a narrow definition of unjust enrichment and contend the Trustee must

allege and prove the individual Defendants acted illegally or unlawfully.  The Minnesota

Supreme Court, however, has adopted a broader definition of unjust enrichment than the one

---

corporate veil and the claim was not directed to invalidating a transfer of an interest.  *Knox v.
Sunstar Acceptance Corp. (In re Knox)*, 237 B.R. 687 (Bankr. N.D. Ill. 1999), involved an
attempt by a debtor to pursue a class action against a creditor for the creditor's common practice
of misconduct in bankruptcy proceedings.  Finally, *In re Charterhouse, Inc.*, 84 B.R. 147 (Bankr.
D. Minn. 1988), involved an effort to have the bankruptcy court use its equitable power under 11
U.S.C. § 105(a) to modify a substantially consummated plan.

argued by Defendants.  Moreover, courts have held that under Minnesota law, when an innocent third party receives money that was generated by fraud, a defrauded party can recover that money from the innocent third party on a claim of unjust enrichment.  The Trustee more than adequately alleged the unjust enrichment claim, and Defendants' motions to dismiss the claim should be denied.

In *Brand & Co. v. Williams*, the Minnesota Supreme Court held that a claim for unjust enrichment "can be maintained whenever one man has received or obtained the possession of money of another, which he ought in equity and good conscience to pay over."  13 N.W. 42 (Minn. 1882).  The Minnesota Supreme Court has relied on *Brand* in affirming awards based on unjust enrichment.  *See Klass v. Twin City Fed. Sav. & Loan Ass'n*, 190 N.W.2d 493, 494-95 (Minn. 1971) ; *Servicemaster of St. Cloud v. GAB Business Services, Inc.*, 544 N.W.2d 302, 306 (Minn. 1996).  Moreover, the Minnesota Supreme Court has held that unjust enrichment claims are properly based on "situations where it would be *morally wrong* for one party to enrich himself at the expense of another."  *Cady v. Bush*, 166 N.W.2d 358, 361-62 (Minn. 1969) (emphasis added).  This *Cady* definition of unjust enrichment continues to be good law.  *See, e.g., Ramette v. Digital River, Inc. (In re Graphics Tech., Inc.)*, 306 B.R. 630, 637 (B.A.P. 8th Cir. 2004); *Hartford Fire Ins. Co. v. Clark*, 727 F. Supp. 2d 765, 777-78 (D. Minn. 2010); *S.E.C. v. Brown*, 643 F. Supp. 2d 1077, 1083 (D. Minn. 2009).

Furthermore, the Trustee does not have to prove that each Defendant knew it was receiving something of value to which it was not entitled.  Minnesota courts have held that a plaintiff may maintain a cause of action for unjust enrichment against someone who benefits from the wrongdoing committed by another, even if the party benefited is unaware of the underlying wrongful conduct.  For example, in *Honeywell/Alliant Techsystems Federal Credit*

*Union v. Buckhalton*, No. 99-1194, 2000 WL 53875 (Minn. Ct. App. Jan. 25, 2000), a credit union sought to recover money that a borrower had fraudulently transferred to the defendants. The court held that "despite the absence of proof or illegal conduct on the part of [defendants], because of equity, they are not entitled to the money." *Id.* at *3. *See Wells Elec., Inc. v. Schaper*, No. A06-420, 2006 WL 2807179, at *6-7 (Minn. Ct. App. Oct. 3, 2006) (a plaintiff may maintain an unjust enrichment claim against the entity who benefits from the wrongdoing committed by another).

These decisions have been followed by the United States District Court for the District of Minnesota. *See Hartford Fire,* 727 F. Supp. 2d at 777 (victim of fraudulent billing scheme could recover monies paid by defrauding party to innocent third party on theory of unjust enrichment); *S.E.C. v. Brown*, 643 F. Supp. 2d 1077, 1083-84 (D. Minn. 2009) (denying motion to dismiss unjust enrichment claim and holding plaintiff receiver did not have to allege or prove the defendant knowingly received stolen investor money); *Kranz v. Koenig*, 484 F. Supp. 2d 997, 1001 (D. Minn. 2007) (finding the reasoning of *Honeywell* and *Wells Electric* persuasive). *See also Hecht v. Malvern Preparatory School*, 716 F. Supp. 2d 395, 402-03 (E.D. Pa. 2010) (charity's receipt of funds in Ponzi scheme was sufficient basis for unjust enrichment claim because charity received something it would be "unconscionable" for it to retain). The Trustee more than adequately stated a claim for unjust enrichment under Minnesota law.

## C.    The Trustee May Plead Alternative Theories.

Lastly, Defendants also contend the Trustee's unjust enrichment claims should be dismissed because an adequate remedy at law exists pursuant to the Minnesota Uniform Fraudulent Conveyance Act. First, it is not entirely clear under Minnesota law that the Trustee cannot obtain relief on both the fraudulent conveyance and unjust enrichment claims. In *Honeywell/Alliant Techsystems Federal Credit Union v. Buckhalton*, Doc. No. 99-1194, 2000

WL 53875 (Minn. Ct. App. Jan. 25, 2000), the court affirmed the entry of judgment in plaintiff's

favor on *both theories*.

In any event, at this stage of the proceedings Federal Rule of Civil Procedure 8(d)(2)

allows the Trustee to plead in the alternative.[46]  In *Daigle v. Ford Motor Co.*, 713 F. Supp. 2d

822  (D. Minn. 2010), the court considered a motion to dismiss an unjust enrichment claim that

had been pleaded along with statutory breach of warranty claims.   Defendant argued the

plaintiffs had an adequate remedy at law and should not be able to assert  their unjust enrichment

claim.   The court denied the motion, holding that "[t]he Court will permit simultaneous pleading

of the breach of warranty and unjust enrichment claims on the grounds that, under Federal Rule

of Civil Procedure 8(d), a party is permitted to plead in the alternative."  *Id.* at 828.  *Breeding v.*

*Massey*, 378 F.2d 171, 178 (8th Cir. 1967) ("The right of a plaintiff to try his case on alternate

theories has uniformly been upheld in the federal courts and plaintiff cannot be required to elect

upon which theory to proceed."); *Bank of Montreal v. Avalon Capital Group, Inc.,* 743 F. Supp.

2d 1021, 1032 (D. Minn. 2010) ("[A]t this early stage of the litigation, [plaintiff] is permitted to

plead in the alternative."); *The Kinetic Co. v. Medtronic, Inc.*, 672 F. Supp. 2d 933, 948 (D.

Minn. 2009) ("At a later stage it may be necessary for plaintiff to elect a theory, but at the

pleading stage it is not.").   Moreover, courts in this District have permitted unjust enrichment

---

[46] Again, as with several arguments before the Court, the cases Defendants cite do not arise in
the pleadings context.  For example, in *Borom v. City of St. Paul*, 184 N.W.2d 595 (Minn. 1971),
the defendant moved for summary judgment.  In *Southtown Plumbing, Inc. v. Har-Ned Lumber
Co.*, 493 N.W.2d 137 (Minn. Ct. App. 1992), the appellate court considered a directed verdict
after the close of plaintiff's case in chief.  *Servicemaster of St. Cloud v. GAB Business Services,
Inc.*, 544 N.W.2d 302 (Minn. 1996), involved an appeal from damages awarded at trial.
Although *Arena Dev. Group, LLC v. Naegle Commc'ns, Inc.*, No. 06-2806, 2007 WL 2506431
(D. Minn. Aug. 30, 2007), involved a motion to dismiss, the court did not consider Rule 8(d)(2),
and the ruling is contrary to *Daigle* and other cases cited above holding that, at the pleadings
stage, a plaintiff may plead alternative claims.

claims to be joined with fraudulent transfer claims at the pleadings stage. *See S.E.C. v. Brown*, 643 F. Supp. 2d 1077 (D. Minn. 2009); *Kranz v. Koenig*, 484 F. Supp. 2d 997 (D. Minn. 2007).

The Court should deny Defendants' request that the Trustee's unjust enrichment claim be dismissed based on the existence of an adequate remedy at law.

### D.      The Trustee's Unjust Enrichment Claims Are Timely.

The Trustee's unjust enrichment claims are equally timely and include the unjust enrichment gained by Defendants throughout the course of the Petters Ponzi scheme.[47]   The Trustee's unjust enrichment claims are subject to a six-year limitations period.   Minn. Stat. § 541.05, subd. 1(1); *Block v. Litchy*, 428 N.W.2d 850, 854 (Minn. Ct. App. 1988).   A claim for unjust enrichment accrues, and the statute of limitations begins to run, when damages occur, which has been held to be at the time payments are made.   *Id*. at 854 (*citing Bonhiver v. Graff*, 248 N.W.2d 291, 296 (1976)).   Moreover, Minnesota courts have long recognized the application of the tolling doctrine based upon fraudulent concealment to various common law causes of action.   *See Wild v. Rarig*, 234 N.W.2d. 775, 795 (Minn. 1975) (applying doctrine to unjust enrichment claim); *Curtis v. Altria Group, Inc.*, 792 N.W.2d 836, 860-61 (Minn. Ct. App. 2010) (the "discovery rule does not apply to accrual of the applicable cause of action, fraudulent concealment will toll the running of the statute of limitations.") (citing *Kopperud v. Agers*, 312 N.W.2d 443 (Minn. 1981)) .

In *Block v. Litchy*, the court held that the statute of limitations on an unjust enrichment claim could be tolled upon a showing of "fraud or deliberate misrepresentation."   428 N.W.2d at 854 ("Respondent's ignorance of her cause of action does not necessarily toll the statute of

_____

[47] Defendants moving to dismiss the Trustee's unjust enrichment claims as untimely are set forth on Chart 1, attached hereto in the Appendix.

limitations *in the absence of fraud or deliberate misrepresentation*.") (emphasis added).

Minnesota courts have since recognized that the limitations period on unjust enrichment claims

can be tolled upon a showing of "fraud or deliberate misrepresentation." *See Cordes v. Holt &*

*Anderson, Ltd.*, No. A08-1734, 2009 WL 2016613, at *2 (Minn. Ct. App. July 14, 2009)

(distinguishing between "a claim of fraud or deliberate misrepresentation" which would toll the

limitations period on an unjust enrichment claim, and mere ignorance of a cause of action).

The Trustee's unjust enrichment claims are grounded in fraud.  Therefore, although

subject to a six-year limitations period, the running of that period has been tolled based upon the

well-pleaded fraudulent concealment of the facts giving rise to the claims by Petters and his

Associates.  Just as with the Trustee's fraudulent transfer claims, the fraud could not reasonably

have discovered until the appointment of the Receiver on October 6, 2008.  For all these reasons,

the unjust enrichment claims are timely and need not be limited in scope to the six-year period

prior to the filing of the petition.

## VIII.   The Trustee's Claims for Disallowance under 11 U.S.C. § 502(d) Are Valid.

Many of the Defendants argue that the Trustee's claims for disallowance under § 502(d)

should be dismissed as "premature" either because there has been no order entered avoiding a

transfer under the relevant sections of the Bankruptcy Code or because the transferees have not

yet filed proofs of claim in the bankruptcy case.[48]  But the plain language of the statute and the

supporting caselaw do not prohibit the Trustee from raising his disallowance claim in the

adversary complaints for avoidance of fraudulent transfers.  Disallowance under § 502(d) is

---

[48] The Defendants moving to dismiss the Trustee's disallowance claim are listed on Chart 16,
attached hereto in the Appendix.

appropriately included in the Trustee's complaints, and the viability of the defense should not be resolved on a motion to dismiss.

Section 502(d) of the Bankruptcy Code provides that

> [T]he court *shall* disallow *any claim of any entity from which property is recoverable* under section 542, 543, 550, or 553 of this title *or that is a transferee of a transfer avoidable* under section 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of this title, unless such entity or transferee has paid the amount, or turned over any such property, for which such entity or transferee is liable under section 522(i), 542, 543, 550, or 553 of this title.

11 U.S.C. § 502(d) (emphasis added).

Disallowance under § 502(d) explicitly applies to "a transfer *avoidable*," rather than "an avoided transfer" or "claims that have been avoided." *See* 4 *Collier on Bankruptcy*, ¶ 502.05[2][a] (Alan. N. Resnick & Henry J. Sommer, eds., 16th ed. 2010). It is well-established that "there is no prohibition against the trustee asserting section 502(d) as an affirmative defense to a claim of a creditor even if the trustee's claim is time-barred or otherwise nonrecoverable. Thus, there is no guarantee that a claim will be allowed just because a voidable transfer held by the claimant has not been avoided." *Id.* at ¶ 502.05[2][a] & n.7. Thus, by commencing an adversary proceeding with a § 502(d) cause of action, the Trustee can raise a disallowance claim to a potential distribution to the Defendants.

It is also generally understood that "section 502(d) does not deal with proofs of claim." 4 *Collier on Bankruptcy* ¶ 502.05[2]. Indeed, the bankrupt estate can demand a creditor to surrender any avoidable transfers even in a circumstance where such creditor does not file a proof of claim against the debtor and thereby waives any distribution from the estate. *See id.* Section 502(d) focuses only on the creditors' right to share in the distribution of the debtor's assets. *See Schwartz v. Levine & Malin, Inc.*, 111 F.2d 81 (2d Cir. 1940).

105

Courts have consistently recognized that when an objection to a claim is based on the ground that the claimant has failed to surrender a voidable transfer, "the claim can neither be allowed nor disallowed until the preference matter is adjudicated." *Katchen v. Landy*, 382 U.S. 323, 330 (1966); *Ind. Clearing House Co.*, 41 B.R. 985, 1017 (Bankr. D. Utah 1984) ("[T]he [preference] Defendants' claims are not allowable pursuant to section 502(d) until after their fictitious profits and preferences have been surrendered to the estate."); *First Int'l Servs. Corp. v. Apollo Sign Co., (In re First Int'l Servs. Corp.)*, 37 B.R. 856, 860 (Bankr. D. Conn. 1984) ("[C]laims of creditors who have received void or voidable preferences must be disallowed unless the creditor surrenders the money or property transferred during the preference period."); *In re Mastercraft Record Plating, Inc.*, 32 B.R. 106, 109 (Bankr. S.D.N.Y. 1983) ("[I]t cannot be disputed that a creditor's claim cannot be allowed if the creditor has received a preference or fraudulent conveyance unless and until the preference or fraudulent conveyance is surrendered."); *In re Moriarty*, 22 B.R. 689, 690 (Bankr. D. Neb. 1982) ("[I]rrespective of whether a transfer is actually avoided by any appropriate entity . . . a creditor with a voidable transfer may not have its claim allowed . . . until the transferee has paid the amount or turned over the property for which it is liable . . . .").

Defendants rely on *Holloway v. IRS (In re Odom Antennas, Inc.)*, 340 F.3d 705 (8th Cir. 2003), for the proposition that a judgment resulting from a successful avoidance proceeding brought under the enumerated Bankruptcy Code sections contained within section 502(d) is a prerequisite to pleading a disallowance claim. *Odom* notably did not consider any avoidance actions at all. Indeed, "neither [lien holder] received property from a transaction that is voidable under the sections identified in section 502(d)." *Id.* at 705. Furthermore, the trustee in *Odom* "did not attempt to avoid the tax penalty or the punitive damages judgment under section

106

724(a)." *Id.*  Accordingly, in *Odom*, there was no avoidance or any attempt at avoidance in that

case.  Ultimately, the court in *Odom* held that a non-trustee interested party may not invoke

§502(d) based upon a lien avoidance under 11 U.S.C. § 724(a).  *Id.* at 708.  The remaining

discussion on the ability of a trustee to invoke a section 502(d) defense is dicta.  *Id. But see*

*Hoggarth v. Kaler (In re Midwest Agri. Dev. Corp.)*, 387 B.R. 580, 586 (B.A.P. 8th Cir. 2008)

("a trustee must obtain a valid judgment under the applicable avoidance provision prior to

asserting a defense under section 502(d)."); *contra In re Mid Atlantic Fund, Inc.*, 60 B.R. 604

(Bankr. S.D.N.Y. 1986).[49]

At this stage of the litigation, the Court must only determine whether the Trustee asserts a

valid cause of action under § 502(d) to survive a motion to dismiss and not whether any claims

are disallowed based on the merits of the underlying avoidance actions.  Allowing the Trustee's

§ 502(d) disallowance cause of action in the adversary proceedings to remain viable does not

impact any of Defendants' defenses concerning the avoidance actions and is not a determination

of the merits of those actions.  A final determination on the disallowance causes of action in the

adversary proceedings will not be reached until there is a judicial determination on the merits of

the avoidance actions. *See In re Metiom, Inc.*, 301 B.R. 634, 641-42 (Bankr. S.D.N.Y. 2003).  As

---

[49] *See also In re Red Dot Scenic, Inc.*, 313 B.R. 181, 186 (Bankr. S.D.N.Y. 2004) (citing 4
*Collier on Bankruptcy* ¶ 502.05[2][a], at 502-59); *Seta Corp. of Boca v. Atlantic Computer Sys.
(In re Atlantic Computer Sys.)*, 173 B.R. 858, 862 (S.D.N.Y. 1994) (section 502(d) envisions
only some form of judicial determination of the underlying avoidance action before claim
disallowance); *see also In re Enron Corp.*, 340 B.R. 180, 190 (Bankr. S.D.N.Y. 2006), *vacated
on other grounds,* 379 B.R. 425 (S.D.N.Y. 2007) ("It is well-established that there is no
prohibition against the trustee's asserting § 502(d) as an affirmative defense to a claim of a
creditor even if the trustee's claim is time-barred or otherwise nonrecoverable. Thus, there is no
guarantee that a claim will be allowed just because a voidable transfer held by the claimant has
not been avoided."); *In re Metiom, Inc.*, 301 B.R. 634, 642 (Bankr. S.D.N.Y. 2003) (section
502(d) envisions a judicial determination of avoidability, whether obtained in the context of a
claim objection, a declaratory judgment action or an adversary proceeding).

long as the Trustee's causes of action remain viable, the transfers continue to be potentially "avoidable" under the avoidance actions sections of the Code.  The Defendants' claims continue to be disputed claims, pending adjudication of the predicate avoidance actions.  For all these reasons, Defendants' motion to dismiss the § 502(d) claims must be denied.

## IX.   The Additional Arguments Raised by Defendants Either Fail as a Matter of Law or Present Fact-Intensive Issues Inappropriate for Resolution on a Motion to Dismiss.[50]

### A.   The Determination of Whether any Defendants Were "Mere Conduits" Requires a Determination of Multiple Fact Issues Not Proper on a Motion to Dismiss.

Defendant[51] contends that the Trustee's allegations should be dismissed because the Defendant claims it was not an initial transferee.  The motion must be denied because whether Defendant exercised dominion and control over the transferred funds is a fact-intensive inquiry that cannot be resolved on a motion to dismiss.  Moreover, the Complaint alternatively pleads that Defendant is an initial or subsequent transferee.  Defendant's motion can be denied on that basis alone.

### 1.   Whether Defendant Was a Mere Conduit Cannot Be Determined at the Pleadings Stage.

Defendant's assertion that it was a "mere conduit"—which the Trustee disagrees with— requires this Court to determine numerous issues of fact regarding Defendant's ability to exercise control over the transferred funds.  The "issue of dominion and control is one of fact" to be

---

[50] Additional defenses have been raised by Defendants, including a purported failure to identify transfers to subsequent transferees, failure to join necessary parties, and lack of personal jurisdiction.  The Trustee has separately responded to the merits of these arguments in supplemental memoranda of law being filed contemporaneously with the Court.  The Trustee incorporates by reference those arguments, to the extent any of these additional defenses are raised by Defendants.

[51] Southwest Securities, Inc. (Hayden Fleming, Adv. No. 10-04255 and Patrick Fleming, Adv. No. 10-04257).

resolved by the "trier of fact." *Lam v. Connelly Group, L.P. (In re Nat'l Metalcraft Corp.)*, 211

B.R. 905, 907 (B.A.P. 8th Cir. 1997).   Because whether Defendant received funds as a "mere

conduit" presents a fact intensive inquiry, the Court should decline to reach its merits on a

motion to dismiss.

Consistent with the requirements of Federal Rule of Civil Procedure 8, the Trustee

alleged the fraudulent transfers Defendant received, and he is required to do no more.   The

Trustee is not required to allege the nonexistence of affirmative defenses that require resolution

of disputed facts to determine their applicability. *See Weaver v. Clarke*, 45 F.3d 1253, 1255 (8th

Cir. 1995); *Deckard v. Gen. Motors Corp.*, 307 F.3d 556, 560 (7th Cir. 2002) (granting a motion

to dismiss based on an affirmative defense is improper because "the existence of a defense does

not undercut the adequacy of the claim."); *Stanziale v. Nachtomi (In re Tower Air, Inc.)*, 416

F.3d 229, 242 (3d Cir. 2005) (stating that "affirmative defenses generally will not form the basis

for dismissal under Rule 12(b)(6)."). The "mere conduit" defense is such an affirmative defense,

and its resolution on a motion to dismiss is not appropriate.[52]  *See, e.g., Astropower Liquidating*

*Trust v. Xantrex Tech., Inc. (In re Astropower, Inc.)*, 335 B.R. 309, 334 (Bankr. D. Del. 2005);

---

[52] For these same reasons, all the cases cited by Defendant are inapposite because not a single
one supports the proposition that the fact-intensive affirmative defense of "mere conduit" can be
resolved by the Court based on the face of the Complaint on a motion to dismiss.  *See, e.g.,*
*Lucker v. Reeves (In re Reeves)*, 65 F.3d 670, 676 (8th Cir. 1995) (appeal from bankruptcy court
order avoiding transfers); *Bonded Fin. Servs. v. European Am. Bank*, 838 F.2d 890, 894 (7th Cir.
1988) (appeal from summary judgment); *Christy v. Alexander & Alexander*, 130 F.3d 52, 53 (2d.
Cir. 1997) (appeal from summary judgment); *Poonja v. Charles Schwab & Co., Inc. (In re*
*Dominion Corp.)*, 199 B.R. 410, 412 (B.A.P. 9th Cir. 1996) (appeal from summary judgment);
*Iannacone v. IRS (In re Bauer)*, 318 B.R. 697, 699 (Bankr. D. Minn. 2005) (ruling on cross-
motions for summary judgment); *Leonard v. First Commercial Mortgage Co. (In re Circuit*
*Alliance, Inc.)*, 228 B.R. 225 (Bankr. D. Minn. 1998) (decision on merits); *Keller v. Blinder (In*
*re Blinder, Robinson & Co., Inc.)*, 162 B.R. 555, 557 (D. Colo. 1994) (appeal from summary
judgment).

*accord Buckley v. Merrill Lynch & Co., Inc. (In re DVI, Inc.)*, No. 03-12656, 2008 WL 4239120

(Bankr. D. Del. Sept. 16, 2008).

Defendant's argument is premature and cannot be resolved based on the face of the

Complaint.  The motion must be denied.

> **2.    The Trustee Adequately Pleaded that Defendant Is an Initial or Subsequent Transferee, and Nothing Further Is Required to Survive a Motion to Dismiss.**

Taking all facts in the Complaint as true, the Trustee sufficiently alleged that Defendant

is a transferee of the transfers made by the Debtor and subject to avoidance under the Bankruptcy

Code.  All this Court must determine is whether the Complaint states a claim against Defendant

upon which relief can be granted.  *See* Fed. R. Civ. P. 12(b)(6).  It does.

The liability of transferees is set forth in 11 U.S.C. § 550(a), which provides:

> (a) Except as otherwise provided in this section, to the extent that a transfer is avoided under section 544, 545, 547, 548, 549, 553(b), or 724(a) of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from--

> (1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or

> (2) any immediate or mediate transferee of such initial transferee.

The Trustee alleges in each Complaint, "Defendants are initial transferees of the

fraudulent or other avoidable transfers alleged in this Complaint, or persons for whose benefit

such transfers were made, or an immediate or mediate transferees of any initial transferee of such

transfers."  (P. Fleming Compl ¶ 18; H. Fleming Compl. ¶ 20.)  As set forth in previous sections

of the Omnibus Memorandum, each Complaint contains sufficient facts which establish the

fraudulent nature of the transfers.  This is all that is required to state a claim for relief, and

therefore Defendant's motions to dismiss should be denied.

### 3.     The Trustee Adequately Pleaded that Transfers Were Made to Defendants.

Three Defendants move for dismissal of the claims against them on the grounds that the

Trustee did not specifically allege that transfers were made to them.[53]   These Defendants rely on

the fact that their names do not appear in the lists of transactions that identify specific individuals

and entities.   (*See, e.g.,* Adv. No. 10-04427, Lancer Am. Compl. ¶¶ 64-67, 71).   However,

Defendants ignore the allegations in the complaint that "[t]he Transfers were made to or for the

benefit of Defendants and include, but are not limited to, the Transfers listed on Exhibit A."   (*Id.*

¶ 70.)   The Complaint further explains that "[s]ome of the transactions were accomplished

through Defendant Lancer Financial Services, LLC, which engaged in the transactions with PCI

and/or Redtag and created an investment pool *comprised of one or more of the other*

*Defendants.*"   (*Id.* ¶ 62)   (emphasis added). The Complaint also states that "[t]ransfers were made

to or for the benefit of [*all named*] Defendants in furtherance of a fraudulent investment scheme"

and that "Defendants are initial transferees of the fraudulent or other avoidable transfers alleged

in this Complaint, or persons for whose benefit such transfers were made, or immediate or

mediate transferees of any initial transferee of such transfers."   (*Id.* ¶¶ 36, 81.)   These allegations

sufficiently state a claim for relief under the applicable sections of the Bankruptcy Code, and the

Defendants' motion to dismiss on this basis should be denied.

One defendant, Lamar D. Mathews, is the trustee of a trust which the Complaint alleges

received transfers from the Debtors.   It is well established that "a trustee is the legal owner of the

trust's assets."   *Paloian v. LaSalle Bank, N.A.*, 619 F.3d 688, 691 (7th Cir. 2010). As a result, a

---

[53] Specifically, Lancer Partners Ltd. ("LPL"), Lancer Partners GP, LLC ("LPGP"), and Lamar D. Mathews, as Trustee of the D. Truitt and Lorna Davis Charitable Trust ("Mathews"), named as defendants in *Kelley v. Lancer et al.*, Adv. No. 10-04427.

preferential transfer to a trust is appropriately recovered from the trustee, who will charge it to the trust and thus create the appropriate economic incidence." *Id.* at 692. The complaint alleges that transfers were made to the D. Truitt and Lorna Davis Charitable Trust, and sufficiently identifies Mathews as the trustee. (Lancer Am. Compl. ¶ 22.) As the trustee of the Davis Trust, Mathews is the real party in interest because the instant adversary proceeding concerns assets transferred to, and held by, the Davis Trust. (Lancer Am. Compl. ¶¶ 67, 70-71.) The fact that Mathews is not personally identified as a recipient of the transfers does not defeat the sufficiency of the Trustees' allegations that fraudulent transfers were made to the Davis Trust. The Trustee respectfully requests that Defendants' motions to dismiss on grounds that the transfers were not adequately pleaded be denied.

### B. Defendant's Argument Based on Laches Fails.

Defendant[54] argues that the Trustee has failed to rebut the defense of laches. In order to prove laches, the person asserting the defense must show inexcusable delay in asserting a right and that the delay caused undue prejudice to the party asserting laches. *City of St. Paul v. Harding*, 356 N.W.2d 319, 322 (Minn. Ct. App. 1984) (citing *Steenberg v. Kaysen*, 39 N.W.2d 18, 23 (Minn. 1949)). Similar to a statute of limitation, when evaluating the defense of laches, the timeliness of a claim is measured not from the perpetration of the fraud, but from the discovery thereof. *Briggs v. Buzzell*, 204 N.W. 548, 549 (Minn. 1925); (*see also* Omnibus Mem. at § II.C.I.).

Because laches is an affirmative defense requiring development of a factual record, it is inappropriate to resolve in the context of a motion to dismiss under 12(b)(6). *Searles v. Searles*, 412 N.W.2d 11, 13 (Minn. Ct. App. 1987) ("We do not foreclose the possibility of laches in this

---

[54] Nancy Wright, Adv. No. 10-04385.

case after full disclosure of the facts at trial.") (emphasis added); *In re Sand Hill Capital Partners III, LLC*, No. 08-30989, 2010 WL 4269622 (Bankr. N.D. Cal. Oct. 25, 2010) (claims are not barred by the defenses of unclean hands or laches, because prejudice or injury to Defendants is a fact issue that cannot be decided in the 12(b)(6) context); *Deere & Co. v. MTD Prods., Inc.*, No. 00-5936, 2001 WL 435613 (S.D.N.Y. Apr. 30, 2001) (a determination that a claim is barred by laches requires a factual inquiry into the reasons for plaintiff's delay and the extent and nature of the prejudice suffered by defendant as a result of that delay, an inquiry that is inappropriate on a motion to dismiss). Additionally, the Minnesota Supreme Court has held in a number of cases that the equitable doctrine of laches has no application where an action is governed by a statute of limitations and legal rights alone are in controversy. *Aronovitch v. Levy*, 56 N.W.2d 570, 574 (Minn. 1953); *Vadnais v. State*, 28 N.W.2d 694 (Minn. 1947); *Greenfield v. Hill City Land, Loan & Lumber Co.*, 170 N.W. 343 (Minn. 1919); *Kremer v. Lewis*, 163 N.W. 732 (Minn. 1917).

For the same reasons articulated in section (V)(D) above, Defendant's arguments here are irrelevant to this Court's consideration of the sufficiency of the Trustee's pleading and ineffective to obtain a dismissal of the Trustee's claims.

## C.    Defendant's Argument Based on the Doctrine of *In Pari Delicto* Fails.

Defendants argue that the Trustee has failed to establish plausible claims because they believe the affirmative defense of *in pari delicto* applies to such claims.[55]   Consideration of fact-

---

[55] Defendants that challenge the Trustee's pleadings based on the doctrine of *in pari delicto* are Nancy Wright (Adv. No. 10-04385) and Opportunity Finance (Adv. No. 10-04301). In addition, Defendants Hayden Fleming (Adv. No. 10-04255), Patrick Fleming (Adv. No. 10-04257) and James Hodge (Adv. No. 10-04425) challenge the Trustee's unjust enrichment claims on the grounds of *in pari delicto*. Defendants apparently believe the Trustee stands in the shoes of the debtor, PCI. To the contrary, because the Trustee is acting pursuant to 11 U.S.C. § 544(b), the

bound affirmative defenses has no place in this Court's evaluation of the sufficiency of the Trustee's pleading.

*In pari delicto* is an equitable defense that is based on the common law notion that a plaintiff's recovery may be barred by his own wrongful conduct. *Moratzka v. Morris (In re Senior Cottages of America, LLC)*, 482 F.3d 997, 999 n.3 (8th Cir. 2007); *Howard v. Fidelity & Deposit Co., (In re Royale Airlines, Inc.),* 98 F.3d 852, 855 (5th Cir. 1996). The defense is not for the benefit of either party and not to punish either of them, but for the benefit of the public. *Hill v. Day (In re Today's Destiny, Inc.)*, 388 B.R. 737, 748-49 (Bankr. S.D. Tex. 2008). The defense is intended for situations in which the party seeking relief was a participant in the misconduct.

Courts consistently find that *in pari delicto* does not apply when a trustee is proceeding under one of the trustee's statutory avoidance powers under §§ 544(a), 544(b), 547 or 548 of the Bankruptcy Code. *McNamara v. PFS (In re Personal & Bus. Ins. Agency),* 334 F.3d 239, 245–47 (3rd Cir. 2003) (holding that the doctrine of *in pari delicto* does not apply to a trustee bringing an action under § 548); *Corzin v. Fordu (In re Fordu),* 209 B.R. 854, 863 (B.A.P. 6th Cir. 1997) (noting that "courts have consistently recognized that the Trustee may pursue fraudulent or preferential transfers despite the fact that the debtor was a knowing and willing participant to such conveyances").

Even if *in pari delicto* could apply to any of the Trustee's claims, it is an affirmative defense. As an affirmative defense, *in pari delicto* typically requires proof of facts asserted by the defendant and, as such," is seldom an appropriate ground for granting a motion to dismiss."

Trustee is standing in the shoes of a creditor of PCI. The doctrine of *in pari delicto* does not apply in that situation. *See Asarco LLC v. Am. Mining Corp.*, 396 B.R. 278, 325-26 (S.D. Tex. 2008).

*World Capita Commc'ns, Inc. v. Island Capital Mgmt., LLC (In re Skyway Commc'ns Holding Corp.),* 389 B.R. 801, 810 (Bankr. M.D. Fla. 2008); *Milbank v. Holmes (In re TOCFHBI, Inc.),* 413 B.R. 523, 537 (Bankr. N.D. Tex. 2009) (even if the *in pari delicto* doctrine is available to use against a bankruptcy trustee, it is not a basis to grant summary judgment, because such defense is intensely factual); *In re Today's Destiny, Inc.,* 388 B.R. at 749 (finding that "the fact that the Trustee might be *in pari delicto* does not justify 12(b)(6)" and further stating "[t]he need to consider the "peculiar facts and equities" is particularly acute when a defendant is asserting the defense against a Trustee who seeks recovery for the benefit of creditors of a wrongdoer rather than the wrongdoer himself."); *Adelphia Commc'ns.Corp. v. Bank of Am. (In re Adelphia Commc'ns Corp.),* 365 B.R. 24, 55 (Bankr. S.D.N.Y. 2007) ("Issues of fact as to the application of *in pari delicto* would be present here that would preclude dismissal on motion in this case."); *Kalisch v. Maple Trade Fin. Corp. (In re Kalisch),* No. 06-B-1076, 2007 WL 1580049 *4 (Bankr. S.D.N.Y. May 30, 2007) ("At this early pleading stage of the adversary proceeding, the Court does not have enough information and is both unable to weigh the relative fault of the Debtor and [Defendant] and unable to determine if either can be viewed as "less guilty" than the other and, thus, potentially entitled to relief.").

For these reasons, the Defendants' arguments that the Trustee's claims are barred by application of the doctrine of *in pari delicto* is not relevant to this Court's consideration of the sufficiency of the Trustee's pleading and ineffective to obtain a dismissal of the Trustee's claims. The Trustee reserves the right to fully respond to whether this complex affirmative defense even applies and its potential application at the appropriate time in these Adversary Proceedings or in any other proceeding in these bankruptcy cases.

### D.    Defendant's Argument Based on Felony Theft Fails.

Defendant[56] argues that by complying with the provisions of the Bankruptcy Code and Minnesota laws, the Court would aid and abet, and thereby participate in, Petters' crimes and itself be guilty of felony theft. The Trustee respectfully submits that this is a fundamental misunderstanding of the Trustee's claims and causes of action and that there is no basis for dismissal of the Trustee's claims for this reason.

Within the Complaints, the Trustee is merely utilizing long-available statutory remedies to recover fraudulently transferred funds for the benefit of creditors. 5 *Collier on Bankruptcy* ¶ 548.01 (Alan N. Resnick & Harry J. Sommer, eds., 16th ed. 2010) (the ability to avoid and recover fraudulent transfers has been available to creditors for centuries, dating back to Roman law). The avoidance causes of action under the Bankruptcy Code and Minnesota Statutes permit third parties, such as creditors and trustees, to unwind transactions that might otherwise be legal and binding between the transferor and the transferee. *In re First Alliance Mortg. Co.,* 471 F.3d 977, 1008 (9th Cir. 2006) ("The purpose of fraudulent transfer law is to protect creditors from last-minute diminutions in the pool of assets in which they have interests."). The Trustee respectfully requests that the motion to dismiss filed by this Defendant be denied.

### X.    Dismissal of any of the Trustee's Claims Must Be Without Prejudice Pursuant to Rule 15 and the Court Should Grant Leave to Amend the Complaints.

For all the reasons stated herein, the Defendants' motions must be denied in their entirety. If, however, the Court determines that there is a deficiency in any of the Complaints, or that any claims set forth therein are insufficiently pleaded, the Trustee respectfully requests leave to amend each Complaint. Complaints that are dismissed under Federal Rules of Civil Procedure 8,

---

[56] Nancy Wright, Adv. No. 10-04385.

9(b) or 12(b)(6) are "almost always" dismissed with leave to amend. *Luce v. Edelstein*, 802 F.2d

49, 56 (2d Cir. 1986). *See Pardo v. Avanti Corporate Health Sys., Inc (In re APF Co.)*, 274 B.R.

634, 640 n.14 (Bankr. D. Del. 2001); *Sculler v. Rosen (In re Rosen)*, 151 B.R. 648, 656 (Bankr.

E.D.N.Y. 1993); *Lanmark Group, Inc. v. Rifkin (In re Rifkin),* 142 B.R. 61, 68 (Bankr. E.D.N.Y.

1992). The mandate of Federal Rule of Civil Procedure 15(a)(2) is that leave to amend should be

freely given and has been explained by the Supreme Court as follows:

> It is too late in the day and entirely contrary to the spirit of the
> Federal Rules of Civil Procedure for decisions on the merits to be
> avoided on the basis of such mere technicalities. The Federal
> Rules reject the approach that pleading is a game of skill in which
> one misstep by counsel may be decisive to the outcome and accept
> the principle that the purpose of pleading is to facilitate a proper
> decision on the merits. The Rules themselves provide that they are
> to be construed to secure the just, speedy, and inexpensive
> determination of every action. Rule 1. . . . Rule 15(a) declares that
> leave to amend shall be freely given when justice so requires; this
> mandate is to be heeded.    . . . If the underlying facts or
> circumstances relied upon by a plaintiff may be a proper subject of
> relief, he ought to be an afforded an opportunity to test his claims
> on the merits.

*Foman v. Davis*, 371 U.S. 178, 182 (1962) (internal citations and quotations omitted). In

applying this liberal pleading standard, the Eighth Circuit Court of Appeals explained that even

"when an initial complaint [is] arguably conclusory and too broad in the scope of the

allegations," if the plaintiff can allege additional facts that would provide a basis for a complaint,

leave to amend ought to be granted. *Williams v. Town of Okoboji*, 606 F.2d 812, 814 (8th Cir.

1979). Accordingly, if the Court determines any of the Trustee's pleadings are insufficient, the

Trustee should be given leave to amend under Federal Rule of Civil Procedure 15(a).[57]

---

[57] Notably, "[a]n amendment to a pleading relates back to the date of the original pleading when .
. . the amendment asserts a claim or defense that arose out of the conduct, transaction, or
occurrence set out - or attempted to be set out - in the original pleading . . .." Fed. R. Civ. P.

## CONCLUSION

The Trustees' Complaints were timely filed, the allegations were particularly pleaded and set forth viable claims supported by well pleaded facts and substantial legal authority. As in all Ponzi cases, there are winners and there are losers, and there are those who the law provides should be required to return funds so that those with outstanding claims obtain a recovery on their allowed claims. The Court should deny Defendants' motions to dismiss in their entirety so that these cases may proceed on their merits, as warranted by the pleadings, evidence, procedural and substantive law.

---

15(c)(1)(B); *see APF Co.*, 274 B.R. at 640 (granting motion to dismiss, "without prejudice to the Trustee's right to amend the complaint" and finding that "relation back under the circumstances would be proper"). In this case, any amendment to the Trustee's claims will be predicated upon the conduct, transactions, and occurrences set forth in the original Complaints. Therefore, any leave of this Court to allow the Trustee to amend the pleadings should further be accompanied by an order determining that any amended pleadings will relate back to the original Complaints.

DATED: April 22, 2011                    **LINDQUIST & VENNUM P.L.L.P.**


By: _/e/ James A. Lodoen_____
Daryle L. Uphoff (#0111831)
James A. Lodoen (#111831)
George H. Singer (#0262043)
Michael D. Olafson (#0156693)
Terrence J. Fleming (#012883)
Mark D. Larsen (#0318498)
Sandra Smalley-Fleming (#0296983)
Kirstin D. Kanski (#0346676)
Adam C. Ballinger (#0389058)

4200 IDS Center
80 South Eighth Street
Minneapolis, Minnesota 55402
Telephone: (612) 371-3211
Facsimile:  (612) 371-3207
E-Mail Addresses:
duphoff@lindquist.com
jlodoen@lindquist.com
gsinger@lindquist.com
molafson@lindquist.com
tfleming@lindquist.com
mlarsen@lindquist.com
ssmalley-fleming@lindquist.com
kkanski@lindquist.com
aballinger@lindquist.com

**ATTORNEYS FOR
DOUGLAS A. KELLEY,
CHAPTER 11 TRUSTEE OF
PETTERS COMPANY, INC., ET AL.**

119

DATED: April 22, 2011

**KELLEY, WOLTER & SCOTT, P.A.**

By: /e/ Kevin M. Magnuson
Steven E. Wolter (#170707)
Stacy L. Kabele (#0273673)
Patricia A. Pedersen (#0240205)
Kevin M. Magnuson (#0306599)

431 South Seventh Street
Suite 2530
Minneapolis, MN  55414
Telephone: (612) 371-9090
Facsimile:  (612) 371-0574
E-Mail Addresses:
swolter@kelleywolter.com
skabele@kelleywolter.com
ppedersen@kelleywolter.com
kmagnuson@kelleywolter.com

**ATTORNEYS FOR
DOUGLAS A. KELLEY,
CHAPTER 11 TRUSTEE OF
PETTERS COMPANY, INC., ET AL.**

APPENDIX

**Chart 1**

Defendants in the following cases have moved to dismiss the Trustee's fraudulent

transfer and unjust enrichment claims as completely or partially time-barred:

| Case No. | Defendant(s) |
|---|---|
| 10-04201 | Vlahos, Michelle |
| 10-04202 | Redstone Limited Partnership |
| 10-04203 | Redstone American Grill, Inc. |
| 10-04204 | Edgebrook, Inc. |
| 10-04205 | Aron, Don; d/b/a The Aron Companies |
| 10-04206 | Kanios, Chris, et al. |
| 10-04207 | Hagan, John |
| 10-04209 | Isaac, Lynn, et al. |
| 10-04210 | Isaac, George, et al. |
| 10-04211 | Papadimos, Steve |
| 10-04212 | Svigos, Paul |
| 10-04225 | Kenney, Patrick |
| 10-04250 | High Plains Investment LLC |
| 10-04254 | Hauser, Peter |
| 10-04255 | Fleming, Hayden, et al. |
| 10-04255 | Southwest Securities, Inc, as custodian of the Hayden R. Fleming IRA |
| 10-04256 | Miller, Alan, et al. |
| 10-04257 | Fleming, Patrick, et al. |
| 10-04257 | Southwest Securities, Inc, as custodian of the Patrick A. Fleming IRA |
| 10-04262 | McCarthy, Brian |
| 10-04263 | Allanson, Russell |
| 10-04264 | Brennan, Timothy |
| 10-04266 | Colvin, Kenneth, et al. |
| 10-04267 | Electric Motor Supply Co. |
| 10-04268 | Feneis, Steve |
| 10-04273 | Kabe, Galen |
| 10-04274 | Caruso, Joseph |
| 10-04275 | Feneis, Patricia |
| 10-04277 | Kuperus |
| 10-04278 | Kyriakides, Royce |
| 10-04280 | Slobodyanyuk, Jane |
| 10-04281 | Slobodyanyuk, Slava |
| 10-04282 | Miller Companies, Inc. |
| 10-04284 | Kerbel, Carol |
| 10-04290 | Challenge Printing |

| 10-04292 | Overstock.com |
| 10-04293 | Alper, Michael |
| 10-04296 | Mansour, Samuel, et al. |
| 10-04301 | Opportunity Finance, LLC (PCI) |
| 10-04301 | Minneapolis Foundation |
| 10-04310 | Colvin, Larry:Larry Colvin Keough |
| 10-04311 | Colvin, Kimberly; Kimberlee Colvin Keough |
| 10-04337 | Carter, Dove |
| 10-04339 | Danko, George |
| 10-04343 | Miller, Andrea |
| 10-04347 | Mau, Cheryl |
| 10-04348 | Margolis, David |
| 10-04352 | Northwestern Foundation |
| 10-04354 | Thomas Shimoji and Company, Ltd. |
| 10-04355 | Circle F Ventures, LLC & Dan Cartwright |
| 10-04366 | Pernula, Mary |
| 10-04378 | Toshi Investments, Ltd. |
| 10-04380 | Idlewild Properties, LLC |
| 10-04382 | Knoblach, Marcellus, et al. |
| 10-04385 | Wright, Nancy |
| 10-04391 | Schopper, Hans |
| 10-04395 | Monighan, Shawn |
| 10-04396 | Westford Special Situations Master Fund LP, et al. |
| 10-04402 | Zhang, Xiaohau |
| 10-04405 | Clayton, Whitney |
| 10-04409 | Ratliff, Stephen |
| 10-04410 | Dunlap, William |
| 10-04415 | Morgan, Stephen |
| 10-04418 | General Electric Capital Corporation |
| 10-04419 | Romanesko, Stuart |
| 10-04423 | Johnson, Kenneth |
| 10-04425 | Hodge, James |
| 10-04427 | Cypress Financial Trading Co, & EFP Holdings, LP |
| 10-04427 | Lancer Financial Services, et al. |
| 10-04431 | Cohen Partnership; Jay Cohen |

**Chart 2**

Defendants in the following cases have moved to dismiss the Trustee's fraudulent transfer claims under 11 U.S.C. § 544(b) as time barred on the ground that the two-year limitations period of 11 U.S.C. § 546(a) is subsumed within the applicable Minnesota law limitations period for fraudulent transfer claims:

| Case No. | Defendant(s) |
|----------|--------------|
| 10-04201 | Vlahos, Michelle |
| 10-04206 | Kanios, Chris, et al. |
| 10-04207 | Hagan, John |
| 10-04209 | Isaac, Lynn, et al. |
| 10-04210 | Isaac, George, et al. |
| 10-04211 | Papadimos, Steve |
| 10-04212 | Svigos, Paul |
| 10-04267 | Electric Motor Supply Co. |
| 10-04274 | Caruso, Joseph |
| 10-04296 | Mansour, Samuel, et al. |
| 10-04301 | Minneapolis Foundation |
| 10-04337 | Carter, Dove |
| 10-04339 | Danko, George |
| 10-04343 | Miller, Andrea |
| 10-04347 | Mau, Cheryl |
| 10-04348 | Margolis, David |
| 10-04354 | Thomas Shimoji and Company, Ltd. |
| 10-04355 | Circle F Ventures, LLC & Dan Cartwright |
| 10-04366 | Pernula, Mary |
| 10-04378 | Toshi Investments, Ltd. |
| 10-04395 | Monighan, Shawn |
| 10-04396 | Epsilon Global Active Value Fund II, Ltd. |
| 10-04396 | Westford Special Situations Master Fund LP et al |
| 10-04402 | Zhang, Xiaohau |
| 10-04405 | Clayton, Whitney |
| 10-04409 | Ratliff, Stephen |
| 10-04410 | Dunlap, William |
| 10-04415 | Morgan, Stephen |
| 10-04419 | Romanesko, Stuart |
| 10-04425 | Hodge, James |
| 10-04427 | Lancer Financial Services, et al. |

**Chart 3**

Defendants in the following cases have moved to dismiss the Trustee's fraudulent

transfer claims under 11 U.S.C. § 544(b) as time barred on the ground that service, rather than

filing of the Complaint, establishes timeliness:

| Case No. | Defendant(s) |
|----------|--------------|
| 10-04255 | Fleming, Hayden, et al. |
| 10-04301 | Minneapolis Foundation |
| 10-04337 | Carter, Dove |
| 10-04339 | Danko, George |
| 10-04343 | Miller, Andrea |
| 10-04348 | Margolis, David |
| 10-04355 | Circle F Ventures, LLC & Dan Cartwright |
| 10-04366 | Pernula, Mary |
| 10-04382 | Knoblach, Marcellus, et al. |
| 10-04395 | Monighan, Shawn |
| 10-04410 | Dunlap, William |
| 10-04419 | Romanesko, Stuart |
| 10-04425 | Hodge, James |

**Chart 4**

Defendants in the following cases have moved to dismiss the Trustee's fraudulent transfer claims under 11 U.S.C. § 544(b) as time barred on the ground(s) that fraudulent concealment is inappropriate here and/or the Trustee has not adequately pleaded fraudulent concealment:

| Case No. | Defendant(s) |
|---|---|
| 10-04201 | Vlahos, Michelle |
| 10-04202 | Redstone Limited Partnership |
| 10-04203 | Redstone American Grill, Inc. |
| 10-04204 | Edgebrook, Inc. |
| 10-04205 | Aron, Don; d/b/a The Aron Companies |
| 10-04209 | Isaac, Lynn, et al. |
| 10-04210 | Isaac, George, et al. |
| 10-04212 | Svigos, Paul |
| 10-04225 | Kenney, Patrick |
| 10-04250 | High Plains Investment LLC |
| 10-04254 | Hauser, Peter |
| 10-04255 | Fleming, Hayden, et al. |
| 10-04255 | Southwest Securities, Inc, as custodian of the Hayden R. Fleming IRA |
| 10-04256 | Miller, Alan, et al. |
| 10-04257 | Fleming, Patrick, et al. |
| 10-04257 | Southwest Securities, Inc, as custodian of the Patrick A. Fleming IRA |
| 10-04263 | Allanson, Russell |
| 10-04264 | Brennan, Timothy |
| 10-04266 | Colvin, Kenneth, et al. |
| 10-04267 | Electric Motor Supply Co. |
| 10-04268 | Feneis, Steve |
| 10-04273 | Kabe, Galen |
| 10-04275 | Feneis, Patricia |
| 10-04277 | Kuperus |
| 10-04278 | Kyriakides, Royce |
| 10-04280 | Slobodyanyuk, Jane |
| 10-04281 | Slobodyanyuk, Slava |
| 10-04282 | Miller Companies, Inc. |
| 10-04284 | Kerbel, Carol |
| 10-04290 | Challenge Printing |
| 10-04292 | Overstock.com |
| 10-04293 | Alper, Michael |
| 10-04296 | Mansour, Samuel, et al. |

| 10-04301 | Opportunity Finance, LLC (PCI) |
| 10-04301 | Minneapolis Foundation |
| 10-04310 | Colvin, Larry:Larry Colvin Keough |
| 10-04311 | Colvin, Kimberly; Kimberlee Colvin Keough |
| 10-04337 | Carter, Dove |
| 10-04339 | Danko, George |
| 10-04343 | Miller, Andrea |
| 10-04348 | Margolis, David |
| 10-04352 | Northwestern Foundation |
| 10-04355 | Circle F Ventures, LLC & Dan Cartwright |
| 10-04366 | Pernula, Mary |
| 10-04380 | Idlewild Properties, LLC |
| 10-04382 | Knoblach, Marcellus, et al. |
| 10-04391 | Schopper, Hans |
| 10-04395 | Monighan, Shawn |
| 10-04405 | Clayton, Whitney |
| 10-04409 | Ratliff, Stephen |
| 10-04410 | Dunlap, William |
| 10-04418 | General Electric Capital Corporation |
| 10-04423 | Johnson, Kenneth |
| 10-04427 | Cypress Financial Trading Co, & EFP Holdings, LP |
| 10-04427 | Lancer Financial Services, et al. |
| 10-04431 | Cohen Partnership; Jay Cohen |

## Chart 5

Defendants in the following cases have moved to dismiss the Trustee's fraudulent transfer claims for lack of standing (i.e., failure to plead the identity of the "golden creditor"):

| Case No. | Defendant(s) |
|---|---|
| 10-04202 | Redstone Limited Partnership |
| 10-04203 | Redstone American Grill, Inc. |
| 10-04204 | Edgebrook, Inc. |
| 10-04205 | Aron, Don; d/b/a The Aron Companies |
| 10-04207 | Hagan, John |
| 10-04209 | Isaac, Lynn, et al. |
| 10-04210 | Isaac, Georg,e et al. |
| 10-04212 | Svigos, Paul |
| 10-04225 | Kenney, Patrick |
| 10-04250 | High Plains Investment LLC |
| 10-04254 | Hauser, Peter |
| 10-04255 | Southwest Securities, Inc, as custodian of the Hayden R. Fleming IRA |
| 10-04256 | Miller, Alan, et al. |
| 10-04257 | Southwest Securities, Inc, as custodian of the Patrick A. Fleming IRA |
| 10-04262 | McCarthy, Brian |
| 10-04263 | Allanson, Russell |
| 10-04266 | Colvin, Kenneth, et al. |
| 10-04267 | Electric Motor Supply Co. |
| 10-04275 | Feneis, Patricia |
| 10-04278 | Kyriakides, Royce |
| 10-04280 | Slobodyanyuk, Jane |
| 10-04281 | Slobodyanyuk, Slava |
| 10-04284 | Kerbel, Carol |
| 10-04292 | Overstock.com |
| 10-04293 | Alper, Michael |
| 10-04296 | Mansour, Samuel, et al. |
| 10-04301 | Minneapolis Foundation |
| 10-04301 | WestLB AG, New York Branch |
| 10-04310 | Colvin, Larry:Larry Colvin Keough |
| 10-04311 | Colvin, Kimberly; Kimberlee Colvin Keough |
| 10-04328 | Elistone Fund |
| 10-04337 | Carter, Dove |
| 10-04338 | Engels, Patrick |
| 10-04339 | Danko, George |
| 10-04340 | McGaunn, Jon |
| 10-04341 | Salmen, Thomas J. |
| 10-04342 | Phelps, Michael |

| 10-04343 | Miller, Andrea |
| 10-04344 | Anderson, DeAnne |
| 10-04345 | Ting, Thomas |
| 10-04346 | Riedl, Kevin |
| 10-04347 | Mau, Cheryl |
| 10-04348 | Margolis, David |
| 10-04352 | Northwestern Foundation |
| 10-04354 | Thomas Shimoji and Company, Ltd. |
| 10-04358 | Joe, Arthur |
| 10-04359 | Tesar, Tamara |
| 10-04360 | Dorsey, Anastasia |
| 10-04362 | Honing, Kimberly |
| 10-04363 | Sarenpa, Colleen |
| 10-04366 | Pernula, Mary |
| 10-04367 | Schmit, Joseph |
| 10-04375 | Opportunity Finance, LLC (PGW) |
| 10-04378 | Toshi Investments, Ltd. |
| 10-04380 | Idlewild Properties, LLC |
| 10-04391 | Schopper, Hans |
| 10-04395 | Monighan, Shawn |
| 10-04396 | Westford Special Situations Master Fund LP, et al. |
| 10-04402 | Zhang, Xiaohau |
| 10-04403 | Lagermeier, Daniel |
| 10-04405 | Clayton, Whitney |
| 10-04408 | Hardy, Scott |
| 10-04409 | Ratliff, Stephen |
| 10-04410 | Dunlap, William |
| 10-04415 | Morgan, Stephen |
| 10-04418 | General Electric Capital Corporation |
| 10-04419 | Romanesko, Stuart |
| 10-04423 | Johnson, Kenneth |
| 10-04427 | Cypress Financial Trading Co, & EFP Holdings, LP |
| 10-04427 | Lancer Financial Services, et al. |
| 10-04431 | Cohen Partnership; Jay Cohen |

# Chart 6

Defendants in the following cases have moved to dismiss the Trustee's fraudulent transfer claims for actual fraud on the ground the actual fraud is not sufficiently pleaded under Rule 9(b):

| Case No. | Defendant(s) |
|----------|--------------|
| 10-04201 | Vlahos, Michelle |
| 10-04202 | Redstone Limited Partnership |
| 10-04203 | Redstone American Grill, Inc. |
| 10-04204 | Edgebrook, Inc. |
| 10-04205 | Aron, Don; d/b/a The Aron Companies |
| 10-04206 | Kanios, Chris, et al. |
| 10-04211 | Papadimos, Steve |
| 10-04225 | Kenney, Patrick |
| 10-04250 | High Plains Investment LLC |
| 10-04254 | Hauser, Peter |
| 10-04255 | Fleming, Hayden, et al. |
| 10-04255 | Southwest Securities, Inc, as custodian of the Hayden R. Fleming IRA |
| 10-04256 | Miller, Alan, et al. |
| 10-04257 | Fleming, Patrick, et al. |
| 10-04262 | McCarthy, Brian |
| 10-04263 | Allanson, Russell |
| 10-04264 | Brennan, Timothy |
| 10-04266 | Colvin, Kenneth, et al. |
| 10-04267 | Electric Motor Supply Co. |
| 10-04273 | Kabe, Galen |
| 10-04274 | Caruso, Joseph |
| 10-04275 | Feneis, Patricia |
| 10-04277 | Kuperus |
| 10-04278 | Kyriakides, Royce |
| 10-04282 | Miller Companies, Inc. |
| 10-04284 | Kerbel, Carol |
| 10-04292 | Overstock.com |
| 10-04293 | Alper, Michael |
| 10-04296 | Mansour, Samuel, et al. |
| 10-04301 | Opportunity Finance, LLC (PCI) |
| 10-04301 | Minneapolis Foundation |
| 10-04301 | WestLB AG, New York Branch |
| 10-04310 | Colvin, Larry:Larry Colvin Keough |
| 10-04311 | Colvin, Kimberly; Kimberlee Colvin Keough |
| 10-04328 | Elistone Fund |
| 10-04352 | Northwestern Foundation |

| | |
|---|---|
| 10-04354 | Thomas Shimoji and Company, Ltd. |
| 10-04355 | Circle F Ventures, LLC & Dan Cartwright |
| 10-04378 | Toshi Investments, Ltd. |
| 10-04380 | Idlewild Properties, LLC |
| 10-04382 | Knoblach, Marcellus, et al. |
| 10-04396 | Westford Special Situations Master Fund LP, et al. |
| 10-04418 | General Electric Capital Corporation |
| 10-04423 | Johnson, Kenneth |
| 10-04425 | Hodge, James |
| 10-04427 | Cypress Financial Trading Co, & EFP Holdings, LP |
| 10-04427 | Lancer Financial Services, et al. |
| 10-04431 | Cohen Partnership; Jay Cohen |

**Chart 7**

Defendants in the following cases have moved to dismiss the Trustee's fraudulent transfer claims on the ground the Trustee has not adequately pleaded the Ponzi scheme presumption:

| Case No. | Defendant(s) |
|----------|--------------|
| 10-04212 | Svigos, Paul |
| 10-04225 | Kenney, Patrick |
| 10-04255 | Fleming, Hayden, et al. |
| 10-04256 | Miller, Alan, et al. |
| 10-04257 | Fleming, Patrick, et al. |
| 10-04266 | Colvin, Kenneth, et al. |
| 10-04301 | Minneapolis Foundation |
| 10-04301 | WestLB AG, New York Branch |
| 10-04310 | Colvin, Larry:Larry Colvin Keough |
| 10-04311 | Colvin, Kimberly; Kimberlee Colvin Keough |
| 10-04337 | Carter, Dove |
| 10-04338 | Engels, Patrick |
| 10-04339 | Danko, George |
| 10-04340 | McGaunn, Jon |
| 10-04341 | Salmen, Thomas J. |
| 10-04342 | Phelps, Michael |
| 10-04343 | Miller, Andrea |
| 10-04344 | Anderson, DeAnne |
| 10-04345 | Ting, Thomas |
| 10-04346 | Riedl, Kevin |
| 10-04347 | Mau, Cheryl |
| 10-04348 | Margolis, David |
| 10-04355 | Circle F Ventures, LLC & Dan Cartwright |
| 10-04358 | Joe, Arthur |
| 10-04359 | Tesar, Tamara |
| 10-04360 | Dorsey, Anastasia |
| 10-04361 | O'Brien, Mollie |
| 10-04362 | Honing, Kimberly |
| 10-04363 | Sarenpa, Colleen |
| 10-04366 | Pernula, Mary |
| 10-04367 | Schmit, Joseph |
| 10-04382 | Knoblach, Marcellus, et al. |
| 10-04391 | Schopper, Hans |
| 10-04395 | Monighan, Shawn |
| 10-04402 | Zhang, Xiaohau |
| 10-04403 | Lagermeier, Daniel |
| 10-04405 | Clayton, Whitney |

| | |
|---|---|
| 10-04408 | Hardy, Scott |
| 10-04409 | Ratliff, Stephen |
| 10-04410 | Dunlap, William |
| 10-04415 | Morgan, Stephen |
| 10-04419 | Romanesko, Stuart |
| 10-04425 | Hodge, James |

**Chart 8**

Defendants in the following cases have moved to dismiss the Trustee's fraudulent transfer claims for actual fraud on the ground that repayment of a commercial loan is not fraudulent as a matter of law:

| Case No. | Defendant(s) |
|----------|--------------|
| 10-04206 | Kanios, Chris, et al. |
| 10-04225 | Kenney, Patrick |
| 10-04255 | Fleming, Hayden, et al. |
| 10-04256 | Miller, Alan, et al. |
| 10-04257 | Fleming, Patrick, et al. |
| 10-04262 | McCarthy, Brian, et al. |
| 10-04266 | Colvin, Kenneth, et al. |
| 10-04274 | Caruso, Joseph |
| 10-04275 | Feneis, Patricia |
| 10-04280 | Slobodyanyuk, Jane |
| 10-04281 | Slobodyanyuk, Slava |
| 10-04284 | Kerbel, Carol |
| 10-04301 | Opportunity Finance, LLC (PCI) |
| 10-04301 | Minneapolis Foundation |
| 10-04301 | WestLB AG, New York Branch |
| 10-04310 | Colvin, Larry:Larry Colvin Keough |
| 10-04311 | Colvin, Kimberly; Kimberlee Colvin Keough |
| 10-04354 | Thomas Shimoji and Company, Ltd. |
| 10-04355 | Circle F Ventures, LLC & Dan Cartwright |
| 10-04378 | Toshi Investments, Ltd. |
| 10-04382 | Knoblach, Marcellus, et al. |
| 10-04391 | Schopper, Hans |
| 10-04396 | Westford Special Situations Master Fund LP, et al. |
| 10-04418 | General Electric Capital Corporation |
| 10-04425 | Hodge, James |
| 10-04427 | Cypress Financial, et al. |
| 10-04427 | Lancer Financial Services, et al. |

**Chart 9**

Defendants in the following cases have moved to dismiss the Trustee's fraudulent

transfer claims for constructive fraud for failure to state a claim:

| Case No. | Defendant(s) |
|---|---|
| 10-04201 | Vlahos, Michelle |
| 10-04202 | Redstone Limited Partnership |
| 10-04203 | Redstone American Grill, Inc. |
| 10-04204 | Edgebrook, Inc. |
| 10-04205 | Aron, Don; d/b/a The Aron Companies |
| 10-04206 | Kanios, Chris, et al. |
| 10-04207 | Hagan, John |
| 10-04209 | Isaac, Lynn, et al. |
| 10-04210 | Isaac, George, et al. |
| 10-04211 | Papadimos, Steve |
| 10-04212 | Svigos, Paul |
| 10-04225 | Kenney, Patrick |
| 10-04250 | High Plains Investment LLC |
| 10-04254 | Hauser, Peter |
| 10-04255 | Fleming, Hayden, et al. |
| 10-04255 | Southwest Securities, Inc, as custodian of the Hayden R. Fleming IRA |
| 10-04256 | Miller, Alan, et al. |
| 10-04257 | Fleming, Patrick, et al. |
| 10-04257 | Southwest Securities, Inc, as custodian of the Patrick A. Fleming IRA |
| 10-04262 | McCarthy, Brian |
| 10-04263 | Allanson, Russell |
| 10-04264 | Brennan, Timothy |
| 10-04266 | Colvin, Kenneth, et al. |
| 10-04267 | Electric Motor Supply Co. |
| 10-04273 | Kabe, Galen |
| 10-04274 | Caruso, Joseph |
| 10-04275 | Feneis, Patricia |
| 10-04277 | Kuperus |
| 10-04278 | Kyriakides, Royce |
| 10-04280 | Slobodyanyuk, Jane |
| 10-04281 | Slobodyanyuk, Slava |
| 10-04282 | Miller Companies, Inc. |
| 10-04284 | Kerbel, Carol |
| 10-04292 | Overstock.com |
| 10-04293 | Alper, Michael |
| 10-04296 | Mansour, Samuel, et al. |
| 10-04301 | Opportunity Finance, LLC (PCI) |

| | |
|---|---|
| 10-04301 | Minneapolis Foundation |
| 10-04301 | WestLB AG, New York Branch |
| 10-04310 | Colvin, Larry:Larry Colvin Keough |
| 10-04311 | Colvin, Kimberly; Kimberlee Colvin Keough |
| 10-04328 | Elistone Fund |
| 10-04337 | Carter, Dove |
| 10-04338 | Engels, Patrick |
| 10-04339 | Danko, George |
| 10-04340 | McGaunn, Jon |
| 10-04341 | Salmen, Thomas J. |
| 10-04342 | Phelps, Michael |
| 10-04343 | Miller, Andrea |
| 10-04344 | Anderson, DeAnne |
| 10-04345 | Ting, Thomas |
| 10-04346 | Riedl, Kevin |
| 10-04347 | Mau, Cheryl |
| 10-04348 | Margolis, David |
| 10-04352 | Northwestern Foundation |
| 10-04354 | Thomas Shimoji and Company, Ltd. |
| 10-04355 | Circle F Ventures, LLC & Dan Cartwright |
| 10-04358 | Joe, Arthur |
| 10-04359 | Tesar, Tamara |
| 10-04360 | Dorsey, Anastasia |
| 10-04361 | O'Brien, Mollie |
| 10-04362 | Honing, Kimberly |
| 10-04363 | Sarenpa, Colleen |
| 10-04366 | Pernula, Mary |
| 10-04367 | Schmit, Joseph |
| 10-04375 | Opportunity Finance, LLC (PGW) |
| 10-04378 | Toshi Investments, Ltd. |
| 10-04380 | Idlewild Properties, LLC |
| 10-04382 | Knoblach, Marcellus, et al. |
| 10-04385 | Wright, Nancy |
| 10-04395 | Monighan, Shawn |
| 10-04396 | Westford Special Situations Master Fund LP, et al. |
| 10-04402 | Zhang, Xiaohau |
| 10-04403 | Lagermeier, Daniel |
| 10-04405 | Clayton, Whitney |
| 10-04408 | Hardy, Scott |
| 10-04409 | Ratliff, Stephen |
| 10-04410 | Dunlap, William |
| 10-04415 | Morgan, Stephen |
| 10-04418 | General Electric Capital Corporation |
| 10-04419 | Romanesko, Stuart |
| 10-04423 | Johnson, Kenneth |
| 10-04425 | Hodge, James |

| 10-04427 | Cypress Financial Trading Co, & EFP Holdings, LP |
| 10-04427 | Lancer Financial Services, et al. |
| 10-04431 | Cohen Partnership; Jay Cohen |
| 10-04440 | Vicis Capital (Ritchie) |

**Chart 10**

Defendants in the following cases have moved to dismiss the Trustee's fraudulent transfer claims for constructive fraud on the ground PCI received "reasonably equivalent value":

| Case No. | Defendant(s) |
|---|---|
| 10-04206 | Kanios, Chris, et al. |
| 10-04225 | Kenney, Patrick |
| 10-04255 | Fleming, Hayden, et al. |
| 10-04256 | Miller, Alan, et al. |
| 10-04257 | Fleming, Patrick, et al. |
| 10-04266 | Colvin, Kenneth, et al. |
| 10-04267 | Brennan, Timothy |
| 10-04273 | Kabe, Galen |
| 10-04274 | Caruso, Joseph |
| 10-04275 | Feneis, Patricia |
| 10-04280 | Slobodyanyuk, Jane |
| 10-04281 | Slobodyanyuk, Slava |
| 10-04284 | Kerbel, Carol |
| 10-04301 | Opportunity Finance, LLC (PCI) |
| 10-04301 | Minneapolis Foundation |
| 10-04301 | WestLB AG, New York Branch |
| 10-04310 | Colvin, Larry:Larry Colvin Keough |
| 10-04311 | Colvin, Kimberly; Kimberlee Colvin Keough |
| 10-04328 | Elistone Fund |
| 10-04337 | Carter, Dove |
| 10-04338 | Engels, Patrick |
| 10-04339 | Danko, George |
| 10-04340 | McGaunn, Jon |
| 10-04341 | Salmen, Thomas J. |
| 10-04342 | Phelps, Michael |
| 10-04343 | Miller, Andrea |
| 10-04344 | Anderson, DeAnne |
| 10-04345 | Ting, Thomas |
| 10-04346 | Riedl, Kevin |
| 10-04347 | Mau, Cheryl |
| 10-04348 | Margolis, David |
| 10-04352 | Northwestern Foundation |
| 10-04354 | Thomas Shimoji and Company, Ltd. |
| 10-04355 | Circle F Ventures, LLC & Dan Cartwright |
| 10-04358 | Joe, Arthur |
| 10-04359 | Tesar, Tamara |
| 10-04360 | Dorsey, Anastasia |
| 10-04361 | O'Brien, Mollie |
| 10-04362 | Honing, Kimberly |

| | |
|---|---|
| 10-04363 | Sarenpa, Colleen |
| 10-04366 | Pernula, Mary |
| 10-04367 | Schmit, Joseph |
| 10-04378 | Toshi Investments, Ltd. |
| 10-04382 | Knoblach, Marcellus, et al. |
| 10-04391 | Schopper, Hans |
| 10-04395 | Monighan, Shawn |
| 10-04396 | Westford Special Situations Master Fund LP, et al. |
| 10-04402 | Zhang, Xiaohau |
| 10-04403 | Lagermeier, Daniel |
| 10-04405 | Clayton, Whitney |
| 10-04408 | Hardy, Scott |
| 10-04409 | Ratliff, Stephen |
| 10-04410 | Dunlap, William |
| 10-04415 | Morgan, Stephen |
| 10-04418 | General Electric Capital Corporation |
| 10-04419 | Romanesko, Stuart |
| 10-04425 | Hodge, James |
| 10-04427 | Cypress Financial |
| 10-04427 | Lancer Financial Services, et al. |

## Chart 11

Defendants in the following cases have moved to dismiss the Trustee's fraudulent transfer claims for failure to sufficiently plead insolvency under 11 U.S.C. § 548 and Minn. Stat. §§ 513.41 – 513.50:

| Case No. | Defendant(s) |
| --- | --- |
| 10-04274 | Caruso, Joseph |
| 10-04301 | Opportunity Finance, LLC (PCI) |
| 10-04354 | Thomas Shimoji and Company, Ltd. |
| 10-04375 | Opportunity Finance, LLC (PGW) |
| 10-04378 | Toshi Investments, Ltd. |

## Chart 12

Defendants in the following cases have moved to dismiss the Trustee's fraudulent transfer claims for failure to sufficiently plead Defendants' insider status under 11 U.S.C. § 548(a)(B)(ii)(iv) and Minn. Stat. § 513.45(b):

| Case No. | Defendant(s) |
|---|---|
| 10-04337 | Carter, Dove |
| 10-04338 | Engels, Patrick |
| 10-04339 | Danko, George |
| 10-04340 | McGaunn, Jon |
| 10-04341 | Salmen, Thomas J. |
| 10-04342 | Phelps, Michael |
| 10-04343 | Miller, Andrea |
| 10-04346 | Riedl, Kevin |
| 10-04347 | Mau, Cheryl |
| 10-04348 | Margolis, David |
| 10-04366 | Pernula, Mary |
| 10-04367 | Schmit, Joseph |
| 10-04403 | Lagermeier, Daniel |
| 10-04408 | Hardy, Scott |
| 10-04409 | Ratliff, Stephen |
| 10-04410 | Dunlap, William |
| 10-04419 | Romanesko, Stuart |

**Chart 13**

Defendants in the following cases have moved to dismiss the Trustee's fraudulent transfer claims on the ground the Complaint fails to rebut the Defendants' good faith defense:

| Case No. | Defendant(s) |
|----------|--------------|
| 10-04225 | Kenney, Patrick |
| 10-04256 | Miller, Alan, et al. |
| 10-04264 | Brennan, Timothy |
| 10-04266 | Colvin, Kenneth, et al. |
| 10-04274 | Caruso, Joseph |
| 10-04284 | Kerbel, Carol |
| 10-04310 | Colvin, Larry:Larry Colvin Keough |
| 10-04311 | Colvin, Kimberly; Kimberlee Colvin Keough |
| 10-04354 | Thomas Shimoji and Company, Ltd. |
| 10-04378 | Toshi Investments, Ltd. |
| 10-04391 | Schopper, Hans |
| 10-04418 | General Electric Capital Corporation |
| 10-04427 | Cypress Financial Trading Co, & EFP Holdings, LP |
| 10-04427 | Lancer Financial Services, et al. |

## Chart 14

Defendants in the following cases have moved to dismiss the Trustee's claim for turnover

and accounting:

| Case No. | Defendant(s) |
|----------|--------------|
| 10-04201 | Vlahos, Michelle |
| 10-04202 | Redstone Limited Partnership |
| 10-04203 | Redstone American Grill, Inc. |
| 10-04204 | Edgebrook, Inc. |
| 10-04205 | Aron, Don; d/b/a The Aron Companies |
| 10-04206 | Kanios, Chris, et al. |
| 10-04207 | Hagan, John |
| 10-04209 | Isaac, Lynn, et al. |
| 10-04210 | Isaac, George, et al. |
| 10-04211 | Papadimos, Steve |
| 10-04212 | Svigos, Paul |
| 10-04225 | Kenney, Patrick |
| 10-04250 | High Plains Investment LLC |
| 10-04254 | Hauser, Peter |
| 10-04255 | Fleming, Hayden, et al. |
| 10-04255 | Southwest Securities, Inc, as custodian of the Hayden R. Fleming IRA |
| 10-04256 | Miller, Alan, et al. |
| 10-04257 | Fleming, Patrick, et al. |
| 10-04257 | Southwest Securities, Inc, as custodian of the Patrick A. Fleming IRA |
| 10-04262 | McCarthy, Brian |
| 10-04263 | Allanson, Russell |
| 10-04264 | Brennan, Timothy |
| 10-04266 | Colvin, Kenneth, et al. |
| 10-04267 | Electric Motor Supply Co. |
| 10-04268 | Feneis, Steve |
| 10-04273 | Kabe, Galen |
| 10-04274 | Caruso, Joseph |
| 10-04275 | Feneis, Patricia |
| 10-04277 | Kuperus |
| 10-04278 | Kyriakides, Royce |
| 10-04280 | Slobodyanyuk, Jane |
| 10-04281 | Slobodyanyuk, Slava |
| 10-04282 | Miller Companies, Inc. |
| 10-04284 | Kerbel, Carol |
| 10-04290 | Challenge Printing |

| | |
|---|---|
| 10-04292 | Overstock.com |
| 10-04293 | Alper, Michael |
| 10-04296 | Mansour, Samuel, et al. |
| 10-04301 | Opportunity Finance, LLC (PCI) |
| 10-04301 | Minneapolis Foundation |
| 10-04301 | WestLB AG, New York Branch |
| 10-04310 | Colvin, Larry:Larry Colvin Keough |
| 10-04311 | Colvin, Kimberly; Kimberlee Colvin Keough |
| 10-04328 | Elistone Fund |
| 10-04337 | Carter, Dove |
| 10-04338 | Engels, Patrick |
| 10-04339 | Danko, George |
| 10-04340 | McGaunn, Jon |
| 10-04341 | Salmen, Thomas J. |
| 10-04342 | Phelps, Michael |
| 10-04343 | Miller, Andrea |
| 10-04344 | Anderson, DeAnne |
| 10-04345 | Ting, Thomas |
| 10-04346 | Riedl, Kevin |
| 10-04347 | Mau, Cheryl |
| 10-04348 | Margolis, David |
| 10-04352 | Northwestern Foundation |
| 10-04354 | Thomas Shimoji and Company, Ltd. |
| 10-04355 | Circle F Ventures, LLC & Dan Cartwright |
| 10-04358 | Joe, Arthur |
| 10-04359 | Tesar, Tamara |
| 10-04360 | Dorsey, Anastasia |
| 10-04361 | O'Brien, Mollie |
| 10-04362 | Honing, Kimberly |
| 10-04363 | Sarenpa, Colleen |
| 10-04366 | Pernula, Mary |
| 10-04367 | Schmit, Joseph |
| 10-04378 | Toshi Investments, Ltd. |
| 10-04380 | Idlewild Properties, LLC |
| 10-04382 | Knoblach, Marcellus, et al. |
| 10-04391 | Schopper, Hans |
| 10-04395 | Monighan, Shawn |
| 10-04396 | Westford Special Situations Master Fund LP, et al. |
| 10-04402 | Zhang, Xiaohau |
| 10-04403 | Lagermeier, Daniel |
| 10-04405 | Clayton, Whitney |
| 10-04408 | Hardy, Scott |
| 10-04409 | Ratliff, Stephen |
| 10-04410 | Dunlap, William |
| 10-04415 | Morgan, Stephen |
| 10-04418 | General Electric Capital Corporation |

| | |
|---|---|
| 10-04419 | Romanesko, Stuart |
| 10-04423 | Johnson, Kenneth |
| 10-04425 | Hodge, James |
| 10-04427 | Cypress Financial Trading Co, & EFP Holdings, LP |
| 10-04427 | Lancer Financial Services, et al. |
| 10-04431 | Cohen Partnership; Jay Cohen |

## Chart 15

Defendants in the following cases have moved to dismiss the Trustee's claim for unjust enrichment:

| Case No. | Defendant(s) |
| --- | --- |
| 10-04201 | Vlahos, Michelle |
| 10-04202 | Redstone Limited Partnership |
| 10-04203 | Redstone American Grill, Inc. |
| 10-04204 | Edgebrook, Inc. |
| 10-04205 | Aron, Don; d/b/a The Aron Companies |
| 10-04209 | Isaac, Lynn, et al. |
| 10-04210 | Isaac, George, et al. |
| 10-04212 | Svigos, Paul |
| 10-04225 | Kenney, Patrick |
| 10-04250 | High Plains Investment LLC |
| 10-04254 | Hauser, Peter |
| 10-04255 | Fleming, Hayden, et al. |
| 10-04255 | Southwest Securities, Inc, as custodian of the Hayden R. Fleming IRA |
| 10-04256 | Miller, Alan, et al. |
| 10-04257 | Fleming, Patrick, et al. |
| 10-04257 | Southwest Securities, Inc, as custodian of the Patrick A. Fleming IRA |
| 10-04263 | Allanson, Russell |
| 10-04264 | Brennan, Timothy |
| 10-04266 | Colvin, Kenneth, et al. |
| 10-04267 | Electric Motor Supply Co. |
| 10-04268 | Feneis, Steve |
| 10-04273 | Kabe, Galen |
| 10-04274 | Caruso, Joseph |
| 10-04275 | Feneis, Patricia |
| 10-04277 | Kuperus |
| 10-04278 | Kyriakides, Royce |
| 10-04282 | Miller Companies, Inc. |
| 10-04284 | Kerbel, Carol |
| 10-04292 | Overstock.com |
| 10-04293 | Alper, Michael |
| 10-04296 | Mansour, Samuel, et al. |
| 10-04301 | Opportunity Finance, LLC (PCI) |
| 10-04301 | Minneapolis Foundation |
| 10-04301 | WestLB AG, New York Branch |
| 10-04310 | Colvin, Larry:Larry Colvin Keough |
| 10-04311 | Colvin, Kimberly; Kimberlee Colvin Keough |
| 10-04328 | Elistone Fund |

| | |
|---|---|
| 10-04337 | Carter, Dove |
| 10-04338 | Engels, Patrick |
| 10-04339 | Danko, George |
| 10-04340 | McGaunn, Jon |
| 10-04341 | Salmen, Thomas J. |
| 10-04342 | Phelps, Michael |
| 10-04343 | Miller, Andrea |
| 10-04344 | Anderson, DeAnne |
| 10-04345 | Ting, Thomas |
| 10-04346 | Riedl, Kevin |
| 10-04347 | Mau, Cheryl |
| 10-04348 | Margolis, David |
| 10-04352 | Northwestern Foundation |
| 10-04354 | Thomas Shimoji and Company, Ltd. |
| 10-04355 | Circle F Ventures, LLC & Dan Cartwright |
| 10-04358 | Joe, Arthur |
| 10-04359 | Tesar, Tamara |
| 10-04360 | Dorsey, Anastasia |
| 10-04361 | O'Brien, Mollie |
| 10-04362 | Honing, Kimberly |
| 10-04363 | Sarenpa, Colleen |
| 10-04366 | Pernula, Mary |
| 10-04367 | Schmit, Joseph |
| 10-04375 | Opportunity Finance, LLC (PGW) |
| 10-04378 | Toshi Investments, Ltd. |
| 10-04380 | Idlewild Properties, LLC |
| 10-04382 | Knoblach, Marcellus, et al. |
| 10-04391 | Schopper, Hans |
| 10-04395 | Monighan, Shawn |
| 10-04396 | Westford Special Situations Master Fund LP, et al. |
| 10-04402 | Zhang, Xiaohau |
| 10-04403 | Lagermeier, Daniel |
| 10-04405 | Clayton, Whitney |
| 10-04408 | Hardy, Scott |
| 10-04409 | Ratliff, Stephen |
| 10-04410 | Dunlap, William |
| 10-04415 | Morgan, Stephen |
| 10-04418 | General Electric Capital Corporation |
| 10-04419 | Romanesko, Stuart |
| 10-04423 | Johnson, Kenneth |
| 10-04425 | Hodge, James |
| 10-04427 | Cypress Financial Trading Co, & EFP Holdings, LP |
| 10-04427 | Lancer Financial Services, et al. |
| 10-04431 | Cohen Partnership; Jay Cohen |

## Chart 16

Defendants in the following cases have moved to dismiss the Trustee's disallowance

claim:

| Case No. | Defendant(s) |
|---|---|
| 10-04201 | Vlahos, Michelle |
| 10-04202 | Redstone Limited Partnership |
| 10-04203 | Redstone American Grill, Inc. |
| 10-04204 | Edgebrook, Inc. |
| 10-04205 | Aron, Don; d/b/a The Aron Companies |
| 10-04206 | Kanios, Chris, et al. |
| 10-04209 | Isaac, Lynn et al |
| 10-04210 | Isaac, George, et al. |
| 10-04211 | Papadimos, Steve |
| 10-04212 | Svigos, Paul |
| 10-04225 | Kenney, Patrick |
| 10-04250 | High Plains Investment LLC |
| 10-04254 | Hauser, Peter |
| 10-04255 | Fleming, Hayden, et al. |
| 10-04255 | Southwest Securities, Inc, as custodian of the Hayden R. Fleming IRA |
| 10-04256 | Miller, Alan, et al. |
| 10-04257 | Fleming, Patrick, et al. |
| 10-04257 | Southwest Securities, Inc, as custodian of the Patrick A. Fleming IRA |
| 10-04262 | McCarthy, Brian |
| 10-04263 | Allanson, Russell |
| 10-04266 | Colvin, Kenneth, et al. |
| 10-04267 | Electric Motor Supply Co. |
| 10-04273 | Kabe, Galen |
| 10-04274 | Caruso, Joseph |
| 10-04275 | Feneis, Patricia |
| 10-04277 | Kuperus |
| 10-04278 | Kyriakides, Royce |
| 10-04280 | Slobodyanyuk, Jane |
| 10-04281 | Slobodyanyuk, Slava |
| 10-04282 | Miller Companies, Inc. |
| 10-04284 | Kerbel, Carol |
| 10-04292 | Overstock.com |
| 10-04293 | Alper, Michael |
| 10-04296 | Mansour, Samuel, et al. |
| 10-04301 | Opportunity Finance, LLC (PCI) |
| 10-04301 | Minneapolis Foundation |
| 10-04301 | WestLB AG, New York Branch |
| 10-04310 | Colvin, Larry:Larry Colvin Keough |
| 10-04311 | Colvin, Kimberly; Kimberlee Colvin Keough |

| | |
|---|---|
| 10-04328 | Elistone Fund |
| 10-04337 | Carter, Dove |
| 10-04338 | Engels, Patrick |
| 10-04339 | Danko, George |
| 10-04340 | McGaunn, Jon |
| 10-04341 | Salmen, Thomas J. |
| 10-04342 | Phelps, Michael |
| 10-04343 | Miller, Andrea |
| 10-04344 | Anderson, DeAnne |
| 10-04345 | Ting, Thomas |
| 10-04346 | Riedl, Kevin |
| 10-04347 | Mau, Cheryl |
| 10-04348 | Margolis, David |
| 10-04352 | Northwestern Foundation |
| 10-04354 | Thomas Shimoji and Company, Ltd. |
| 10-04355 | Circle F Ventures, LLC & Dan Cartwright |
| 10-04358 | Joe, Arthur |
| 10-04359 | Tesar, Tamara |
| 10-04360 | Dorsey, Anastasia |
| 10-04361 | O'Brien, Mollie |
| 10-04362 | Honing, Kimberly |
| 10-04363 | Sarenpa, Colleen |
| 10-04366 | Pernula, Mary |
| 10-04367 | Schmit, Joseph |
| 10-04375 | Opportunity Finance, LLC (PGW) |
| 10-04378 | Toshi Investments, Ltd. |
| 10-04380 | Idlewild Properties, LLC |
| 10-04382 | Knoblach, Marcellus, et al. |
| 10-04391 | Schopper, Hans |
| 10-04395 | Monighan, Shawn |
| 10-04396 | Westford Special Situations Master Fund LP, et al. |
| 10-04402 | Zhang, Xiaohau |
| 10-04403 | Lagermeier, Daniel |
| 10-04405 | Clayton, Whitney |
| 10-04408 | Hardy, Scott |
| 10-04409 | Ratliff, Stephen |
| 10-04410 | Dunlap, William |
| 10-04415 | Morgan, Stephen |
| 10-04418 | General Electric Capital Corporation |
| 10-04419 | Romanesko, Stuart |
| 10-04423 | Johnson, Kenneth |
| 10-04425 | Hodge, James |
| 10-04427 | Cypress Financial Trading Co, & EFP Holdings, LP |
| 10-04427 | Lancer Financial Services, et al. |
| 10-04431 | Cohen Partnership; Jay Cohen |

## Chart 17

### Issues Addressed in Supplemental Memoranda

| Case Title | Adv. Case Nos. | Issues Being Addressed |
|---|---|---|
| Opportunity Finance, LLC (PCI) | 10-04301 | 1. Whether the Trustee has standing to pursue fraudulent transfer claims on behalf of PCI, PC Funding and SPF Funding; and<br><br>2. Whether the Trustee's Amended Complaint should be dismissed on the grounds that its alter ego and reverse-piercing of PC Funding's and SPF Funding's corporate veils is an impermissible surrogate for substantive consolidation.<br><br>3. Whether the transfer of cash derived from a Ponzi scheme comprises a transfer subject to avoidance |
| Thomas Shimoji & Company and Toshi Investments, Ltd | 10-04354 10-04378 | 1. Whether the Bankruptcy Court has Personal Jurisdiction over the Defendants Based upon their Minimum Contacts with the United States. |
| Opportunity Finance, LLC (PGW) | 10-04375 | 1. Whether the Trustee has joined the necessary parties to support a claim for declaratory relief (Count IX) finding Opportunity Finance's lien void; and<br><br>2. Whether Opportunity Finance's failure to file a proof of claim bars the Trustee's lien avoidance and declaratory claims for relief (Counts VIII and IX). |
| Crown Bank | 10-04429 | 1. Whether the Trustee has Sufficiently Pleaded that the Defendant is an insider of the Debtor. |
| Ritchie Capital Management, L.L.C. | 10-04440 | 1. Whether, based upon the Allegations in the Complaint, the Transfers to Vicis Capital Master Fund, Ltd. are Protected from Avoidance under 11 U.S.C. § 546(e). |
| Westford Special Situations Master Fund, L.P. | 10-04396 | 1. Whether the Complaint fails to provide the degree of particularity required by Ashcroft v. Iqbal and Federal Rule of Civil Procedure 9(b);<br><br>  a. Whether the Complaint impermissibly fails to distinguish between the PCI and PL, Ltd, leaving the Trustee without standing pursuant to Code Section 544(b);<br><br>  b. Whether the Complaint fails to distinguish as between the Epsilon/Westford Defendants with respect to specific transfers;<br><br>  c. Whether the Trustee's information and belief allegations render the Complaint defective pursuant to Rule 9(b);<br><br>2. Whether the Complaint must be dismissed for having failed to join PL Ltd. as a necessary party defendant; and.<br><br>3. Whether the claimed status of Epsilon Global Active Value Fund II, Ltd. as a feeder fund to another defendant provides grounds for dismissal |

Illustrative Compl. 1

(*Kelley, Trustee v. Alper*, 10-04293)

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| In re | **Jointly Administered under<br>Case No. 08-45257** |
| Petters Company, Inc., et al., | Court File No. 08-45257 |
| Debtors. | |
| (includes: | Court File Nos.: |
| Petters Group Worldwide, LLC; | 08-45258 (GFK) |
| PC Funding, LLC; | 08-45326 (GFK) |
| Thousand Lakes, LLC; | 08-45327 (GFK) |
| SPF Funding, LLC; | 08-45328 (GFK) |
| PL Ltd., Inc.; | 08-45329 (GFK) |
| Edge One LLC; | 08-45330 (GFK) |
| MGC Finance, Inc.; | 08-45331 (GFK) |
| PAC Funding, LLC; | 08-45371 (GFK) |
| Palm Beach Finance Holdings, Inc.) | 08-45392 (GFK) |
| | Chapter 11 Cases<br>Judge Gregory F. Kishel |

| | |
|---|---|
| Douglas A. Kelley, in his capacity as the<br>court-appointed Chapter 11 Trustee of<br>Debtor Petters Company, Inc. | |
| Plaintiff, | |
| vs. | ADV. NO. _____ |
| Michael Alper, | |
| Defendant. | |

## COMPLAINT

Douglas A. Kelley, in his capacity as the court-appointed Chapter 11 Trustee of Petters Company, Inc., by and through his legal counsel, Lindquist & Vennum P.L.L.P., as and for his Complaint against Defendant Michael Alper ("Defendant"), states and alleges as follows:

PARTIES

1.      Petters Company, Inc. ("PCI" or the "Debtor") is a corporation organized under the laws of the State of Minnesota.

2.      PCI is, and at all times relevant herein was, wholly owned by Thomas Joseph Petters, an individual and citizen of the State of Minnesota ("Petters").

3.      Defendant is a resident of Florida and resides at 7263 Fisher Island Drive, Miami, FL 33109.

PROCEDURAL BACKGROUND

4.      On October 3, 2008, pursuant to 18 U.S.C. § 1345, the United States District Court of the District of Minnesota (the "District Court") placed PCI into receivership in civil litigation commenced by the United States of America against, among others, Petters and PCI (Court File No. 08-CV-5348) (the "Receivership Action").

5.      By Order of the District Court in the Receivership Action dated October 6, 2008, as subsequently amended and restated on December 8, 2008, the District Court appointed Douglas A. Kelley, Esq. ("Kelley") as equity receiver (the "Receiver") of any affiliates, subsidiaries, divisions, successors, or assigns owned 100% or controlled by Petters, including PCI.

6.      As the court-appointed Receiver, Kelley serves as an agent of the District Court and in that capacity had exclusive custody, control and possession of the property, assets and estates of PCI.

2

7.      On October 11, 2008 (the "Petition Date"), PCI, at the Receiver's direction, filed

a petition for relief under Chapter 11 of title 11 of the United States Code (the "Bankruptcy

Code") in Court File No. 08-45257.

8.      On October 22, 2008 this Court ordered the above-captioned Bankruptcy cases to

be administratively consolidated as *In re Petters Company, Inc., et al.*, under case number 08-

45257.

9.      On February 26, 2009, this Court approved the Office of the United States Trustee

for the District of Minnesota's appointment of Kelley (the "Trustee"), as the Chapter 11 Trustee

for all Chapter 11 debtors in this jointly administered matter, which specifically included

appointing Kelley as the Chapter 11 Trustee of PCI.

## JURISDICTION, VENUE AND STANDING

10.     This Court has subject matter jurisdiction of this adversary proceeding pursuant to

28 U.S.C. §§ 157 and 1334.  The claims asserted herein arise under the Bankruptcy Code and are

related to cases pending before this Court pursuant to the Bankruptcy Code.

11.     This adversary proceeding is a core proceeding pursuant to 28 U.S.C. §§

157(b)(2)(A), (B), (C), (E), (F), (H) and (O).

12.     Venue in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

13.     The Trustee has standing to assert the claims herein pursuant to Sections 323,

544, 550 and 1106 of the Bankruptcy Code.

## NATURE OF PROCEEDING

14.     The Trustee brings this adversary proceeding against the Defendant pursuant to

sections 105(a), 502, 506, 542, 544, 550(a), 551 and 1106 of the Bankruptcy Code, the

Minnesota Fraudulent Transfer Act, Minn. Stat. §§ 513.41-51, and if the Court should determine

that this action is governed by the laws of other states, the fraudulent transfer laws of such other states and other applicable law, to recover fraudulent transfers, damages and disgorgement, prevent unjust enrichment and to impose a constructive trust, in connection with transfers of property by PCI to Defendant.

15.     Defendant is an initial transferee of the fraudulent or other avoidable transfers alleged in this Complaint, or a person for whose benefit such transfers were made, or an immediate or mediate transferee of any initial transferee of such transfers.

<u>FACTUAL BACKGROUND</u>

**THE PETTERS PONZI SCHEME**

16.     This adversary proceeding arises from a massive fraud and Ponzi scheme designed and orchestrated principally by Petters, and business organizations that he directly or indirectly owned and controlled.

17.     Petters operated the Ponzi scheme with the assistance of other individuals within certain Petters organizations from approximately 1993 through on or about the date of his arrest by federal agents on October 3, 2008.  Petters, through various entities that he controlled, including PCI, laundered what is estimated to be an amount in excess of $40 billion.

18.     On December 1, 2008, Petters was indicted by a Federal Grand Jury in the District of Minnesota.  The Indictment charged Petters and PCI with mail and wire fraud, conspiracy to commit mail and wire fraud, and conspiracy to commit money laundering, and charged Petters alone with money laundering, all in connection with the perpetration of and resulting from Petters' and PCI's participation in the Ponzi scheme.  On June 3, 2009, a Superseding Indictment was filed charging Petters and PCI with wire and mail fraud, conspiracy to commit mail and wire fraud and money laundering conspiracy and charging Petters alone with money laundering, all in

4

connection with Petters' and PCI's participation in the Ponzi scheme. On December 2, 2009, a jury in the United States District Court of the District of Minnesota found Petters guilty of all 20 counts charged in the Superseding Indictment. On April 8, 2010, Judge Richard H. Kyle sentenced Petters to 50 years in prison for his crimes.

19.     At various times during the course of the Ponzi scheme, Petters was assisted in the operation of the scheme by numerous individuals and conspirators, including Deanna Coleman ("Coleman"), Robert White ("White"), Larry Reynolds ("Reynolds"), Michael Catain ("Catain") and James Wehmhoff ("Wehmhoff") (collectively referred to herein as "Associates"). Coleman has pleaded guilty to a single count of conspiracy to commit mail fraud. On September 2, 2010, Judge Richard H. Kyle sentenced Coleman to one year and a day in prison for her involvement in the fraud. White has pleaded guilty to a single count of mail fraud. Reynolds and Catain have each pleaded guilty to a single count of conspiracy to commit money laundering. Wehmhoff has pleaded guilty to conspiracy to defraud the United States, conspiracy to commit tax evasion and one count of aiding and assisting in the filing of a false tax return.

20.     The scheme orchestrated by Petters and his Associates was a common species of fraud known as a Ponzi scheme. Petters, through a multitude of entities and with the assistance of his Associates, would induce investors into financing the purchase of non-existent electronic equipment purportedly secured by fabricated purchase orders or otherwise provide financing for fabricated purposes. Petters would then take the funds invested by later investors and repay initial investors not with the earnings or proceeds from the fabricated business purposes for which the financing was purportedly obtained, but with funds obtained from other investors. The payments were comprised of repayment of the principal amount invested (the "Principal") and often an amount which exceeded the amount invested (the "False Profits").

5

21.     Petters, through PCI and a multitude of shell companies through which PCI operated, intended that the payments to early investors would induce ongoing, repeated, greater and more widespread investment in the Ponzi scheme and thereby further perpetrate and extend the life of the fraud.

22.     On numerous occasions, investors entered into a number of Promissory Notes (the "Notes") with PCI.  Under the terms and conditions of the Notes, Defendant made funds available to PCI for various falsely represented business purposes including the financing of inventory and the account receivables which would result from the sale of purported electronic goods.  Under the Notes PCI would pay investors an amount equal to both Principal and False Profits.

23.     The Notes were often secured by a Security Agreement entered into by PCI  and investor.  The Security Agreement would typically provide the investor with a security interest in the property described as:

> Merchandise as reflected or referred to in the Purchase Order attached hereto as Exhibit A or as reflected or referred to in any future documentation, including bills of lading which relate back to Exhibit A;
>
> Any other merchandise which [PCI] has or will acquire rights in or use of to the extent funds advanced by the Secured Party has enabled [PCI] to acquire an interest in such merchandise; and,
>
> Any and all proceeds which [PCI] has or will acquire through the disposal of such merchandise.

24.     Petters and his Associates told investors that funds paid to PCI were to be used to purchase products, when in reality the funds were being funneled to PCI or other entities formed by Petters in order to pay early investors with funds received from later investors.

6

25. To obtain investors in the Ponzi scheme, Petters portrayed PCI as a middleman that purchased consumer electronic goods or other goods from wholesalers and resold the merchandise to large, "big box" retailers such as Costco, Sam's Club and B.J.'s Wholesale Club. PCI, through Petters and his Associates, intentionally fabricated the documents to recruit investors into the Ponzi scheme. Petters and his Associates prepared and utilized fabricated documents that were represented to investors to be equipment purchase orders and related documents. The fabricated documents included, but are not limited to, (1) purchase orders from PCI to suppliers purportedly ordering electronic goods, and (2) purchase orders from retailers to PCI purportedly ordering electronic goods for purchase from PCI. The purchase orders and the related documents were entirely fictitious.

26. The fictitious merchandise was evidenced by fabricated equipment purchase orders in which the investors would purportedly acquire a security interest.

27. The high rates of return that were promised to investors promoted two essential goals of the Ponzi scheme: (1) to entice investors, such as Defendant, to invest without employing reasonable due diligence in Petters and PCI; and (2) to extend the life of the fraud and to enable Petters and PCI to pay other earlier investors in the fraudulent scheme.

28. PCI would show a "profit" on each transaction because PCI's fabricated purchase order from the big box retailer for the merchandise was always for an amount greater than the amount of PCI's fabricated purchase order to its supplier for the same nonexistent merchandise. Petters and his Associates, through PCI, created fictitious profits at will on each and every transaction by simply writing in the appropriate quantity and price information on the two sets of purchase orders to "produce" the necessary funds.

7

29.     Because the transactions described in the fictitious purchase orders in fact did not exist, the only way PCI was able to transfer sufficient funds to investors including Defendant was by money obtained from other investors, in other words, through the operation, control and management of the Ponzi scheme by Petters and his Associates.  Repayment of the Principal and interest in the form of False Profits to these investors comprised a Ponzi scheme because they were primarily, if not exclusively, from funds invested by other PCI investors.

30.     Petters, or Petters and his Associates, completely controlled and exercised adverse domination over PCI, PGW and other debtor entities at all times relevant herein and until the Receiver was appointed and placed in control of these entities.

31.     Petters, as the owner, officer, and director of PCI, PGW and other debtor entities, was a fiduciary of these entities and had a duty to disclose the fraudulent activities alleged in this Complaint.  Petters, in violation of his fiduciary duty, did not disclose the fraudulent activities to current or prospective investors and other creditors of PCI, PGW, and other debtor entities.

32.     Petters, or Petters and his Associates, fraudulently and intentionally concealed the ongoing fraud in an effort to hinder and delay authorities and other current and prospective investors and other creditors of PCI, PGW, and other debtor entities from discovering the fraud.

33.     The concealment of the fraud, whether by Petters' silence, the fraudulent and intentional concealment of the facts constituting the fraud, and/or the adverse domination of PCI, PGW, and other debtor entities by Petters or Petters and his Associates, prevented the discovery of the on-going fraud until the Receiver was appointed and placed in control of the entities and the Receiver/Trustee was able to discover facts constituting the fraud alleged in this Complaint.

34.     The Receiver/Trustee has acted diligently to discover facts constituting the fraud alleged in this Complaint.

8

35.     Any temporal limitations, statutory or otherwise, on the Trustee's ability to bring the causes of action set forth below are tolled by, among other things, Petters' breach of fiduciary duty in failing to disclose the fraud, the actions of Petters, or Petters and his Associates, in fraudulently and intentionally concealing the fraud, and/or the adverse domination of PCI, PGW, and other debtor entities by Petters, or Petters and his Associates, until the appointment of the Receiver.

## FRAUDULENT TRANSFERS TO DEFENDANT

36.     Defendant transferred money to PCI and received, in return, one or more of PCI's promissory notes signed by Petters as "President" of PCI.

37.     During the course of the Ponzi scheme, Defendant received distributions from PCI representing a return of the Principal invested by it into the Ponzi scheme and also distributions representing False Profits.

38.     Pursuant to the fraudulent mechanisms set forth above, all of which were designed to funnel funds from Defendant through PCI and back to Defendant at excessive rates of return, Defendant engaged in at least 2 separate note transactions with PCI in a principal sum of at least $500,000.00.

39.     The "interest rates" that PCI paid to Defendant, utilizing funds received from Petters through PCI, generally ranged from 60% to 76.8% on an annualized basis.

40.     Prior to the Petition Date, PCI made payments or other transfers totaling at least $577,500.00 to or for the benefit of Defendant.

41.     On information and belief, in each instance, every transaction entered into by Defendant to invest in PCI and the Ponzi scheme, was based upon wholly fraudulent and fabricated financial transactions.

9

42. Defendant knew or should have known that it was benefiting from fraudulent activity, or at a minimum, failed to exercise reasonable due diligence with respect to Petters and PCI in connection with the Ponzi scheme. Defendant ignored numerous indicia of fraud from the general manner in which Petters and PCI operated. Among other things, Defendant was on actual notice of the following additional indicia of fraud and financial irregularity but failed to make sufficient inquiry:

a. Petters operated PCI without investor transparency. Petters generally declined to provide investors with financial statements. He also barred any communication by investors with retailers who Petters represented would be purchasing the fictitious electronics. Petters also routinely barred investors from viewing and inspecting the purported electronic goods they were financing.

b. Petters and PCI did not provide investors with electronic online access to their accounts which, had the investments been legitimate, would have shown important financial information regarding payments by bona fide retailers and shipments of electronics which was and is generally customary in the industry for purchase order financing with large retailers.

c. PCI promised, and produced, returns that were too good to be true, reflecting a pattern of abnormally consistent and significant profitability that was not credible.

d. Defendant received far higher purported annual rates of return on its investments with PCI, as compared to commercial market rates during the relevant time period.

e. Defendant did not conduct a performance audit of PCI or match purchase orders, wire transfer confirmations, or other transactional documents with the purported purchases of electronic equipment Defendant was financing.

10

43. Prior to the Petition Date, $577,500.00 was paid to or for the benefit of Defendant by PCI (the "Transfers"). The Transfers consisted of substantial amounts of other investors' money that, instead of financing legitimate transactions, was used to pay prior investors, including Defendant. The Transfers were made to or for the benefit of Defendant and include, but are not limited to, the Transfers listed on Exhibit A.

44. Of the Transfers, Defendant received False Profits from PCI in the amount of $77,500.00

45. To the extent that any of the recovery counts may be inconsistent with each other, they are to be treated as being pled in the alternative.

46. During the course of this adversary proceeding, the Trustee may learn (through discovery or otherwise) of additional transfers made to Defendant. It is the Trustee's intention to avoid and recover all transfers made by the Debtor of an interest of the Debtor in property and to or for the benefit of the Defendant or any other transferee. The Trustee reserves the right to amend this original Complaint as to include: (i) further information regarding the Transfers, (ii) additional Transfers, (iii) modifications or revisions to Defendant's name, (iv) additional defendants, or (v) additional causes of action (i.e., but not exclusively, 11 U.S.C. §542, §544, §545, § 547, §548 and §549) (collectively, the "Amendments"), that may become known to the Trustee at any time during this adversary proceeding, through formal discovery or otherwise, and for the Amendments to relate back to this original Complaint.

## COUNT I – TURNOVER AND ACCOUNTING

### [11 U.S.C. § 542]

47. The Trustee realleges and incorporates by reference the preceding paragraphs of the Complaint as if fully set forth herein.

DOCS-#3334817-v2

48.     The Transfers constitute property of the estate to be recovered and administered by the Trustee pursuant to section 541 of the Bankruptcy Code.

49.     As a result of the foregoing, pursuant to section 542 of the Bankruptcy Code, the Trustee is entitled to the immediate payment and turnover from Defendant of any and all Transfers made by PCI, directly or indirectly, to Defendant.

50.     As a result of the foregoing, pursuant to section 542 of the Bankruptcy Code, the Trustee is also entitled to an accounting of all such Transfers received by Defendant from PCI, directly or indirectly.

## COUNT II – FRAUDULENT TRANSFERS

**[Actual Fraud - 11 U.S.C. §§ 544(b), 550(a), 551 and 1106 & Minn. Stat. §§ 513.44(a)(1) and 513.47 or Other Governing Fraudulent Transfer Laws]**

51.     The Trustee realleges and incorporates by reference the preceding paragraphs of the Complaint as if fully set forth herein.

52.     At all times material hereto, there was and is at least one or more creditors who held and who hold unsecured claims against the Debtor that was and is allowable under Bankruptcy Code § 502 or that was and is not allowable only under Bankruptcy Code § 502(e). The Transfers are avoidable under applicable nonbankruptcy law by a creditor holding an unsecured claim in the bankruptcy case.

53.     The Transfers represent transfers that were made or obligations that were incurred with actual intent to hinder, delay or defraud a creditor to which the Debtor was or became indebted on or after the date of the Transfers.

54.     The Transfers were made to or for the benefit of Defendant in furtherance of a fraudulent investment scheme.

12

55.     To the extent that Defendant is not an initial transferee of the Transfers, it is a subsequent transferee of the initial transferee of the Transfers, and upon information and belief cannot satisfy its burden that it took the Transfers for value and in good faith, or is the entity or individual for whose benefit such Transfers were made.

56.     As a result of the foregoing, the Trustee is entitled to judgment pursuant to Bankruptcy Code §§ 544(b), 550(a), 551 and 1106, Minn. Stat. §§ 513.44(a)(1) and 513.47, and if the Court should determine that this action is governed by the laws of other states, the fraudulent transfer laws of such other states:  (a) avoiding and preserving the Transfers free and clear from any claimed interest of Defendant, (b) directing that the Transfers be set aside, (c) recovering such Transfers in the amount of $577,500.00 or the value thereof from Defendant for the benefit of the bankruptcy estates of PCI, (d) alternatively, recovering such False Profits in the amount of $77,500.00, and (e) recovering prejudgment and post-judgment interest, attorneys' fees and costs from Defendant.

## COUNT III – FRAUDULENT TRANSFERS

**[Constructive Fraud - 11 U.S.C. §§ 544(b), 550(a), 551 and 1106 & Minn. Stat. §§ 513.44(a)(2)(i) and 513.47 or Other Governing Fraudulent Transfer Laws]**

57.     The Trustee realleges and incorporates by reference the preceding paragraphs of the Complaint as if fully set forth herein.

58.     At all times material hereto, there was and is at least one or more creditors who held and who hold unsecured claims against the Debtor that was and is allowable under Bankruptcy Code § 502 or that were and are not allowable only under Bankruptcy Code § 502(e).  The Transfers are avoidable under applicable nonbankruptcy law by a creditor holding an unsecured claim in the Bankruptcy Cases.

13

59.     At all times material hereto, the Debtor was engaged in businesses or transactions, or was about to engage in businesses or transactions, for which the property remaining with the Debtor after the Transfers were effectuated constituted unreasonably small capital.

60.     The Debtor received less than a reasonably equivalent value in exchange for the Transfers.

61.     To the extent that Defendant is not an initial transferee of the Transfers, it is a subsequent transferee of the initial transferee of the Transfers, and upon information and belief cannot satisfy its burden that it took the Transfers for value and in good faith, or is the entity or individual for whose benefit such Transfers were made.

62.     As a result of the foregoing, the Trustee is entitled to judgment pursuant to Bankruptcy Code §§ 544(b), 550(a), 551 and 1106, Minn. Stat. §§ 513.44(a)(2)(i) and 513.47, and if the Court should determine that this action is governed by the laws of other states, the fraudulent transfer laws of such other states:  (a) avoiding and preserving the Transfers free and clear from any claimed interest of Defendant, (b) directing that the Transfers be set aside, (c) recovering such Transfers in the amount of $577,500.00 or the value thereof from Defendant for the benefit of the bankruptcy estates of PCI, (d) alternatively, recovering such False Profits in the amount of $77,500.00, and (e) recovering prejudgment and post-judgment interest, attorneys' fees and costs from Defendant.

14

## COUNT IV – FRAUDULENT TRANSFERS

### [Constructive Fraud - 11 U.S.C. §§ 544(b), 550(a), 551 and 1106 & Minn. Stat. §§ 513.44(a)(2)(ii) and 513.47 or Other Governing Fraudulent Transfer Laws]

63.    The Trustee realleges and incorporates by reference the preceding paragraphs of the Complaint as if fully set forth herein.

64.    At all times material hereto, there was and is at least one or more creditors who held and who hold unsecured claims against the Debtor that was and is allowable under Bankruptcy Code § 502 or that was and is not allowable only under Bankruptcy Code § 502(e). The Transfers are avoidable under applicable nonbankruptcy law by a creditor holding an unsecured claim in the Bankruptcy Cases.

65.    At all times material hereto, the Debtor, at the time of the Transfers, intended to incur, or believed that it would incur, debts that would be beyond its ability to pay as the debts matured.

66.    The Debtor received less than a reasonably equivalent value in exchange for the Transfers.

67.    To the extent that Defendant is not an initial transferee of the Transfers, it is a subsequent transferee of the initial transferee of the Transfers, and upon information and belief, cannot satisfy its burden that it took the Transfers for value and in good faith, or is the entity or individual whose benefit such Transfers were made.

68.    As a result of the foregoing, the Trustee is entitled to judgment pursuant to Bankruptcy Code §§ 544(b), 550(a), 551 and 1106, Minn. Stat. §§ 513.44(a)(2)(ii) and 513.47, and if the Court should determine that this action is governed by the laws of other states, the fraudulent transfer laws of such other states:  (a) avoiding and preserving the Transfers free and clear from any claimed interest of Defendant, (b) directing that the Transfers be set aside, (c)

15

recovering such Transfers in the amount of $577,500.00 or the value thereof from Defendant for the benefit of the bankruptcy estates of PCI, (d) alternatively, recovering such False Profits in the amount of $77,500.00, and (e) recovering prejudgment and post-judgment interest, attorneys' fees and costs from Defendant.

## COUNT V – FRAUDULENT TRANSFERS

### [Constructive Fraud - 11 U.S.C. §§ 544(b), 550(a), 551 and 1106 & Minn. Stat. §§ 513.45(a) and 513.47 or Other Governing Fraudulent Transfer Laws]

69.    The Trustee realleges and incorporates by reference the preceding paragraphs of the Complaint as if fully set forth herein.

70.    At all times material hereto, there was and is at least one or more creditors who held and who hold unsecured claims against the Debtor that was and is allowable under Bankruptcy Code § 502 or that was and is not allowable only under Bankruptcy Code § 502(e). The Transfers are avoidable under applicable nonbankruptcy law by a creditor holding an unsecured claim in the Bankruptcy Cases.

71.    At all times material hereto, the Debtor, at the time of the Transfers, was insolvent or, in the alternative, the Debtor became insolvent as a result of the Transfers.

72.    The Debtor received less than a reasonably equivalent value in exchange for the Transfers.

73.    To the extent that Defendant is not an initial transferee of the Transfers, it is a subsequent transferee of the initial transferee of the Transfers, and upon information and belief, cannot satisfy its burden that it took the Transfers for value and in good faith, or is the entity or individual for whose benefit such Transfers occurred.

74.    As a result of the foregoing, the Trustee is entitled to judgment pursuant to Bankruptcy Code §§ 544(b), 550(a), 551 and 1106, Minn. Stat. §§ 513.45(a) and 513.47, and if

16

the Court should determine that this action is governed by the laws of other states, the fraudulent

transfer laws of such other states: (a) avoiding and preserving the Transfers free and clear from

any claimed interest of Defendant, (b) directing that the Transfers be set aside, (c) recovering

such Transfers in the amount of $577,500.00 or the value thereof from Defendant for the benefit

of the bankruptcy estates of PCI, (d) alternatively, recovering such False Profits in the amount of

$77,500.00, and (e) recovering prejudgment and post-judgment interest, attorneys' fees and costs

from Defendant.

### COUNT VI – UNJUST ENRICHMENT/EQUITABLE DISGORGEMENT

75.     The Trustee realleges and incorporates by reference the preceding paragraphs of

the Complaint as if fully set forth herein.

76.     At all times relevant hereto, all funds received by Defendant were part and parcel

of the Ponzi scheme and were derived from monies fraudulently obtained by Petters and PCI

from other investors or participants in the Ponzi scheme.

77.     Defendant, as the recipient of fraudulently obtained proceeds of the Ponzi

scheme, including the Principal and the False Profits, has no rightful or legitimate claim to any

monies received from PCI.

78.     Defendant knowingly received monies from the Ponzi scheme, was unjustly

enriched through its receipt of the fraudulently obtained monies to the detriment of other

investors in PCI, and in equity and good conscience must be required to repay the proceeds

received.

79.     Defendant would be unjustly enriched to the extent it is allowed to retain the

monies and proceeds received during its participation in the Ponzi scheme.

17

80.     Defendant must, therefore, in equity be required to disgorge all proceeds received through the operation of the Ponzi scheme, so as to allow the Trustee to distribute in equity any such ill-gotten gains among all innocent investors and creditors of PCI.

## COUNT VII – DISALLOWANCE

### [11 U.S.C. § 502(b) and (d)]

81.     The Trustee realleges and incorporates by reference the preceding paragraphs of the Complaint as if fully set forth herein.

82.     To the extent that Defendant asserts it is entitled to any claim in these Bankruptcy Cases, directly on its own account or indirectly by virtue of any other agreement with Petters, PCI or any of their affiliates, such claim is unenforceable against the Debtors or the property of the Debtors under any agreement or applicable law and should be disallowed under 11 U.S.C. § 502(b).

83.     Further, any claim of an entity from which property is recoverable under 11 U.S.C. § 550 or held by a transferee of a transfer that is avoided under 11 U.S.C. §§ 544 or 548 shall be disallowed by the Court unless such entity or transferee has paid the amount, or turned over any such property, for which such entity or transferee is liable.

84.     As a result of the foregoing, to the extent that Defendant asserts he is entitled to any claim in these Bankruptcy Cases, directly on its own account or indirectly by virtue of any other agreement with Petters, PCI or any of their affiliates, all such claims are and should be in all things disallowed.

**WHEREFORE**, the Trustee respectfully requests this Court enter judgment in favor of Plaintiffs and against Defendant as follows:

18

A.      On Count I – pursuant to sections 542, 550(a) and 551 of the Bankruptcy Code: (a) that the property that was the subject of the Fraudulent Transfers be immediately delivered and turned over to the Trustee, and (b) for an accounting by Defendant of the property that was the subject of the Transfers or the value of such property.

B.      On Count II – Fraudulent Transfers (Actual Fraud), pursuant to 11 U.S.C. §§ 544(b), 550, 551 and 1106, Minn. Stat. §§ 513.44(a)(1) and 513.47, and if the Court should determine that this action is governed by the laws of other states, the fraudulent transfer laws of such other states:  (a) avoiding and preserving the Transfers free and clear from any claimed interest of Defendant, (b) directing that the Transfers be set aside, (c) recovering such Transfers in the amount of $577,500.00 or the value thereof from Defendant for the benefit of the bankruptcy estates of PCI, (d) alternatively, recovering such False Profits in the amount of $77,500.00, and (e) recovering prejudgment and post-judgment interest, attorneys' fees and costs from Defendant.

C.      On Count III – Fraudulent Transfers (Constructive Fraud), pursuant to 11 U.S.C. §§ 544(b), 550, 551 and 1106, Minn. Stat. §§ 513.44(a)(2)(i) and 513.47, and if the Court should determine that this action is governed by the laws of other states, the fraudulent transfer laws of such other states:  (a) avoiding and preserving the Transfers free and clear from any claimed interest of Defendant, (b) directing that the Transfers be set aside, (c) recovering such Transfers in the amount of $577,500.00 or the value thereof from Defendant for the benefit of the bankruptcy estates of PCI, (d) alternatively, recovering such False Profits in the amount of $77,500.00, and (e) recovering prejudgment and post-judgment interest, attorneys' fees and costs from Defendant.

19

D.     On Count IV – Fraudulent Transfers (Constructive Fraud), pursuant to 11 U.S.C. §§ 544(b), 550, 551 and 1106, Minn. Stat. §§ 513.44(a)(2)(ii) and 513.47, and if the Court should determine that this action is governed by the laws of other states, the fraudulent transfer laws of such other states:  (a) avoiding and preserving the Transfers free and clear from any claimed interest of Defendant, (b) directing that the Transfers be set aside, (c) recovering such Transfers in the amount of $577,500.00 or the value thereof from Defendant for the benefit of the bankruptcy estates of PCI, (d) alternatively, recovering such False Profits in the amount of $77,500.00, and (e) recovering prejudgment and post-judgment interest, attorneys' fees and costs from Defendant.

E.     On Count V – Fraudulent Transfers (Constructive Fraud), pursuant to 11 U.S.C. §§ 544(b), 550, 551 and 1106, Minn. Stat. §§ 513.45(a) and 513.47, and if the Court should determine that this action is governed by the laws of other states, the fraudulent transfer laws of such other states:  (a) avoiding and preserving the Transfers free and clear from any claimed interest of Defendant, (b) directing that the Transfers be set aside, (c) recovering such Transfers in the amount of $577,500.00 or the value thereof from Defendant for the benefit of the bankruptcy estates of PCI, (d) alternatively, recovering such False Profits in the amount of $77,500.00, and (e) recovering prejudgment and post-judgment interest, attorneys' fees and costs from Defendant.

F.     On Count VI – Unjust Enrichment/Equitable Disgorgement: declaring and ordering that the Trustee shall recover the Principal and False Profits and any other monies received by Defendant, directly or indirectly, from the fraud perpetrated through the Ponzi scheme, or the value thereof, for the benefit of the bankruptcy estate of the Debtor; and that Defendant shall be liable to the bankruptcy estate of the Debtor in an

20

amount equal to all monies received and shall be required to disgorge the same for the equitable distribution to all creditors of PCI.

G. On Count VII – Disallowance, pursuant to 11 U.S.C. § 502(b) and (d): declaring and ordering that, to the extent that Defendant asserts it is entitled to any claim in these Bankruptcy Cases, directly on its own account or indirectly by virtue of any other agreement with Petters, PCI, PGW or any of their affiliates, all such claims are in all things disallowed;

H. On all Claims for Relief, establishment of a constructive trust over the proceeds of the transfers in favor of the Trustee for the benefit of PCI's estate;

I. On all Claims for Relief, assignment of Defendant's income tax refunds from the United States, state and local governments paid on fictitious profits during the course of the Ponzi scheme;

J. Awarding the Trustee all applicable interest (including prejudgment and post-judgment interest), attorneys' fees, costs and disbursements in this action; and

K. Granting the Trustee such other, further and different relief as the Court deems just, proper and equitable.

21

DATED: September 28, 2010

LINDQUIST & VENNUM P.L.L.P.

By:  /e/ Michael Olafson
Michael Olafson (0156693)
Daryle L. Uphoff (0111831)
Adam C. Ballinger (0389058)

4200 IDS Center
80 South Eighth Street
Minneapolis, MN 55402-2274
(612) 371-3211
(612) 371-3207 (facsimile)
www.lindquist.com

**ATTORNEYS FOR
DOUGLAS A. KELLEY
CHAPTER 11 TRUSTEE OF
PETTERS COMPANY, INC.**

22

## EXHIBIT A
### Transfers to or for the Benefit of MICHAEL ALPER

| Date | Amount | Subtotal |
|---|---|---|
| **90 Day Transfers** | | |
| No Transfers Identified | | |
| **Two Year Transfers** | | |
| No Transfers Identified | | |
| **Additional Transfers** | | |
| 7/10/2001 | $287,500.00 | |
| 3/23/2001 | $290,000.00 | *$577,500.00* |
| **Transfers** | **$577,500.00** | |

Illustrative Compl. 2

(*Kelley, Trustee v. Vlahos, et al.*, 10-04201)

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

In re

**Jointly Administered under
Case No. 08-45257**

Petters Company, Inc., et al.,

Court File No. 08-45257

Debtors.

Court File Nos.:

(includes:
Petters Group Worldwide, LLC;
PC Funding, LLC;
Thousand Lakes, LLC;
SPF Funding, LLC;
PL Ltd., Inc.;
Edge One LLC;
MGC Finance, Inc.;
PAC Funding, LLC;
Palm Beach Finance Holdings, Inc.)

08-45258 (GFK)
08-45326 (GFK)
08-45327 (GFK)
08-45328 (GFK)
08-45329 (GFK)
08-45330 (GFK)
08-45331 (GFK)
08-45371 (GFK)
08-45392 (GFK)

Chapter 11 Cases
Judge Gregory F. Kishel

Douglas A. Kelley, in his capacity as the
court-appointed Chapter 11 Trustee of
Debtor Petters Company, Inc.

Plaintiff,

vs.

ADV. NO. _____

Dean P. Vlahos and
Michelle Vlahos Alton,

Defendants.

## COMPLAINT

Douglas A. Kelley, in his capacity as the court-appointed Chapter 11 Trustee of Petters

Company, Inc., by and through his legal counsel, Lindquist & Vennum P.L.L.P., as and for his

Complaint against Defendants Dean P. Vlahos and Michelle Vlahos Alton (each a "<u>Defendant</u>" and together the "<u>Defendants</u>"), states and alleges as follows:

PARTIES

1.      Petters Company, Inc. ("<u>PCI</u>" or the "<u>Debtor</u>") is a corporation organized under the laws of the State of Minnesota with its principal place of business at 2005 Cargo Road, Minneapolis, MN 55450.

2.      PCI is, and at all times relevant herein was, wholly owned by Thomas Joseph Petters, an individual and citizen of the state of Minnesota ("<u>Petters</u>").

3.      Defendant Dean P. Vlahos ("<u>Vlahos</u>") is a resident of the State of Minnesota and resides at 3680 Northome Road, Wayzata, MN 55391.

4.      Defendant Michelle Vlahos Alton ("<u>Alton</u>") is a resident of the State of Minnesota and resides at 905 Douglas Avenue, Minneapolis, MN 55403.

PROCEDURAL BACKGROUND

5.      On October 3, 2008, pursuant to 18 U.S.C. § 1345, the United States District Court of the District of Minnesota (the "<u>District Court</u>") placed PCI into receivership in civil litigation commenced by the United States of America against, among others, Petters and PCI (Court File No. 08-CV-5348) (the "<u>Receivership Action</u>").

6.      By Order of the District Court in the Receivership Action dated October 6, 2008, as subsequently amended and restated on December 8, 2008, the District Court appointed Douglas A. Kelley, Esq. ("<u>Kelley</u>") as equity receiver (the "<u>Receiver</u>") of any affiliates, subsidiaries, divisions, successors, or assigns owned 100% or controlled by Petters, including PCI.

2

7.     As the court-appointed Receiver, Kelley serves as an agent of the District Court and in that capacity had exclusive custody, control and possession of the property, assets and estates of PCI.

8.     On October 11, 2008 (the "Petition Date"), PCI, at the Receiver's direction, filed a petition for relief under Chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in Court File No. 08-45257.

9.     On October 22, 2008 this Court ordered the above-captioned Bankruptcy cases to be administratively consolidated as *In re Petters Company, Inc., et al.*, under case number 08-45257.

10.     On February 26, 2009, this Court approved the Office of the United States Trustee for the District of Minnesota's appointment of Kelley (the "Trustee"), as the Chapter 11 Trustee for all Chapter 11 debtors in this jointly administered matter, which specifically included appointing Kelley as the Chapter 11 Trustee of PCI.

JURISDICTION, VENUE AND STANDING

11.     This Court has subject matter jurisdiction of this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334.  The claims asserted herein arise under the Bankruptcy Code and are related to cases pending before this Court pursuant to the Bankruptcy Code.

12.     This adversary proceeding is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (B), (C), (E), (F), (H) and (O).

13.     Venue in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

14.     The Trustee has standing to assert the claims herein pursuant to Sections 323, 544, 547, 548, 550 and 1106 of the Bankruptcy Code.

3

<u>NATURE OF PROCEEDING</u>

15.    The Trustee brings this adversary proceeding against the Defendants pursuant to sections 105(a), 502, 506, 542, 544, 547, 548(a), 550(a), 551 and 1106 of the Bankruptcy Code, the Minnesota Fraudulent Transfer Act, Minn. Stat. §§ 513.41-51, and if the Court should determine that this action is governed by the laws of other states, the fraudulent transfer laws of such other states and other applicable law, to recover fraudulent transfers, preferential transfers, damages and disgorgement, prevent unjust enrichment and to impose a constructive trust, in connection with transfers of property by PCI to Defendants.

16.    Defendants are initial transferees of the fraudulent, preferential or other avoidable transfers alleged in this Complaint, or persons for whose benefit such transfers were made, or immediate or mediate transferees of any initial transferees of such transfers.

<u>FACTUAL BACKGROUND</u>

**THE PETTERS PONZI SCHEME**

17.    This adversary proceeding arises from a massive fraud and Ponzi scheme designed and orchestrated principally by Petters, and business organizations that he directly or indirectly owned and controlled.

18.    Petters operated the Ponzi scheme with the assistance of other individuals within certain Petters organizations from approximately 1993 through on or about the date of his arrest by federal agents on October 3, 2008.  Petters, through various entities that he controlled, including PCI, laundered what is estimated to be an amount in excess of $40 billion.

19.    On December 1, 2008, Petters was indicted by a Federal Grand Jury in the District of Minnesota.  The Indictment charged Petters and PCI with mail and wire fraud, conspiracy to commit mail and wire fraud, and conspiracy to commit money laundering, and charged Petters

4

alone with money laundering, all in connection with the perpetration of and resulting from Petters' and PCI's participation in the Ponzi scheme. On June 3, 2009, a Superseding Indictment was filed charging Petters and PCI with wire and mail fraud, conspiracy to commit mail and wire fraud and money laundering conspiracy and charging Petters alone with money laundering, all in connection with Petters' and PCI's participation in the Ponzi scheme. On December 2, 2009, a jury in the United States District Court of the District of Minnesota found Petters guilty of all 20 counts charged in the Superseding Indictment. On April 8, 2010, Judge Richard H. Kyle sentenced Petters to 50 years in prison for his crimes. PCI has yet to appear in the district court on either the Indictment or the Superseding Indictment.

20.    At various times during the course of the Ponzi scheme, Petters was assisted in the operation of the scheme by numerous individuals and conspirators, including Deanna Coleman ("Coleman"), Robert White ("White"), Larry Reynolds ("Reynolds"), Michael Catain ("Catain") and James Wehmhoff ("Wehmhoff") (collectively referred to herein as "Associates"). Coleman has pleaded guilty to a single count of conspiracy to commit mail fraud. On September 2, 2010, Judge Richard H. Kyle sentenced Coleman to one year and a day in prison for her involvement in the fraud. White has pleaded guilty to a single count of mail fraud. Reynoldsand Catain have each pleaded guilty to a single count of conspiracy to commit money laundering. Wehmhoff has pleaded guilty to conspiracy to defraud the United States, conspiracy to commit tax evasion and one count of aiding and assisting in the filing of a false tax return.

21.    The scheme orchestrated by Petters and his Associates was a common species of fraud known as a Ponzi scheme. Petters, through a multitude of entities and with the assistance of his Associates, would induce investors into financing the purchase of non-existent electronic equipment purportedly secured by fabricated purchase orders or otherwise provide financing for

5

fabricated purposes. Petters would then take the funds invested by later investors and repay initial investors not with the earnings or proceeds from the fabricated business purposes for which the financing was purportedly obtained, but with funds obtained from other investors. The payments were comprised of repayment of the principal amount invested (the "Principal") and often an amount which exceeded the amount invested (the "False Profits").

22. Petters, through PCI and a multitude of shell companies through which PCI operated, intended that the payments to early investors would induce ongoing, repeated, greater and more widespread investment in the Ponzi scheme and thereby further perpetrate and extend the life of the fraud.

23. On numerous occasions, investors entered into a number of Promissory Notes (the "Notes") with PCI. Under the terms and conditions of the Notes, Defendants made funds available to PCI for various falsely represented business purposes including the financing of inventory and the account receivables which would result from the sale of purported electronic goods. Under the Notes PCI would pay investors an amount equal to both Principal and False Profits.

24. The Notes were often secured by a Security Agreement entered into by PCI and investor. The Security Agreement would typically provide the investor with a security interest in the property described as:

> Merchandise as reflected or referred to in the Purchase Order attached hereto as Exhibit A or as reflected or referred to in any future documentation, including bills of lading which relate back to Exhibit A;
>
> Any other merchandise which [PCI] has or will acquire rights in or use of to the extent funds advanced by the Secured Party has enabled [PCI] to acquire an interest in such merchandise; and,

6

> Any and all proceeds which [PCI] has or will acquire through the
> disposal of such merchandise.

25.     Petters and his Associates told investors that funds paid to PCI were to be used to

purchase products, when in reality the funds were being funneled to PCI or other entities formed

by Petters in order to pay early investors with funds received from later investors.

26.     To obtain investors in the Ponzi scheme, Petters portrayed PCI as a middleman

that purchased consumer electronic goods or other goods from wholesalers and resold the

merchandise to large, "big box" retailers such as Costco, Sam's Club and B.J.'s Wholesale Club.

PCI, through Petters and his Associates, intentionally fabricated the documents to recruit

investors into the Ponzi scheme.  Petters and his Associates prepared and utilized fabricated

documents that were represented to investors to be equipment purchase orders and related

documents.  The fabricated documents included, but are not limited to, (1) purchase orders from

PCI to suppliers purportedly ordering electronic goods, and (2) purchase orders from retailers to

PCI purportedly ordering electronic goods for purchase from PCI.  The purchase orders and the

related documents were entirely fictitious.

27.     The fictitious merchandise was evidenced by fabricated equipment purchase

orders in which the investors would purportedly acquire a security interest.

28.     The high rates of return that were promised to investors promoted two essential

goals of the Ponzi scheme: (1) to entice investors, such as Defendants, to invest without

employing reasonable due diligence in Petters and PCI; and (2) to extend the life of the fraud and

to enable Petters and PCI to pay other earlier investors in the fraudulent scheme.

29.     PCI would show a "profit" on each transaction because PCI's fabricated purchase

order from the big box retailer for the merchandise was always for an amount greater than the

7

amount of PCI's fabricated purchase order to its supplier for the same nonexistent merchandise. Petters and his Associates, through PCI, created fictitious profits at will on each and every transaction by simply writing in the appropriate quantity and price information on the two sets of purchase orders to "produce" the necessary funds.

30.     Because the transactions described in the fictitious purchase orders in fact did not exist, the only way PCI was able to transfer sufficient funds to investors including Defendants was by money obtained from other investors, in other words, through the operation, control and management of the Ponzi scheme by Petters and his Associates.  Repayment of the Principal and interest in the form of False Profits to these investors comprised a Ponzi scheme because they were primarily, if not exclusively, from funds invested by other PCI investors.

31.     Petters, or Petters and his Associates, completely controlled and exercised adverse domination over PCI, PGW and other debtor entities at all times relevant herein and until the Receiver was appointed and placed in control of these entities.

32.     Petters, as the owner, officer, and director of PCI, PGW and other debtor entities, was a fiduciary of these entities and had a duty to disclose the fraudulent activities alleged in this Complaint.  Petters, in violation of his fiduciary duty, did not disclose the fraudulent activities to current or prospective investors and other creditors of PCI, PGW, and other debtor entities.

33.     Petters, or Petters and his Associates, fraudulently and intentionally concealed the ongoing fraud in an effort to hinder and delay authorities and other current and prospective investors and other creditors of PCI, PGW, and other debtor entities from discovering the fraud.

34.     The concealment of the fraud, whether by Petters' silence, the fraudulent and intentional concealment of the facts constituting the fraud, and/or the adverse domination of PCI, PGW, and other debtor entities by Petters or Petters and his Associates, prevented the discovery

8

of the on-going fraud until the Receiver was appointed and placed in control of the entities and the Receiver/Trustee was able to discover facts constituting the fraud alleged in this Complaint.

35.     The Receiver/Trustee has acted diligently to discover facts constituting the fraud alleged in this Complaint.

36.     Any temporal limitations, statutory or otherwise, on the Trustee's ability to bring the causes of action set forth below are tolled by, among other things, Petters' breach of fiduciary duty in failing to disclose the fraud, the actions of Petters, or Petters and his Associates, in fraudulently and intentionally concealing the fraud, and/or the adverse domination of PCI, PGW, and other debtor entities by Petters, or Petters and his Associates, until the appointment of the Receiver.

## FRAUDULENT TRANSFERS TO DEFENDANTS

37.     Defendants transferred money to PCI and received, in return, one or more of PCI's promissory notes signed by Petters as "President" of PCI.

38.     During the course of the Ponzi scheme, Defendants received distributions from PCI representing a return of the Principal invested by it into the Ponzi scheme and also distributions representing False Profits.

39.     Pursuant to the fraudulent mechanisms set forth above, all of which were designed to funnel funds from Defendants through PCI and back to Defendants at excessive rates of return, Defendants engaged in at least 100 separate note transactions with PCI in a principal sum of at least Fifteen Million Six Hundred Thousand Dollars ($15,600,000.00).

40.     The "interest rates" that PCI paid to Defendants, utilizing funds received from Petters through PCI, generally ranged from 36% to 90% on an annualized basis.

9

41.     Prior to the Petition Date, PCI made payments or other transfers totaling at least Thirty Nine Million Four Hundred Ninety Three Thousand Nine Hundred Dollars ($39,493,900.00) to or for the benefit of Defendants.

42.     On information and belief, in each instance, every transaction entered into by Defendants to invest in PCI and the Ponzi scheme, was based upon wholly fraudulent and fabricated financial transactions.

43.     Defendants knew or should have known that they were benefiting from fraudulent activity, or at a minimum, failed to exercise reasonable due diligence with respect to Petters and PCI in connection with the Ponzi scheme.  Defendants ignored numerous indicia of fraud from the general manner in which Petters and PCI operated.  Among other things, Defendants were on actual notice of the following additional indicia of fraud and financial irregularity but failed to make sufficient inquiry:

        a.      Petters operated PCI without investor transparency.  Petters generally declined to provide investors with financial statements.  He also barred any communication by investors with retailers who Petters represented would be purchasing the fictitious electronics.  Petters also routinely barred investors from viewing and inspecting the purported electronic goods they were financing.

        b.      Petters and PCI did not provide investors with electronic online access to their accounts which, had the investments been legitimate, would have shown important financial information regarding payments by bona fide retailers and shipments of electronics which was and is generally customary in the industry for purchase order financing with large retailers.

        c.      PCI promised, and produced, returns that were too good to be true, reflecting a pattern of abnormally consistent and significant profitability that was not credible.

10

d. Defendants received far higher purported annual rates of return on their investments with PCI, as compared to commercial market rates during the relevant time period.

e. Defendants did not conduct a performance audit of PCI or match purchase orders, wire transfer confirmations, or other transactional documents with the purported purchases of electronic equipment Defendants were financing.

44. Prior to the Petition Date, Thirty Nine Million Four Hundred Ninety Three Thousand Nine Hundred Dollars ($39,493,900.00) was paid to or for the benefit of Defendants by PCI (the "Transfers"). The Transfers consisted of substantial amounts of other investors' money that, instead of financing legitimate transactions, was used to pay prior investors, including Defendants. The Transfers were made to or for the benefit of Defendants and include, but are not limited to, the Transfers listed on Exhibit A .

45. Of the Transfers, Defendants received False Profits from PCI in the amount of Twenty Three Million Eight Hundred Ninety Three Thousand Nine Hundred Dollars ($23,893,900.00).

46. Of the Transfers, Nine Million Eight Hundred Twenty Eight Thousand Dollars ($9,828,000.00) were made during the two years prior to the Petition Date (the "Two Year Transfers").

47. Of the Two Year Transfers, Nine Hundred Thirty Six Thousand Dollars ($936,000.00) was transferred within 90 days prior to the Petition Date (the "90 Day Transfers").

48. To the extent that any of the recovery counts may be inconsistent with each other, they are to be treated as being pled in the alternative.

49. During the course of this adversary proceeding, the Trustee may learn (through discovery or otherwise) of additional transfers made to Defendants. It is the Trustee's intention

11

to avoid and recover all transfers made by the Debtor of an interest of the Debtor in property and to or for the benefit of the Defendants or any other transferee. The Trustee reserves the right to amend this original Complaint as to include: (i) further information regarding the Transfers, (ii) additional Transfers, (iii) modifications or revisions to Defendants' names, (iv) additional defendants, or (v) additional causes of action (i.e., but not exclusively, 11 U.S.C. §542, §544, §545, §548 and §549) (collectively, the "Amendments"), that may become known to the Trustee at any time during this adversary proceeding, through formal discovery or otherwise, and for the Amendments to relate back to this original Complaint.

## COUNT I – TURNOVER AND ACCOUNTING

### [11 U.S.C. § 542]

50.     The Trustee realleges and incorporates by reference the preceding paragraphs of the Complaint as if fully set forth herein.

51.     The Transfers constitute property of the estate to be recovered and administered by the Trustee pursuant to section 541 of the Bankruptcy Code.

52.     As a result of the foregoing, pursuant to section 542 of the Bankruptcy Code, the Trustee is entitled to the immediate payment and turnover from Defendants of any and all Transfers made by PCI, directly or indirectly, to Defendants.

53.     As a result of the foregoing, pursuant to section 542 of the Bankruptcy Code, the Trustee is also entitled to an accounting of all such Transfers received by Defendants from PCI, directly or indirectly.

DOCS-#3317703-v1

## COUNT II – FRAUDULENT TRANSFERS

### [Actual Fraud – 11 U.S.C. §§ 548(a)(1)(A), 550(a), 551 and 1106]

54.     The Trustee realleges and incorporates by reference the preceding paragraphs of the Complaint as if fully set forth herein.

55.     The Two Year Transfers represent transfers that were made or obligations that were incurred with actual intent to hinder, delay or defraud a creditor to which the Debtor was or became indebted on or after the date of the Fraudulent Transfers.

56.     The Two Year Transfers were made to or for the benefit of Defendants in furtherance of a fraudulent investment Ponzi scheme.

57.     To the extent that Defendants are not initial transferees of the Two Year Transfers, they are immediate or mediate transferees of the initial transferees of the Two Year Transfers, and upon information and belief cannot satisfy their burden that they took the Two Year Transfers for value and in good faith and without knowledge of the voidability of the Two Year Transfers, or are the entities or individuals for whose benefit such Two Year Transfers were made.

58.     As a result of the foregoing, the Trustee is entitled to judgment pursuant to Bankruptcy Code §§ 548(a)(1)(A), 550(a), 551 and 1106: (a) avoiding and preserving the Two Year Transfers free and clear from any claimed interest of Defendants, (b) directing that the Two Year Transfers be set aside, (c) recovering such Two Year Transfers in the amount of $9,828,000 or the value thereof from Defendants for the benefit of the estates of PCI, (d) alternatively, recovering such False Profits in the amount of $9,828,000 and (e) recovering prejudgment and post-judgment interests, attorneys' fees and costs from Defendants.

13

## COUNT III – FRAUDULENT TRANSFERS

### [Constructive Fraud – 11 U.S.C. §§ 548(a)(1)(B), 550(a), 551 and 1106]

59.     The Trustee realleges and incorporates by reference the preceding paragraphs of the Complaint as if fully set forth herein.

60.     At all times material hereto, the Debtor: (a) was insolvent on the dates the Two Year Transfers were made or became insolvent as a result of the Two Year Transfers, and/or (b) was engaged in businesses or transactions, or were about to engage in businesses or transactions, for which the property remaining with the Debtor after the Two Year Transfers were effectuated constituted unreasonably small capital, and/or (c) at the time of the Two Year Transfers, intended to incur, or believed that it would incur, debts that would be beyond its ability to pay as the debts matured.

61.     The Debtor received less than a reasonably equivalent value in exchange for the Two Year Transfers.

62.     To the extent that Defendants are not initial transferees of the Two Year Transfers, they are immediate or mediate transferees of the initial transferees of the Two Year Transfers, and upon information and belief cannot satisfy their burden that they took the Two Year Transfers for value and in good faith and without knowledge of the voidability of the Two Year Transfers, or are the entities or individuals for whose benefit such Two Year Transfers were made.

63.     As a result of the foregoing, the Trustee is entitled to judgment pursuant to Bankruptcy Code §§ 548(a)(1)(B), 550(a), 551 and 1106:  (a) avoiding and preserving the Two Year Transfers free and clear from any claimed interest of Defendants, (b) directing that the Two Year Transfers be set aside, (c) recovering such Two Year Transfers in the amount of $9,828,000

14

or the value thereof from Defendants for the benefit of the estates of PCI, (d) alternatively, recovering such False Profits in the amount of $9,828,000, and (e) recovering prejudgment and post-judgment interest, attorneys' fees and costs from Defendants.

### COUNT IV – FRAUDULENT TRANSFERS

**[Actual Fraud - 11 U.S.C. §§ 544(b), 550(a), 551 and 1106 & Minn. Stat. §§ 513.44(a)(1)
and 513.47 or Other Governing Fraudulent Transfer Laws]**

64.     The Trustee realleges and incorporates by reference the preceding paragraphs of the Complaint as if fully set forth herein.

65.     At all times material hereto, there was and is at least one or more creditors who held and who hold unsecured claims against the Debtor that was and is allowable under Bankruptcy Code § 502 or that was and is not allowable only under Bankruptcy Code § 502(e). The Transfers are avoidable under applicable nonbankruptcy law by a creditor holding an unsecured claim in the bankruptcy case.

66.     The Transfers represent transfers that were made or obligations that were incurred with actual intent to hinder, delay or defraud a creditor to which the Debtor was or became indebted on or after the date of the Transfers.

67.     The Transfers were made to or for the benefit of Defendants in furtherance of a fraudulent investment scheme.

68.     To the extent that Defendants are not initial transferees of the Transfers, they are subsequent transferees of the initial transferees of the Transfers, and upon information and belief cannot satisfy their burden that they took the Transfers for value and in good faith, or are the entities or individuals for whose benefit such Transfers were made.

15

69. As a result of the foregoing, the Trustee is entitled to judgment pursuant to Bankruptcy Code §§ 544(b), 550(a), 551 and 1106, Minn. Stat. §§ 513.44(a)(1) and 513.47, and if the Court should determine that this action is governed by the laws of other states, the fraudulent transfer laws of such other states: (a) avoiding and preserving the Transfers free and clear from any claimed interest of Defendants, (b) directing that the Transfers be set aside, (c) recovering such Transfers in the amount of $39,493,900 or the value thereof from Defendants for the benefit of the bankruptcy estates of PCI, (d) alternatively, recovering such False Profits in the amount of $23,893,900, and (e) recovering prejudgment and post-judgment interest, attorneys' fees and costs from Defendants.

## COUNT V – FRAUDULENT TRANSFERS

**[Constructive Fraud - 11 U.S.C. §§ 544(b), 550(a), 551 and 1106 & Minn. Stat. §§ 513.44(a)(2)(i) and 513.47 or Other Governing Fraudulent Transfer Laws]**

70. The Trustee realleges and incorporates by reference the preceding paragraphs of the Complaint as if fully set forth herein.

71. At all times material hereto, there was and is at least one or more creditors who held and who hold unsecured claims against the Debtor that was and is allowable under Bankruptcy Code § 502 or that were and are not allowable only under Bankruptcy Code § 502(e). The Transfers are avoidable under applicable nonbankruptcy law by a creditor holding an unsecured claim in the Bankruptcy Cases.

72. At all times material hereto, the Debtor was engaged in businesses or transactions, or was about to engage in businesses or transactions, for which the property remaining with the Debtor after the Transfers were effectuated constituted unreasonably small capital.

16

73. The Debtor received less than a reasonably equivalent value in exchange for the Transfers.

74. To the extent that Defendants are not initial transferees of the Transfers, they are subsequent transferees of the initial transferees of the Transfers, and upon information and belief cannot satisfy their burden that they took the Transfers for value and in good faith, or are the entities or individuals for whose benefit such Transfers were made.

75. As a result of the foregoing, the Trustee is entitled to judgment pursuant to Bankruptcy Code §§ 544(b), 550(a), 551 and 1106, Minn. Stat. §§ 513.44(a)(2)(i) and 513.47, and if the Court should determine that this action is governed by the laws of other states, the fraudulent transfer laws of such other states: (a) avoiding and preserving the Transfers free and clear from any claimed interest of Defendants, (b) directing that the Transfers be set aside, (c) recovering such Transfers in the amount of $39,493,900 or the value thereof from Defendants for the benefit of the bankruptcy estates of PCI, (d) alternatively, recovering such False Profits in the amount of $23,893,900, and (e) recovering prejudgment and post-judgment interest, attorneys' fees and costs from Defendants.

## COUNT VI – FRAUDULENT TRANSFERS

**[Constructive Fraud - 11 U.S.C. §§ 544(b), 550(a), 551 and 1106 & Minn. Stat.
§§ 513.44(a)(2)(ii) and 513.47 or Other Governing Fraudulent Transfer Laws]**

76. The Trustee realleges and incorporates by reference the preceding paragraphs of the Complaint as if fully set forth herein.

77. At all times material hereto, there was and is at least one or more creditors who held and who hold unsecured claims against the Debtor that was and is allowable under Bankruptcy Code § 502 or that was and is not allowable only under Bankruptcy Code § 502(e).

17

The Transfers are avoidable under applicable nonbankruptcy law by a creditor holding an unsecured claim in the Bankruptcy Cases.

78.     At all times material hereto, the Debtor, at the time of the Transfers, intended to incur, or believed that it would incur, debts that would be beyond its ability to pay as the debts matured.

79.     The Debtor received less than a reasonably equivalent value in exchange for the Transfers.

80.     To the extent that Defendants are not initial transferees of the Transfers, they are subsequent transferees of the initial transferees of the Transfers, and upon information and belief, cannot satisfy their burden that they took the Transfers for value and in good faith, or are the entities or individuals for whose benefit such Transfers were made.

81.     As a result of the foregoing, the Trustee is entitled to judgment pursuant to Bankruptcy Code §§ 544(b), 550(a), 551 and 1106, Minn. Stat. §§ 513.44(a)(2)(ii) and 513.47, and if the Court should determine that this action is governed by the laws of other states, the fraudulent transfer laws of such other states:  (a) avoiding and preserving the Transfers free and clear from any claimed interest of Defendants, (b) directing that the Transfers be set aside, (c) recovering such Transfers in the amount of $39,493,900 or the value thereof from Defendants for the benefit of the bankruptcy estates of PCI, (d) alternatively, recovering such False Profits in the amount of $23,893,900, and (e) recovering prejudgment and post-judgment interest, attorneys' fees and costs from Defendants.

18

## COUNT VII – FRAUDULENT TRANSFERS

**[Constructive Fraud - 11 U.S.C. §§ 544(b), 550(a), 551 and 1106 & Minn. Stat. §§ 513.45(a) and 513.47 or Other Governing Fraudulent Transfer Laws]**

82.     The Trustee realleges and incorporates by reference the preceding paragraphs of the Complaint as if fully set forth herein.

83.     At all times material hereto, there was and is at least one or more creditors who held and who hold unsecured claims against the Debtor that was and is allowable under Bankruptcy Code § 502 or that was and is not allowable only under Bankruptcy Code § 502(e). The Transfers are avoidable under applicable nonbankruptcy law by a creditor holding an unsecured claim in the Bankruptcy Cases.

84.     At all times material hereto, the Debtor, at the time of the Transfers, was insolvent or, in the alternative, the Debtor became insolvent as a result of the Transfers.

85.     The Debtor received less than a reasonably equivalent value in exchange for the Transfers.

86.     To the extent that Defendants are not initial transferees of the Transfers, they are subsequent transferees of the initial transferees of the Transfers, and upon information and belief, cannot satisfy their burden that they took the Transfers for value and in good faith, or are the entities or individuals for whose benefit such Transfers occurred.

87.     As a result of the foregoing, the Trustee is entitled to judgment pursuant to Bankruptcy Code §§ 544(b), 550(a), 551 and 1106, Minn. Stat. §§ 513.45(a) and 513.47, and if the Court should determine that this action is governed by the laws of other states, the fraudulent transfer laws of such other states:  (a) avoiding and preserving the Transfers free and clear from any claimed interest of Defendants, (b) directing that the Transfers be set aside, (c) recovering

19

such Transfers in the amount of $39,493,900 or the value thereof from Defendants for the benefit of the bankruptcy estates of PCI, (d) alternatively, recovering such False Profits in the amount of $23,893,900 and (e) recovering prejudgment and post-judgment interest, attorneys' fees and costs from Defendants.

**COUNT VIII – PREFERENTIAL TRANSFERS**

**[11 U.S.C. §§ 547, 550, 551 and 1106]**

88.     The Trustee realleges and incorporates by reference the preceding paragraphs of the Complaint as if fully set forth herein.

89.     At the time of each of the 90 Day Transfers (hereafter, the "Preference Period Transfers"), Defendants were each a "creditor" of PCI within the meaning of section 101(10) of the Bankruptcy Code.

90.     Each of the Preference Period Transfers constitutes a transfer of an interest of PCI in property within the meaning of section 101(54) of the Bankruptcy Code.

91.     Each of the Preference Period Transfers was to or for the benefit of Defendants.

92.     Each of the Preference Period Transfers was made for or on account of an antecedent debt owed by PCI before such transfer was made.

93.     Each of the Preference Period Transfers was made while PCI was insolvent.

94.     Each of the Preference Period Transfers was made during the relevant preference time period under section 547(b)(4) of the Bankruptcy Code.

95.     Each of the Preference Period Transfers enabled Defendants to receive more than they would receive if (i) this case was a case under Chapter 7 of the Bankruptcy Code, (ii) the transfers had not been made, and (iii) Defendants received payment of such debt to the extend provided by the provisions of the Bankruptcy Code.

20

96.     Each of the Preference Period Transfers constitutes a preferential transfer avoidable by the Trustee pursuant to section 547(b) of the Bankruptcy Code and recoverable from Defendants pursuant to section 550(a).

97.     To the extent that Defendants are not initial transferees of the Preference Period Transfers, they are immediate or mediate transferees of the initial transferees of the Preference Period Transfers, and upon information and belief, cannot satisfy their burden that they took the Preference Period Transfers for value and in good faith and without knowledge of the voidability of the Preference Period Transfers, or are the entities or individuals for whose benefit such Preference Period Transfers occurred.

98.     As a result of the foregoing, the Trustee is entitled to a judgment pursuant to sections 547(b), 550, and 551 of the Bankruptcy Code: (a) avoiding and preserving the Preference Period Transfers free and clear from any claimed interest of Defendants, (b) directing that the Preference Period Transfers be set aside, (c) recovering the Preference Period Transfers in the amount of $936,000, or the value thereof from Defendants for the benefit of the estate of PCI, and (d) recovering prejudgment and post-judgment interest, attorneys' fees and costs from Defendants.

### COUNT IX – UNJUST ENRICHMENT/EQUITABLE DISGORGEMENT

99.     The Trustee realleges and incorporates by reference the preceding paragraphs of the Complaint as if fully set forth herein.

100.    At all times relevant hereto, all funds received by Defendants were part and parcel of the Ponzi scheme and were derived from monies fraudulently obtained by Petters and PCI from other investors or participants in the Ponzi scheme.

101.     Defendants, as the recipients of fraudulently obtained proceeds of the Ponzi scheme, including the Principal and the False Profits, have no rightful or legitimate claim to any monies received from PCI.

102.     Defendants knowingly received monies from the Ponzi scheme, were unjustly enriched through their receipt of the fraudulently obtained monies to the detriment of other investors in PCI, and in equity and good conscience must be required to repay the proceeds received.

103.     Defendants would be unjustly enriched to the extent they are allowed to retain the monies and proceeds received during their participation in the Ponzi scheme.

104.     Defendants must, therefore, in equity be required to disgorge all proceeds received through the operation of the Ponzi scheme, so as to allow the Trustee to distribute in equity any such ill-gotten gains among all innocent investors and creditors of PCI.

## COUNT X – DISALLOWANCE

### [11 U.S.C. § 502(b) and (d)]

105.     The Trustee realleges and incorporates by reference the preceding paragraphs of the Complaint as if fully set forth herein.

106.     To the extent that Defendants assert they are entitled to any claim in these Bankruptcy Cases, directly on their own account or indirectly by virtue of any other agreement with Petters, PCI or any of their affiliates, such claim is unenforceable against the Debtors or the property of the Debtors under any agreement or applicable law and should be disallowed under 11 U.S.C. § 502(b).

107.     Further, any claim of an entity from which property is recoverable under 11 U.S.C. § 550 or held by a transferee of a transfer that is avoided under 11 U.S.C. §§ 544 or 548

22

shall be disallowed by the Court unless such entity or transferee has paid the amount, or turned

over any such property, for which such entity or transferee is liable.

108.     As a result of the foregoing, to the extent that Defendants assert they are entitled

to any claim in these Bankruptcy Cases, directly on their own account or indirectly by virtue of

any other agreement with Petters, PCI or any of their affiliates, all such claims are and should be

in all things disallowed.

**WHEREFORE**, the Trustee respectfully requests this Court enter judgment in

favor of Plaintiffs and against Defendants as follows:

A.     On Count I – pursuant to sections 542, 550(a) and 551 of the

Bankruptcy Code: (a) that the property that was the subject of the Fraudulent

Transfers be immediately delivered and turned over to the Trustee, and (b) for an

accounting by Defendants of the property that was the subject of the Transfers or

the value of such property.

B.     On Count II – Fraudulent Transfers (Actual Fraud), pursuant to 11

U.S.C. §§ 548(a)(1)(A), 550, 551 and 1106: (a) avoiding and preserving the Two

Year Transfers free and clear from any claimed interest of Defendants, (b) directing

that the Two Year Transfers be set aside, (c) recovering such Two Year Transfers

in the amount of $9,828,000 or the value thereof from Defendants for the benefit of

the estates of PCI, (d) alternatively, recovering such False Profits in the amount of

$9,828,000, and (e) recovering prejudgment and post-judgment interests, attorneys'

fees and costs from Defendants.

C.     On Count III – Fraudulent Transfers (Constructive Fraud),

pursuant to 11 U.S.C. §§ 548(a)(1)(B), 550(a), 551 and 1106: (a) avoiding and

23

preserving the Two Year Transfers free and clear from any claimed interest of Defendants, (b) directing that the Two Year Transfers be set aside, (c) recovering such Two Year Transfers in the amount of $9,828,000 or the value thereof from Defendants for the benefit of the estates of PCI, (d) alternatively, recovering such False Profits in the amount of $9,828,000, and (e) recovering prejudgment and post-judgment interest, attorneys' fees and costs from Defendants.

D.     On Count IV – Fraudulent Transfers (Actual Fraud), pursuant to 11 U.S.C. §§ 544(b), 550, 551 and 1106, Minn. Stat. §§ 513.44(a)(1) and 513.47, and if the Court should determine that this action is governed by the laws of other states, the fraudulent transfer laws of such other states:  (a) avoiding and preserving the Transfers free and clear from any claimed interest of Defendants, (b) directing that the Transfers be set aside, (c) recovering such Transfers in the amount of $39,493,900 or the value thereof from Defendants for the benefit of the bankruptcy estates of PCI, (d) alternatively, recovering such False Profits in the amount of $23,893,900, and (e) recovering prejudgment and post-judgment interest, attorneys' fees and costs from Defendants.

E.     On Count V – Fraudulent Transfers (Constructive Fraud), pursuant to 11 U.S.C. §§ 544(b), 550, 551 and 1106, Minn. Stat. §§ 513.44(a)(2)(i) and 513.47, and if the Court should determine that this action is governed by the laws of other states, the fraudulent transfer laws of such other states:  (a) avoiding and preserving the Transfers free and clear from any claimed interest of Defendants, (b) directing that the Transfers be set aside, (c) recovering such Transfers in the amount of $39,493,900 or the value thereof from Defendants for the benefit of the

24

bankruptcy estates of PCI, (d) alternatively, recovering such False Profits in the amount of $23,893,900, and (e) recovering prejudgment and post-judgment interest, attorneys' fees and costs from Defendants.

F.      On Count VI – Fraudulent Transfers (Constructive Fraud), pursuant to 11 U.S.C. §§ 544(b), 550, 551 and 1106, Minn. Stat. §§ 513.44(a)(2)(ii) and 513.47, and if the Court should determine that this action is governed by the laws of other states, the fraudulent transfer laws of such other states: (a) avoiding and preserving the Transfers free and clear from any claimed interest of Defendants, (b) directing that the Transfers be set aside, (c) recovering such Transfers in the amount of $39,493,900 or the value thereof from Defendants for the benefit of the bankruptcy estates of PCI, (d) alternatively, recovering such False Profits in the amount of $23,893,900, and (e) recovering prejudgment and post-judgment interest, attorneys' fees and costs from Defendants.

G.      On Count VII – Fraudulent Transfers (Constructive Fraud), pursuant to 11 U.S.C. §§ 544(b), 550, 551 and 1106, Minn. Stat. §§ 513.45(a) and 513.47, and if the Court should determine that this action is governed by the laws of other states, the fraudulent transfer laws of such other states: (a) avoiding and preserving the Transfers free and clear from any claimed interest of Defendants, (b) directing that the Transfers be set aside, (c) recovering such Transfers in the amount of $39,493,900 or the value thereof from Defendants for the benefit of the bankruptcy estates of PCI, (d) alternatively, recovering such False Profits in the amount of $23,893,900, and (e) recovering prejudgment and post-judgment interest, attorneys' fees and costs from Defendants.

25

H. On Count VIII – Preferential Transfer, pursuant to 11 U.S.C. §§ 547, 550, 551 and 1106: (a) avoiding and preserving the Preference Period Transfers free and clear from any claimed interest of Defendants, (b) directing that the Preference Period Transfers be set aside, (c) recovering such Preference Period Transfers in the amount of $936,000 or the value thereof from Defendants for the benefit of the bankruptcy estates of the PCI, and (d) recovering prejudgment and post-judgment interests, attorneys' fees and costs from Defendants;

I. On Count IX – Unjust Enrichment/Equitable Disgorgement: declaring and ordering that the Trustee shall recover the Principal and False Profits and any other monies received by Defendants, directly or indirectly, from the fraud perpetrated through the Ponzi scheme, or the value thereof, for the benefit of the bankruptcy estate of the Debtor; and that Defendants shall be liable to the bankruptcy estate of the Debtor in an amount equal to all monies received and shall be required to disgorge the same for the equitable distribution to all creditors of PCI.

J. On Count X – Disallowance, pursuant to 11 U.S.C. § 502(b) and (d): declaring and ordering that, to the extent that Defendants assert that they are entitled to any claim in these Bankruptcy Cases, directly on their own account or indirectly by virtue of any other agreement with Petters, PCI, PGW or any of their affiliates, all such claims are in all things disallowed;

K. On all Claims for Relief, establishment of a constructive trust over the proceeds of the transfers in favor of the Trustee for the benefit of PCI's estate;

26

L. On all Claims for Relief, assignment of Defendants' income tax refunds from the United States, state and local governments paid on fictitious profits during the course of the Ponzi scheme;

M. Awarding the Trustee all applicable interest (including prejudgment and post-judgment interest), attorneys' fees, costs and disbursements in this action; and

N. Granting the Trustee such other, further and different relief as the Court deems just, proper and equitable.

DATED: September 10, 2010      **LINDQUIST & VENNUM P.L.L.P.**

By: /e/ James A. Lodoen
James A. Lodoen (173605)
Terry Fleming (0128983)
Kirstin D. Kanski (0346676)

4200 IDS Center
80 South Eighth Street
Minneapolis, MN 55402-2274
(612) 371-3211
(612) 371-3207 (facsimile)
www.lindquist.com

**ATTORNEYS FOR
DOUGLAS A. KELLEY
CHAPTER 11 TRUSTEE OF
PETTERS COMPANY, INC.**

27

## EXHIBIT A
## Transfers to or for the Benefit of VLAHOS (DEAN, DEAN & MICHELLE)

| Date | Amount | Subtotal |
|---|---|---|
| **90 Day Transfers** | | |
| 9/3/2008 | $399,000.00 | |
| 8/4/2008 | $399,000.00 | **$798,000.00** |
| **Two Year Transfers** | | |
| 7/2/2008 | $399,000.00 | |
| 6/3/2008 | $399,000.00 | |
| 5/2/2008 | $399,000.00 | |
| 4/2/2008 | $399,000.00 | |
| 3/4/2008 | $399,000.00 | |
| 2/4/2008 | $399,000.00 | |
| 1/3/2008 | $399,000.00 | |
| 12/4/2007 | $399,000.00 | |
| 11/2/2007 | $399,000.00 | |
| 10/2/2007 | $399,000.00 | |
| 9/5/2007 | $399,000.00 | |
| 8/2/2007 | $399,000.00 | |
| 7/3/2007 | $399,000.00 | |
| 6/4/2007 | $399,000.00 | |
| 5/2/2007 | $399,000.00 | |
| 4/3/2007 | $399,000.00 | |
| 3/2/2007 | $399,000.00 | |
| 2/2/2007 | $399,000.00 | |
| 1/3/2007 | $399,000.00 | |
| 12/4/2006 | $399,000.00 | |
| 11/2/2006 | $399,000.00 | **$8,379,000.00** |
| **Additional Transfers** | | |
| 10/3/2006 | $399,000.00 | |
| 9/5/2006 | $399,000.00 | |
| 8/2/2006 | $399,000.00 | |
| 7/3/2006 | $399,000.00 | |
| 6/2/2006 | $399,000.00 | |
| 5/2/2006 | $399,000.00 | |
| 4/3/2006 | $399,000.00 | |
| 3/2/2006 | $399,000.00 | |
| 2/2/2006 | $399,000.00 | |
| 1/3/2006 | $399,000.00 | |
| 12/2/2005 | $399,000.00 | |
| 11/2/2005 | $399,000.00 | |
| 10/4/2005 | $399,000.00 | |
| 8/30/2005 | $399,000.00 | |

## EXHIBIT A
### Transfers to or for the Benefit of VLAHOS (DEAN, DEAN & MICHELLE)

| Date | Amount | Subtotal |
|------|--------|----------|
| 8/3/2005 | $399,000.00 | |
| 6/28/2005 | $399,000.00 | |
| 6/2/2005 | $399,000.00 | |
| 5/3/2005 | $399,000.00 | |
| 4/4/2005 | $399,000.00 | |
| 3/2/2005 | $399,000.00 | |
| 2/2/2005 | $399,000.00 | |
| 1/4/2005 | $399,000.00 | |
| 12/2/2004 | $399,000.00 | |
| 11/2/2004 | $399,000.00 | |
| 10/4/2004 | $399,000.00 | |
| 9/2/2004 | $399,000.00 | |
| 8/3/2004 | $399,000.00 | |
| 7/6/2004 | $399,000.00 | |
| 6/2/2004 | $399,000.00 | |
| 4/29/2004 | $399,000.00 | |
| 4/2/2004 | $399,000.00 | |
| 3/2/2004 | $399,000.00 | |
| 2/3/2004 | $399,000.00 | |
| 1/6/2004 | $399,000.00 | |
| 12/1/2003 | $399,000.00 | |
| 11/3/2003 | $399,000.00 | |
| 9/30/2003 | $399,000.00 | |
| 9/2/2003 | $399,000.00 | |
| 8/1/2003 | $399,000.00 | |
| 7/1/2003 | $399,000.00 | |
| 6/3/2003 | $399,000.00 | |
| 4/30/2003 | $424,000.00 | |
| 4/1/2003 | $399,000.00 | |
| 2/27/2003 | $399,000.00 | |
| 2/3/2003 | $399,000.00 | |
| 1/2/2003 | $399,000.00 | |
| 12/3/2002 | $399,000.00 | |
| 11/1/2002 | $399,000.00 | |
| 10/1/2002 | $399,000.00 | |
| 9/4/2002 | $6,000.00 | |
| 9/4/2002 | $361,500.00 | |
| 8/1/2002 | $361,500.00 | |
| 7/1/2002 | $361,500.00 | |
| 6/3/2002 | $361,500.00 | |

## EXHIBIT A
### Transfers to or for the Benefit of VLAHOS (DEAN, DEAN & MICHELLE)

| Date | Amount | Subtotal |
|------|--------|----------|
| 5/2/2002 | $361,500.00 | |
| 4/17/2002 | $6,000.00 | |
| 4/2/2002 | $386,250.00 | |
| 3/1/2002 | $378,750.00 | |
| 2/20/2002 | $17,450.00 | |
| 2/1/2002 | $399,000.00 | |
| 1/8/2002 | $399,000.00 | |
| 12/3/2001 | $360,250.00 | |
| 11/14/2001 | $18,750.00 | |
| 11/2/2001 | $37,500.00 | |
| 11/2/2001 | $341,500.00 | |
| 10/1/2001 | $25,000.00 | |
| 10/1/2001 | $202,200.00 | |
| 9/4/2001 | $15,000.00 | |
| 9/4/2001 | $18,750.00 | |
| 9/4/2001 | $31,500.00 | |
| 9/4/2001 | $60,000.00 | |
| 9/4/2001 | $60,000.00 | |
| 8/15/2001 | $18,750.00 | |
| 8/2/2001 | $7,000.00 | |
| 8/2/2001 | $31,500.00 | |
| 8/2/2001 | $37,500.00 | |
| 8/2/2001 | $60,000.00 | |
| 8/2/2001 | $60,000.00 | |
| 7/2/2001 | $31,500.00 | |
| 7/2/2001 | $37,500.00 | |
| 7/2/2001 | $60,000.00 | |
| 7/2/2001 | $60,000.00 | |
| 6/4/2001 | $18,750.00 | |
| 6/4/2001 | $44,000.00 | |
| 6/4/2001 | $60,000.00 | *$24,672,900.00* |
| **Transfers** | **$33,849,900.00** | |

**EXHIBIT A**
**Transfers to or for the Benefit of VLAHOS (MICHELLE)**

| Date | Amount | Subtotal |
|------|--------|----------|
| **90 Day Transfers** | | |
| 9/3/2008 | $69,000.00 | |
| 8/4/2008 | $69,000.00 | **$138,000.00** |
| **Two Year Transfers** | | |
| 7/2/2008 | $69,000.00 | |
| 6/3/2008 | $69,000.00 | |
| 5/2/2008 | $69,000.00 | |
| 4/2/2008 | $69,000.00 | |
| 3/4/2008 | $69,000.00 | |
| 2/4/2008 | $69,000.00 | |
| 1/3/2008 | $69,000.00 | |
| 12/4/2007 | $69,000.00 | |
| 11/2/2007 | $69,000.00 | |
| 10/2/2007 | $69,000.00 | |
| 9/5/2007 | $69,000.00 | |
| 8/2/2007 | $69,000.00 | |
| 7/3/2007 | $69,000.00 | |
| 6/4/2007 | $69,000.00 | |
| 5/2/2007 | $69,000.00 | |
| 4/3/2007 | $69,000.00 | |
| 3/2/2007 | $69,000.00 | |
| 2/2/2007 | $69,000.00 | |
| 1/3/2007 | $69,000.00 | |
| 12/4/2006 | $69,000.00 | |
| 11/2/2006 | $69,000.00 | **$1,449,000.00** |
| **Additional Transfers** | | |
| 10/3/2006 | $69,000.00 | |
| 9/5/2006 | $69,000.00 | |
| 8/2/2006 | $69,000.00 | |
| 7/3/2006 | $69,000.00 | |
| 6/2/2006 | $69,000.00 | |
| 5/2/2006 | $69,000.00 | |
| 4/3/2006 | $69,000.00 | |
| 3/2/2006 | $69,000.00 | |
| 2/2/2006 | $69,000.00 | |
| 1/3/2006 | $69,000.00 | |
| 12/2/2005 | $69,000.00 | |
| 11/2/2005 | $69,000.00 | |
| 10/4/2005 | $69,000.00 | |
| 8/30/2005 | $69,000.00 | |

**EXHIBIT A**
**Transfers to or for the Benefit of VLAHOS (MICHELLE)**

| Date | Amount | Subtotal |
|------|--------|----------|
| 8/3/2005 | $69,000.00 | |
| 6/28/2005 | $69,000.00 | |
| 6/2/2005 | $69,000.00 | |
| 5/3/2005 | $69,000.00 | |
| 4/4/2005 | $69,000.00 | |
| 3/2/2005 | $69,000.00 | |
| 2/2/2005 | $69,000.00 | |
| 1/4/2005 | $69,000.00 | |
| 12/2/2004 | $69,000.00 | |
| 11/2/2004 | $69,000.00 | |
| 10/4/2004 | $69,000.00 | |
| 9/2/2004 | $69,000.00 | |
| 8/3/2004 | $69,000.00 | |
| 7/2/2004 | $69,000.00 | |
| 6/2/2004 | $69,000.00 | |
| 4/29/2004 | $69,000.00 | |
| 4/2/2004 | $69,000.00 | |
| 3/2/2004 | $15,000.00 | |
| 3/2/2004 | $54,000.00 | |
| 2/3/2004 | $69,000.00 | |
| 1/6/2004 | $69,000.00 | |
| 12/1/2003 | $69,000.00 | |
| 11/3/2003 | $69,000.00 | |
| 9/30/2003 | $69,000.00 | |
| 9/2/2003 | $69,000.00 | |
| 8/1/2003 | $69,000.00 | |
| 7/1/2003 | $69,000.00 | |
| 6/3/2003 | $69,000.00 | |
| 4/30/2003 | $69,000.00 | |
| 4/1/2003 | $69,000.00 | |
| 2/27/2003 | $69,000.00 | |
| 2/3/2003 | $69,000.00 | |
| 1/2/2003 | $69,000.00 | |
| 12/3/2002 | $69,000.00 | |
| 11/1/2002 | $69,000.00 | |
| 10/1/2002 | $69,000.00 | |
| 9/4/2002 | $69,000.00 | |
| 8/1/2002 | $69,000.00 | |
| 7/1/2002 | $69,000.00 | |
| 6/3/2002 | $69,000.00 | |

**EXHIBIT A**
**Transfers to or for the Benefit of VLAHOS (MICHELLE)**

| Date | Amount | Subtotal |
|------|--------|----------|
| 5/2/2002 | $69,000.00 | |
| 4/2/2002 | $69,000.00 | |
| 3/1/2002 | $54,000.00 | |
| 2/1/2002 | $51,000.00 | |
| 1/8/2002 | $57,000.00 | |
| 12/3/2001 | $54,000.00 | |
| 11/2/2001 | $46,000.00 | *$4,057,000.00* |
| **Transfers** | **$5,644,000.00** | |

Illustrative Compl. 3

(*Kelley, Trustee v. Hay*, 10-04399)

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

In re

Petters Company, Inc., et al.,

Debtors.

(includes:
Petters Group Worldwide, LLC;
PC Funding, LLC;
Thousand Lakes, LLC;
SPF Funding, LLC;
PL Ltd., Inc.;
Edge One LLC;
MGC Finance, Inc.;
PAC Funding, LLC;
Palm Beach Finance Holdings, Inc.)

**Jointly Administered under
Case No. 08-45257**

Court File No. 08-45257

Court File Nos.:

08-45258 (GFK)
08-45326 (GFK)
08-45327 (GFK)
08-45328 (GFK)
08-45329 (GFK)
08-45330 (GFK)
08-45331 (GFK)
08-45371 (GFK)
08-45392 (GFK)

Chapter 11 Cases
Judge Gregory F. Kishel

---

Douglas A. Kelley, in his capacity as the
court-appointed Chapter 11 Trustee of
Debtors Petters Company, Inc. and
Petters Group Worldwide, LLC,

Plaintiffs,

vs.

Thomas Hay,

Defendant.

ADV. NO. _____

---

## COMPLAINT

Douglas A. Kelley, in his capacity as the court-appointed Chapter 11 Trustee of

Petters Company, Inc. and Petters Group Worldwide, LLC, by and through his legal

counsel, Fruth, Jamison & Elsass, PLLC, as and for his Complaint against Defendant

Thomas Hay, states and alleges as follows:

## PARTIES

1.      Plaintiff Petters Company, Inc. ("PCI" or the "Debtor") is a corporation

organized under the laws of the State of Minnesota.

2.      Plaintiff Petters Group Worldwide, LLC ("PGW" or the "Debtor") is a

limited liability company organized under the laws of the State of Delaware.

3.      PCI and PGW (collectively, "Debtors") are, and at all times relevant herein

were, wholly owned by Thomas Joseph Petters, an individual and citizen of the State of

Minnesota ("Petters").

4.      Defendant Thomas Hay ("Hay" or "Defendant") is a resident of the State of

Minnesota, residing at 6 Badger Lane, North Oaks, Minnesota.

## PROCEDURAL BACKGROUND

5.      On October 3, 2008, pursuant to 18 U.S.C. § 1345, the United States

District Court of the District of Minnesota (the "District Court") placed, among others,

Thomas J. Petters, PCI and PGW into receivership in civil litigation commenced by the

United States of America against, among others, Petters, PCI, PGW and others (Civil File

No. 08-5348) (the "Receivership Action").

6.      By Order of the District Court in the Receivership Action dated October 6,

2008, as subsequently amended and restated on December 8, 2008, the District Court

2

appointed Douglas A. Kelley, Esq. ("Kelley") as equity receiver (the "Receiver") of any affiliates, subsidiaries, divisions, successors, or assigns owned 100% or controlled by Petters, including PCI and PGW.

7.      As the court-appointed Receiver, Kelley serves as an agent of the District Court and in that capacity had exclusive custody, control and possession of the property, assets and estates of PCI and PGW.

8.      On October 11, 2008 (the "Petition Date"), PCI and PGW, at the Receiver's direction, filed separate petitions for relief under Chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in Court File No. 08-45257.

9.      On October 22, 2008 this Court ordered the above-captioned Bankruptcy cases to be administratively consolidated as *In re Petters Company, Inc., et al.*, under case number 08-45257.

10.     On February 26, 2009, this Court approved the appointment by the Office of the United States Trustee for the District of Minnesota of Kelley (the "Trustee") as the Chapter 11 Trustee for all Chapter 11 debtors in this jointly administered matter, which specifically included appointing Kelley as the Chapter 11 Trustee of PCI and PGW.

## JURISDICTION, VENUE AND STANDING

11.     This Court has subject matter jurisdiction of this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334.  The claims asserted herein arise under the Bankruptcy Code and are related to cases pending before this Court pursuant to the Bankruptcy Code.

12.     This adversary proceeding is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (B), (C), (E), (F), (H) and (O).

13.     Venue in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

14.     The Trustee has standing to assert the claims herein pursuant to Sections 323, 544, 548, 550 and 1106 of the Bankruptcy Code.

## NATURE OF PROCEEDING

15.     The Trustee brings this adversary proceeding against the Defendant pursuant to Sections 105(a), 542, 544, 548, 550(a), 551 and 1106 of the Bankruptcy Code, the Minnesota Fraudulent Transfer Act, Minn. Stat. §§ 513.41-51, and if the Court should determine that this action is governed by the laws of other states, the fraudulent transfer laws of such other states and other applicable law, to recover fraudulent transfers, damages and disgorgement, prevent unjust enrichment and to impose a constructive trust, in connection with transfers of property by PCI and PGW to Defendant.

16.     Defendant is an initial transferee of the fraudulent or other avoidable transfers alleged in this Complaint, or a person for whose benefit such transfers were made, or an immediate or mediate transferee of any initial transferee of such transfers.

## FACTUAL BACKGROUND
## THE PETTERS PONZI SCHEME

17.     This adversary proceeding arises from a massive fraud and Ponzi scheme designed and orchestrated principally by Petters, and business organizations that he directly or indirectly owned and controlled.

4

18.     Petters operated the Ponzi scheme with the assistance of other individuals within certain Petters organizations from approximately 1993 through the date of his arrest by federal agents on October 3, 2008. Petters, through various entities that he controlled, including PCI and PGW, laundered what is estimated to be an amount in excess of $40 billion.

19.     On December 1, 2008, Petters, PCI and PGW indicted by a Federal Grand Jury in the District of Minnesota (the "Indictment") (Criminal No. 08-364) [Docket No. 196]. The Indictment charged Petters, PCI and PGW with mail and wire fraud, conspiracy to commit mail and wire fraud, conspiracy to commit money laundering, and charged Petters alone with money laundering, all in connection with the perpetration of and resulting from Petters', PCI's and PGW's participation in the Ponzi scheme. On June 3, 2009, the government filed a Superseding Indictment (the "Superseding Indictment") (Criminal No. 08-364) [Docket No. 79], charging Petters, PCI and PGW with wire and mail fraud, conspiracy to commit mail and wire fraud and money laundering conspiracy and charging Petters individually with money laundering, all in connection with Petters', PCI's and PGW's participation in the Ponzi scheme.

20.     A jury in the United States District Court of the District of Minnesota found Petters guilty of all 20 counts charged in the Superseding Indictment on December 3, 2009. On April 8, 2010, Judge Richard H. Kyle sentenced Petters to 50 years in prison for his crimes.

21.     At various times during the course of the Ponzi scheme, Petters was assisted in the operation of the scheme by numerous individuals and conspirators (the

"Associates"), including Deanna Coleman ("Coleman"), Robert White ("White"), Larry Reynolds ("Reynolds"), Michael Catain ("Catain") and James Wehmhoff ("Wehmhoff"), each of whom has pled guilty to crimes related to the Ponzi scheme.

Petters and his Associates orchestrated a fraud commonly known as a Ponzi scheme. Petters, through a multitude of entities and with the assistance of his Associates, induced investors into financing the purchase of non-existent electronic equipment secured by fabricated purchase orders or otherwise providing financing for fabricated or misrepresented purposes. Petters then took the funds invested by later investors and repaid earlier investors, not with the earnings or proceeds from the fabricated business purposes for which the financing purportedly was obtained, but with funds obtained from the subsequent investors. The payments were comprised of repayment of the principal amount invested (the "Principal") and often an amount which exceeded the amount invested (the "False Profits").

22.     Petters, through PCI, PGW and a multitude of companies through which he operated, intended that the payments to early investors would induce ongoing, repeated, greater and more widespread investment in the Ponzi scheme and thereby further perpetrate and extend the life of the fraud.

23.     On numerous occasions, investors entered into a number of Promissory Notes (the "Notes") with PCI. Under the terms and conditions of the Notes, Defendant made funds available to PCI for various falsely represented business purposes including the financing of inventory and the account receivables which would result from the sale

6

of purported electronic goods.  Under the Notes PCI would pay investors an amount

equal to both Principal and False Profits.

24.     The Notes were often secured by a Security Agreement entered into by PCI

and investor.  The Security Agreement would typically provide the investor with a

security interest in the property described as:

> Merchandise as reflected or referred to in the Purchase Order
> attached hereto as Exhibit A or as reflected or referred to in
> any future documentation, including bills of lading which
> relate back to Exhibit A;

> Any other merchandise which [PCI] has or will acquire rights
> in or use of to the extent funds advanced by the Secured Party
> has enabled [PCI] to acquire an interest in such merchandise;
> and,

> Any and all proceeds which [PCI] has or will acquire through
> the disposal of such merchandise.

25.     Petters and his Associates told investors that funds paid to PCI or certain of

its subsidiaries or affiliates were to be used to purchase products, when in reality the

funds were being funneled to PCI and PGW, or other entities formed by Petters, in order

to pay early investors with funds received from later investors.

26.     To obtain investors in the Ponzi scheme, Petters portrayed PCI as a

middleman that purchased consumer electronic goods or other goods from wholesalers

and resold the merchandise to large, "big box" retailers such as Costco, Sam's Club and

B.J.'s.  PCI, through Petters and his Associates, intentionally fabricated the documents to

recruit investors into the Ponzi scheme.  Petters and his Associates prepared and utilized

fabricated documents that were represented to investors to be equipment purchase orders

7

and related documents. The fabricated documents included, but are not limited to, (1) purchase orders from PCI to suppliers purportedly ordering electronic goods, and (2) purchase orders from retailers to PCI purportedly ordering electronic goods for purchase from PCI. The purchase orders and the related documents were entirely fictitious.

27. The fictitious merchandise was evidenced by fabricated equipment purchase orders in which the investors would purportedly acquire a security interest.

28. The high rates of return that were promised to investors promoted two essential goals of the Ponzi scheme: (1) to entice investors to invest without employing reasonable due diligence in Petters, PCI and PGW; and (2) to extend the life of the fraud and to enable Petters, PCI, and their subsidiaries and affiliates to pay other earlier investors in the fraudulent scheme.

29. PCI would show a "profit" on each transaction because PCI's fabricated purchase order from the big box retailer for the merchandise was always for an amount greater than the amount of PCI's fabricated purchase order to its supplier for the same nonexistent merchandise. Petters and his Associates, through PCI, created fictitious profits at will on each and every transaction by simply writing in the appropriate quantity and price information on the two sets of purchase orders to "produce" the necessary funds.

30. Because the transactions described in the fictitious purchase orders in fact did not exist, the only way PCI was able to transfer sufficient funds to investors was by money obtained from other investors through the operation, control and management of the Ponzi scheme by Petters and his Associates. Repayment of the principal and interest

in the form of false profits to these investors comprised a Ponzi scheme because they were primarily, if not exclusively, from funds invested by other PCI investors.

31.     Petters' businesses and business ventures, including PGW, subsidiaries and related entities of PGW, were insolvent at all time relevant herein, or had unreasonably small operating capital, and received infusions of monies that were the proceeds of the Ponzi scheme in order to operate.

32.     In addition to using the money obtained from later investors to repay earlier investors, Petters used the new investments to prop up PGW and other business that perpetually lost money, fund his extravagant lifestyle, make millions of dollars in charitable donations and pay exorbitant bonuses and other payments to employees, consultants and friends to enhance his credibility and lure additional investors into the Ponzi scheme.

33.     Petters, or Petters and his Associates, made payments or caused payments which were derived from the Ponzi scheme to be made to directors, officers, employees consultants, friends and others.

34.     Petters, or Petters and his Associates, completely controlled and exercised adverse domination over PCI, PGW and other entities at all times relevant herein and until the Receiver was appointed and placed in control of these entities.

35.     Petters, as the owner, officer and director of PCI and PGW, was a fiduciary of those entities and had a duty to disclose the fraudulent activities alleged in this Complaint.  Petters, in violation of his fiduciary duty, did not disclose the fraudulent

9

activities to most current or prospective investors and most other creditors of PCI, PGW, or other related entities.

36.     Petters, or Petters and his Associates, fraudulently and intentionally concealed the ongoing fraud in an effort to hinder and delay authorities and most current and prospective investors and most other creditors of PCI, PGW, and other entities from discovering the fraud.

37.     The concealment of the fraud, whether by Petters' silence, by the fraudulent intentional concealment of the facts constituting the fraud, or by the adverse domination of PCI, PGW, and other entities by Petters and his Associates, prevented authorities and most creditors and investors from discovering the ongoing fraud until the Receiver was appointed and placed in control of the entities and was able to discover facts constituting the fraud alleged in this Complaint.

38.     The Trustee has acted diligently to discover facts constituting the fraud alleged in this Complaint.

39.     Any temporal limitations, statutory or otherwise, on the Trustee's ability to bring the causes of action set forth below are tolled by, among other things, Petters' breach of fiduciary duty in failing to disclose the fraud, the actions of Petters, or Petters and his Associates, in fraudulently and intentionally concealing the fraud, or the adverse domination of PCI, PGW, and other debtor entities by Petters, or Petters and his Associates, until the appointment of the Receiver.

**FRAUDULENT TRANSFERS TO DEFENDANT**

40. Defendant transferred money to PCI, directly and indirectly, and received, in return, one or more of PCI's promissory notes signed by Petters as "President" of PCI.

41. During the course of the Ponzi scheme, Defendant received distributions from PCI representing a return of the Principal invested by him into the Ponzi scheme and also distributions representing False Profits.

42. Pursuant to the fraudulent mechanisms set forth above, all of which were designed to funnel funds from Defendant through PCI and back to Defendant at excessive rates of return, Defendant engaged in at least four separate note transactions with PCI in a principal sum of at least $689,700.

43. The "interest rates" that PCI paid to Defendant, using funds received from Petters through PCI, generally ranged from 23.23% to 80.00% on an annualized basis.

44. Prior to the Petition Date, PCI made payments or other transfers totaling at least $719,663.00 to or for the benefit of Defendant.

45. On information and belief, in each instance, every transaction entered into by Defendant to invest in PCI and the Ponzi scheme was based upon wholly fraudulent and fabricated financial transactions.

46. Defendant knew or should have known that he was benefiting from fraudulent activity, or at a minimum, failed to exercise reasonable due diligence with respect to Petters and PCI in connection with the Ponzi scheme. Defendant ignored numerous indicia of fraud from the general manner in which Petters and PCI operated.

11

Among other things, Defendant was on actual notice of the following additional indicia of fraud and financial irregularity but failed to make sufficient inquiry:

a.      Petters operated PCI without investor transparency.  Petters generally declined to provide investors with financial statements.  He also barred any communication by investors with retailers who Petters represented would be purchasing the fictitious electronics.  Petters also routinely barred investors from viewing and inspecting the purported electronic goods they were financing.

b.      Petters and PCI did not provide investors with electronic online access to their accounts which, had the investments been legitimate, would have shown important financial information regarding payments by bona fide retailers and shipments of electronics which was and is generally customary in the industry for purchase order financing with large retailers.

c.      PCI promised, and produced, returns that were too good to be true, reflecting a pattern of abnormally consistent and significant profitability that was not credible.

d.      Defendant received far higher purported annual rates of return on its investments with PCI, as compared to commercial market rates during the relevant time period.

e.      Defendant did not conduct a performance audit of PCI or match purchase orders, wire transfer confirmations, or other transactional documents with the purported purchases of electronic equipment Defendant was financing.

47.     Prior to the Petition Date, $719,663.00 was paid to or for the benefit of Defendant by PCI (the "Note Transfers").  These Note Transfers consisted of substantial amounts of other investors' money that, instead of financing legitimate transactions, was used to pay prior investors, including Defendant.  The Note Transfers were made to or for the benefit of Defendant and include, but are not limited to, the transfers listed on Exhibit A.

48.     Of these Note Transfers, Defendant received False Profits from PCI in the amount of $29,963.00.

49.     Additionally, as part of the Ponzi scheme, on multiple occasions Petters, or Petters and his Associates, caused monies from PCI – the proceeds of the Ponzi scheme – to be transferred to Petters' controlled businesses, including but not limited to PGW and its subsidiaries or affiliates, to enable those businesses to make payroll and to pay bonuses, severance payments, commissions or other incentives to employees, directors and officers and consultants, or directly to such employees, directors, and officers and consultants for such purposes.  These transfers were made with the intent to defraud and to sustain the Ponzi scheme.

50.     To the extent that an employment contract, bonus plan or agreement, incentive plan or agreement, or other compensation plan or agreement existed between the Defendant and the Debtors, which the Defendant claims created an obligation incurred by the Debtors (the "Obligations") prior to the Petition Date, the Defendant gave nothing of value or provided value that was less than reasonably equivalent in exchange for the Obligations.

13

51.     During the course of the Ponzi scheme, and prior to the Petition Date,

Defendant received payments totaling $4,219,324.74 (the "Payment Transfers") in

fraudulently obtained funds from the Debtors.  The Payment Transfers to the Defendant

are as follows:

| DATE | PCI | PGW |
|---|---|---|
| December 27, 2004 | $500,000.00 | |
| December 30, 2005 | | $1,000,000.00 |
| December 26, 2006 | $1,300,000.00 | |
| December 13, 2007 | $1,000,000.00 | |
| April 16, 2007 | | $250,000.00 |
| April 19, 2007 | | $167,474.74 |
| 2008 | | $1,850.00 |
| **TOTAL** | **$2,800,000.00** | **$1,419,324.74** |

52.     Of the Payment Transfers, $2,300,000 from PCI and $419,324.74 from

PGW was transferred to Defendant during the two years prior to the Petition Date (the

"Two-Year Transfers").

53.     The Debtors were insolvent on the dates of any Obligations and on the

dates the Payment Transfers were made, or the Debtors were left with an unreasonably

small amount of capital to operate.

54.     Defendant was intimately involved with many of Petters' entities, including

as the Executive Vice President of Petters Real Estate Group, LLC, a wholly owned

subsidiary of PGW, and legal counsel to PGW. Consequently, Defendant had special

knowledge or access to information regarding the Ponzi scheme, was a control person of

14

Petters Real Estate Group, LLC, and was an insider within the meaning of Section

101(31) of the Bankruptcy Code. By virtue of his close relationship with the Debtors and

his participation in the Ponzi scheme, Defendant was able to exert influence over the

Debtors and attain these excessive Payment Transfers.

55.    The Payment Transfers are disproportionately large relative to Defendant's

salary and were not a result of arm's length transactions, or made in furtherance of a

legitimate business purpose, but rather were gratuitous, were made in furtherance of the

fraud, and paid to Defendant to reward his loyalty to the Ponzi scheme.

56.    The Payment Transfers to Defendant exceeded the market value of

equivalent types of payments for equivalent performance during the relevant time period.

57.    Defendant received and accepted the Payment Transfers despite the

unreasonable amounts of the payments and failed to exercise reasonable due diligence

with respect to the source and amount of the payments.

58.    The Payment Transfers and Note Transfers (collectively, the "Transfers")

to Defendant, and to employees, directors, officers and consultants, were made as part of

the Ponzi scheme to impress existing and future investors, add credibility to the massive

Ponzi scheme, convey that Petters, PCI and PGW were trustworthy, impressive and

profitable.

59.    To the extent that any of the recovery counts may be inconsistent with each

other, they are to be treated as being pled in the alternative.

60.    During the course of this adversary proceeding, the Trustee may learn

(through discovery or otherwise) of additional transfers made to Defendant. Trustee

15

intends to avoid and recover all transfers made by the Debtor of an interest of the Debtor

in property and to or for the benefit of the Defendant or any other transferee. Similarly,

the Trustee intends to avoid any Obligations made by the Debtor.   The Trustee reserves

the right to amend this original Complaint as to include:  (i) further information regarding

the Transfers, (ii) additional Transfers, (iii) modifications or revisions to Defendant's

name, (iv) additional defendants, or (v) additional causes of action (i.e., but not

exclusively, 11 U.S.C. §542, §544, §545, § 547, §548 and §549), that may become

known to the Trustee at any time during this adversary proceeding, through formal

discovery or otherwise, and for the amendments or additional causes of action to relate

back to this original Complaint.

## COUNT I – TURNOVER AND ACCOUNTING

### 11 U.S.C. § 542

61.     The Trustee realleges and incorporates by reference the preceding

paragraphs of the Complaint as if fully set forth herein.

62.     The Transfers constitute property of the estate to be recovered and

administered by the Trustee pursuant to Section 541 of the Bankruptcy Code.

63.     As a result of the foregoing, pursuant to Section 542 of the Bankruptcy

Code, the Trustee is entitled to the immediate payment and turnover from Defendant of

any and all Transfers made by PCI and PGW, directly or indirectly, to Defendant.

64.     As a result of the foregoing, pursuant to Section 542 of the Bankruptcy

Code, the Trustee is also entitled to an accounting of all such Transfers received by

Defendant from PCI and PGW, directly or indirectly.

16

## COUNT II – FRAUDULENT TRANSFERS

### Actual Fraud - 11 U.S.C. §§ 548(a)(1)(A), 550(a), 551 and 1106

65.     The Trustee realleges and incorporates by reference the preceding paragraphs of the Complaint as if fully set forth herein.

66.     The Two-Year Transfers were made on or within two years before the Petition Date.

67.     The Two-Year Transfers represent transfers that were made or obligations that were incurred with actual intent to hinder, delay or defraud a creditor to which the Debtor was or became indebted on or after the date of the Fraudulent Transfers.

68.     The Two-Year Transfers were made to or for the benefit of Defendant in furtherance of a fraudulent investment Ponzi scheme.

69.     To the extent that Defendant is not an initial transferee of the Two-Year Transfers, he is an immediate or mediate transferee of the initial transferee of the Two-Year Transfers, and upon information and belief cannot satisfy his burden that he took the Two-Year Transfers for value and in good faith and without knowledge of the voidability of the Two-Year Transfers, or is the entity or individual for whose benefit such Two-Year Transfers were made.

70.     As a result of the foregoing, the Trustee is entitled to judgment pursuant to Bankruptcy Code §§ 548(a)(1)(A), 550(a), 551 and 1106: (a) avoiding and preserving the Two-Year Transfers free and clear from any claimed interest of Defendant, (b) directing that the Two-Year Transfers be set aside, (c) recovering such Two-Year Transfers, or the value thereof from Defendant for the benefit of the estates of PCI and PGW, and (d)

17

recovering pre-judgment and post-judgment interests, attorneys' fees and costs from Defendant.

<u>**COUNT III – FRAUDULENT TRANSFERS**</u>

**Constructive Fraud – 11 U.S.C. §§ 548(a)(1)(B), 550(a), 551 and 1106**

71.     The Trustee realleges and incorporates by reference the preceding paragraphs of the Complaint as if fully set forth herein.

72.     The Two-Year Transfers were made on or within two years before the Petition Date.

73.     At all times material hereto, the Debtor: (a) was insolvent on the dates the Two-Year Transfers were made or became insolvent as a result of the Two-Year Transfers, and/or (b) was engaged in businesses or transactions, or was about to engage in businesses or transactions, for which the property remaining with the Debtor after the Two-Year Transfers were effectuated constituted unreasonably small capital, and/or (c) at the time of the Two-Year Transfers, intended to incur, or believed that it would incur, debts that would be beyond its ability to pay as the debts matured.

74.     The Debtor received less than a reasonably equivalent value in exchange for the Two-Year Transfers.

75.     To the extent that Defendant is not an initial transferee of the Two-Year Transfers, he is an immediate or mediate transferee of the initial transferee of the Two-Year Transfers, and upon information and belief cannot satisfy his burden that he took the Two-Year Transfers for value and in good faith and without knowledge of the

18

voidability of the Two-Year Transfers, or is the entity or individual for whose benefit such Two Year Transfers were made.

76.     As a result of the foregoing, the Trustee is entitled to judgment pursuant to Bankruptcy Code §§ 548(a)(1)(B), 550(a), 551 and 1106:  (a) avoiding and preserving the Two-Year Transfers free and clear from any claimed interest of Defendant, (b) directing that the Two-Year Transfers be set aside, (c) recovering such Two Year Transfers or the value thereof from Defendant for the benefit of the estates of PCI and PGW, and (d) recovering pre-judgment and post-judgment interest, attorneys' fees and costs from Defendant.

## COUNT IV – FRAUDULENT TRANSFERS

### Insider Transfers – 11 U.S.C. §§ 548(a)(1)(B)(ii)(IV), 550(a), 551 and 1106

77.     The Trustee realleges and incorporates by reference the preceding paragraphs of the Complaint as if fully set forth herein.

78.     The Two-Year Transfers were made and any Obligations incurred to or for the benefit of Defendant.

79.     Defendant is an "insider" within the meaning of Section 101(31) of the Bankruptcy Code.

80.     An employment contract or other such agreement existed between Defendant and Debtor at the time the Two-Year Transfers and any Obligations were made.

81.     The Debtor received less than a reasonably equivalent value in exchange for the Two-Year Transfers that were made and any Obligations that were incurred.

82.    The Two-Year Transfers made and any Obligations incurred were not in the ordinary course of business.

83.    To the extent that Defendant is not an initial transferee of the Two-Year Transfers, he is an immediate or mediate transferee of the initial transferee of the Two-Year Transfers, and upon information and belief cannot satisfy his burden that he took the Two-Year Transfers for value and in good faith and without knowledge of the voidability of the Two-Year Transfers, or is the entity or individual for whose benefit such Two-Year Transfers were made.

84.    As a result of the foregoing, the Trustee is entitled to judgment pursuant to Bankruptcy Code §§ 548(a)(1)(B)(ii)(IV), 550(a), 551 and 1106: (a) avoiding and preserving the Two-Year Transfers free and clear from any claimed interest of Defendant, (b) directing that the Two-Year Transfers be set aside, (c) recovering such Two-Year Transfers or the value thereof from Defendant for the benefit of the estates of PCI and PGW, and (d) recovering pre-judgment and post-judgment interest, attorneys' fees and costs from Defendant.

## COUNT V – FRAUDULENT TRANSFERS

**Insider Transfers - 11 U.S.C. §§ 544(b), 550(a), 551 and 1106 & Minn. Stat. §§ 513.45(b) and 513.47 or Other Governing Fraudulent Transfer Laws**

85.    The Trustee realleges and incorporates by reference the preceding paragraphs of the Complaint as if fully set forth herein.

86.    At all times material hereto, there was and is at least one or more creditors who held and who holds unsecured claims against the Debtor that were and are allowable

under Bankruptcy Code § 502 or that were and are not allowable only under Bankruptcy

Code § 502(e).  The Transfers and Obligations are avoidable under applicable non-

bankruptcy law by a creditor holding an unsecured claim in the bankruptcy case.

87.    Defendant is an "insider" within the meaning of Minn. Stat. § 513.41(7).

88.    The Transfers were made to an insider for an antecedent debt, the Debtor

was insolvent at the time, and the insider had reasonable cause to believe the Debtor was

insolvent.

89.    To the extent that Defendant is not an initial transferee of the Transfers, he

is a subsequent transferee of the initial transferee of the Transfers, and upon information

and belief cannot satisfy his burden that he took the Transfers for value and in good faith,

or is the entity or individual for whose benefit such Transfers were made.

90.    As a result of the foregoing, the Trustee is entitled to judgment pursuant to

Bankruptcy Code §§ 544(b), 550(a), 551 and 1106, Minn. Stat. §§ 513.45(b)(1) and

513.47, and if the Court should determine that this action is governed by the laws of other

states, the fraudulent transfer laws of such other states: (a) avoiding any Obligations and

avoiding and preserving the Transfers free and clear from any claimed interest of

Defendant, (b) directing that any Obligations and the Transfers be set aside, (c)

recovering such Transfers or the value thereof from Defendant for the benefit of the

bankruptcy estates of PCI and PGW, (d) recovering pre-judgment and post-judgment

interest, attorneys' fees and costs from Defendant.

## COUNT VI – FRAUDULENT TRANSFERS

**Actual Fraud - 11 U.S.C. §§ 544(b), 550(a), 551 and 1106 & Minn. Stat.
§§ 513.44(a)(1) and 513.47 or Other Governing Fraudulent Transfer Laws**

91.    The Trustee realleges and incorporates by reference the preceding

paragraphs of the Complaint as if fully set forth herein.

92.    At all times material hereto, there was and is at least one creditor who held

and who holds unsecured claims against the Debtor that were and are allowable under

Bankruptcy Code § 502 or that were and are not allowable only under Bankruptcy Code

§ 502(e).  The Transfers and Obligations are avoidable under applicable non-bankruptcy

law by a creditor holding an unsecured claim in the bankruptcy case.

93.    The Transfers or Obligations were made or incurred with actual intent to

hinder, delay or defraud a creditor to which the Debtor was or became indebted on or

after the date of the Transfers.

94.    The Transfers or Obligations were made to or for the benefit of Defendant

in furtherance of a fraudulent investment scheme.

95.    To the extent that Defendant is not an initial transferee of the Transfers, he

is a subsequent transferee of the initial transferee of the Transfers, and upon information

and belief cannot satisfy his burden that he took the Transfers for value and in good faith,

or is the entity or individual for whose benefit such Transfers were made.

96.    As a result of the foregoing, the Trustee is entitled to judgment pursuant to

Bankruptcy Code §§ 544(b), 550(a), 551 and 1106, Minn. Stat. §§ 513.44(a)(1) and

513.47, and if the Court should determine that this action is governed by the laws of other

states, the fraudulent transfer laws of such other states: (a) avoiding any Obligations and

avoiding and preserving the Transfers free and clear from any claimed interest of

Defendant, (b) directing that any Obligations and the Transfers be set aside, (c)

recovering such Transfers in the value thereof from Defendant for the benefit of the

bankruptcy estates of PCI and PGW, (d) alternatively, with respect to the Note Transfers,

recovering such False Profits in the amount of $29,963.00, and (e) recovering pre-

judgment and post-judgment interest, attorneys' fees and costs from Defendant.

## COUNT VII – FRAUDULENT TRANSFERS

**Constructive Fraud - 11 U.S.C. §§ 544(b), 550(a), 551 and 1106 & Minn. Stat.
§§ 513.44(a)(2)(i) and 513.47 or Other Governing Fraudulent Transfer Laws**

97.     The Trustee realleges and incorporates by reference the preceding

paragraphs of the Complaint as if fully set forth herein.

98.     At all times material hereto, there was and is at least one creditor who held

and who holds unsecured claims against the Debtor that were and are allowable under

Bankruptcy Code § 502 or that were and are not allowable only under Bankruptcy Code

§ 502(e).  The Transfers and Obligations are avoidable under applicable non-bankruptcy

law by a creditor holding an unsecured claim in the Bankruptcy Cases.

99.     At all times material hereto, the Debtor was engaged in businesses or

transactions, or was about to engage in businesses or transactions, for which the property

remaining with the Debtor after the Transfers and Obligations were effectuated

constituted unreasonably small capital.

23

100.    The Debtor received less than a reasonably equivalent value in exchange for the Transfers and Obligations.

101.    To the extent that Defendant is not an initial transferee of the Transfers, he is a subsequent transferee of the initial transferee of the Transfers, and upon information and belief cannot satisfy his burden that he took the Transfers for value and in good faith, or is the entity or individual for whose benefit such Transfers were made.

102.    As a result of the foregoing, the Trustee is entitled to judgment pursuant to Bankruptcy Code §§ 544(b), 550(a), 551 and 1106, Minn. Stat. §§ 513.44(a)(2)(i) and 513.47, and if the Court should determine that this action is governed by the laws of other states, the fraudulent transfer laws of such other states:  (a) avoiding any Obligations and avoiding the Transfers free and clear from any claimed interest of Defendant, (b) directing that any Obligations and the Transfers be set aside, (c) recovering such Transfers or the value thereof from Defendant for the benefit of the bankruptcy estates of PCI and PGW, (d) alternatively, with respect to the Note Transfers, recovering such False Profits in the amount of $29,963.00, and (e) recovering pre-judgment and post-judgment interest, attorneys' fees and costs from Defendant.

## COUNT VIII – FRAUDULENT TRANSFERS

**Constructive Fraud - 11 U.S.C. §§ 544(b), 550(a), 551 and 1106 & Minn. Stat. §§ 513.44(a)(2)(ii) and 513.47 or Other Governing Fraudulent Transfer Laws**

103.    The Trustee realleges and incorporates by reference the preceding paragraphs of the Complaint as if fully set forth herein.

104.     At all times material hereto, there was and is at least one creditor who held and who holds unsecured claims against the Debtor that were and are allowable under Bankruptcy Code § 502 or that were and are not allowable only under Bankruptcy Code § 502(e).  The Transfers and Obligations are avoidable under applicable non-bankruptcy law by a creditor holding an unsecured claim in the Bankruptcy Cases.

105.     At all times material hereto, the Debtor, at the time of the Transfers and Obligations, intended to incur, or believed that it would incur, debts that would be beyond its ability to pay as the debts matured.

106.     The Debtor received less than a reasonably equivalent value in exchange for the Transfers and Obligations.

107.     To the extent that Defendant is not an initial transferee of the Transfers, he is a subsequent transferee of the initial transferee of the Transfers, and upon information and belief, cannot satisfy his burden that he took the Transfers for value and in good faith, or is the entity or individual whose benefit such Transfers were made.

108.     As a result of the foregoing, the Trustee is entitled to judgment pursuant to Bankruptcy Code §§ 544(b), 550(a), 551 and 1106, Minn. Stat. §§ 513.44(a)(2)(ii) and 513.47, and if the Court should determine that this action is governed by the laws of other states, the fraudulent transfer laws of such other states:  (a) avoiding any Obligations and avoiding and preserving the Transfers free and clear from any claimed interest of Defendant, (b) directing that any Obligations and the Transfers be set aside, (c) recovering such Transfers or the value thereof from Defendant for the benefit of the bankruptcy estates of PCI and PGW, (d) alternatively, with respect to the Note Transfers,

25

recovering such False Profits in the amount of $29,963.00, and (e) recovering pre-

judgment and post-judgment interest, attorneys' fees and costs from Defendant.

## COUNT IX – FRAUDULENT TRANSFERS

### Constructive Fraud - 11 U.S.C. §§ 544(b), 550(a), 551 and 1106 & Minn. Stat. §§ 513.45(a) and 513.47 or Other Governing Fraudulent Transfer Laws

109.    The Trustee realleges and incorporates by reference the preceding

paragraphs of the Complaint as if fully set forth herein.

110.    At all times material hereto, there was and is at least one creditor who held

and who holds unsecured claims against the Debtor that were and are allowable under

Bankruptcy Code § 502 or that were and are not allowable only under Bankruptcy Code

§ 502(e).  The Transfers are avoidable under applicable non-bankruptcy law by a creditor

holding an unsecured claim in the Bankruptcy Cases.

111.    At all times material hereto, the Debtor, at the time of the Transfers and

Obligations, was insolvent or, in the alternative, the Debtor became insolvent as a result

of the Transfers.

112.    The Debtor received less than a reasonably equivalent value in exchange

for the Transfers and Obligations.

113.    To the extent that Defendant is not an initial transferee of the Transfers, he

is a subsequent transferee of the initial transferee of the Transfers, and upon information

and belief, cannot satisfy his burden that he took the Transfers for value and in good

faith, or is the entity or individual for whose benefit such Transfers occurred.

114.    As a result of the foregoing, the Trustee is entitled to judgment pursuant to Bankruptcy Code §§ 544(b), 550(a), 551 and 1106, Minn. Stat. §§ 513.45(a) and 513.47, and if the Court should determine that this action is governed by the laws of other states, the fraudulent transfer laws of such other states:  (a) avoiding and Obligations and avoiding and preserving the Transfers free and clear from any claimed interest of Defendant, (b) directing that any Obligations and the Transfers be set aside, (c) recovering such Transfers or the value thereof from Defendant for the benefit of the bankruptcy estates of PCI and PGW, (d) alternatively, with respect to the Note Transfers, recovering such False Profits in the amount of $29,963.00, and (e) recovering pre-judgment and post-judgment interest, attorneys' fees and costs from Defendant.

## COUNT X – UNJUST ENRICHMENT/EQUITABLE DISGORGEMENT

115.    The Trustee realleges and incorporates by reference the preceding paragraphs of the Complaint as if fully set forth herein.

116.    At all times relevant hereto, all funds received by Defendant were part and parcel of the Ponzi scheme and were derived from monies fraudulently obtained by Petters and PCI and from other investors or participants in the Ponzi scheme.

117.    Defendant, as the recipient of fraudulently obtained proceeds of the Ponzi scheme, has no rightful or legitimate claim to such monies.

118.    Defendant knowingly received monies from the Debtors and those monies were derived from the Ponzi scheme, and he was unjustly enriched through his receipt of the fraudulently obtained monies to the detriment of the PCI and PGW estates, and in equity and good conscience must be required to repay the proceeds received.

119.     Defendant would be unjustly enriched to the extent he is allowed to retain

the monies and proceeds received during its participation in the Ponzi scheme.

120.     Defendant must, therefore, in equity be required to disgorge all proceeds

received through the operation of the Ponzi scheme, so as to allow the Trustee to

distribute in equity any such ill-gotten gains among all innocent investors and creditors of

PCI and PGW.

## COUNT XI – DISALLOWANCE

## 11 U.S.C. § 502(b) and (d)

121.     The Trustee realleges and incorporates by reference the preceding

paragraphs of the Complaint as if fully set forth herein.

122.     To the extent that Defendant asserts he is entitled to any claim in these

Bankruptcy Cases, directly on his own account or indirectly by virtue of any other

agreement with Petters, PCI, PGW or any of their affiliates, such claim is unenforceable

against the Debtors or the property of the Debtors under any agreement or applicable law

and should be disallowed under 11 U.S.C. § 502(b).

123.     Further, any claim of an entity from which property is recoverable under 11

U.S.C. § 550 or held by a transferee of a transfer that is avoided under 11 U.S.C. §§ 544

or 548 shall be disallowed by the Court unless such entity or transferee has paid the

amount, or turned over any such property, for which such entity or transferee is liable.

124.     As a result of the foregoing, to the extent that Defendant asserts he is

entitled to any claim in these Bankruptcy Cases, directly on his own account or indirectly

by virtue of any other agreement with Petters, PCI, PGW or any of their affiliates, all

such claims are and should be in all things disallowed.

**WHEREFORE**, the Trustee respectfully requests this Court enter judgment

in favor of Plaintiffs and against Defendant as follows:

A.    Count I (Turnover and Accounting):  pursuant to Sections

541, 542, 550(a) and 551 of the Bankruptcy Code: (a) that the property that

was the subject of the Transfers be immediately delivered and turned over to

the Trustee, and (b) for an accounting by Defendant of the property that was

the subject of the Transfers or the value of such property.

B.    Count II (Fraudulent Transfers - Actual Fraud):  pursuant to

11 U.S.C.  §§ 548(a)(1)(A), 550(a), 551 and 1106:  (a) avoiding and

preserving the Two Year Transfers free and clear from any claimed interest

of Defendant, (b) directing that the Two-Year Transfers be set aside, (c)

recovering such Two-Year Transfers in the amount of $2,719,324.74 or the

value thereof from Defendant for the benefit of the estates of PCI and PGW,

and (d) recovering pre-judgment and post-judgment interests, attorneys' fees

and costs from Defendant.

C.    Count III (Fraudulent Transfers - Constructive Fraud):

pursuant to 11 U.S.C. §§ 548(a)(1)(B), 550(a), 551 and 1106:  (a) avoiding

and preserving the Two-Year Transfers free and clear from any claimed

interest of Defendant, (b) directing that the Two-Year Transfers be set aside,

(c) recovering such Two-Year Transfers in the amount of $2,719,324.74 or

the value thereof from Defendant for the benefit of the estates of PCI and PGW, and (d) recovering pre-judgment and post-judgment interest, attorneys' fees and costs from Defendant.

     D.    Count IV (Insider Transfers): pursuant to pursuant to 11 U.S.C. §§ 548((a)(1)(B)(ii)(IV), 550(a), 551 and 1106, and if the Court should determine that this action is governed by the laws of other states, the fraudulent transfer laws of such other states: (a) avoiding and preserving the Two-Year Transfers free and clear from any claimed interest of Defendant, (b) directing that the Two-Year Transfers be set aside, (c) recovering such Two-Year Transfers in the amount of $2,719,324.74 or the value thereof from Defendant for the benefit of the estates of PCI and PGW, and (d) recovering pre-judgment and post-judgment interests, attorneys' fees and costs from Defendant.

     E.    Count V (Insider Transfers): pursuant to pursuant to 11 U.S.C. §§ 544(b), 550(a), 551 and 1106, Minn. Stat. §§ 513.45(b) and 513.47, and if the Court should determine that this action is governed by the laws of other states, the fraudulent transfer laws of such other states: (a) avoiding any Obligations and avoiding and preserving the Transfers free and clear from any claimed interest of Defendant, (b) directing that any Obligations and the Transfers be set aside, (c) recovering such Transfers in the amount of $4,219,324.74 or the value thereof from Defendant for the benefit of the bankruptcy estates of PCI and PGW, and (d) recovering pre-

30

judgment and post-judgment interest, attorneys' fees and costs from Defendant.

F.     Count VI (Fraudulent Transfers – Actual Fraud): pursuant to 11 U.S.C. §§ 544(b), 550, 551 and 1106, Minn. Stat. §§ 513.44(a)(1) and 513.47, and if the Court should determine that this action is governed by the laws of other states, the fraudulent transfer laws of such other states:  (a) avoiding any Obligations and avoiding and preserving the Transfers free and clear from any claimed interest of Defendant, (b) directing that any Obligations and the Transfers be set aside, (c) recovering such Transfers in the amount of $4,938,987.74 or the value thereof from Defendant for the benefit of the bankruptcy estates of PCI and PGW, (d) alternatively, with respect to the Note Transfers, recovering such False Profits in the amount of $29,963.00, and (e) recovering pre-judgment and post-judgment interest, attorneys' fees and costs from Defendant.

G.     Count VII (Fraudulent Transfers - Constructive Fraud): pursuant to 11 U.S.C. §§ 544(b), 550, 551 and 1106, Minn. Stat. §§ 513.44(a)(2)(i) and 513.47, and if the Court should determine that this action is governed by the laws of other states, the fraudulent transfer laws of such other states:  (a) avoiding any Obligations and avoiding and preserving the Transfers free and clear from any claimed interest of Defendant, (b) directing that any Obligations and the Transfers be set aside, (c) recovering such Transfers in the amount of $4,938,987.74 or the value thereof from

31

Defendant for the benefit of the bankruptcy estates of PCI and PGW, (d) alternatively, with respect to the Note Transfers, recovering such False Profits in the amount of $29,963.00, and (e) recovering pre-judgment and post-judgment interest, attorneys' fees and costs from Defendant.

H.    Count VIII (Fraudulent Transfers - Constructive Fraud): pursuant to 11 U.S.C. §§ 544(b), 550, 551 and 1106, Minn. Stat. §§ 513.44(a)(2)(ii) and 513.47, and if the Court should determine that this action is governed by the laws of other states, the fraudulent transfer laws of such other states:  (a) avoiding and preserving the Transfers free and clear from any claimed interest of Defendant, (b) directing that the Transfers be set aside, (c) recovering such Transfers in the amount of $4,938,987.74 or the value thereof from Defendant for the benefit of the bankruptcy estates of PCI and PGW, (d) alternatively, with respect to the Note Transfers, recovering such False Profits in the amount of $29,963.00, and (e) recovering pre-judgment and post-judgment interest, attorneys' fees and costs from Defendant.

I.    On Count IX (Fraudulent Transfers - Constructive Fraud): pursuant to 11 U.S.C. §§ 544(b), 550, 551 and 1106, Minn. Stat. §§ 513.45(a) and 513.47, and if the Court should determine that this action is governed by the laws of other states, the fraudulent transfer laws of such other states:  (a) avoiding and preserving the Transfers free and clear from any claimed interest of Defendant, (b) directing that any Obligations and the

32

Transfers be set aside, (c) recovering such Transfers in the amount of $4,938,987.74 or the value thereof from Defendant for the benefit of the bankruptcy estates of PCI and PGW, (d) alternatively, with respect to the Note Transfers, recovering such False Profits in the amount of $29,963.00, and (e) recovering pre-judgment and post-judgment interest, attorneys' fees and costs from Defendant.

J.     Count X (Unjust Enrichment/Equitable Disgorgement): declaring and ordering that the Trustee shall recover the Transfers, Principal and False Profits and any other monies received by Defendant, directly or indirectly, from the fraud perpetrated through the Ponzi scheme, or the value thereof, for the benefit of the bankruptcy estate of the Debtor; and that Defendant shall be liable to the bankruptcy estate of the Debtor in an amount equal to all monies received and shall be required to disgorge the same for the equitable distribution to all creditors of PCI and PGW.

K.     Count XI (Disallowance): pursuant to 11 U.S.C. § 502(b) and (d): declaring and ordering that, to the extent that Defendant asserts he is entitled to any claim in these Bankruptcy Cases, directly on his own account or indirectly by virtue of any other agreement with Petters, PCI, PGW or any of their affiliates, all such claims are in all things disallowed;

L.     On all Claims for Relief, establishment of a constructive trust over the proceeds of the transfers in favor of the Trustee for the benefit of PCI's and PGW's estates;

M.     On all Claims for Relief, assignment of Defendant's income tax refunds from the United States, state and local governments paid on fictitious profits during the course of the Ponzi scheme;

N.     Awarding the Trustee all applicable interest (including pre-judgment and post-judgment interest), attorneys' fees, costs and disbursements in this action; and

O.     Granting the Trustee such other, further and different relief as the Court deems just, proper and equitable.


DATED:      October 8, 2010                    FRUTH, JAMISON & ELSASS, PLLC


                                               By:   s/ K. Jon Breyer
                                                     Thomas E. Jamison (#220061)
                                                     Douglas L. Elsass (#219241)
                                                     K. Jon Breyer (#302259)
                                                     Adam A. Gillette (#0328352)
                                               3902 IDS Center
                                               80 South Eighth Street
                                               Minneapolis, MN 55402-2274
                                               Telephone: (612) 344-9700
                                               Facsimile: (612) 344-9705

                                               *ATTORNEYS FOR DOUGLAS A.
                                               KELLEY CHAPTER 11 TRUSTEE OF
                                               PETTERS COMPANY, INC. AND
                                               PETTERS GROUP WORLDWIDE, LLC*

**EXHIBIT A**
**Transfers to or for the Benefit of THOMAS HAY**

| Date | Amount | Subtotal |
| --- | --- | --- |
| *90 Day Transfers* | | |
| No Transfers Identified | | |
| *Two Year Transfers* | | |
| No Transfers Identified | | |
| *Additional Transfers* | | |
| 8/25/1998 | $299,163.00 | |
| 6/26/1998 | $103,100.00 | |
| 6/26/1998 | $309,400.00 | |
| 5/14/1998 | $8,000.00 | *$719,663.00* |
| **Transfers** | **$719,663.00** | |

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| In re: | **Jointly Administered under**<br>**Case No. 08-45257** |
| Petters Company, Inc., et al., | Court File No. 08-45257 |
| Debtors. | |
| | Court Files No.'s: |
| (includes: | |
| Petters Group Worldwide, LLC; | 08-45258 (GFK) |
| PC Funding, LLC; | 08-45326 (GFK) |
| Thousand Lakes, LLC; | 08-45327 (GFK) |
| SPF Funding, LLC; | 08-45328 (GFK) |
| PL Ltd., Inc.; | 08-45329 (GFK) |
| Edge One LLC; | 08-45330 (GFK) |
| MGC Finance, Inc.; | 08-45331 (GFK) |
| PAC Funding, LLC; | 08-45371 (GFK) |
| Palm Beach Finance Holdings, Inc.) | 08-45392 (GFK) |
| | Chapter 11 Cases<br>Judge Gregory F. Kishel |

Douglas A. Kelley, in his capacity as the
court-appointed Chapter 11 Trustee,

Plaintiff,

v.                                                          Adv. Case Nos.

| | |
|---|---|
| Vlahos, et al.; | 10-04201 |
| Redstone Limited Partnership; | 10-04202 |
| Redstone American Grill, Inc.; | 10-04203 |
| Edgebrook, Inc.; | 10-04204 |
| Aron; | 10-04205 |
| Kanios, et al.; | 10-04206 |
| Hagan; | 10-04207 |
| Lynn Isaac, et al.; | 10-04209 |
| George Isaac, et al.; | 10-04210 |
| Papadimos; | 10-04211 |
| Svigos; | 10-04212 |
| Kenney; | 10-04225 |
| High Plains Investment LLC; | 10-04250 |
| Hauser; | 10-04254 |
| Hayden Fleming, et al.; | 10-04255 |
| Patrick Fleming, et al.; | 10-04257 |
| McCarthy, et al.; | 10-04262 |
| Allanson; | 10-04263 |

| | |
|---|---|
| Brennan; | 10-04264 |
| Kenneth Colvin, et al.; | 10-04266 |
| Electric Motor Supply Co.; | 10-04267 |
| Steve Feneis; | 10-04268 |
| Kabe; | 10-04273 |
| Caruso; | 10-04274 |
| Dan G. Feneis, et al.; | 10-04275 |
| Kuperus; | 10-04277 |
| Kyriakides; | 10-04278 |
| Jane Slobodyanuk; | 10-04280 |
| Slava Slobodyanuk; | 10-04281 |
| Miller Companies, Inc.; | 10-04282 |
| Kerbel, et al.; | 10-04284 |
| Challenge Printing; | 10-04290 |
| Overstock.com; | 10-04292 |
| Alper; | 10-04293 |
| Mansour, et al.; | 10-04296 |
| Opportunity Finance, LLC, et al.; | 10-04301 |
| Larry Colvin, et al.; | 10-04310 |
| Kimberlee Colvin, et al.; | 10-04311 |
| Metro I, LLC, et al.; | 10-04328 |
| Carter; | 10-04337 |
| Engels; | 10-04338 |
| Danko; | 10-04339 |
| McGaunn; | 10-04340 |
| Salmen; | 10-04341 |
| Phelps; | 10-04342 |
| Miller; | 10-04343 |
| Anderson; | 10-04344 |
| Ting; | 10-04345 |
| Riedl; | 10-04346 |
| Mau; | 10-04347 |
| Margolis; | 10-04348 |
| Metro Gem, Inc., et al.; | 10-04352 |
| Thomas Shimoji and Company, Ltd.; | 10-04354 |
| Circle F Ventures, LLC; | 10-04355 |
| Joe; | 10-04358 |
| Tesar; | 10-04359 |
| Dorsey; | 10-04360 |
| O'Brien; | 10-04361 |
| Honig; | 10-04362 |
| Sarenpa; | 10-04363 |
| Pernula; | 10-04366 |
| Schmit; | 10-04367 |
| Opportunity Finance, LLC; | 10-04375 |
| Toshi Investments, Ltd.; | 10-04378 |
| Idlewild Properties, LLC; | 10-04380 |
| Knoblach, et al.; | 10-04382 |
| Wright; | 10-04385 |
| Monighan; | 10-04395 |

DOCS-#3443977-v1

| | |
|---|---|
| Westford Special Situations Master Fund, L.P., et al.; | 10-04396 |
| Zhang; | 10-04402 |
| Lagermeier; | 10-04403 |
| Clayton; | 10-04405 |
| Hardy; | 10-04408 |
| Ratliff; | 10-04409 |
| Dunlap; | 10-04410 |
| Morgan; | 10-04415 |
| General Electric Capital Corporation; | 10-04418 |
| Romenesko; | 10-04419 |
| Associated Bank; | 10-04422 |
| Kenneth Johnson; | 10-04423 |
| Hodge; | 10-04425 |
| Lancer Financial Services, LLC, et al.; | 10-04427 |
| Cohen Partnership, et al.; | 10-04431 |
| Ritchie Capital Management, L.L.C., et al.; | 10-04440 |

Defendants.

## **CERTIFICATE OF SERVICE**

Carmel Funk, of the City of St. Paul, County of Ramsey, State of Minnesota, states that on April 22, 2011 she served the following document:

### **OMNIBUS MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS**

electronically by Notice of Electronic Filing upon all parties who have requested service in these cases by filing the same via ECF with the Bankruptcy Court in the District of Minnesota.

_____/e/ Carmel Funk_____
Carmel Funk

DOCS-#3443977-v1